IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAIME RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 07-0065 |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) Judge Gladys Kessler |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

Plaintiff Jaime Ramirez hereby applies for a preliminary injunction blocking the defendants, U.S. Customs and Border Protection, et al. (CBP), from enforcing its order that Ramirez resign his unpaid position on the nonpartisan Presidio City Council by March 8, 2007.  In support of his application, Ramirez offers the attached memorandum (with exhibits) and further states as follows:

1.     After obtaining approval from CBP to run for a seat on the nonpartisan City Council, Ramirez ran for and was elected to a City Council seat in May 2004.  See Ramirez Decl. at ¶¶ 8-10 (Exhibit A to attached memorandum).  He has served on the City Council continuously since that time.  Id. at ¶¶ 6, 8-10, 13.

2.     Ramirez has recused himself from the only issue that has arisen during that time that has any connection whatsoever

to CBP, and he intends to recuse himself from any other issues that arise concerning CBP.  <u>Id.</u> at ¶¶ 15-16.

**3.**    Nonetheless, on December 22, 2006, Ramirez received a written order from CBP directing him to resign either his City Council seat or his position with CBP.  <u>Id.</u> at ¶ 18.  The stated ground for the order was that Ramirez's service on the City Council raised an alleged appearance of a conflict of interest. <u>Id.</u> (Att. 3).

**4.**    Ramirez requested permission from CBP to have until February 8, 2007, to respond to the order.  <u>Id.</u> at ¶ 18.  CBP responded to that request initially by giving him until January 21, 2007, to act on the order.  <u>Id.</u>

**5.**    Upon filing the complaint in this matter on January 12, 2007, the undersigned counsel consulted with CBP counsel, who agreed to extend the deadline for Ramirez to act until February 8, 2007.

**6.**    Immediately upon the assignment of government counsel from the Department of Justice to this case, the undersigned counsel contacted him to discuss the deadline.  As a result of those discussions, the government agreed to extend the deadline for Ramirez to respond to CBP's order to March 8, 2007.  The government has declined any further extension of the deadline.

**7.**    As discussed in the attached memorandum, preliminary relief is necessary because Ramirez must now act on CBP's order

by March 8, 2007.  If the Court does not provide him with injunctive relief by March 8, 2007, Ramirez will have no choice but to resign his unpaid seat on the City Council.  Ramirez Decl. at ¶ 19.  The Court would then have no power to provide any remedy to Ramirez, should he ultimately prevail on the merits of his constitutional challenge to the CBP order. Accordingly, preliminary relief is necessary to prevent irreparable injury to Ramirez, as set forth in the attached memorandum.

**8.**    Unless the Court intends to grant Ramirez's application for a preliminary injunction on the papers alone, Ramirez requests that the Court schedule a hearing on the application.  Ramirez would not procure testimony from any witnesses at any such hearing.

**9.**    Because the deadline for Ramirez to act on the CBP order has been extended until March 8, 2007, Ramirez would not be prejudiced if a hearing on his application is held more than 20 days after the date of its filing, so long as the hearing is held far enough in advance of March 8, 2007, to permit the Court to rule on his application by that date.  See LCvR 65.1(d).

<u>**CONCLUSION**</u>

For the foregoing reasons, as well as those set forth in the attached memorandum and exhibits, plaintiff Ramirez respectfully requests that the Court enter a preliminary

3

injunction blocking CBP from enforcing its order that Ramirez
resign either his seat on the Presidio City Council or his CBP
Officer position until such time as the merits of Ramirez's
constitutional challenge to the order can be resolved.  A
proposed order is attached.  Alternatively, Ramirez requests
that the Court declare the order invalid and enter a permanent
injunction providing the relief requested in the complaint.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Gregory O'Duden
GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

/s/ Elaine Kaplan
ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

/s/ Barbara A. Atkin
BARBARA A. ATKIN
Deputy General Counsel
D.C. Bar No. 225797

/s/ Robert H. Shriver, III
ROBERT H. SHRIVER, III
Assistant Counsel
D.C. Bar No. 456858

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, NW
Washington, DC 20006
(202) 572-5500

</div>

Date:  January 31, 2007          Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAIME RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 07-0065 |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) Judge Gladys Kessler |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF HIS APPLICATION FOR A PRELIMINARY INJUNCTION**

GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

BARBARA A. ATKIN
Deputy General Counsel
D.C. Bar No. 225797

ROBERT H. SHRIVER, III
Assistant Counsel
D.C. Bar No. 456858

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, NW
Washington, DC 20006
(202) 572-5500

Date:  January 31, 2007      Attorneys for Plaintiff

# TABLE OF CONTENTS

Page:

INTRODUCTION...................................................1

STATEMENT OF THE FACTS.........................................2

ARGUMENT......................................................9

ALL OF THE FACTORS THAT COURTS WEIGH WHEN CONSIDERING A REQUEST
FOR PRELIMINARY RELIEF SUPPORT ENTRY OF A PRELIMINARY
INJUNCTION IN THIS CASE.......................................9

   I.   There Is a Substantial Likelihood That Ramirez Will
       Prevail on the Merits of His Claims.....................10

        A.  CBP's Orders Directing Ramirez To Resign His
            City Council Seat Implicate Core First Amendment
            Rights..............................................11

        B.  The Government Cannot Meet Its Burden to Justify
            Infringement of the Core First Amendment Freedoms
            Guaranteed to Ramirez and the Voters Who Elected
            Him.................................................13

  II.  Ramirez Will Suffer Irreparable Injury If He Is Not
       Afforded Preliminary Relief............................22

 III.  Awarding Preliminary Relief Would Not Harm the
       Government..............................................24

  IV.  Preliminary Relief Would Further the Public Interest.....25

CONCLUSION...................................................26

Exhibit A:  Declaration of Jaime Ramirez

  Attachment 1:  Application To Engage in Outside Employment
  Attachment 2:  Disapproval of Outside Employment Request
  Attachment 3:  Memorandum from DFO Garcia (Dec. 22, 2006)
  Attachment 4:  Presidio City Council Agendas

Exhibit B:  Declaration of Alcee Tavarez
Exhibit C:  Customs Directive No. 51735-001A
Exhibit D:  Memorandum from Kevin D. Young (Dec. 1, 2006)
Exhibit E:  CBP Standards of Conduct

**TABLE OF AUTHORITIES**

**Page:**

**CASES**

American Fed'n of Gov't Employees v. United States,
    104 F. Supp. 2d 58 (D.D.C. 2000)...........................10

Anderson v. Celebrezze, 460 U.S. 780 (1983)...................12

Brown v. Keane, 469 F.2d 563 (D.C. Cir.), vacated as moot,
    409 U.S. 816 (1972).......................................24

Bullock v. Carter, 405 U.S. 134 (1972).......................13

CityFed Fin'l Corp. v. Office of Thrift Supervision,
    58 F.3d 738 (D.C. Cir. 1995)..............................10

Connick v. Myers, 461 U.S. 138 (1983)..................13, 14-15

Davenport v. International Bhd. of Teamsters,
    166 F.3d 356 (D.C. Cir. 1999).............................9-10

Defenders of Wildlife v. United States Dep't of
    Interior, 314 F. Supp. 2d 1 (D.D.C. 2004).................19

Elrod v. Burns, 427 U.S. 347 (1976)......................14, 22

First Nat'l Bank of Boston v. Bellotti,
    435 U.S. 765 (1978).......................................26

Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).........14, 17,  21

Green v. McKeon, 335 F. Supp. 630 (E.D. Mich. 1971),
    aff'd, 468 F.2d 883 (6th Cir. 1972) ......................13

Illinois Bd. of State Elec. v. Socialist Workers Party,
    440 U.S. 173 (1979).......................................12

Jenness v. Fortson, 403 U.S. 431 (1971)......................13

Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973) ............... 13

McConnell v. FEC, 540 U.S. 93 (2003).........................11

iii

McIntire v. Ohio Elections Commission, 513 U.S. 334
  (1995)...............................................11, 12

Mills v. Alabama, 384 U.S. 214 (1966)..........................11

New Mexico v. Richardson, 39 F. Supp. 2d 48
  (D.D.C. 1999)................................................10

New York Times Co. v. Sullivan, 376 U.S. 254
  (1964)...............................................11, 26

Nixon v. Shrink Missouri Government PAC, 528 U.S. 377
  (2000).......................................................11

Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221
  (10th Cir. 2005) .......................................22, 25

Perry v. Sindermann, 408 U.S. 593 (1972)......................14

Pickering v. Board of Education, 391 U.S. 563
  (1968).......................................................14

Offshore Logistics v. Tallentire, 477 U.S. 207 (1986).........15

Powell v. McCormack, 395 U.S. 486 (1969)......................11

Rafeede v. INS, 880 F.2d 506 (D.C. Cir. 1989).................23

Serono Labs v. Shalala, 158 F.3d 1313
  (D.C. Cir. 1998).............................................10

Speiser v. Randall, 357 U.S. 513 (1958).......................14

Steffel v. Thompson, 415 U.S. 452 (1979)......................23

U.S. Term Limits v. Thornton, 514 U.S. 779
  (1995).......................................................11

Washington Metropolitan Area Transit Auth. v. Holiday
  Tours, Inc., 559 F.2d 841 (D.C. Cir. 1977)..................10

Williams v. Rhodes, 393 U.S. 23 (1968)....................12, 13

**STATUTES**

5 U.S.C. § 7321...............................................15

5 C.F.R. § 734.207(b)........................................15

5 C.F.R. § 2635.802..........................................18

**MISCELLANEOUS**

The Federalist No. 57........................................11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
JAIME RAMIREZ,                          )
                                        )
            Plaintiff,                  )
                                        )
            v.                          )
                                        )  Case No. 07-0065
U.S. CUSTOMS AND BORDER PROTECTION,     )  Judge Gladys Kessler
et al.,                                 )
                                        )
            Defendants.                 )
_____)
```

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS APPLICATION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Jamie Ramirez, a Customs and Border Protection Officer, asks the Court to enter a preliminary injunction blocking United States Customs and Border Protection (CBP) from enforcing orders issued on December 22, 2006, and January 5, 2007, directing Ramirez to resign his unpaid seat on the nonpartisan City Council of Presidio, Texas. Those orders violate Ramirez's First Amendment rights to participate fully in the political process of this Nation.

A preliminary injunction to preserve the status quo is required because Ramirez faces imminent irreparable harm. The January 5, 2007, order directs Ramirez to resign his City Council seat by January 21, 2007. After Ramirez filed this lawsuit, government counsel first agreed to extend the deadline by which Ramirez must act to February 8, 2007, and then further

agreed to an extension to March 8.  Government counsel refused
to agree to any longer extension.  If the Court does not enter
injunctive relief by March 8, Ramirez will have no choice but to
resign his City Council seat, leaving him remediless should he
ultimately prevail on the merits of his lawsuit.

### STATEMENT OF THE FACTS

Ramirez is employed by CBP as a CBP Officer at grade 11 in
Presidio, Texas.  See Ramirez Decl. at ¶ 1 (Exhibit A).  His
responsibilities include the inspection of vehicles and persons
seeking to enter the country at the port of entry in Presidio,
to interdict terrorists, illegal immigrants, and others
suspected of criminal offenses, and to intercept drugs and other
illegally imported goods.  Id. at ¶ 2.

Presidio is a border town located directly across the Rio
Grande from Ojinaja, Mexico.  Id. at ¶ 3.  It has approximately
5000-6000 residents.  Id.; Decl. of Alcee Tavarez at ¶ 7
(Exhibit B).  It is one of the smallest CBP ports of entry in
the country, handling roughly 2000 vehicles or fewer on a normal
day, and a larger number on or around holidays.  Ramirez Decl.
at ¶ 3.

Ramirez is a citizen of Presidio, Texas, and an active
member of the community.  Id. at ¶¶ 4-5.  He has previously
served as an appointed member of the county's appraisal review
board and the city's economic development board, and he has

2

volunteered his time to coach baseball at the Little League and competitive traveling team levels.  Id. at ¶ 5.  Currently, Ramirez holds a seat on the nonpartisan Presidio City Council. Id. at ¶ 6.

CBP has interpreted Customs Directive No. 51735-001A (Exhibit C), entitled "Outside Employment and Business Activities," as requiring employees to seek authorization to run for public office.  Thus, prior to his initial candidacy for City Council in 2004, Ramirez sought authorization from CBP to run in the election.  Ramirez Decl. at ¶ 8.  He submitted a Customs Form 3031, Employee's Application To Engage in Outside Employment.  Id.; see also Att. 1 to Ramirez Decl.  His request for authorization to run for the council was initially denied. Ramirez Decl. at ¶ 8; see also Att. 2 to Ramirez Decl.

Subsequently, Ramirez discussed the denial with his Port Director and Assistant Port Director, who authorized him to run in the City Council election, with the understanding that he would recuse himself from considering any matters involving CBP.[1] Ramirez Decl. at ¶ 9.  After receiving this approval, Ramirez ran for, and was elected to, a seat on the City Council in May 2004.  Id. at ¶ 10.

---

[1] This approval was not immediately memorialized, but CBP's December 22, 2006 memorandum to Ramirez confirms that it was granted.  See Att. 3 to Ramirez Decl.

In May 2005, Luis Garcia, CBP's Director of Field
Operations in El Paso, Texas, visited the Presidio port of
entry.  Id. at ¶ 11.  During his visit, Garcia personally
commended Ramirez verbally for his willingness to serve the
community in a voluntary capacity on the City Council and
encouraged other CBP employees to run for nonpartisan office.
Id.  Ramirez received no complaint or other expression of
concern from CBP regarding his service on the City Council prior
to the orders at issue here.  Id. at ¶ 11.

Ramirez was again a candidate for City Council in 2006.
Id. at ¶ 13.  There was no opposition for any of the candidates
for the City Council in 2006.  Id.; Tavarez Decl. at ¶ 2.
Accordingly, the City Council chose not to hold an election, and
the candidates were all seated for two-year terms.  Id.

The election for the Presidio City Council is nonpartisan.
Ramirez Decl. at ¶ 6; Tavarez Decl. at 1.  The five City Council
members are unpaid.  Ramirez Decl. at 6.  Along with the mayor,
they comprise the municipal government of the City of Presidio.
Id.; Tavarez Decl. at ¶ 3.  The City Council meets on the second
Thursday of every month and when special meetings are called.
Ramirez Decl. at ¶ 6.  The meetings typically occur in the
evenings.  Id.  Ramirez participates in the work of the Council
during his nonwork-time only.  Id. at ¶ 12; Tavarez Decl. at ¶
6.

The City Council has the authority to enact local ordinances, regulations, and resolutions; it also hires the City Administrator. Ramirez Decl. at ¶ 7; Tavarez Decl. at ¶ 3. Its jurisdiction includes such matters as zoning issues, street repair, sanitation, and emergency services. Id.

Ramirez is aware of only one issue even remotely involving CBP that has arisen since he began serving on the City Council in May 2004. Ramirez Decl. at ¶ 15. That issue concerns some land in the city that the federal Drug Enforcement Agency (DEA) had seized. Id. The city is exploring its options for obtaining the land from the DEA, which it would then build on and lease to CBP. Id. CBP alleges in the December 22, 2006 letter that it is also attempting to obtain the seized property from DEA. See Att. 3 to Ramirez Decl.

Ramirez recused himself, from the outset, from any consideration of this issue. Ramirez Decl. at ¶ 16; Tavarez Decl. at ¶ 4. To his knowledge, there has been only one vote related to the issue, and he did not participate in that vote. Ramirez Decl. at ¶ 16. He has never discussed the issue during any City Council meetings nor attempted to influence any Council member concerning the issue. Id.; Tavarez Decl. at ¶ 4. Ramirez also intends to recuse himself from consideration of any other issues raised by the City Council that involve CBP, and from any issues for which his position as a CBP Officer would

cause an actual conflict of interest or impermissible appearance of a conflict of interest to arise.  Ramirez Decl. at ¶ 16.

Attached to Ramirez's declaration are the agendas he had retained from City Council meetings going back to October 2005.  See Att. 4 to Ramirez Decl.  Those agendas confirm that the DEA land seizure is the only issue involving CBP that the Council has considered during that period.  See id.  Ramirez does not recall any other issue involving CBP arising prior to October 2005.  Ramirez Decl. at ¶ 15.  The declaration of Alcee Tavarez, current mayor and former city council member of Presidio who has served for a total of 18 years, confirms his recollection and further establishes that prior to May 2004, the City Council has not considered matters involving CBP.  See Tavarez Decl. at ¶ 3.

Ramirez is the latest in a long line of CBP employees, including CBP Officers, as well as employees from the Border Patrol and the predecessors to CBP (the Immigration and Naturalization Service and Customs Service), to participate in City of Presidio nonpartisan politics.  Ramirez Decl. at ¶ 17; Tavarez Decl. at ¶ 8.  Indeed, at least one individual has served as the mayor of the city while also working as a CBP employee assigned to the Presidio port of entry.  Ramirez Decl. at ¶ 17; Tavarez Decl. at ¶ 8.  As the current Mayor has explained, Presidio is a poor community with a high unemployment rate, and it depends on the ability of the relatively well-

educated and well-paid CBP employees to fill community offices.
Tavarez Decl. at ¶ 7.

Since approving Ramirez's request for authorization to run
for City Council in 2004, CBP has centralized responsibility for
making such determinations.  See Exhibit D (Dec. 1, 2006 memo).
The power to consider and approve such requests has thus been
taken away from the CBP's local Directors of Field Operations.
Id.  All such requests now must be forwarded for consideration
to two lawyers and a management official at CBP headquarters.
Id.

Three weeks after CBP issued the directive centralizing
responsibility for determining eligibility to hold public
office, Ramirez received a memorandum from DFO Garcia directing
him to resign his position as a member of the Presidio City
Council.  Ramirez Decl. at ¶ 18; see Att. 3 to Ramirez Decl.
The memorandum acknowledged that the City Council is nonpartisan
and applauded Ramirez's "desire to serve [his] community . . .
."  Att. 3 to Ramirez Decl.  Nonetheless, it ordered Ramirez to
resign his position based on an alleged "appearance of a
conflict of interest."  Id.

In support of its contention that there is an appearance of
a conflict of interest, the memorandum identified CBP's attempts
(discussed above) to obtain the land that the DEA seized in
Presidio.  Id.  The City and County of Presidio, the memorandum

stated, are negotiating with CBP and DEA to acquire the same property, with the intention of later negotiating a lease of the property to CBP.  Id.  The memorandum noted that Ramirez recused himself from a Council vote regarding the seized property.  Id. Without further elaboration, it nonetheless stated that "the appearance of a conflict exists and will continue to exist for the foreseeable future regarding this issue in particular."  Id.

The memorandum also cited "the ongoing relationship between CBP and the city and county over normal business issues, i.e. housing, zoning, municipal services, port operations, etc.," which, it declared, presents "the appearance of a conflict which could compromise not only your effectiveness as a CBP Officer but also as a member of the city council."  Id.  It offered no specific examples of "normal business issues" involving CBP generally or any such issues specifically that would raise an impermissible appearance of a conflict.  Id.

Ramirez verbally requested permission for additional time, until February 8, 2007, to decide how to respond to the December 22, 2006 order to resign.  Ramirez Decl. at ¶ 18.  In a January 5, 2007, memorandum, which Ramirez received on January 8, 2007, DFO Garcia advised Ramirez to notify him within thirty days of the initial order (or by January 21, 2007) that he had either resigned his City Council seat or his position as a CBP Officer. Ramirez Decl. at ¶ 18; see Att. 4 to Ramirez Decl.  The January

8

5 memorandum states that "failure to do so will result in further action by this agency, up to and including removal from your position." Att. 4 to Ramirez Decl. After the filing of Ramirez's complaint, CBP agreed to extend the deadline for him to act on the order to February 8, 2007; counsel for the government subsequently agreed to further extend the deadline to March 8 but declined any longer extension of the deadline.

Ramirez would like to continue to serve on the City Council. Ramirez Decl. at ¶ 19. But, if Ramirez does not obtain injunctive relief by March 8, 2007, he will have no choice but to resign his unpaid position on the City Council. Id.

<div align="center">**ARGUMENT**</div>

> **ALL OF THE FACTORS THAT COURTS WEIGH WHEN CONSIDERING A REQUEST FOR PRELIMINARY RELIEF SUPPORT ENTRY OF A PRELIMINARY INJUNCTION IN THIS CASE**

In deciding whether to enter a preliminary injunction, the Court must consider (1) the likelihood that the plaintiff will succeed on the merits of their claims; (2) whether the plaintiff will be irreparably injured if preliminary relief is not granted; (3) whether granting preliminary relief would substantially injure CBP; and (4) whether granting preliminary relief would further the public interest. See Davenport v. International Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999). These factors "are not considered in isolation from one

<div align="center">9</div>

another, and no one factor is necessarily dispositive as to whether preliminary injunction relief is warranted." CityFed Fin'l Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995). Rather, the factors "interrelate on a sliding scale and must be balanced against each other." Davenport, 166 F.3d at 361. A "particularly strong showing on one factor may compensate for a weak showing on one or more of the other factors." Serono Labs v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998). As shown below, Ramirez makes a compelling showing on all four factors.

**I.  There Is a Substantial Likelihood That Ramirez Will Prevail on the Merits of His Claims**

To establish a substantial likelihood of success on the merits, Ramirez must show that a "serious legal question" is at issue. Washington Metropolitan Area Transit Auth. v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977). "Ultimate success" on the merits need not be a "mathematical probability." New Mexico v. Richardson, 39 F. Supp. 2d 48, 50 (D.D.C. 1999). Indeed, a "substantial indication" of likely success is sufficient. American Fed'n of Gov't Employees v. United States, 104 F. Supp. 2d 58, 64 (D.D.C. 2000). Ramirez more than satisfies that standard here.

**A.    CBP's Orders Directing Ramirez To Resign His City Council Seat Implicate Core First Amendment Rights**

Ramirez is suing to enforce his constitutional rights to seek and hold political office.  This action, therefore, implicates "core political speech," which is a "'primary object of First Amendment protection.'"  <u>McConnell v. FEC</u>, 540 U.S. 93, 264 (2003) (quoting <u>Nixon v. Shrink Missouri Government PAC</u>, 528 U.S. 377, 410-411 (2000) (Thomas, J., dissenting)).  <u>See also</u> <u>McIntire v. Ohio Elections Commission</u>, 514 U.S. 334, 346-47 (1995).  Indeed, there is "practically universal agreement" that a "major purpose" of the First Amendment was "to protect the free discussion of governmental affairs . . . ."  <u>Mills v. Alabama</u>, 384 U.S. 214, 218 (1966), <u>quoted in</u> <u>McIntire</u>, 514 U.S. at 347.  This "reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'"  <u>McIntire</u>, 514 U.S. at 347 (quoting <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 270 (1964)).  It is, therefore, a "fundamental principle of our representative democracy . . . that the people should choose whom they please to govern them."  <u>Powell v. McCormack</u>, 395 U.S. 486, 547 (1969) (internal quotation marks omitted).  <u>See also</u> The Federalist No. 57, at 351, <u>cited in</u> <u>U.S. Term Limits v. Thornton</u>, 514 U.S. 779, 819 (1995)  ("Who are to be the objects of popular choice? Every citizen whose merit may recommend him to the esteem and

confidence of his country.  No qualification of wealth, of birth, of religious faith, or of civil profession is permitted to fetter the judgment or disappoint the inclination of the people.").

The disqualification of a candidate for public office "place[s] burdens on two different, although overlapping, kinds of rights--the rights of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively."  Anderson v. Celebrezze, 460 U.S. 780, 787 (1983) (citing Williams v. Rhodes, 393 U.S. 23, 30-31 (1968)). "By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences." Illinois Bd. Of State Elec. v. Socialist Workers Party, 440 U.S. 173, 184 (1979).  "[T]he ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation."  McIntire, 513 U.S. at 346-47.  These rights, therefore, "rank among our most precious freedoms."  Williams, 393 U.S. at 31.

The fundamental rights of voters are also implicated by governmental restrictions on who may serve in elected office. Because the rights of candidates are "so closely related to and dependent upon" those of the citizens who wish to vote for him,

and because "his litigation will so vitally affect their

rights," courts will "relax the rule of practice (which is

designed to assure vibrant representation of the vital interests

of non-parties) and will permit a candidate to raise the

constitutional rights of voters." Mancuso v. Taft, 476 F.2d

187, 190-191 (1st Cir. 1973) (citing Bullock v. Carter, 405 U.S.

134 (1972); Green v. McKeon, 335 F. Supp. 630 (E.D. Mich. 1971),

aff'd, 468 F.2d 883 (6th Cir. 1972)).  Ramirez, therefore, seeks

vindication in this action not only of his constitutional

rights, but also of the rights of the voters who have selected

him as their representative on the City Council and wish him to

continue to serve in that capacity.[2]

**B.    The Government Cannot Meet Its Burden To Justify
Infringement of the Core First Amendment Freedoms
Guaranteed to Ramirez and the Voters Who Elected
Him**

An individual does not automatically sacrifice all of his

constitutional freedoms merely by choosing to work for the

federal government, as Ramirez has.  Indeed, the Supreme Court

has unequivocally rejected that notion.  See Connick v. Myers,

461 U.S. 138, 142 (1983) (government employer may not condition

---

[2] Ramirez is himself a registered voter in Presidio, Texas.
Thus, "in one sense, [he] seeks only to assert the rights of his
own class." Mancuso, 476 F.2d at 190.  "That voters and
candidates may attack candidacy restrictions affecting voting
rights on their face seems indisputable." Id. (citing, e.g.,
Bullock, 405 U.S. 134; Jenness v. Fortson, 403 U.S. 431 (1971);
Williams v. Rhodes, 393 U.S. 23 (1968)).

continued employment on an individual's waiver of his
constitutional rights).  Permitting the government to condition
employment on a basis that infringes a constitutional right
would allow the government to do what it could not do directly,
and "[s]uch interference with constitutional rights is
impermissible."  Elrod v. Burns, 427 U.S. 347, 359 (1976)
(plurality op.) (quoting Perry v. Sindermann, 408 U.S. 593, 597
(1972)).  See also Speiser v. Randall, 357 U.S. 513, 526
(1958).

When construing whether a restriction on a public
employee's First Amendment rights passes constitutional muster,
therefore, courts employ the analysis set forth in Pickering v.
Board of Education, 391 U.S. 563, 574 (1968).  Under that test,
the interest of a government employer in promoting efficiency
must be balanced against the employee's interest in commenting
on matters of public concern.  See id. at 568.  The question,
thus, becomes "whether the relevant government entity had an
adequate justification for treating the employee differently
from any other member of the general public."  Garcetti v.
Ceballos, 126 S. Ct. 1951, 1958 (2006).  "So long as employees
are speaking as citizens about matters of public concern"--a
fact beyond dispute here--"they must face only those speech
restrictions that are necessary for their employers to operate
efficiently and effectively."  Id. (citing Connick, 461 U.S. at

14

147).  For the reasons set forth below, CBP cannot satisfy that
standard here.

      1.    CBP can offer no evidence that Ramirez's resignation
from the City Council is necessary for it to operate efficiently
and effectively.  Indeed, Congress has already considered the
restrictions on holding public office that are necessary for the
efficient and effective operation of the federal government.
The federal Hatch Act thus prohibits federal employees from
running for or holding <u>partisan</u> political office.  <u>See</u> 5 U.S.C.
§ 7321.  The Hatch Act does not, however, preclude federal
employees from holding nonpartisan offices.  To the contrary,
the Hatch Act regulations expressly permit federal employees to
"[r]un as a candidate in a nonpartisan election."  5 C.F.R. §
734.207(b).

      The Hatch Act represents "Congress's considered judgment"
as to the types of restrictions on federal employees' First
Amendment rights that are necessary to the effective and
efficient operation of the government.  <u>See</u> <u>Offshore Logistics</u>
<u>v. Tallentire</u>, 477 U.S. 207, 216 (1986) (maritime law announces
"Congress's considered judgment" on the issues to which it
speaks).  Thus, CBP necessarily bears a heavy burden when
seeking to restrict its employees' fundamental rights in a way
not contemplated by Congress.

15

CBP's own standards of conduct, in fact, reflect the Hatch Act's distinction between partisan and nonpartisan office, expressly providing that CBP employees may "[s]tand as candidates for public office in nonpartisan elections."  See Exhibit E (Std. 6.16.1).  Consistent with that, CBP has, in the past, approved multiple requests of its employees to run in nonpartisan elections.  Ramirez Decl. at ¶ 17; Tavarez Decl. at ¶ 8.  As recently as May 2005, CBP's Director of Field Operations Luis Garcia publicly commended Ramirez for his involvement in city politics and urged others to run for nonpartisan office.  Ramirez Decl. at ¶ 11.

CBP's standards of conduct in this respect are consistent with Congress' balancing of federal employees' First Amendment rights and the government's interest in operating effectively and efficiently.  There is nothing unique about Ramirez's position as a CBP Officer, or the jurisdiction of the Presidio City Council, that would warrant reconsideration of the balance struck by Congress in the Hatch Act.

**2.**    In support of its effort to recalibrate this carefully considered balance, CBP declares that Ramirez's position on the nonpartisan, volunteer Presidio City Council raises the "appearance of a conflict" that "could compromise not only your effectiveness as a CBP Officer but also as a member of the city council."  See Att. 3 to Ramirez Decl.  Based merely on that

16

alleged "appearance" of a conflict, CBP ordered Ramirez to
resign his City Council seat.  There is no appearance of a
conflict, however, and to the extent one arises, Ramirez can
cure it by recusing himself.  CBP's order directing Ramirez to
resign his seat on the Council is therefore not necessary for
its efficient operations.  See Garcetti, 126 S. Ct. at 1958.

     As an initial matter, Ramirez's "effectiveness . . . as a
member of the City Council" is, of course, of no legitimate
concern to CBP.  That is an issue for the voters of Presidio,
not the federal government, and CBP cannot advance the interests
of the voters of Presidio to support its restriction on
Ramirez's First Amendment rights.  Fundamental principles of
federalism are offended by this attempt by a federal agency to
substitute its judgment as to a member's "effectiveness" for
that of the voters.

     Moreover, CBP has failed to show that Ramirez's seat on the
City Council has in the past or will in the future raise the
appearance of an impermissible conflict compromising his
effectiveness as a CBP Officer.  Regulations promulgated by the
federal Office of Government Ethics (OGE) define "conflict" to
mean an activity that is "prohibited by statute or by an agency
supplemental [ethics] regulation" or "would require the
employee's disqualification from matters so central or critical
to the performance of his official duties that the employee's

17

ability to perform the duties of his position would be materially impaired." 5 C.F.R. § 2635.802. There must be a link, therefore, between the employee's outside position and his actual job duties, causing the employee to be ineffective in performing those duties.

An appearance of a conflict must be based on more than wild speculation and conclusory allegations by the federal agency. Under the OGE regulations, there must be the appearance that Ramirez is either violating a statutory or agency regulatory rule (which is not alleged by CBP), or that he is engaging in an outside activity that would require him to disqualify himself from performing his official duties. No such appearance is present here.

As a CBP Officer, Ramirez is responsible for inspecting vehicles and persons seeking to enter the country at the port of entry in Presidio to interdict terrorists, illegal immigrants, and others suspected of criminal offenses, and to intercept drugs and other illegally imported goods. His work on the City Council, on the other hand, focuses primarily on zoning issues, selecting contractors to perform services for the city, and making decisions affecting the delivery of a variety of services to city residents. The two spheres of responsibility rarely, if ever, intersect.

In fact, CBP has identified only a single issue that has arisen during Ramirez's years on the City Council that has involved CBP at all.  That issue concerns the disposition of land seized by the DEA in Presidio.  Apparently, both CBP and the city would like to take possession of that land.  The issue does not at all implicate Ramirez's ability to perform efficiently as a CBP Officer.  As a CBP Officer, Ramirez has no role in property management, port administration, or any other area related to the land deal at issue.

Nonetheless, out of an abundance of caution, Ramirez has recused himself from considering the issue, has not voted on anything concerning the issue, and has not spoken out on the issue.  He has further agreed to recuse himself in the future should any other issues arise involving CBP.  Recusal is a widely accepted means of curing appearances of a conflict of interest.  See Defenders of Wildlife v. United States Dep't of Interior, 314 F. Supp. 2d 1, 3 (D.D.C. 2004) (noting that federal government officials often agree to recusal "to alleviate any actual or apparent conflicts of interest resulting from their financial interests").  His agreement to recuse himself from matters involving CBP implicates only the interests of the voters who elected him to the Council--not CBP's interests--and only the voters have grounds to approve or disapprove of his actions.

19

If Ramirez had not agreed to recuse himself from matters involving CBP, then, at most, there would be the <u>potential</u> for a conflict or appearance of a conflict to arise.  But since he has agreed, out of an abundance of caution, to recuse himself from considering <u>any</u> matter concerning CBP, no matter how far removed from his official responsibilities, that potential has vanished.

CBP's own standards of conduct regarding outside employment further undermine CBP's claim of an appearance of a conflict.  Standard 6.15.1 (<u>see</u> Exhibit E) prohibits CBP employees from working for "a Customs broker, international carrier, bonded warehouse, foreign trade zone, cartman, or law firm engaged in the practice of customs or immigrations law, any business or service organizations which assist aliens, or other companies engaged in services related to Customs or Immigration matters." These outside jobs all focus entirely on matters that CBP employees are paid to address.  It would, of course, raise an appearance of a conflict if a CBP Officer worked for an international carrier shipping goods that are inspected by CBP employees.

The standard of conduct is narrowly drawn to identify only those types of outside employment dealing on a routine basis with matters regulated by CBP.  The Presidio City Council does not deal with that type of issue.  As the declarations establish, it rarely handles matters involving CBP, instead

addressing, on a routine basis, issues such as zoning, road paving requests, consideration of contractors, and provision of basic city services.  <u>See</u> Ramirez Decl. at ¶¶ 7, 15; Tavarez Decl. at ¶¶ 3-4.

It follows that it is not necessary to the efficient and effective operation of CBP for Ramirez to resign his City Council seat.  His City Council duties are not of the type identified by CBP in its standards of conduct as creating an appearance of a conflict.  They do not interfere with his ability to carry out his job duties.  Thus, CBP's demand that Ramirez resign his City Council seat is an overbroad restriction of his fundamental rights not necessary to further the government's interests.  <u>See</u> <u>Garcetti</u>, 126 S. Ct. at 1958.

Indeed, the implications of CBP's position are sweeping. It has evidently adopted a policy that would bar <u>any</u> CBP employee who lives in any jurisdiction in which a CBP port is located from sitting on any local governing body in that jurisdiction (save, perhaps, a school board).  In any such case, CBP could claim--as it has here--the existence of some unspecified "ongoing relationship between CBP and the [jurisdiction] over normal business issues, i.e., housing, zoning, municipal services, port operations, etc."  Such a far-reaching restriction on fundamental rights cannot be squared with the First Amendment.

21

## II.  Ramirez Will Suffer Irreparable Injury If He Is Not Afforded Preliminary Relief

The second prong of the preliminary injunction analysis is whether Ramirez will suffer irreparable injury if preliminary relief is withheld.  There can be no serious dispute that irreparable injury is imminent and will occur absent judicial intervention.

Deprivation of First Amendment rights, even for a short period, constitutes irreparable harm.  See Elrod, 427 U.S. at 373-74 (plurality op.).  See also Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221, 1235 (10th Cir. 2005) (courts "assume irreparable injury" when plaintiff is deprived of First Amendment rights).  The Elrod line of cases recognizes irreparable injury even in the temporary delay of a person's ability to exercise First Amendment freedoms.  Ramirez's case is even stronger, as he faces a permanent derivation of First Amendment rights.  CBP has made its intent clear:  if Ramirez does not resign his City Council position, it will consider him to be in violation of its order and will institute disciplinary action against him, up to and including removal.  See Att. 3 to Ramirez Decl.  Absent intervention by the Court, then, Ramirez will have to waive his constitutional rights and resign his seat by March 8.  This immediate and permanent deprivation of his First Amendment freedoms weighs strongly in favor of a

preliminary injunction.  See Rafeede v. INS, 880 F.2d 506, 517-
18 (D.C. Cir. 1989) (finding irreparable harm where plaintiff
was forced to choose between exercising First Amendment freedoms
and being detained and possibly deported by the INS).

Ramirez cannot, as a practical matter, risk losing his CBP
Officer position, as that is his paying job.  He receives no
compensation for serving on the City Council.  Consequently, he
cannot retain his seat and challenge the CBP orders in the
context of disciplinary proceedings against him.  If he did so
and the lawfulness of CBP's orders were later upheld, it would
be too late for Ramirez to cure his insubordination by resigning
his City Council seat, and he would be in serious jeopardy of
losing his job.  The law does not require Ramirez to expose
himself to such harm in order to vindicate his First Amendment
rights.  See Steffel v. Thompson, 415 U.S. 452, 459 (1979) ("it
is not necessary that [a plaintiff] first expose himself to
actual arrest or prosecution to be entitled to challenge a
statute that he claims deters the exercise of his First
Amendment rights").

Absent the Court's intervention, therefore, Ramirez has no
choice but to resign his unpaid City Council seat.  That
resignation is irreversible.  Without preliminary injunctive
relief, there would be no remedy available to him in the event
he ultimately prevails in this lawsuit.  This Court has no power

to reinstate Ramirez to his City Council seat and, even if it could, Ramirez and the voters who elected him would be deprived of Ramirez's participation on important matters of interest to the City during the course of this litigation. See Brown v. Keane, 469 F.2d 563, 575 (D.C. Cir.), vacated as moot, 409 U.S. 816 (1972) (Democratic party's exclusion of delegates from national convention irreparably harmed the Democrats residing in the delegates' districts who would be deprived of any voice or representation in the process for choosing their party's presidential candidate).

### III. Awarding Preliminary Relief Would Not Harm the Government

The third factor to consider is whether preliminary relief would harm the defendants. This factor also weighs in favor of Ramirez's request to preserve the status quo.

Ramirez has been serving in his seat since May 2004 without any allegation of harm to the government. CBP previously approved his request to serve on the Council. It has now changed course based on what appears to be a new policy that service in local government in border areas necessarily creates an appearance of a conflict. We disagree that any such appearance of a conflict exists, either generally or in Ramirez's case. Further, Ramirez's agreement to recuse himself from matters involving CBP eliminates any possibility of harm to

CBP caused by entry of preliminary relief.  But even if an appearance of a conflict did exist, the harm to CBP of having a CBP Officer continue to serve on the City Council, as he has for close to three years without issue, is far outweighed by the irreparable harm that Ramirez would suffer if he were forced to resign his Council seat.  Accordingly, this factor also weighs in favor of granting preliminary relief to maintain the status quo.

**IV.  Preliminary Relief Would Further the Public Interest**

The final factor to be considered is whether the public interest would be served by entering preliminary relief.  This factor weighs heavily in favor of Ramirez.

"Vindicating First Amendment freedoms is clearly in the public interest."  <u>Pacific Frontier</u>, 414 F.3d at 1237.  The people of Presidio have elected Ramirez to their City Council. He is a respected member of the community whose service on the Council provides substantial benefit to the citizens of Presidio.  <u>See</u> Tavarez Decl. at ¶ 5.  CBP is trying to force him to resign his Council seat, asking him to waive his fundamental rights as well as those of the voters who elected him.

Ramirez has served on the City Council since May 2004 without any allegation of harm to the community or CBP.  The public that elected him has an interest in his continuing to

serve in that role, at least until the merits of his claim can
be heard.

As discussed above, important constitutional rights are at
issue here.  The protection of First Amendment rights is crucial
not only for individuals bringing suit, but also to the
democratic process.  It therefore serves important societal
interests beyond those of the individuals immediately affected.
See, e.g., First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765,
776 (1978); New York Times v. Sullivan, 376 U.S. 254, 469-71
(1964).

There are also important federalism concerns at issue here.
An agency of the federal government is attempting to disqualify
a member of the locally elected City Council, based on the
thinnest of reasons, including its paternalistic assessment of
Ramirez's effectiveness on the City Council.  Preserving the
status quo until resolution of the merits of Ramirez's challenge
to CBP's effort to veto the voters' choice, therefore, serves
the public interest.

<div align="center">**CONCLUSION**</div>

For the foregoing reasons, the plaintiff Jaime Ramirez
hereby respectfully requests that the Court enter a preliminary
injunction to preserve the status quo until the merits of this
action are resolved.  Alternatively, Ramirez requests that the

Court enter a permanent injunction providing the relief requested in the complaint.

                              Respectfully submitted,

                              /s/ Gregory O'Duden
                              GREGORY O'DUDEN
                              General Counsel
                              D.C. Bar No. 254862

                              /s/ Elaine Kaplan
                              ELAINE KAPLAN
                              Senior Deputy General Counsel
                              D.C. Bar No. 292441

                              /s/ Barbara A. Atkin
                              BARBARA A. ATKIN
                              Deputy General Counsel
                              D.C. Bar No. 225797

                              /s/ Robert H. Shriver, III
                              ROBERT H. SHRIVER, III
                              Assistant Counsel
                              D.C. Bar No. 456858

                              NATIONAL TREASURY EMPLOYEES UNION
                              1750 H Street, NW
                              Washington, DC 20006
                              (202) 572-5500

Date:  January 31, 2007      Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JAIME RAMIREZ,                               )
                                             )
            Plaintiff,                       )
                                             )
            v.                               )
                                             )  Case No. 07-0065
U.S. CUSTOMS AND BORDER PROTECTION,          )  Judge Gladys Kessler
et al.,                                      )
                                             )
            Defendants.                      )
                                             )

---

**ORDER**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and for the reasons set forth in plaintiff Ramirez's memoranda, it is hereby

ORDERED that plaintiff's application for a preliminary injunction is GRANTED.  It is further

ORDERED that U.S. Customs and Border Protection (CBP), CBP Commissioner W. Ralph Basham, CBP Director of Field Operations (El Paso, Texas) Luis Garcia, and all of their officers, agents, servants, employees, and attorneys, as well as those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are enjoined from ordering, or enforcing any existing order (including through discipline), that plaintiff Ramirez resign his seat on the Presidio, Texas, City Council.

This injunction shall take effect immediately and shall remain in effect until such time as a ruling can be entered on the merits of plaintiff Ramirez's claims.

So ordered.


_____                    _____
Date                                 Judge Gladys Kessler
                                     United States District Court
                                     for the District of Columbia

# EXHIBIT A

## DECLARATION OF JAIME RAMIREZ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAIME RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 07-0065 |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) | Judge Gladys Kessler |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JAIME RAMIREZ

I, Jaime Ramirez, hereby declare and affirm as follows:

1.  I am employed by United States Customs and Border Protection (CBP), an agency within the Department of Homeland Security. I am a grade 11 CBP Officer. I was initially hired by the Immigration and Naturalization Service (INS) as an Immigration Inspector in October 2002. After INS became part of CBP, I became a CBP Officer.

2.  In my work for INS and then for CBP, I have always been assigned to the port of entry in Presidio, Texas. My responsibilities include the inspection of vehicles and persons seeking to enter the country through the port in Presidio, to interdict terrorists, illegal immigrants, and others suspected of criminal offenses, and to intercept drugs and other illegally imported goods.

3.  Presidio is a border town located directly across the Rio Grande from Ojinaja, Mexico.  It has approximately 5000-6000 residents.  It is one of the smallest CBP ports of entry in the country, handling roughly 2000 vehicles or fewer on a normal day, and a larger number on or around holidays.

4.  I am a citizen and registered voter of the City of Presidio, Texas, and have been at all times relevant to this litigation.

5.  I consider it my civic responsibility to be an active member of the community.  Among other things, I served as an appointed member of the Presidio County Appraisal Review Board and an appointed member of the economic development board for the city.  I have also volunteered my time to coach Little League baseball and the Presidio traveling baseball team, and I am currently assisting the high school softball team.

6.  I am currently a member of the Presidio City Council. The Presidio City Council is nonpartisan, and the position of council member is unpaid.  There are five City Council members. They, along with the mayor, comprise the municipal government of the City of Presidio.  The City Council meets on the second Thursday of every month and when special meetings are called. The meetings typically occur in the evenings.

7.  The City Council has the authority to enact local ordinances, regulations, and resolutions; it also hires the City

Administrator.    Its jurisdiction includes such matters as zoning issues, street repair, sanitation, and emergency services.    The agendas for the meetings since October 2005 are appended to this declaration (Attachment 4).

8.    Before I ran for City Council in 2004, I sought permission from CBP to run and to serve if elected.    It is my understanding that I was required, under Customs Directive No. 51735-001A, entitled "Outside Employment and Business Activities," to submit a request for approval of outside employment in order to run and to serve.    I submitted a Customs Form 3031, Employee's Application To Engage in Outside Employment.    See Attachment 1.    My request for approval was initially denied.    See Attachment 2.

9.    I subsequently discussed the denial with Charlie Wright, the Assistant to the Port Director, and with Port Director John Prewit.    They agreed that I could run, with the understanding that I would recuse myself from considering any matters involving CBP.

10.    After receiving this approval, I ran for, and was elected to, a seat on the City Council in May 2004.    I voted for myself in that election.

11.    In May 2005, Luis Garcia, CBP's Director of Field Operations in El Paso, Texas, visited the Presidio port of entry.    During his visit, Garcia personally commended me

verbally for my willingness to serve the community in a voluntary capacity on the City Council and encouraged other CBP employees to run for nonpartisan office.

12. I have received no complaint or other expression of concern from CBP regarding my service on the City Council prior to the orders at issue here. I participate in the work of the Council during my nonwork-time only. My service on the Council has not interfered with my ability to perform my duties for CBP.

13. I was again a candidate for City Council in 2006. Neither I nor any of the other candidates was opposed at this time. Accordingly, the City Council chose not to hold an election, and the candidates were all seated for two-year terms.

14. I did not seek approval from CBP to run in 2006 because it did not occur to me that it would be necessary to do so. I assumed that the approval I had been given in 2004 was sufficient authorization to continue doing the same thing I had been doing. No one instructed me to submit a second request for approval of outside employment. After I received the December 22, 2006 memorandum discussed below, Port Director Prewit told me that he was shocked that a second request to continue in the same position was considered necessary.

15. I am aware of only one issue involving CBP that has arisen since I began serving on the City Council in May 2004. That issue concerns some land in the city that the federal Drug

4

Enforcement Agency had seized. The city of Presidio is exploring its options for obtaining the land from the DEA, which it would then lease to CBP. I understand that CBP is also considering obtaining the seized property from DEA.

16. On my own initiative, I recused myself from the Council's consideration of the disposition of the land seized by DEA. To my knowledge, there has been only one vote related to the issue, and I did not participate in that vote. I have never participated in any debate on the issue, I have not spoken out on the issue at any Council meeting, and I have not attempted to influence the position of any Council member on the issue. I also intend to recuse myself from consideration of any other issues raised by the City Council that might involve CBP, and from any other issues for which my position as a CBP Officer would cause an actual conflict of interest or impermissible appearance of a conflict of interest to arise.

17. I am aware of other CBP employees, including CBP Officers, as well as employees from the Border Patrol and the predecessors to CBP (the INS and Customs Service), who have participated in City of Presidio nonpartisan politics. I know one person who served as the Mayor of the city while also working as a CBP employee assigned to the Presidio port of entry. I am not aware of any CBP objections to their participation in these nonpartisan activities.

18. On or shortly after December 22, 2006, I received a memorandum from DFO Garcia dated December 22, 2006, directing me to resign my position as a member of the Presidio City Council. See Attachment 3. That memorandum did not tell me how long I had to comply. I verbally asked to have until February 8, 2007, to decide how to respond. In a January 5, 2007, memorandum, which I received on January 8, 2007, DFO Garcia advised me to notify him within thirty days of the initial order (or by January 21, 2007) that I had either resigned my City Council seat or my position as a CBP Officer. See Attachment 4. The January 5 memorandum states that "failure to do so will result in further action by this agency, up to and including removal from your position." Id.

19. I very much want to continue serving on the City Council. I cannot afford to lose my job as a CBP Officer, however. If CBP does not rescind its order or if it is not directed to do so by a court, I will be forced to resign my position on the City Council. I do not intend to defy any order by CBP.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _30_ day of January, 2007, in Presidio, Texas.

Jaime Ramirez

# ATTACHMENT 1 TO RAMIREZ DECLARATION

## Application To Engage in Outside Employment

# U.S. CUSTOMS AND BORDER PROTECTION
## Department of Homeland Security

*Memorandum*

### DATE: February 27, 2004

TO          :Charlie Wright
            ACTING ASSITANT Port Director
            Presidio, Texas

FROM        :Jaime Ramirez
            Presidio Port of Entry
            Presidio, Texas

SUBJECT: City Council position:

I would like to run for a seat in the 2004–2005 city council for the City of Presidio. It is a non-partisan, non-paid, volunteer position. Therefore, I am requesting your approval.

*Vigilance*    ★    *Service*    ★    *Integrity*



## DEPARTMENT OF THE TREASURY
## UNITED STATES CUSTOMS SERVICE

### EMPLOYEE'S APPLICATION TO ENGAGE IN OUTSIDE EMPLOYMENT
(Prepare in Triplicate)

₱1735, P&PM

| Name | | | |
|---|---|---|---|
| RAMIREZ, JAIME | Grade **7** | Salary $ 32,447.00 | Length of Customs Employment 16 Month |
| Position Title **CBP Officer** | | Office, Port or Station where employed by Customs **Presidio Port of Entry, Presidio, Texas** | |

| Official Hours of Work | Days of Normal Work Week | If over 40 hours indicate periods involving premium or overtime pay |
|---|---|---|
| From AM ☐ PM ☐  To Varies AM ☐ PM ☐ | Varies | Sundays and Extra days |

### OUTSIDE EMPLOYMENT INFORMATION

Nature and detailed description of outside employment

City Council for City of Presidio.

| Name and address of outside employer | Type of business |
|---|---|
| P.O. Box 1899 O'Reilly Street Presidio, Texas 79845 | Non-Profit, Non-partisan Municipal Government- |

Does employer engage in importation of merchandise for sale in the United States? If answer is Yes, specifically state the relation of his business contact with the Customs Service.

No

Does employer do business with other Federal agencies or represent clients on matters which affect the interests of the United States Government? (This includes employment with attorneys or accountants who are authorized to practice before U.S. Courts or other regulatory organizations.) If answer is Yes, give details.

No

* U.S. GOVERNMENT PRINTING OFFICE: 1995 - 647-202

Customs Form 3031 (031883)

| Specific hours of outside employment | | | | | Number of outside employment hours | | Days of week you expect to work |
|---|---|---|---|---|---|---|---|
| From | AM | PM | To | AM | PM | Daily | Weekly | Monthly Meetings |
| Varies | ☐ | ☐ | | ☐ | ☐ | Varies | | |

I hereby certify that my services in connection with the outside employment or business referred to above will not conflict with or infringe on my duties with or responsibilities to the U.S. Customs Service and that the statements made herein are complete and correct to the best of my knowledge. I further certify that I have, in the past 5 days, reviewed and become thoroughly familiar with the provisions of the Treasury Minimum Standards of Conduct and Section 51735 of the Customs Policies and Procedures Manual pertaining to outside employment and other outside activities. I further understand that, if my outside employment or business request is approved, I must

(a)  Reapply for written permission if the nature of this employment or business changes;

(b)  Reapply for written permission upon movement or transfer to a different approving official;

(c)  Notify my supervisor, in writing, when my approved employment or business activity is terminated.

Employee's Signature    *Laurie Ramey*                    Date  02-22-04

RECOMMENDATIONS BY IMMEDIATE SUPERVISOR AND OTHER OFFICIALS (indicate reason(s) where disapproval is recommended or, in cases with unusual circumstances where approval has been recommended.)

Recommend Approval- Non-partisan, elected position

| | Signature and Title of Immediate Supervisor | Date |
|---|---|---|
| ☒ Approved ☐ Disapproved | | 2/27/04 |

ACTION BY OTHER OFFICIALS AS NECESSARY

| | Signature and Title | Date |
|---|---|---|
| ☐ Approved ☒ Disapproved | DFD-ELP | 5-11-04 |

| | Signature and Title | Date |
|---|---|---|
| ☐ Approved ☐ Disapproved | | |

# ATTACHMENT 2 TO RAMIREZ DECLARATION

## Disapproval of Outside Employment Request

9400 Viscount, Suite 100
El Paso, TX 79925



**U.S. Customs and
Border Protection**

MAY 1 4 2004                                                    PER 2-EPFO JL

MEMORANDUM FOR:     CBPO JAIME RAMIREZ , PORT OF PRESIDIO, TX

FROM:               Director, Field Operations
                    El Paso Field Office

SUBJECT:            Outside Employment Request

The El Paso Field Office is in receipt of your CF 3031, "Request To Engage In Outside
Employment Or Business Activities" to enter your name in an election to be a member
of the City Council of Presidio, Texas, a non-partisan, non-paid position. Per CBP
Directive #51735-001A, we are returning the original CF 3031 to you. Your request
has been disapproved.

The Standards of Ethical Conduct for Government Employees, 5 C.F.R. Part 2635.802,
provide that "An employee shall not engage in outside employment or any other
outside activity that conflicts with his official duties." Furthermore, "an employee shall
endeavor to avoid actions creating an appearance of violating any of the ethical
standards" set forth in Part 2635 [5 C.F.R. Part 2635.801(c)].

Based on the general knowledge of city councils, the duties of a member of the City
Council of Presidio would create an actual, potential, and/or an apparent conflict of
interest. It is my understanding that the duties of City Council of Presidio members
includes providing recommendations regarding city business and about issues
involving city employees. As Customs and Border Protection works closely with City of
Presidio employees on various law enforcement issues, it is my opinion that your
service on the City Council would create a conflict of interest. A copy of your request
and my decision will be forwarded to CBP Employee Records Center for retention in
your Official Personnel Folder.

If you have any questions, please contact Janice Lybarger, Mission Support Specialist
at (915) 633-7300, ext. 161.

LUIS GARCIA

Enclosure

cc:  John T. Prewit, PD Port of Presidio, Texas

# ATTACHMENT 3 TO RAMIREZ DECLARATION

**Memorandum from DFO Garcia to Ramirez Directing Him To Resign from CBP or Presidio City Council (dated Dec. 22, 2006)**

2006/DEC/29/FRI 10:55    PRESIDO POE          FAX No. 432 229 4595              P. 001

9400 Viscount Blvd., Suite 104
El Paso, TX 79925-7040

 **U.S. Customs and
Border Protection**

December 22, 2006

EPFO-PER-2

MEMORANDUM FOR:    CBPO JAIME RAMIREZ, PRESIDIO, TEXAS

FROM:              LUIS GARCIA
                   DIRECTOR, FIELD OPERATIONS

SUBJECT:           OUTSIDE EMPLOYMENT

In May 2004 you requested approval to run in a non-partisan election for a position as a member of the City Council of Presidio, Texas. That request was approved at that time for that term of office. You were subsequently elected and have served out that term. In May 2006 you ran for re-election to the Presidio City Council and, as a result, have been re-elected to another two-year term. Though you believed that the original 2004 approval would extend to your re-election, your belief was in error.

In addition to the requirement to request outside employment, any employee participating in political activities, including those that are, on their face, nonpartisan, must avoid creating a conflict of interest or the appearance of a conflict of interest.  In evaluating whether a conflict of interest or the appearance thereof exists, one must look at all relevant circumstances and information available and view those facts and circumstances from the stance of a reasonable person with knowledge of the relevant facts.

Since your first election, CBP has entered into negotiations with the Drug Enforcement Agency (DEA) concerning the disposition of seized property in Presidio.  Concurrently, the city of Presidio and Presidio County are negotiating with both CBP and DEA to acquire the same property and subsequently negotiate with CBP on leasing arrangements involving the Port of Presidio.  Though you have recused yourself from one vote on the Council regarding the seized property, the appearance of a conflict exists and will continue for the foreseeable future regarding this issue in particular.

In addition, the ongoing relationship between CBP and the city and county over normal business issues, i.e. housing, zoning, municipal services, port operations, etc., present the appearance of a conflict which could compromise not only your effectiveness as a CBP Officer but also as a member of the city council.   :

80/20 .d    ++++++++++++++++++    .ON XAH    ٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤٤ Wd 95:20 IЯ़ 9002-22-ɔƎɑ

Consequently, based upon a review of the circumstances and applicable law, I cannot approve your continuing to serve as a member of the Presidio City Council. Though your desire to serve your community is to be applauded, I cannot allow our effectiveness as an agency to be abridged. Therefore I am requiring you to resign from your position as a member of the Presidio City Council.

LUIS GARCIA
DIRECTOR, FIELD OPERATIONS

Cc:    John Prewit, Port Director, Presidio
       Patricia Duffy, Executive Director, Res. Mgt, CBP-OFO

# ATTACHMENT 4 TO RAMIREZ DECLARATION

### Presidio City Council Agendas
### (from October 2005 through January 2007)

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY – OCTOBER 13, 3005**
6:30 PM

1. CALL TO ORDER

2. QUORUM CHECK

3. RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4. APPROVAL OF CITY COUNCIL MEETING MINUTES OF:

   A. REGULAR MEETING SEPTEMBER 8, 2005
   B. SPECIAL MEETING SEPTEMBER 22, 2005
   C. SPECIAL MEETING SEPTEMBER 26, 2005
   D. SPECIAL MEETING SEPTEMBER 30, 2005

5. NEW BUSINESS

   A. DISCUSSION/ACTION ON REQUEST BY JOSE ELGUEZABAL
      ALLEY OR CITY TO CLOSE ALLEY NEXT

   B. DISCUSSION/ACTION ON REQUEST BY ISD ELEMENTARY
      PERMISSION TO REPAINT YELLOW CURBS TO RED, TO PRO

   C. DISCUSSION/ACTION ON APPOINTMENTS TO DCOP BOARD

   D. DISCUSSION/ACTION ON APPROVAL TO OPEN A BANK AC
      PRESIDIO BANK FOR TCDP GRANT 725 691 (STREET PAVIN

   E. DISCUSSION/ACTION ON NEGOTIANS WITH MARFA MARK
      ENTERPRIZE (sic) GROUP, LLC FOR USE OF WELL

   F. DISCUSSION/ACTION ON APPOINTMENT TO THE PRESIDIO
      APPRAISAL BOARD OF DIRECTORS

   G. DISCUSSION/ACTION ON SPEED LIMITS FOR CITY STREET

6. ADJOURN INTO EXECUTIVE SESSION PURSUANT TO TX LOCAL GC
   551.072: (DELIBERATIONS ABOUT REAL PROPERTY)

   A. DISCUSSION ON NEGOTIATIONS FOR PURCHASE OF PROPE
      STATION FOR THE COLONIA PUEBLO NUEVO PROJECT

      ■ RECONVENE INTO OPEN SESSION AND TAKE AC
        NECESSARY

7. CONSENT ITEMS

   A. DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND
      REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND
      DEPARTMENT REPORTS

8. MAYOR AND COUNCIL MEMBER'S REPORTS

9. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR** MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, OCTOBER 10, 2005 AT 5:00 PM.

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – OCTOBER 13, 2005
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY**
**NOVEMBER 10 , 2005**
6:30 PM

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.    APPROVAL OF CITY COUNCIL MEETING MINUTES OF OCTOBER 13, 2005

5.    OLD BUSINESS

    A.    DISCUSSION/ACTION ON JOSE ELGUEZABAL'S REQUEST FOR CITY TO ABANDON, CLOSE OR SELL ALLEY BETWEEN EL CAMPO STREET AND THE CATHOLIC CHURCH LOT

6.    NEW BUSINESS

    A.    UPDATE BY FRANK SPENCER ON WWTP, PUEBLO NUEVO PROJECT AND STREET PAVING GRANTS

    B.    DISCUSSION/ACTION ON RESOLUTION APPROVING AMD AUTHORIZING THE SUBMISSION OF AN APPLICATION FOR GRANT FUNDING FROM THE TEXAS CAPITAL FUND PROGRAM OF THE TX DEPT OF AGRICULTURE

    C.    UPDATE BY CARLOS COLINA-VARGAS ON DOWNTOWN REVITALIZATION GRANT AND HOME PROGRAM

    D.    DISCUSSION/ACTION ON FIRE DEPT'S OBLIGATION ON MATCHING FUNDS FOR THE USDA FIRE STATION GRANT AND/OR INTERIOR CONSTRUCTION DEMANDS

    E.    DISCUSSION/ACTION ON APPROVAL OF AMENDMENT #1 TO ARCHITECTURAL SERVICES AGREEMENT WITH NEGRETE & KOLAR ARCHITECTS FOR USDA LIBRARY GRANT

    F.    DISCUSSION/ACTION ON KEVIN DUKE'S REQUEST TO PURCHASE OR LEASE PROPERTY FROM CITY FOR BILLBOARD SITE

    G.    DISCUSSION/ACTION ON AUTHORITY TO REQUIRE A PARADE PERMIT FOR ALL PARADES INSIDE CITY LIMITS

7.    CONSENT ITEMS

    A.    DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

AGENDA REGULAR MEETING – NOVEMBER 10, 2005
PAGE 1 OF 2 PAGES

7.    MAYOR AND COUNCIL MEMBER'S REPORTS

8.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A REGULAR MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, NOVEMBER 7, 2005 AT 5:00 PM.

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – NOVEMBER 10, 2005
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY, DECEMBER 8, 2005**
6:30 PM

1.  CALL TO ORDER

2.  QUORUM CHECK

3.  RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.  APPROVAL OF CITY COUNCIL MEETING MINUTES OF NOVEMBER 10, 2005

5.  OLD BUSINESS

    A.  DISCUSSION/ACTION ON APPROVAL OF AMENDMENT #1 TO ARCHITECTURAL
        SERVICES AGREEMENT WITH NEGRETE & KOLAR ARCHITECTS FOR USDA
        LIBRARY GRANT

    B.  DISCUSSION/ACTION ON 3 WAY STOP SIGN AT OJINAGA AND LOUVAIN STREETS
        NEAR LITTLE LEAGUE PARK

    C.  DISCUSSION/ACTION ON FALSE ALARMS ORDINANCE

    D.  DISCUSSION/ACTION ON SPEED LIMITS ON CITY'S UNPAVED STREETS

6.  NEW BUSINESS

    A.  DISCUSSION/ACTION ON PURCHASING PROPERTY FROM GLO FOR NEW WWTP

    B.  DISCUSSION/ACTION AUTHORIZING SIGNATURES FOR 2005 TX CAPITAL FUND
        DOWNTOWN REVITALIZATION PROJECT

    C.  DISCUSSION/ACTION ON POLICE DEPT'S REQUEST TO PURCHASE AR-15s

    D.  DISCUSSION/ACTION APPROVING CONTRACT WITH DUKE ADVERTISING

7.  CONSENT ITEMS

    A.  DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING
        BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

8.  MAYOR AND COUNCIL MEMBER'S REPORTS

9.  ADJOURN

I CERTIFY THE ABOVE NOTICE OF A REGULAR MEETING WAS POSTED IN THE DISPLAY CASE
NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, DECEMBER 5, 2005 AT 5:00 PM.


CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn into Executive Session at Any Time During the Course of this Meeting to
Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071
(Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations),
551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183
(Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting.
Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@nztv.net for further information.

AGENDA

REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY, JANUARY 12, 2006**
6:30 PM

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.    APPROVAL OF CITY COUNCIL MEETING MINUTES OF DECEMBER 8, 2005

5.    OLD BUSINESS

    A.    DISCUSSION/ACTION ON APPROVAL OF AMENDMENT #1 TO ARCHITECTURAL SERVICES AGREEMENT WITH NEGRETE & KOLAR ARCHITECTS FOR USDA LIBRARY GRANT

    B.    DISCUSSION/ACTION ON APPROVAL OF ORDINANCE REGULATING SPEED LIMITS INSIDE CITY LIMITS ON CITY STREETS

    C.    DISCUSSION/ACTION ON APPROVAL OF ORDINANCE REGULATING FALSE ALARMS

    D.    DISCUSSION/ACTION ON JOSE ELGUEZABAL'S REQUEST FOR CITY TO ABANDON ALLEY BETWEEN EL CAMPO STREET AND THE CATHOLIC CHURCH LOT

    E.    DISCUSSION/ACTION APPROVING CONTRACT WITH DUKE ADVERTISING FOR BILLBOARD

6.    NEW BUSINESS

    A.    DISCUSSION/ACTION ON AWARD OF CONSTRUCTION BID FOR LIBRARY

    B.    DISCUSSION/ACTION ON PLANS FOR THE DOWNTOWN REVITALIZATION PROJECT BY VICTOR ENCISO, FROM F X SPENCER & ASSOC.

    C.    DISCUSSION/ACTION ON FIRE DEPT'S. REQUEST FOR REINSTATEMENT OF WATER ALLOTMENT

    D.    DISCUSSION/ACTION ON USE OF CITY VEHICLES

    E.    DISCUSSION/ACTION ON REQUEST BY REBECCA WAINRIGHT TO REGULATE BILLBOARDS

    F.    DISCUSSION/ACTION ON AUTHORITATIVE CONTROL OF LITTLE LEAGUE PARK

    G.    REVIEW OF FY 2005 AUDIT

PAGE 1 OF 2 PAGES

    H.  DISCUSSION/ACTION ON HIRING DAN PAINTER, CPA FOR FY2006 AUDIT

    I.  DISCUSSION/ACTION ON CONTRACT WITH CARLOS COLINA-VARGAS FOR GRANT WRITING OBLIGATIONS

    J.  DISCUSSION/ACTION APPROVING RESOLUTION TO THE TEXAS YES! HOMETOWN STARS PROGRAM

7.    ADJOURN INTO EXECUTIVE SESSION PURSUANT TO LOCAL TX GOV'T CODES:

    A.  551.072 DELIBERATIONS ABOUT REAL PROPERTY (PURCHASE OF WATER RIGHTS)

    B.  551.071 CONSULTATION WITH ATTORNEY

RECONVENE INTO OPEN SESSION TO TAKE ACTION, IF NECESSARY

8.    CONSENT ITEMS

    A.  DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

9.    MAYOR AND COUNCIL MEMBER'S REPORTS

10.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A REGULAR MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, JANUARY 9, 2006 AT 6:30 PM.

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – JANUARY 12, 2006
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY – FEBRUARY 9, 2006**
6:30 PM

1. CALL TO ORDER

2. QUORUM CHECK

3. RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4. APPROVAL OF CITY COUNCIL MEETING MINUTES OF JANUARY 12, 2006

5. BUSINESS

   A. DISCUSSION/ACTION APPROVING CONTRACT WITH DUKE ADVERTISING

   B. DISCUSSION/ACTION ON REGULATING BILLBOARDS

6. NEW BUSINESS

   A. PRESENTATION BY PRESIDIO APPRAISAL DISTRICT ON POLICIES AND PROCEDURES FOR ELECTION TO BOARD OF DIRECTORS

   B. DISCUSSION/ACTION ON ACCEPTING TXDOT RECOMMENDATION ELIMINATING ANGLE PARKING ON O'RIELLY ST. AND REQUIRE PARALLEL PARKING

   C. DISCUSSION/ACTION APPROVING FINAL PLANS ON TX CAPITAL FUND GRANT/DOWNTOWN REVITALIZATION GRANT

   D. DISCUSSION/ACTION APPROVING PRELIMINARY PLANS FOR TCDP/CD STREET IMPROVEMENTS PROJECT

   E. DISCUSSION/ACTION ON REQUEST FROM RAFAEL CARRERA FOR A LATE NIGHT ORDINANCE FOR BEER SALES FOR FEBRUARY 18, 2006

   F. DISCUSSION/ACTION ON RATIFYING LETTER OF AGREEMENT WITH PRESIDIO ISD COLLABORATING WITH THE 21ST CENTURY COMMUNITY LEARNING CENTERS PROGRAM

7. CONSENT ITEMS

   A. DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

8. MAYOR AND COUNCIL MEMBER'S REPORTS

9. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR MEETING** WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, FEBRUARY 6, 2006 AT 6:00 PM.


CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087 (Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@my-tv.net for further information.

Case 1:07-cv-00065-GK    Document 3-4    Filed 01/31/2007    Page 10 of 31

AGENDA
SPECIAL MEETING
CITY OF PRESIDIO
CITY HALL
TUESDAY, MARCH 7, 2006
5:30 PM

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    DISCUSSION/ACTION ON ORDERING MUNICIPAL ELECTION FOR MAY 13, 2006

4.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **SPECIAL** MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON TUESDAY, MARCH 2, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available.  Request for accommodations must
be made 48 hours prior to this meeting.  Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
THURSDAY – MARCH 16, 2006
6:30 PM

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.    APPROVAL OF CITY COUNCIL MEETING MINUTES OF FEBRUARY 9, 2006

5.    OLD BUSINESS

    A.    DISCUSSION/ACTION ON APPROVING RECOMMENDATION BY TXDOT FOR PARALLEL PARKING ON O'RIELLY STREET

6.    NEW BUSINESS

    A.    DISCUSSION/ACTION APPROVING BORE SAMPLES FOR CONTAMINATED SOIL ON OLD FUEL TANKS NEAR NAPA

    B.    DISCUSSION/ACTION ON REQUEST FOR REMOVAL OF ROCK WALL AT NAPA WITHIN NEXT 60 DAYS

    C.    DISCUSSION/ACTION TO AUTHORIZE ADVERTISING FOR BIDS FOR CONCRETE MATERIALS AND LABOR FOR PARKING LOT PROJECT

    D.    DISCUSSION/ACTION ON APPROVING FINAL PLANS FOR TCDP 725 691 AND AUTHORIZING ADVERTISING FOR BIDS FOR MATERIALS

    E.    DISCUSSION/ACTION TO ALLOW USE OF LOGIC FUNDS FOR ENGINEERING FEES FOR THE WWTP

    F.    DISCUSSION/ACTION ON APPROVAL OF LATE NIGHT ORDINANCE FOR BEER/WINE SALES AS REQUESTED BY RAFA CARRERRA OF 'LA RIVERIA SPORTS BAR AND DISCO'

    G.    DISCUSSION/ACTION APPROVAL OF MARCH 25, 2006 IN ASSOCIATION WITH THE CHAMBER OF COMMERCE, FOR ANNUAL 'GREAT AMERICAN CLEAN-UP DAY' AND AUTHORIZING CITY PERSONNEL INVOLVEMENT COMPENSATED BY A 'COMP' DAY

    H.    DISCUSSION/ACTION ON APPROVAL OF ORDINANCE ORDERING THE DISPLAY OF ADDRESS ON ALL HOMES AND BUSINESSES

    I.    DISCUSSION/ACTION ON CANCELING MAY 123, 2006 ELECTION DUE TO UNOPPOSED CANDIDATES

7.  ADJOURN INTO EXECUTIVE SESSION PURSUANT TO TX LOCAL GOV'T CODE SEC 551.071
    (CONSULTATION WITH ATTORNEY)

    ■       RECONVENE INTO OPEN SESSION AND TAKE ACTION, IF NECESSARY

8.  CONSENT ITEMS

    A.   DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING
         BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

9.  MAYOR AND COUNCIL MEMBER'S REPORTS

10. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR MEETING** WAS POSTED IN THE DISPLAY CASE
NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, MARCH 13, 2006 AT 6:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the
Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government
Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations
About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters),
551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183
(Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made
48 hours prior to this meeting.  Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email
cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – MARCH 16, 2006
PAGE 2 OF 2 PAGES

AGENDA
SPECIAL MEETING
CITY OF PRESIDIO
CITY HALL
**WEDNESDAY – APRIL 26, 2006**
6:30 PM

1. CALL TO ORDER

2. QUORUM CHECK

3. RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4. APPROVAL OF CITY COUNCIL MEETING MINUTES OF:

   A. SPECIAL MEETING OF MARCH 7, 2006
   B. REGULAR MEETING OF MARCH 16, 2006

5. OLD BUSINESS

   A. DISCUSSION/ACTION ON VEHICLE POLICY FOR CITY POLICE OFFICERS

6. NEW BUSINESS

   A. DISCUSSION/ACTION ON APPROVAL OF PROPOSAL TO PRESIDIO COUNTY FOR COST OF THE CITY PAVING ROADS LOCATED IN PUEBLO NUEVO, LOMA PELONA, AND THE CITY UNDER COUNTY GRANT PROJECT

   B. DISCUSSION/ACTION ON MAYOR'S APPOINTMENT TO PLANNING AND ZONING COMMITTEE

   C. DISCUSSION/ACTION ON CONSTRUCTION OF AN IMPOUND YARD FOR VEHICLES CONFISCATED BY CITY POLICE AND FEE SCHEDULE FOR IMPOUNDED VEHICLES

   D. DISCUSSION/ACTION ON PLANS FOR THE 25TH ANNIVERSARY OF CITY INCORPORATION AND PERMISSION TO APPROACH DCOP FOR FUNDS

   E. DISCUSSION/ACTION ON CONTRACT FOR PAC'S FIRE ALARM SYSTEM WITH SOUTHWEST SECURITY ALARMS

   F. DISCUSSION/ACTION ON LEASE AGREEMENT BETWEEN COSME ALVARADO AND THE CITY FOR LITTLE LEAGUE USE

7. CONSENT ITEMS

   A. DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

8. MAYOR AND COUNCIL MEMBER'S REPORTS

9. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **SPECIAL** MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON FRIDAY, APRIL 21, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@mztv.net for further information.

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY**
**MAY 11, 2006**
6:30 PM

1.  CALL TO ORDER

2.  QUORUM CHECK

3.  RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.  APPROVAL OF CITY COUNCIL MEETING MINUTES

5.  OLD BUSINESS

    A.  DISCUSSION/ACTION ON VEHICLE POLICY FOR CITY POLICE OFFICERS

    B.  DISCUSSION/ACTION ON IMPOUND YARD AND FEES

6.  NEW BUSINESS

    A.  DISCUSSION/ACTION ON REQUEST BY FIRST PRESIDIO BANK TO ABANDON ALLEYS IN BLOCKS 12 AND/OR 19, MOORE ADDITION, FOR BANK EXPANSION

    B.  DISCUSSION/ACTION CONCERNING TCDP COMMUNITY DEVELOPMENT PROGRAM FY 2007-2008 AND POSSIBLE APPLICATION FOR THIS FUNDING

    C.  DISCUSSION/ACTION ON AGREEMENT WITH CARLOS COLINA-VARGAS FOR GRANT WRITING SERVICES

    D.  DISCUSSION/ACTION ON UNDERGROUND STORAGE TANKS LOCATED INSIDE AREA TO BE PAVED FOR DOWNTOWN RENOVATION PROJECT

7.  ADJOURN INTO EXECUTIVE SESSION PURSUANT TO TX LOCAL GOV'T CODE SEC 551.071 (CONSULTATION WITH ATTORNEY)

    A.  DISCUSSION ON INVOICE FROM TOM GREENWOOD ON OLD CITY HALL PROJECT

        ■  RECONVENE INTO OPEN SESSION AND TAKE ACTION, IF NECESSARY

8.  CONSENT ITEMS

    A.  DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

9.  MAYOR , COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

10. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A REGULAR MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, MAY 8, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@mzty.net for further information.

AGENDA
SPECIAL MEETING
CITY OF PRESIDIO
CITY HALL
TUESDAY - MAY 23, 2006
5:00 PM

*WORKSHOP ON 2007-08 TX COMMUNITY DEVELOPMENT PROGRAM GRANT FUNDS
IMMEDIATELY FOLLOWING MEETING*

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    RECOGNIZE AND WELCOME VISITORS

4.    SWEARING IN OF TERRY UPCHURCH AND JAIME RAMIREZ

5.    DISCUSSION/ACTION ON RESOLUTION FOR EMERGENCY REPLACEMENT
      AMBULANCE

6.    DISCUSSION/ACTION ON ACCEPTING CHANGE OF TERMS FROM USDA/RD ON
      COLONIAL PUEBLO NUEVO 306c WASTEWATER SYSTEM IMPROVEMENTS GRANT

7.    DISCUSSION/ACTION ON PROPOSING OFFER TO MR. DICK SLACK RE:
      UNDERGROUND STORAGE TANKS

8.    MAYOR, COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

9.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A SPECIAL MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON FRIDAY, MAY 19, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

Case 1:07-cv-00065-GK          Document 3-4          Filed 01/31/2007          Page 16 of 31

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
THURSDAY – JUNE 8, 2006
6:30 PM

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.    APPROVAL OF CITY COUNCIL MEETING MINUTES OF:

    A.    REGULAR MEETING MAY 11, 2006
    B.    SPECIAL MEETING MAY 23, 2006

5.    OLD BUSINESS

    A.    APPROVAL OF VEHICLE POLICY FOR POLICE DEPT.

6.    NEW BUSINESS

    A.    DISCUSSION/ACTION ON PRE-FINAL PLANS FOR THE WWTP PROJECT

    B.    DISCUSSION/ACTION FOR AUTHORIZATION TO PROCEED WITH THE GEO-TECHNICAL SERVICES FOR THE WWTP PLANT

    C.    DISCUSSION/ACTION ON SUBMITTING APPLICATION FOR STREET PAVING WITH COMMUNITY DEVELOPMENT BLOCK GRANT 2007 FUNDS AND REVIEWING PROPOSED STREETS TO BE PAVED

    D.    DISCUSSION/ACTION ON APPROVING CONTRACT WITH MCCREARY, VESELKA, BRAGG & ALLEN, PC FOR THE COLLECTION OF DELINQUENT MUNICIPAL COURT FINES AND FEES

    E.    DISCUSSION/ACTION ON APPROVING RESOLUTION TO IMPOSE ADDITIONAL FEE FOR COLLECTION COSTS ON MUNICIPAL FINES AND FEES

    F.    DISCUSSION/ACTION ON REQUEST BY THE MEXICAN CONSULATE TO RENAME ACCESS STREETS TO THE MEXICAN CONSULATE TO "JUAREZ AVENUE" AND "21 DE MARZO"

    G.    DISCUSSION/ACTION ON PROBLEMS ENCOUNTERED WITH CITY BURN BAN BEING OVERTURNED BY COUNTY POLICY

7.    CONSENT ITEMS

    A.    DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

AGENDA – REGULAR MEETING JUNE 8, 2006
PAGE 1 OF 2 PAGES

8.    MAYOR'S, COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

9.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR** MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON JUNE 5, 2006 AT 6:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – JUNE 8, 2006
PAGE 2 OF 2 PAGES

Case 1:07-cv-00065-GK     Document 3-4     Filed 01/31/2007     Page 18 of 31

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
PRESIDIO ACTIVITY CENTER
THURSDAY – JULY 13, 2006
6:30 PM

1.    CALL TO ORDER

2.    QUORUM CHECK

3.    RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.    APPROVAL OF CITY COUNCIL MEETING MINUTES

5.    NEW BUSINESS

    A.    DISCUSSION/ACTION ON RENAMING 2ND STREET AND 2ND AVENUE, REQUESTED BY HECTOR RAUL ACOSTA, CONSUL OF MEXICO

    B.    DISCUSSION/ACTION ON PRESENTATION BY RANDALL KINZIE FOR SATELLITE PHONE SERVICE

    C.    DISCUSSION/ACTION ON SELECTION OF ENGINEERING SERVICES FOR TCDP PROJECT FY 2007-08

    D.    DISCUSSION/ACTION ON SELECTION OF MANAGEMENT SERVICES FOR TCDP PROJECT FY 2007-08

    E.    DISCUSSION/ACTION ON SELECTION OF FIRM FOR COLLECTION OF DELINQUENT MUNICIPAL COURT FINES

    F.    DISCUSSION ON PROPOSAL FOR OUTDOOR RECREATION PARK SITE FROM CARLOS COLINA-VARGAS

    G.    DISCUSSION/ACTION ON CITY JOINING FORCES WITH CITY OF MARFA ON NEW LANDFILL

    H.    DISCUSSION/ACTION ON AGREEMENT WITH RYKIN PUMP COMPANY FOR REMOVAL OF UNDERGROUND STORAGE TANKS

    I.    DISCUSSION/ACTION ON PURSUING OWNERSHIP OF PROPERTY SEIZED BY THE U.S. GOVERNMENT BELONGING TO RIO GRANDE STOCKYARDS, INC.

6.    CONSENT ITEMS

    A.    DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

AGENDA REGULAR MEETING – JULY 13, 2006
PAGE 1 OF 2 PAGES

7.      MAYOR, COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

   -    SCHEDULE BUDGET WORKSHOP

8.      ADJOURN


I CERTIFY THE ABOVE NOTICE OF A **REGULAR** MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, JULY 10, 2006 AT 5:00 PM.

*Cynthia Clarke*
CYNTHIA CLARKE
CITY ADMINISTRATOR


*The Presidio City Council Reserves the Right to Adjourn into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*


This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.


AGENDA REGULAR MEETING – JULY 13, 2006
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
THURSDAY, AUGUST 10, 2006
6:30 PM

1.     CALL TO ORDER

2.     QUORUM CHECK

3.     RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.     APPROVAL OF CITY COUNCIL MEETING MINUTES

5.     OLD BUSINESS

ADJOURN INTO EXECUTIVE SESSION PURSUANT TO TX GOV'T CODE SECTIONS 551.071
(CONSULTATIONS THE ATTORNEY)

    A.  DISCUSSION ON REMOVAL OF UNDERGROUND STORAGE TANKS

RECONVENE INTO OPEN SESSION AND TAKE ACTION, IF NECESSARY

    B.  DISCUSSION/ACTION ON APPROVING ORDINANCE RENAMING 2ND STREET AND
        2ND AVENUE TO JUAREZ AVENUE AND 21 DE MARZO STREET

6.     NEW BUSINESS

    A.  UPDATE ON NEW LIBRARY CONSTRUCTION FROM BILL STOLTE, ALLSTAR I&E

    B.  DISCUSSION/ACTION ON WHICH STREETS WILL BE DESIGNATED FOR PAVING
        IN NEW 2007-08 TCDP GRANT APPLICATION

    C.  DISCUSSION/ACTION ON OFFER FROM RUBEN BRITO ON SALE OF THE OLD
        HENDRIX/MILES OFFICE BUILDING AND WAREHOUSE YARD OR POSSIBLE
        TRADE WITH CITY FOR PROPERTY

    D.  DISCUSSION/ACTION ON COUNTY'S REQUEST TO CONSIDER THE CREATION OF
        POSITION FOR COUNTY ELECTIONS ADMINISTRATOR AND TO SUBSIDIZE
        BUDGET AND SALARY FOR POSITION

    E.  DISCUSSION/ACTION ON PARTICIPATING AND CHOOSE PROJECT FOR NEW
        MUNICIPAL SOLID WASTE GRANT APPLICATION FROM RGCOG

    F.  STATUS REPORTS FROM CITY ATTORNEY ON GOV'T SEIZED PROPERTY (RIO
        GRANDE STOCKYARDS) AND TRADE OF PROPERTY WITH MARFA PARTNER'S
        LIMITED AND REVIEW OF SUGGESTED PROPERTY FOR REGIONAL LANDFILL

    G.  DISCUSSION/ACTION ON APPROVING MAYOR'S APPOINTMENT FOR
        ALTERNATE MEMBER FOR PLANNING & ZONING COMMISSION

AGENDA REGULAR MEETING – AUGUST 10, 2006
PAGE 2 OF 2 PAGES

H. DISCUSSION/ACTION ON FIRE DEPT POLICIES AND APPROVE DRUG TESTING FOR FIRE FIGHTERS

I. DISCUSSION/ACTION ON APPROVAL OF INTERLOCAL AGREEMENT BETWEEN CITY AND COUNTY FOR THE TX DOT BORDER COLONIA ACCESS PAVING GRANT FOR STREET PAVING IN CANDELARIA COLONIA

7. CONSENT ITEMS

A. DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

8. MAYOR , COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

PARADE AND STREET DANCE INFORMATION………….

9. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A REGULAR MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON **MONDAY, AUGUST 7, 2006 AT 5:30 PM**

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – AUGUST 10, 2006
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY**
**SEPTEMBER 14, 2006**
6:30 PM

1.   CALL TO ORDER

2.   QUORUM CHECK

3.   RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.   APPROVAL OF CITY COUNCIL MEETING MINUTES OF:

    A.   REGULAR MEETING AUGUST 10, 2006

5.   NEW BUSINESS

    A.   ADOPT PROPOSED FY2007 BUDGET

    B.   RATIFY RESOLUTION FOR SOLID WASTE GRANT FROM RIO GRANDE COUNCIL OF GOVERNMENTS

    C.   DISCUSSION/ACTION ON INCREASING BUILDING PERMIT FEES

    D.   DISCUSSION/ACTION ON ELECTRIC SALES AGREEMENT

    E.   DISCUSSION/ACTION ON REQUEST BY PRESIDIO YOUTH ATHLETIC ASSOCIATION FOR NEW BASEBALL FIELD

    F.   DISCUSSION/ACTION ON POLICY FOR USE OF CITY AIRPLANE.

    G.   DISCUSSION/ACTION ON APPROVING PLANNING AND ZONING RECOMMENDATION TO ABANDON LOTS, STREETS AND ALLEYS IN DUPEY 2ND ADDITION

    H.   DISCUSSION ON POSSIBILITY OF CITY PAVING 1ST STREET NEXT TO HIGH SCHOOL BASEBALL FIELD

    I.   DISCUSSION/ACTION ON SETTING POLICY FOR NON-EMERGENCY AMBULANCE TRANSPORTS

    J.   UPDATE ON RIO GRANDE STOCKYARD SEIZED PROPERTY

6.   CONSENT ITEMS

    A.   DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

7.    MAYOR, COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

8.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR** MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL AT 5:00 PM ON MONDAY, SEPTEMBER 11,
2006.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – SEPTEMBER 14, 2006
PAGE 2 OF 2 PAGES

AGENDA
SPECIAL MEETING
CITY OF PRESIDIO
CITY HALL
**FRIDAY – SEPTEMBER 29, 2006**
12:00 PM

1.  CALL TO ORDER

2.  QUORUM CHECK

3.  DISCUSSION/ACTION APPROVING USE OF LOGIC FUND TO PAY OUTSTANDING INVOICE FOR GEOTECHNICAL FEES FOR WWTP

4.  DISCUSSION/ACTION ON APPROVING NEW FEE SCHEDULE FOR BUILDING PERMITS FOR FY 2007

5.  DISCUSSION/ACTION ON APPROVING ADOPTION AGREEMENT BETWEEN CITY AND TRIDENT INSURANCE SERVICES FOR LIABILITY/CRIME/PROPERTY INSURANCE COVERAGE FOR FY 2007

6.  DISCUSSION/ACTION APPROVING RESOLUTION # 2006-0925, AUTHORIZING SUBMISSION OF AN APPLICATION TO ORCA FOR FY 2007-08 GRANT ASSISTANCE (STREET IMPROVEMENTS)

7.  DISCUSSION/ACTION ON APPROVING ORDINANCE AMENDING FY2006 OPERATING BUDGET TO REFLECT ACTUAL AND PROJECTED SPENDING LEVELS AT FISCAL YEAR CLOSE-OUT

8.  DISCUSSION/ACTION ON APPROVING ORDINANCE LEVYING AD VALOREM TAXES OF .6432 FOR USE AND SUPPORT OF THE CITY OF PRESIDIO FOR FY 2007, AND PROVIDING FOR APPORTIONING EACH LEVY FOR SPECIFIC PURPOSES, AND, PROVIDING WHEN TAXES SHALL BECOME DUE AND WHEN THE SAME TAXES SHALL BECOME DELINQUENT IF NOT PAID

9.  DISCUSSION/ACTION APPROVING AND ADOPTING A BUDGET FOR THE CITY OF PRESIDIO FOR FY 2007

10. ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **SPECIAL** MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON TUESDAY, SEPT. 26, 2006 AT 9:30 AM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices), 551.087 (Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email cityhall@mztv.net for further information.

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
THURSDAY – OCTOBER 12, 2006
6:30 PM

1.  CALL TO ORDER

2.  QUORUM CHECK

3.  RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.  APPROVAL OF CITY COUNCIL MEETING MINUTES OF:

    A.  REGULAR MEETING SEPTEMBER 14, 2006
    B.  SPECIAL MEETING SEPTEMBER 29, 2006

5.  NEW BUSINESS

    A.  DISCUSSION/ACTION ACCEPTING PLANNING AND ZONING'S APPROVAL FOR REQUEST
        BY RUBEN BRITO TO APPROVE BRITO SUBDIVISION, BEING LOTS 1 AND 2 OUT OF 5.64
        ACRE TRACT OF LAND, OF SURVEY 2, TM, RY

    B.  DISCUSSION/ACTION ON COUNTY'S REQUEST FOR THE CITY TO PAVE THE
        FOLLOWING STREETS IN PUEBLO NUEVO, APPROVING THE CITY'S COST FOR LABOR
        AND EQUIPMENT ONLY AND NOT CHARGING FOR WATER LINE REPLACEMENT,
        RELOCATIONS AND MANHOLES AND VALVE COVER ADJUSTMENTS.

        - SANTA FE AVE. FROM 1ST STREET TO FM 170 (4700 SQ YDS),
        - SANTA FE AVE. FROM FM 170 TO VIA EL DORADO (6580 SQ YDS)
        - VIA SANTA CRUZ FROM SANTA BARBARA AVE. TO FM 170 (8420 SQ. YDS.)

    C.  DISCUSSION/ACTION ON CREATING A REGIONAL MOBILITY AUTHORITY WITH
        PRESIDIO COUNTY AND TO CONTINUE EFFORTS TO OBTAIN THE RIO GRANDE
        STOCKYARD PROPERTY

    D.  DISCUSSION/ACTION ON APPROVAL TO REQUEST SEALED BIDS FOR SALE OF A 1986
        CASE 480 BACKHOE

    E.  DISCUSSION/ACTION ON AUTHORITY TO ADVERTISE FOR BIDS ON NEW 621D II
        ARTICULATED WHEEL LOADER

6.  ADJOURN INTO EXECUTIVE SESSION, PURSUANT TO TX LOCAL GOV'T CODE   551.074
    (PERSONNEL ISSUES)

    A.  DISCUSS REQUIREMENT FOR HIGH SCHOOL DIPLOMA OR GED FOR UTILITY AND
        ROAD CREW WORKER
    B.  DISCUSS CONTINUING ACCRUAL OF SICK AND VACATION HOURS WHILE OUT ON
        LONG TERM SICK OR VACATION

        ■  RECONVENE INTO OPEN SESSION AND TAKE ACTION, IF NECESSARY

7.    CONSENT ITEMS

      A.    DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING
            BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

8.    MAYOR , COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

9.    ADJOURN


I CERTIFY THE ABOVE NOTICE OF A **REGULAR** MEETING WAS POSTED IN THE DISPLAY CASE
NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, OCTOBER 9, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR


*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the
Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government
Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations
About Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 (Personnel Matters),
551.076 (Deliberations about Security Devices), 551.087 (Economic Development) and 418.183
(Deliberations about Homeland Security Issues).*


This facility is wheelchair accessible and parking spaces are available. Request for accommodations must be made
48 hours prior to this meeting.  Please contact City Hall at 432/229-3517, FAX 432/229-3505, or email
cityhall@mzty.net for further information.

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
THURSDAY – NOVEMBER 9, 2006
6:30 PM

1.   CALL TO ORDER

2.   QUORUM CHECK

3.   RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.   APPROVAL OF CITY COUNCIL MEETING MINUTES

5.   NEW BUSINESS

   A.   ACCEPT RESIGNATION FROM MRS. TERRY UPCHURCH AND APPROVE
        MAYOR'S APPOINTMENT TO FILL UNEXPIRED TERM

   B.   SWEARING IN OF NEW COUNCIL MEMBER

   C.   DISCUSSION/ACTION APPROVING PRESIDIO APPRAISAL DISTRICT'S
        BUDGET FOR 2006-2007

   D.   DISCUSSION/ACTION APPROVING RESOLUTION AUTHORIZING A ONE YEAR
        LOAN FROM FIRST PRESIDIO BANK, ENCUMBERING SPECIFIC CDs FOR THE
        USE OF EXPENSES FROM THE USDA 306C COLONIA GRANT

   E.   DISCUSSION/ACTION APPROVING RESOLUTION FOR A MUTUAL AID
        AGREEMENT WITH THE ENTITIES WITHIN THE RIO GRANDE COUNCIL OF
        GOVERNMENTS REGION

   F.   DISCUSSION/ACTION ON INTERLOCAL AGREEMENT FOR THE LOCAL
        GOVERNMENT PURCHASING COOPERATIVE

   G.   DISCUSSION/ACTION ON REQUEST FROM DUNCAN DISPOSAL TO INCREASE
        NET TONNAGE RATE TO $35 PER TON

   H.   AWARDING BID FOR CITY'S SALE OF CASE 480 BACKHOE

   I.   AWARDING BID FOR PURCHASE OF NEW BACKHOE

6.   CONSENT ITEMS

   A.   DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING
        BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

7.    MAYOR, COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

8.    ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR MEETING** WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, NOVEMBER 6, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – NOVEMBER 9, 2006
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY – DECEMBER 14, 2006**
6:30 PM

1. CALL TO ORDER

2. QUORUM CHECK

3. RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

    ** MOMENT OF SILENCE FOR SENATOR FRANK MADLA

4. APPROVAL OF CITY COUNCIL MEETING MINUTES OF NOVEMBER 9, 2006

5. NEW BUSINESS

    A. PRESENTATION BY AEP ON RATE INCREASES AND UPDATE ON SERVICE UPGRADE

    B. DISCUSSION/ACTION ON PROVIDING WATER SERVICE FOR PRESIDIO COUNTY'S COLONIA GRANT THAT WILL SUPPLY WATER 4 MILES NORTH OF PRESIDIO, ALONG US HWY 67

    C. UPDATE BY F X SPENCER & ASSOC. ON CURRENT PROJECTS

    D. DISCUSSION/ACTION ON TO ACCEPT P&Z'S RECOMMENDATION TO APPROVE REQUEST FROM FIRST PRESIDIO TO ABANDON ALLEYS ON BLOCK 12 MOORE ADDITION

    E. ACCEPT CARLOS COLINA-VARGAS' RESIGNATION FOR GRANT ADMINISTRATION OF THE HOME PROGRAM

    F. DISCUSSION/ACTION ON ADVERTISING FOR RFP'S FOR HOME PROGRAM

    G. DISCUSSION/ACTION ON APPROVAL OF RESOLUTION CHANGING BANK SIGNATURES

    H. DISCUSSION/ACTION ON MAKING ALLEY NEXT TO CITY HALL, ONE WAY

    I. DISCUSSION/ACTION ON AMENDING SUBSTANCE ABUSE POLICY TO INCLUDE SPECIFIC ALCOHOL CONCENTRATION, PRE-DUTY USE AND USE FOLLOWING AN ACCIDENT

    J. DISCUSSION/ACTION ON APPROVAL OF RESOLUTION WITH PISD TO COMPLY WITH TX HOUSE BILL 1, PROVIDING FOR A COMMON POLLING PLACE FOR JOINT ELECTIONS

K.  DISCUSSION/ACTION ON INTERLOCAL COOPERATION AGREEMENT WITH
    PRESIDIO COUNTY FOR STREET IMPROVEMENTS IN PUEBLO NUEVO COLONIA

6.  CONSENT ITEMS

    A.  DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND
        REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND
        DEPARTMENT REPORTS

7.  MAYOR , COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

8.  ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REGULAR** MEETING WAS POSTED IN THE DISPLAY
CASE NEAR THE FRONT DOOR OF CITY HALL ON MONDAY, DECEMBER 11, 2006 AT 5:00 PM.

*Cynthia Clarke*

CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time
During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by
the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with
Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and
Donations), 551.074 (Personnel Matters), 551.076 (Deliberations about Security Devices),
551.087(Economic Development) and 418.183 (Deliberations about Homeland Security Issues).*

This facility is wheelchair accessible and parking spaces are available. Request for accommodations must
be made 48 hours prior to this meeting. Please contact City Hall at 432/229-3517, FAX 432/229-3505, or
email cityhall@mztv.net for further information.

AGENDA REGULAR MEETING – DECEMBER 14, 2006
PAGE 2 OF 2 PAGES

AGENDA
REGULAR MEETING
CITY OF PRESIDIO
CITY HALL
**THURSDAY – JANUARY 11, 2007**
6:30 PM

1.   CALL TO ORDER

2.   QUORUM CHECK

3.   RECOGNIZE AND WELCOME VISITORS – 5 MINUTES EACH

4.   APPROVAL OF CITY COUNCIL MEETING MINUTES OF DECEMBER 14, 2006

5.   NEW BUSINESS

    A.   DISCUSSION/ACTION ON PURSUING PURCHASE OF FELHABER WAREHOUSE

    B.   DISCUSSION/ACTION ON REQUEST FOR EXTENSION ON LIBRARY CONSTRUCTION

    C.   DISCUSSION/ACTION ON WHICH NAMES TO PLACE ON LIBRARY PLAQUE

    D.   DISCUSSION/ACTION REQUESTING ASSISTANCE FROM TXDOT FOR PLANNING A PUBLIC TRANSPORTATION SYSTEM FOR BREWSTER, CULBERSON, HUDSPETH, JEFF DAVIS AND PRESIDIO COUNTIES

    E.   DISCUSSION/ACTION ON ACCEPTING MAYOR'S APPOINTMENT TO DCOP

    F.   DISCUSSION/ACTION FOR PERMISSION FOR CITY ADMINISTRATOR TO PURSUE SHORT TERM LOAN FOR WWTP PROJECT

    G.

6.   CONSENT ITEMS

    A.   DISCUSSION/ACTION ON APPROVING ACCOUNTS PAYABLE AND REVIEWING BUDGET-TO-ACTUAL FINANCIAL INFORMATION AND DEPARTMENT REPORTS

7.   MAYOR , COUNCIL MEMBER'S AND ATTORNEY'S REPORTS

8.   ADJOURN

I CERTIFY THE ABOVE NOTICE OF A **REG/SP** MEETING WAS POSTED IN THE DISPLAY CASE NEAR THE FRONT DOOR OF CITY HALL ON **DAY-DATE AT TIME.**


CYNTHIA CLARKE
CITY ADMINISTRATOR

*The Presidio City Council Reserves the Right to Adjourn Into Executive Session at Any Time During the Course of this Meeting to Discuss Any of the Matters Listed Above, as Authorized by the Texas Government Code including, but not limited to, Sections 551.071 (Consultation with Attorney), 551.072 (Deliberations About Real Property), 551.073 (Deliberations about Gifts and*

# EXHIBIT B

## DECLARATION OF ALCEE TAVAREZ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAIME RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 07-0065 |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) Judge Gladys Kessler |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF ALCEE TAVAREZ

1.  I am a resident of, and registered voter in, the town of Presidio, Texas. I am the Mayor of Presidio, and have filled that position for 8 years. This is an elected nonpartisan position. Before I was elected Mayor, I served on the City Council for 10 years.

2.  Jaime Ramirez is a member of the City Council. I voted for him when he was elected in 2004. No election was held in 2006 because no candidate was opposed.

3.  The Mayor and the five City Council members serve as the government of Presidio. We address issues such as zoning questions, road paving requests, sanitation, approval of contractors, and other city services. I can recall only one issue arising during my 18 years of service to the city, first as City Council member and then as Mayor, that involved the Bureau of Customs and Border Protection (or its predecessor

agencies, the U.S. Customs Service and the Immigration and Naturalization Service).

4. That issue involved some land belonging to the Rio Grande Stockyards, Inc., which the Drug Enforcement Agency had seized. Presidio is considering purchasing that property, building on it, and leasing the building to CBP. I understand that CBP is also interested in this property. Ramirez abstained from voting on this issue, and has not discussed the issue with me or with the other Council members, to my knowledge.

5. I have known Ramirez for many years. I am a teacher at the high school in Presidio and taught Ramirez when he was enrolled there. He is a bright and driven young man. I believe strongly that he is a good voice for the community. Even though I have occasionally disagreed with a position he has taken, I think he has been an excellent Council member.

6. I have not seen any conflict of interest between his work for CBP and his responsibilities on the City Council. He has had to miss a few meetings when they conflicted with his work for CBP, but the benefits to the community far outweigh those absences.

7. Presidio is a poor community with a high unemployment rate. Its population is about 5,000. It is important for Presidio to have available to it the volunteer services of bright, educated individuals (such as Ramirez) who work for CBP.

8.  I know of several other CBP employees who have served the city in nonpartisan elected positions.  Gary Davis, Charlie Wright, and Arturo Jimenez are CBP employees who served as Council members, and Bob Anderson, a CBP employee, was Mayor.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30ᵗʰ day of January, 2007, in Presidio, Texas.

Alcee Tavarez

3

# EXHIBIT C

## CUSTOMS DIRECTIVE NO. 51735-001A "Outside Employment and Business Activities"

**CUSTOMS DIRECTIVE**

**ORIGINATING OFFICE:** HRM

**DISTRIBUTION:** S-01
**CUSTOMS DIRECTIVE NO.** 51735-001A
**DATE:** MARCH 2, 2000
**SUPERSEDES:** 51735-001, 5/29/85
**REVIEW DATE:** MARCH 2002

**SUBJECT:**   OUTSIDE EMPLOYMENT AND BUSINESS ACTIVITIES

I.       PURPOSE. To establish policy for processing employee requests for outside employment and business activities.

2.       POLICY. All U.S. Customs Service employees must secure prior approval before entering into any outside employment or business activity, regardless of compensation, while employed by the U.S. Customs Service.

3.       AUTHORITIES/REFERENCES.

3.1      5 CFR 2635, Standards of Ethical Conduct for Employees of the Executive Branch, Section 2635.803, Prior approval for outside employment.

3.2      5 CFR 3101, Supplemental Standards of Ethical Conduct for Employees of the Treasury Department, Section 3101.104, Outside employment and Section 3101.110 Additional rules for U.S. Customs Service employees.

4.       DEFINITIONS.

4.1      CF 3031 refers to Customs Form 3031, entitled REQUEST TO ENGAGE IN OUTSIDE EMPLOYMENT OR BUSINESS ACTIVITIES (See Attachment).

4.2      PFO refers to Principal Field Officers and PHO refers to Principal Headquarters Officers. PFO refers to Directors of Field Operations, Directors, Field Laboratories, Special Agents in Charge and equivalent levels in other Customs organizations. PHO refers to Assistant Commissioners and Headquarters Executive Directors and equivalent levels (i.e., one reporting level down from Assistant Commissioners.

5.       RESPONSIBILITIES.

5.1      Before entering into any outside employment or business activity, Customs employees are responsible for obtaining prior approval. Employees given approval to engage in outside employment must promptly advise their supervisors, in writing, if the approved employment terminates. Employees must promptly submit another written

request for approval if the nature of the outside employment changes or if the employee changes positions and reports to a different PFO/PHO.

5.2    Supervisors are responsible for remaining abreast of the laws, regulations, and procedures regarding outside employment so they can advise employees under their supervision. Immediate supervisors are the first officials to review requests for outside employment (CF 3031).

5.3    Principal Field Officers (PFO) and Principal Headquarters Officers (PHO)are responsible for making final determinations to approve or disapprove requests.

6.    PROCEDURES.

6.1    Requests for approval of outside employment or business activities should be made on Customs Form 3031, REQUEST TO ENGAGE IN OUTSIDE EMPLOYMENT OR BUSINESS ACTIVITIES. The completed form must be given to the employee's immediate supervisor, with a copy retained by the employee.

6.2    The immediate supervisor will review the application before forwarding it with a recommendation for approval or disapproval to the appropriate PFO/PHO for final determination. PFOs/PHOs serving as first line supervisors have final approval and disapproval authority for those employees reporting directly to them.

6.3    Questions regarding the application of Ethics rules to outside employment requests should be directed to Customs Ethics Officials in the Office of Chief Counsel and Associate and Assistant Chief Counsel offices.

6.4    Upon final determination by the PFO/PHO, the CF 3031 will be returned to the employee and a copy will be forwarded to the Employee Records Center in the Office of Human Resources Management for retention in the employee's Official Personnel Folder. A written reason will be given for any disapproval.


                                        Assistant Commissioner
                                        Human Resources Management


        Attachment

DEPARTMENT OF THE TREASURY
**United States Customs Service**

## REQUEST TO ENGAGE IN OUTSIDE EMPLOYMENT OR BUSINESS ACTIVITIES
Directive 51735-001A

| Name | Grade | Salary $ | Length of Customs Employment |
|---|---|---|---|

| Position Title | Office, Port or Station where employed by Customs |
|---|---|

| Office Hours of Work<br>From  AM  PM   To  AM  PM<br>☐  ☐        ☐  ☐ | Days of Normal Work Week | If over 40 hours indicate periods involving premium or overtime |
|---|---|---|

**OUTSIDE EMPLOYMENT INFORMATION**

Nature and detailed description of outside employment

# SAMPLE

| Name and address of outside employer | Type of Business |
|---|---|

Does employer engage in importation of merchandise for sale in the United States? If answer is Yes, specifically explain the relationship of his/her business contact with Customs Service.

Does employer do business with other Federal agencies ore represent clients on matters, which affect the interest of the United States Government? (This includes employment with attorneys or accountants who are authorized to practice before U. S. Courts or other regulatory organizations.) If answer is Yes, give details

| Specific hours of outside employment<br>From AM  PM     To  AM  PM<br>☐  ☐          ☐  ☐ | Number of outside employment hours<br>Daily          Weekly | Days of the week you expect to work |
|---|---|---|

I hereby certify that my services in connection with the outside employment or business referred to above will not conflict with or infringe on my duties with or responsibilities to the U. S. Customs Service and that the statements made herein are complete and correct to the best of my knowledge  I have read and understand the regulations on outside employment (5CFR 2635.802 and 5CFR3101.110(a) on the reverse and I understand that if my outside employment or business request is approved that I must
    (a)   Submit another written request for approval if the nature of the employment or business changes.
    (b)   Submit another written request for approval upon movement or transfer to a different approving official.
    (c)   Notify my supervisor, in writing, when my approved employment or business activity is terminated.

| Employee's Signature | Date |
|---|---|

RECOMMENDATIONS BY IMMEDIATE SUPERVISOR AND OTHER OFFICIALS (indicate reason(s) where disapproval is recommended or, in cases with unusual circumstances where approval has been recommended.)

| ☐ Approved   ☐ Disapproved | Signature and Title of Immediate Supervisor | Date |
|---|---|---|
| ☐ Approved   ☐ Disapproved | Signature and Title of Immediate Supervisor | Date |
| ☐ Approved   ☐ Disapproved | Signature and Title of Immediate Supervisor | Date |

Customs Form 3031 (02/00)

Statement Required by 5 CFR 1320.21: The estimated average burden associated with this collection of information is 17 minutes per respondent or recordkeeper depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to U.S. Customs Service, Paperwork Management Branch, Washington DC 20229. *DO NOT send completed form(s) to this office*

### 5 CFR 2635, Standards of Ethical Conduct for Employees of the Executive Branch

5 CFR 2635.802 - Conflicting outside employment and activities.

An employee shall not engage in outside employment or any other outside activity that conflicts with his official duties. An activity conflicts with an employee's official duties: (a) if it is prohibited by statute or by an agency's supplemental regulations; or (b) if, under the standards set forth in Secs. 2635.402 and 2635.502, it would require the employee's disqualification from matters so central or critical to the performance of his official duties that the employee's ability to perform the duties of his position would be materially impaired.

### 5 CFR 3101, Supplemental Standards of Ethical Conduct for Employees of the Treasury Department

5 CFR 3101.110(3) - Prohibition on outside employment

No employee of the USCB shall work for a customs broker, international carrier, bonded warehouse, foreign trade zone, cartman, law firm engaged in the practice of customs law or importation department of a business nor be employed in any privately owned business related to the importation or exportation of merchandise

# EXHIBIT D

## MEMORANDUM FROM KEVIN D. YOUNG TO CBP DIRECTORS OF FIELD OPERATIONS (DATED DEC. 1, 2006)

DEC-06-2006  07:06         7USDA, APHIS PPQ                                        P.03

Deputy Assistant Director, Mission Support
U.S. Customs & Border Protection
Field Office Los Angeles
Voice: (562) 980-3140 x106
Fax:    (562) 980-3359
Blackberry: (562) 537-8026
----- Forwarded by JEANNETTE LEWIS/NE/USCS on 12/01/2006 04:32
PM -----

           KEVIN W
           WEEKS/NE/USCS
                                                              To
           12/01/2006          STEVE
           02:32 PM            PAVICH/NE/USCS@USCUSTOMS,
                               JEANNETTE
                               LEWIS/NE/USCS@USCUSTOMS
                                                              cc

                                                           Subject
                               Fw: FRM 07-0296 -- EMPLOYEES
                               SERVING IN PUBLIC OFFICE DATA
                               REQUEST/CENTRALIZED PROCESS


       FYI!

       Kevin Weeks
       Director, Field Operations
       US Customs & Border Protection
       Field Office Los Angeles (FOLA)
       562-980-3100 (Voice)
       562-537-8934 (BB#)
       888-635-4571 (Pager)
       562-980-3107 (Fax)
       562-271-3106 (Cell)
       email - kevin.weeks@dhs.gov
       ----- Forwarded by KEVIN W WEEKS/NE/USCS on 12/01/2006 02:24 PM
       -----

           KEVIN D
           YOUNG/NE/USCS
                                                              To
           12/01/2006          DIRECTORS FIELD OPS
           01:35 PM                                          cc
                               PATRICIA M
                               DUFFY/NE/USCS@USCustoms, JOHN
                               P HELM/NE/USCS@USCustoms,
                               CHRIS YOKUS@USCUSTOMS, SUZANNE
                               L WILSON/NE/USCS@USCustoms,
                               JAMES N DESTEFANO@USCUSTOMS,
                               JENNIFER A
                               SAVA/NE/USCS@USCUSTOMS
                                                           Subject
                               FRM 07-0296 -- EMPLOYEES

SERVING IN PUBLIC OFFICE DATA
REQUEST/CENTRALIZED PROCESS

We need your immediate assistance!  We need to determine the
scope of employees serving in public office positions.
Therefore, each DFO shall provide a report on all employees
under their purview who are currently holding elected or
appointed public office; employees who have requested approval
for running for or serving in such governmental offices;
employees who have requests pending for running for or serving
in such governmental offices; and employees who have held such
positions (whether with or without outside employment or
activity approval) at any time in the past.  For purposes of
this request, "elected or appointed public office" means the
position of mayor, city council member, alderman, trustee, city
manager, and such similar governmental positions.

Provide the report by email and include the employee's name,
position, grade, and location as well as the title of the
public position, the location of the public position, dates of
service (if known), and whether formal approval was granted.
Please provide your responses as soon as possible but not later
than Friday, December 8th to attorney Chris Yokus and please
copy Associate Chief Counsel, John P. Helm, and me.

NOTE:  From this point forward, all requests and or pending
requests for outside employment that involve public office
shall be forwarded to headquarters for review and approval.
DFO's no longer have authority to approve requests for outside
employment that involve public office.  Please forward such
requests to my attention.

Thanks,

Kevin D. Young
Management and Program Analyst
DHS/CBP/OFO/Field and Resource Management, Human Resources
kevin.d.young@dhs.gov
202.344.1604/2225 (fax) 3.4-C

# EXHIBIT E

## CBP STANDARDS OF CONDUCT

# CUSTOMS AND BORDER PROTECTION DIRECTIVE

**ORIGINATING OFFICE:** HRM:ER

**DISTRIBUTION:** SL-01
**CBP DIRECTIVE NO.** 51735-013
**DATE:** JUNE 21, 2004
**SUPERSEDES:**
**REVIEW DATE:** JUNE 2007

**SUBJECT:  STANDARDS OF CONDUCT**

1.     PURPOSE.  This directive establishes the U.S. Customs and Border Protection (CBP) policy on the ethical conduct and responsibilities of employees.

2.     SCOPE.  This CBP directive applies to all personnel employed by or detailed to all CBP organizational elements.

3.     AUTHORITIES.  This directive is governed by and supplements the following authorities:

3.1     Executive Order (E.O.) 12674, Principles of Ethical Conduct for Government Officers and Employees.

3.2     Department of Homeland Security (DHS) Management Directive System - MD Number 0480.1, Standards of Conduct.

3.3     Title 5 Code of Federal Regulation (CFR) Part 2635, Standards of Ethical Conduct for Employees of the Executive Branch.

3.4     Title 5 CFR Part 735, Employee Responsibilities and Conduct.

4.     INTRODUCTION.

4.1     In fulfilling its mission, CBP and its employees must sustain the trust and confidence of the public they serve.  All employees must maintain high standards of honesty, impartiality, character, and conduct to ensure the proper performance of government business and the continued trust and confidence of the public.  The conduct of CBP employees must reflect the qualities of integrity and loyalty to the United States; a sense of responsibility for the public trust; courtesy and promptness in dealing with and serving the public; and a standard of personal behavior that reflects positively upon, and will be a credit to, both CBP and its employees.

4.2     Certain conduct, on or off duty, may subject an employee to appropriate disciplinary action whether or not such conduct is specifically addressed in these standards, the standards listed above under Authorities, or in related statutes or

2

regulations. Employees will be held accountable for their actions, and will be subject to appropriate disciplinary action when their conduct:

- Fails to conform to these standards or related statutes and regulations.
- Raises the presumption of a connection between the conduct and the efficiency of the service because of the nature and gravity of the conduct (e.g., criminal conduct).
- Directly and negatively impacts the job performance of an employee or his/her co-workers, or management's trust and confidence in an employee's job performance.
- Adversely affects or interferes with CBP's accomplishment of its mission.

5.      EMPLOYEE RESPONSIBILITIES.

5.1     Every CBP employee is required to: (1) know the Standards of Conduct and their application to his or her behavior; (2) seek information from his or her supervisor if unsure of the application of the Standards of Conduct; (3) adhere to the Standards of Conduct; and (4) be aware of the consequences of violation of the Standards of Conduct, and of applicable statutes, regulations and rules regarding conduct.

6.      STANDARDS OF CONDUCT.

6.1     CONDUCT PREJUDICIAL TO THE GOVERNMENT.  Employees shall not engage, on or off duty, in criminal, infamous, dishonest, or notoriously disgraceful conduct, or any other conduct prejudicial to the government.

6.2     PROHIBITED ACTIONS.  Employees will avoid any action, whether or not specifically prohibited by these Standards of Conduct, which might result in, or reasonably create the appearance of:

- Using public service for private gain.
- Giving preferential treatment to a private organization or individual in connection with official government duties and/or responsibilities.
- Impeding government efficiency or economy.
- Engaging in activities which conflict with official government duties and/or responsibilities.

6.3     INTEGRITY-RELATED MISCONDUCT.  Integrity is essential to the effective functioning of CBP.  Only by each and every employee maintaining the highest standards of integrity and professionalism can CBP keep the public trust and confidence that are critical to our ability to perform our law enforcement, homeland security and other missions.

6.3.1   Employees will neither agree to nor directly or indirectly solicit or accept money or any thing of value for or because of any official act or duties performed by them or for the failure to perform any official act or duties.

3

6.3.2  In addition to other responsibilities to report misconduct, employees shall promptly report any offer of money or anything of value.

6.3.3  Employees shall not take any official act or fail to do so, for personal benefit or gain to the employee or members of the employees' family.

6.3.4  Employees will not use the authority of their position in any way that might result in adversely affecting public confidence in the integrity of CBP and of the government.

6.3.5  Employees will not use any CBP identification in a manner which may reasonably give the perception that they are using the identification for personal benefit, attempting to exert undue influence, or to obtain, directly or indirectly, a favor, reward, or preferential treatment for themselves or others, or to improperly enhance their own image.

6.3.6  Inappropriate Association.  Employees will not, except as may be necessary in connection with official assignments or duties, associate with individuals or groups who are believed or known to be connected with criminal activities.  This limitation on association covers any social, sexual, financial, or business relationship with a source of information, a suspected or known criminal, or an illegal alien, subject to being removed from the United States of America.

6.4     FALSE STATEMENTS.

6.4.1  Employees will not make false, misleading, incomplete, or ambiguous statements, whether oral or written, in connection with any matter of official interest.

6.4.2  When directed by competent authority, employees must truthfully and fully testify, provide information, or respond to questions (under oath when required) concerning matters of official interest that are being pursued administratively.

6.5     DISCLOSURE AND SAFEGUARDING OF OFFICIAL INFORMATION.

6.5.1  Employees will not disclose official information without proper authority. Examples of official information include information that is protected from disclosure by statute, Executive Order or regulation; proprietary business information; and sensitive information retrieved from CBP automated systems.  Even information not within these categories may constitute official information for purposes of this section.  Official information includes any information that an employee acquires by reason of CBP employment, that he or she knows, or reasonably should know, has not been made available to the general public.

6.5.2  CBP utilizes automated systems that are considered "sensitive but unclassified."  These systems include the Treasury Enforcement Communications System, Automated Commercial Environment, Automated Commercial System, the

4

National Criminal Information Center, National Automated Immigration Lookout System, as well as others. They contain, for example, financial, law enforcement, trade-sensitive, and counter narcotics information. Employees must safeguard all sensitive information against unauthorized disclosure, alteration, or loss. Unauthorized accessing of these systems, including "browsing" (querying the systems for information for other than official reasons) is also prohibited.

6.5.3  Employees will not access, conceal, alter, remove, mutilate, or destroy documents or data in the custody of CBP or the Federal Government without proper authority. Employees are required to care for and conserve such documents according to federal law and CBP policy. When leaving CBP, employees are responsible for adhering to DHS and CBP standards governing the removal of official papers from the agency.

## 6.6    USE OF CONTROLLED SUBSTANCES.

6.6.1  CBP is charged with the responsibility for interdicting illegal drugs that are being brought into the United States. Therefore, users of illegal drugs will not be selected for employment in CBP, and removal action will be initiated with respect to any CBP employee who is found to use, possess, sell, or distribute illegal drugs.

## 6.7    GENERAL CONDUCT.

6.7.1  Employees will be appropriately dressed for their workplace, business contacts, and duties. All employees will be properly groomed. Unless otherwise authorized, uniformed employees will report for duty and remain in the uniform authorized for their work location and duties.

6.7.2  Employees are expected to perform their duties to the government and the public conscientiously, respond readily to the lawful direction of their supervisors, and follow agency policies and procedures.

6.7.3  Employees will be professional in their contact with members of the public and co-workers. "Professional" for the purposes of this provision, means being polite, respectful, and considerate. This requirement to be professional must be adhered to even under difficult conditions, in times of personal stress, and in the face of provocation so long as it does not compromise employee safety or impede the performance of official duties.

6.7.4  Employees must observe designated duty hours and be punctual in reporting for work, including overtime assignments, and in returning from lunch and breaks.

6.7.5  Employees will use official duty time to perform official duties.

6.7.6  Employees assigned to inspectional, border protection, or other enforcement

5

duties will not leave their assigned posts until properly relieved or otherwise authorized to depart.

6.7.7  Leave is to be used in accordance with its intended purpose and must be approved in advance whenever possible in accordance with local requirements.

6.7.8  CBP does not tolerate violence in the workplace. Therefore, employees will not participate in, or condone activities that involve violence in the workplace. Such violence includes communicating a direct or indirect threat of physical, mental, or emotional harm. Threats can take the form of written or verbal statements, stalking activity, and facial expressions or physical gestures. This would not preclude the use of force in accordance with agency policies regulating its use in the conduct of law enforcement activities.

6.8    CARE OF MONEY AND PROPERTY.

6.8.1  Employees who have access to, receive, or come into possession, custody or control of property, money, or other items of value belonging to the agency shall follow established procedures, or use standards of care that are reasonable under the circumstances, when they account for, conserve, protect, or dispose of such property, money, or items of value.

6.8.2  Employees must promptly report to their supervisors any loss, misplacement, theft, damage, or destruction of property, money, or other items of value belonging to the agency.

6.8.3  Upon separation, transfer, or reassignment, or on demand from the proper authority, employees will return all government-owned or leased property or items of value issued to them for use in carrying out their official duties.

6.9    USE OF GOVERNMENT PROPERTY OR OTHER RESOURCES.

6.9.1  Office Equipment and Computers.

6.9.1.1  Generally, CBP employees may use government office equipment for authorized purposes only. However, limited personal use of government office equipment by employees during non-work time is considered to be an "authorized use" of government property if such use involves only minimal additional expense to CBP and does not: adversely affect the performance of official duties; interfere with the mission or operations of CBP; overburden any CBP information resources; or violate any standard of conduct herein. The privilege to use government-owned office equipment for personal purposes may be revoked or limited by the employee's supervisor or other authorized official.

6.9.1.2  The use of government computers or other equipment to access, view, store, or transmit sexually explicit material is prohibited.

6

6.9.1.3  Employees will use only CBP authorized software on CBP computers.  All software use must comply with copyright laws and/or license agreements.  Employees will adhere to security policy and procedures regarding the use and protection of their computer identification and passwords.

6.9.1.4  Employees shall not use government documents for private or unofficial purposes, circulate them to audiences for which they were not intended, or in any way alter the intended distribution of such documents with respect to their limited organizational or other application.  CBP employees may not use postage-paid official envelopes or letterhead for personal purposes.

6.9.2   Government-sponsored Credit Cards.

6.9.2.1  Employees shall safeguard government-sponsored credit cards under their care, including travel cards, phone cards, fleet cards, and purchase cards, and will promptly report the loss of such cards to their supervisors and to the issuing company. As cardholders, employees are responsible for using the credit card strictly in accordance with both the government requirements and those of the financial institution issuing the card.

6.2.2.2  Government-sponsored travel (credit) cards may be used only for official travel and official travel-related expenses away from an employee's official duty station and may not be used for personal purposes.  Only the employee whose name appears on the credit card may use the card.  An employee who holds a government-sponsored travel card must pay all valid charges appearing on the credit card statement in full when due each month.

6.9.2.3  Fleet cards will be used only to pay for authorized goods and services for government-owned vehicles (GOVs).

6.9.2.4  Purchase cards will be used only for authorized goods and services for CBP. When planning and making purchases, purchase cardholders are required to comply with officially designated mandatory sources of supply and funding limitations of their cards. Cardholders are responsible for being cognizant of the rules, policies, and procedures regarding the use of their cards and will not circumvent or disregard those rules, policies or procedures (e.g., split-purchases, etc.). Cardholders are required to consult with a warranted contracting officer or the appropriate program official, when any question arises about a potential source for purchase of a service or supply.

6.9.3   Government Identification.

6.9.3.1  Badges, credentials, and identification cards are to be used by CBP employees only for official purposes.  Employees will promptly report the loss of any badges, credentials, and/or identification cards to their supervisor.

7

### 6.9.4  Government vehicles.

6.9.4.1  GOVs are "passenger carriers" which include, but are not limited to:  passenger motor vehicles, aircraft, boats, ships, or other similar means of transportation that are owned or leased by the United States. Employees will not use, or authorize the use of, a GOV except for official purposes, i.e., those deemed essential to the successful completion of the official mission. The transportation of individuals in a GOV, including family members, is prohibited, unless officially authorized. Willful use of a GOV for other than official purposes carries a <u>minimum</u> statutory penalty of a 30-day suspension from duty and pay.

6.9.4.2  Employees will not consume alcoholic beverages while operating a GOV and for a reasonable period of time prior to operating a GOV.  Driving a GOV while impaired by alcohol is prohibited under all circumstances.

6.9.4.3  Any employee operating a GOV must observe all applicable state and local traffic laws consistent with the flexibility required for the conduct of law enforcement activities.  Even then, employees are responsible for exercising due caution to ensure the safe operation of their vehicle.

### 6.9.5  Firearms.

6.9.5.1  Unless firearms are authorized and required in the performance of duty, employees will not carry firearms, either openly or concealed, while on government property or on official duty.

6.9.5.2  Employees authorized to carry firearms will do so strictly in accordance with applicable firearms policies.  Employees carrying firearms are prohibited from consuming alcoholic beverages.

6.9.5.3  Employees authorized to carry and maintain firearms must not leave their firearms unattended and are responsible for properly storing their firearms in accordance with applicable policy.  Upon discovery, employees must promptly report the loss or theft of their firearms to their supervisor.

### 6.10  USE OF ALCOHOLIC BEVERAGES.

6.10.1  Employees will not report for duty or remain on duty under the influence of alcohol.

6.10.2  Unless specifically authorized, employees may not consume alcoholic beverages while on official duty.

6.10.3  Under no circumstances will employees operate a GOV, on or off duty, while under the influence of alcohol.

8

6.10.4 Uniformed employees will not purchase or consume alcoholic beverages, on or off duty, while in uniform.

6.10.5 Members of aircrews will not consume alcoholic beverages within 8 hours prior to their performing scheduled flight duties. Any member of an aircrew who is found to have done so will be considered impaired for duty. Furthermore, even if a member of an aircrew has not consumed an alcoholic beverage during the 8-hour period immediately preceding flight duties, he or she may be considered impaired for duty if he or she, upon reporting for duty, is found to be suffering the residual effects of alcohol consumption.

## 6.11  BIAS-MOTIVATED CONDUCT.

6.11.1 Employees will not act or fail to act on an official matter in a manner which improperly takes into consideration an individual's race, color, age, sexual orientation, religion, sex, national origin, or disability.

6.11.2 Employees will not make abusive, derisive, profane, or harassing statements or gestures, or engage in any other conduct, evidencing hatred or invidious prejudice to or about another person or group on account of race, color, religion, national origin, sex, sexual orientation, age, or disability.

6.11.3 Employees will not engage in sexual harassment. Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

## 6.12  GAMBLING.

6.12.1 CBP employees will not engage in any gambling activity on government premises, and/or using government equipment, including an office pool or any game with financial stakes. This prohibition also covers gambling on the Internet.

## 6.13  FINANCIAL MATTERS.

6.13.1 Lending and Borrowing Money.

6.13.1.1 An employee cannot give, make a donation to, or ask for contributions for a gift to his or her supervisor (immediate or in the chain of command). A gift includes any gratuity, favor, discount, entertainment, hospitality, loan, forbearance, or other item having monetary value. In addition, an employee cannot accept a gift from another employee who earns less pay, unless the person giving the gift is not a subordinate and

the gift is based on a strictly personal relationship. There are exceptions to these prohibitions. There is an exception for voluntary gifts worth more than $10 on a special occasion such as marriage, illness, or retirement. Gifts valuing less than $10 may be given and received on occasions when gifts are traditionally given or exchanged. An employee may give and/or receive items of food and refreshments to be shared at work among employees.

6.13.1.2  Supervisors will not request or require an employee under their supervision to act as a co-maker, co-signer, or endorser in financial matters. Furthermore, supervisors will not act as co-makers, co-signers, or endorsers in financial matters for employees under their supervision.

6.13.2  Financial Disclosures. Employees who occupy certain positions are required to file statements of employment and financial interests within 30 days of their entrance on duty and are further required to file annual supplemental statements. Affected employees will be notified of their requirement to file such statements.

6.13.3  Fund Raising Campaigns. Employees may refuse to participate in government-sponsored fund-raising campaigns. Supervisors will not exert pressure on employees to participate in such fund-raising campaigns.

6.13.4  Gifts. Except as provided in the Standards of Ethical Conduct for Employees of the Executive Branch, an employee will not directly or indirectly solicit or accept a gift from a prohibited source, or a gift given because of the employee's official position.

6.13.5  Just Financial Obligations. Employees will satisfy all just financial obligations in a timely manner, especially Federal, state, or local taxes that are imposed by law, and balances appearing on monthly statements of employees' government-sponsored credit cards.

6.13.6  Prohibition on Purchase of Certain Assets. Employees will not purchase, directly or indirectly, property owned by the government and under the control of CBP or sold under the direction or incident to the functions of CBP, except items sold generally to the public at fixed prices.

6.14   SAFETY. Employees will observe safe practices as well as all safety regulations in the performance of their duties. Employees will promptly report to their supervisors any injury or accident that occurs in connection with the performance of their official duties by the most expeditious means available.

6.15   OUTSIDE/FAMILY MEMBER EMPLOYMENT.

6.15.1 Employees must complete and submit the appropriate form through their supervisor for approval before entering into any outside employment or business activity. As a general rule, employees may, with prior approval, engage in any outside employment or business activity, provided such employment or activity is not prohibited

10

and does not interfere or conflict with performance of their official duties. No CBP employee shall work for a Customs broker, international carrier, bonded warehouse, foreign trade zone, cartman, or law firm engaged in the practice of customs or immigration law, any businesses or service organizations which assist aliens, or other companies engaged in services related to Customs or Immigration matters. This prohibition includes employment in the importation department of a business, employment in any private capacity related to the importation or exportation of merchandise or agricultural products requiring inspection, and employment related to immigration.

6.15.2 Any employee, who has a family member (spouse, child, or other relative, by marriage or blood, who is dependent upon the employee and/or resides in the employee's household), employed in one of the above listed categories, the employee must file an annual report through their supervisor to Office of Chief Counsel, for a determination as to whether the employment constitutes a conflict of interest or the appearance of a conflict of interest, with the CBP employee's performance of official duties.

6.16    POLITICAL ACTIVITY.  Employees may take an active part in political management or in political campaigns to the extent permitted by law (Title 5 U.S.C. 7321-7325), vote as they choose, and openly express their opinions on political subjects and candidates.  Employees may not use their official authority or influence to interfere with or affect election results. Employees may be disqualified from employment for knowingly supporting or advocating the violent overthrow of our constitutional form of government.

6.16.1 The following list contains example of permissible activities for CBP employees who are not Senior Executive Service (SES).  See Title 5 CFR Part 734, Subpart B.

- Stand as candidates for public office in nonpartisan elections.
- Register and vote as they choose.
- Assist in voter registration drives.
- Express opinions about candidates and issues.
- Contribute money to political organizations.
- Attend political fund-raising functions.
- Campaign for or against candidates in partisan elections.
- Make campaign speeches for candidates in partisan elections.
- Distribute campaign literature in partisan elections.
- Hold office in political clubs or parties.
- Attend and participate in political rallies and meetings.
- Join and be active members of a political party or club.
- Sign nominating petitions.
- Campaign for or against referendum questions, constitutional amendments, and municipal ordinances.

11

6.16.2 The following list contains examples of prohibited activities for CBP employees who are not SES. See Title 5 CFR Part 734, Subpart C.

- Engage in political activity (an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group) while on duty, in a government office, wearing an official uniform, or driving a GOV.
- Use official authority or influence to interfere with an election.
- Solicit or discourage political activity on the part of anyone with business before CBP.
- Solicit or receive political contributions from any person except in certain limited situations as specified in Title 5 U.S.C. 7323 (a)(2).
- Be candidates for public office in partisan elections.
- Wear partisan political buttons while on duty.

6.16.3 The SES employees are subject to greater restrictions than those identified above. These individuals should refer to Title 5 U.S.C. Part 7321, or consult the Office of Chief Counsel.

6.16.4 Employees who reside in localities (designated by the Office of Personnel Management) where the majority of voters are employed by the Federal Government are covered by additional provisions (See Title 5 CFR Part 733).

Commissioner
U.S. Customs and Border Protection