IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAIME RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-65 |
| | ) | Judge Gladys Kessler |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR A PRELIMINARY INJUNCTION**

GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

BARBARA A. ATKIN
Deputy General Counsel
D.C. Bar No. 225797

ROBERT H. SHRIVER, III
Assistant Counsel
D.C. Bar No. 456858

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, NW
Washington, DC 20006
(202) 572-5500

Date: February 22, 2007          <u>Attorneys for Plaintiff</u>

## <u>TABLE OF CONTENTS</u>

**Page:**

I. THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER RAMIREZ'S CLAIM.............................................................................................................2

   A. Under Well-Established Precedent, This Court Has Jurisdiction To Order Injunctive Relief To Protect Ramirez from Suffering Irreparable Harm ..................................................................................................3

   B. In Any Event, Ramirez Is Not Required To Exhaust Administrative Remedies in Order To Secure Judicial Review of His APA Claim..............................................................................................................5

   C. There Is No Exhaustion Requirement Because Ramirez Has No Remedy for CBP's Unconstitutional Order To Resign from the City Council Before OSC or Through the Negotiated Grievance Procedure .......................................................................................................7

     1. Ramirez has no remedy before OSC...................................................7

     2. Ramirez's claim is not subject to the negotiated grievance procedure...........................................................................................10

II. CBP'S ORDER THAT RAMIREZ RESIGN HIS CITY COUNCIL SEAT IS UNCONSTITUTIONAL ...........................................................................................11

   A. CBP's Order That Ramirez Resign His City Council Seat Significantly Burdens His First Amendment Freedoms...............................................12

   B. The Government Has Failed To Establish That Its Interest in Avoiding an Appearance of a Conflict of Interests Outweighs Ramirez's First Amendment Freedoms.................................................................15

III. THE GOVERNMENT HAS FAILED TO REBUT RAMIREZ'S SHOWING OF IRREPARABLE HARM ............................................................................................22

CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page:**

## CASES

Bennett v. Spear, 520 U.S. 154 (1997) ...................................................................6

Bowen v. City of New York, 476 U.S. 467 (1986) ................................................4

Brown v. Glines, 444 U.S. 348 (1980) .............................................................11, 15

Caddell v. Department of Justice, 52 M.S.P.R. 529 (1992)..............................9, 10

Clements v. Fashing, 457 U.S. 957 (1982) .........................................................14

Cochrane v. Dep't of Vet. Aff., 67 M.S.P.R. 167 (1995) .....................................9

Connick v. Myers, 461 U.S. 138 (1983) ..............................................................16

Darby v. Cisneros, 509 U.S. 137 (1993)...............................................2, 4, 5, 6, 7

Diesel Equipment Corp. v. Hirsch, 331 U.S. 752 (1947) ......................................4

Edwards v. Dep't of Health and Human Serv.,
  2006 MSPB LEXIS 2990 (June 13, 2006)......................................................10

Elrod v. Burns, 427 U.S. 347 (1976) ...................................................................23

Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).................................................11, 15

Int'l Fed'n of Prof'l and Tech. Engineers and SSA,
  57 F.L.R.A. 915 (2002).....................................................................................10

Jackson v. District of Columbia, 254 F.3d 262 (D.C. Cir. 2001) .........................4

Johnson v. Department of Health and Human Services,
  93 M.S.P.R. 38 (2002) ..............................................................................8, 9, 10

McCarthy v. Madigan, 503 U.S. 140 (1992) .....................................................3, 4

McGee v. United States, 402 U.S. 479 (1971).....................................................3

Mudge v. United States, 308 F.3d 1220 (2002),
  reh'g and reh'g en banc denied, 2003 U.S. App. LEXIS 3372 (Fed. Cir. 2003)..............11

NTEU v. King, 961 F.2d 240 (D.C. Cir. 1993) ...............................................................3, 4

Patsy v. Board of Regents, 457 U.S. 496 (1982) ...............................................................3

Pickering v. Board of Educ., 391 U.S. 563 (1968) .....................................................15, 16

Rankin v. McPherson, 483 U.S. 378 (1987) ................................................................ 15-16

Roberts v. United States Jaycees, 468 U.S. 609 (1984)....................................................13

Special Counsel v. Spears, 75 M.S.P.R. 639 (1997)....................................................9, 10

Steadman v. Governor, United States Soldiers' and Airmen's Home,
  918 F.2d 963 (D.C. Cir. 1990) ...............................................................................3, 4, 5

Texas v. Johnson, 491 U.S. 397 (1989) ...........................................................................15

Ticor Title Ins. Co. v. FTC, 814 F.2d 731 (D.C. Cir. 1987).................................................3

Tinker v. Des Moines Independent Community School Dist.,
  393 U.S. 503 (1969)......................................................................................................15

Turner Broadcasting Sys. v. FCC, 512 U.S. 622 (1994) ...................................................21

United States v. NTEU, 513 U.S. 454 (1995).............................................................21, 22

United States v. O'Brien, 391 U.S. 367 (1968) ................................................................15

Waters v. Churchill, 511 U.S. 661 (1994) .......................................................................15

Weaver v. United States Info. Agency, 87 F.3d 1429
  (D.C. Cir. 1996) ...................................................................................................3, 4, 5, 9

Whitman v. Dep't of Transp., No. 04-1131 (dated May 2, 2006) .......................................5

Whitman v. Department of Transportation, 126 S. Ct. 2014 (2006) ..................................5

Whitman v. Department of Transportation, 382 F.3d 938
  (9th Cir. 2004), rev'd, 126 S. Ct. 2014 (2006)...................................................................5

## STATUTES AND REGULATIONS

Civil Service Reform Act of 1978,
 Pub. L. No. 95-454, 92 Stat. 1111 ...................................................................................2

5 U.S.C. app. 4 §§ 101-505 .........................................................................................21

5 U.S.C. § 551(13) ........................................................................................................6

5 U.S.C. § 702 ...........................................................................................................2, 6

5 U.S.C. § 704 ..............................................................................................................6

5 U.S.C. § 2302(a)(2)(A) ..............................................................................................8

5 U.S.C. § 2302(a)(2)(A)(iii) ...............................................................................8, 9, 10

5 U.S.C. § 2302(b)(11) .................................................................................................8

5 U.S.C. § 2302(b)(12) .................................................................................................8

5 U.S.C. § 7121(a) ......................................................................................................11

5 U.S.C. § 7121(a)(1) ..................................................................................................11

5 U.S.C. § 7121(g) ......................................................................................................11

5 C.F.R. Part 2638, Subpart B ....................................................................................18

5 C.F.R. 2638.203 .......................................................................................................18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JAIME RAMIREZ,                          )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )        Civil Action No. 1:07-CV-65
                                        )        Judge Gladys Kessler
U.S. CUSTOMS AND BORDER PROTECTION,     )
et al.,                                 )
                                        )
            Defendants.                 )
_____     )

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

Plaintiff Ramirez has applied for a preliminary injunction blocking an order by his employer, U.S. Customs and Border Protection (CBP), that directs him to resign his unpaid seat on the nonpartisan City Council of Presidio, Texas, by March 8, 2007.  In opposing his application, the government contends that this Court lacks subject-matter jurisdiction because Ramirez allegedly did not exhaust administrative remedies; that the government's interest in avoiding an actual or apparent conflict of interest justifies the burden on Ramirez's First Amendment rights; and that Ramirez is not irreparably harmed because, it alleges, he has not established his claim on the merits.

As shown below, jurisdiction lies in this Court to enter equitable relief to prevent irreparable harm, whether or not any administrative remedies exist.  In any event, no administrative remedies are available to Ramirez.  In fact, on February 16, 2007, Ramirez filed a complaint with the Office of Special Counsel (OSC) alleging, as the government suggested, that CBP's order that he resign constitutes a prohibited personnel practice.  See Exhibit A.  OSC

advised counsel today that it has concluded that it lacks jurisdiction because the order does not constitute a "personnel action."  See Exhibit B.

On the merits, the government has failed to establish an interest that warrants the restriction it is imposing on Ramirez's First Amendment rights.  Indeed, the restriction is a total reversal of a practice dating back several years under which employees of CBP and its predecessor agencies, including Ramirez himself, served with approval on the Presidio City Council or as mayor.  The government has also failed to rebut Ramirez's showing that he will suffer irreparable harm unless the Court grants him injunctive relief, because he will have to resign his seat on the City Council--a step that cannot be remedied by the Court.

## I.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER RAMIREZ'S CLAIM

The government argues that this Court lacks subject-matter jurisdiction over Ramirez's claim because, it contends, Ramirez was required to exhaust administrative remedies allegedly available to him under the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (CSRA).  This contention is meritless for three independent reasons.

First, as we show below (at 3-5), the Supreme Court and this circuit have repeatedly confirmed that a plaintiff is not required to exhaust administrative remedies where, as here, irreparable harm would result absent immediate judicial review.  Second, consistent with Darby v. Cisneros, 509 U.S. 137 (1993), the Court may not impose an exhaustion requirement upon Ramirez because his claim challenges final agency action under the Administrative Procedure Act (APA), 5 U.S.C. § 702.  In such cases, Darby holds that exhaustion is a prerequisite to judicial review "only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review."  Id. at 154 (emphasis in original).  Neither condition is satisfied here.

2

Third, Ramirez was not required to exhaust administrative remedies because, in fact, such remedies do not exist, as confirmed by OSC's prompt closure of the complaint Ramirez filed with it last week on the ground that it lacks jurisdiction. Contrary to the government's claims, there is no administrative procedure that would permit Ramirez to challenge CBP's withdrawal of permission for him to engage in "outside employment" as a member of the Presidio City Council. Therefore, this Court has subject-matter jurisdiction over Ramirez' claims.

A.    **Under Well-Established Precedent, This Court Has Jurisdiction To Order Injunctive Relief To Protect Ramirez from Suffering Irreparable Harm**

Exhaustion is a "flexible doctrine" in which "congressional intent is 'of paramount importance,' and in which 'sound judicial discretion governs when Congress has not clearly required otherwise.'" NTEU v. King, 961 F.2d 240, 243-44 (D.C. Cir. 1993) (quoting and citing Patsy v. Bd. of Regents, 457 U.S. 496, 501 (1982); McGee v. United States, 402 U.S. 479, 483 n.6 (1971); Ticor Title Ins. Co. v. FTC, 814 F.2d 731, 738-43 (D.C. Cir. 1987) (op. of Edwards, J.)). It is a jurisprudential consideration affecting the timing of judicial review, and not whether a court can exercise judicial review. See NTEU, 961 F.2d at 243. In appropriate cases it can be waived.

In this case, the government concedes (Gov't Br. at 11-12), as it must, that Ramirez is entitled to judicial review of his claim. See, e.g., Weaver v. United States Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996); Steadman v. Governor, United States Soldiers' and Airmen's Home, 918 F.2d 963, 968 (D.C. Cir. 1990) (both recognizing federal court jurisdiction to enter injunctions to protect constitutional rights after administrative procedures are exhausted). Its argument is that he cannot secure that review until after he exhausts administrative remedies.[1]

---

[1] Notwithstanding its recognition that judicial review of Ramirez's constitutional claim will ultimately be available, the government's brief extensively cites cases which have held that

Irrespective of the Court's ultimate disposition of the government's argument, this Court clearly has jurisdiction to grant Ramirez's motion for a preliminary injunction.  The Supreme Court has recognized that a plaintiff may go <u>directly</u> to court, bypassing entirely any administrative remedies, where he "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim."  <u>McCarthy v. Madigan</u>, 503 U.S. 140, 146 (1992) (citing <u>Bowen v. City of New York</u>, 476 U.S. 467, 483 (1986); <u>Diesel Equipment Corp. v. Hirsch</u>, 331 U.S. 752, 773 (1947)); <u>see also</u> <u>NTEU</u>, 961 F.2d at 244 (recognizing court's jurisdiction to afford a judicial remedy prior to exhaustion to prevent irreparable harm to union's constitutional rights).

Indeed, even in cases where (unlike this one) there is an <u>explicit</u> statutory exhaustion requirement, the courts retain an "inherent equitable power" to issue injunctions maintaining the <u>status quo</u> to "prevent irreparable injury pending exhaustion of administrative remedies." <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 268 (D.C. Cir. 2001).  This inherent equitable power can only be trumped by statutory language that "expressly forecloses" its exercise.  <u>Id.</u> Thus, even if the government were correct that exhaustion of administrative remedies is required before this Court can afford Ramirez permanent relief, this Court possesses ample authority to grant Ramirez interim relief, in order to protect him from irreparable injury.

The government does not address the <u>McCarthy</u> line of cases.  As we show below (at 22-23), its argument that Ramirez will not suffer irreparable injury if this Court does not issue preliminary relief is entirely without merit.  Therefore, based on the cases cited above, this Court

---

judicial review of non-constitutional claims, as well as suits for <u>Bivens</u> type damages, are <u>precluded</u> by the CSRA.  <u>See</u> Gov't Br. at 10-11.  Because these cases concern "preclusion" and not "exhaustion," they are inapposite.

has subject-matter jurisdiction over Ramirez's request for preliminary relief now, and the government's contention to the contrary should be rejected.[2]

### B. In Any Event, Ramirez Is Not Required To Exhaust Administrative Remedies in Order To Secure Judicial Review of His APA Claim

As the government correctly notes (Gov't Br. at 11-12), the D.C. Circuit has ruled in a number of cases that--where there exist administrative remedies for violations of constitutional rights--federal employees must exhaust those remedies before filing an action in district court (unless there is a showing of irreparable injury). See, e.g., Weaver, 87 F.3d at 1433; Steadman, 918 F.2d at 968. None of these decisions, however, has considered the impact of the Supreme Court's holding in Darby v. Cisneros, 509 U.S. 137 (1993), upon the applicability of an exhaustion requirement.

A recent decision by the Supreme Court draws the soundness of prior circuit case law into question. In Whitman v. Department of Transportation, 126 S. Ct. 2014 (2006) (per curiam), the Supreme Court instructed that courts must take its decision in Darby into account when they decide whether federal employees may be required to exhaust their administrative remedies when they seek to bring constitutional challenges in court under the APA.[3]

---

[2] Instead of addressing the McCarthy line of cases, the government relies upon this circuit's decisions in Weaver, 87 F.3d 1429, and Steadman, 918 F.2d 963. See Gov't Br. at 11-12. In both cases, the court held that federal employees are generally required to exhaust available administrative procedures before bringing suit to vindicate constitutional rights. Even assuming those decisions can be reconciled with the Supreme Court's ruling in Darby, see infra at 5, they are entirely reconcilable with our argument in the text above, because the plaintiffs in Weaver and Steadman did not claim that irreparable injury would result absent immediate judicial relief. Moreover, in Weaver and Steadman, unlike this case (see, infra, 7-11), there were clear administrative channels through which the employees' claims could be reviewed.

[3] In Whitman, an employee of the Federal Aviation Administration filed an action in district court seeking to enjoin the agency from continuing to drug test him. The employee asserted both statutory and constitutional claims. The Ninth Circuit dismissed the case, finding that the claims were precluded and thus that it lacked subject-matter jurisdiction. Whitman v. Dep't of Transp.,

Under Darby, exhaustion of administrative remedies may be made a prerequisite to judicial review in APA cases "only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." 509 U.S. at 154 (emphasis in original). The Court held that the judiciary "[is] not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under § 10(c) [codified at 5 U.S.C. § 704]." Id.

Application of the Darby standard to the facts of this case establishes that this court cannot impose an exhaustion requirement on Ramirez. First, Ramirez's invocation of the APA as the vehicle for bringing his constitutional claim was clearly proper. Ramirez is a "person" who is "suffering a legal wrong," (the sacrifice of his First Amendment rights), because of "agency action" (CBP's order that he resign his City Council seat). See 5 U.S.C. § 702; see also 5 U.S.C. § 551(13) ("'agency action' includes the whole or a part of an . . . order"). The "agency action" is "final." Ramirez applied for approval for outside employment in 2004, that approval was granted, and now it has been withdrawn. The withdrawal of approval occurred three weeks after CBP centralized responsibility for considering outside employment requests in its headquarters. See Exh. D to Opening Br. There is no further avenue of review within the agency. The order from CBP marks the "consummation of the agency's decision-making

_____

382 F.3d 938 (9th Cir. 2004). The Supreme Court reversed and remanded for the Ninth Circuit to reconsider its ruling that the claims were precluded, and to address other issues that had arisen during its consideration of Whitman's petition. Most pertinent to this case, these issues included whether Whitman was required to exhaust administrative remedies before filing suit. The Court specifically directed the Ninth Circuit to consider the impact of Darby on the exhaustion issue. Indeed, the Court had directed the parties to file supplemental briefs addressing Darby after the oral argument was held. See Order, Whitman v. Dep't of Transp., No. 04-1131 (dated May 2, 2006).

process" and, therefore, is not "tentative or interlocutory in nature." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal citations omitted).[4]

Second, no statute "expressly required" Ramirez to exhaust any agency process as a "prerequisite to judicial review." Darby, 509 U.S. at 154. Even assuming that the CBP order constitutes "corrective action" for which relief could be sought from the Office of Special Counsel (OSC) or through the grievance procedure (but see, infra, at 8-10), nothing in the CSRA expressly requires an employee to pursue those remedies before proceeding to court. To the extent that any requirement to file a complaint with OSC or a grievance can be gleaned from the CSRA, it is, at best, an implicit one. Under Darby, that is not enough.

Third, there is no agency rule requiring resort to some other administrative authority before challenging the denial of approval for outside employment. Nor is there any provision for making the order to resign "inoperative pending . . . review." Accordingly, Darby instructs this Court not to infer an exhaustion requirement in this APA action.

### C.    There Is No Exhaustion Requirement Because Ramirez Has No Remedy for CBP's Unconstitutional Order To Resign from the City Council Before OSC or Through the Negotiated Grievance Procedure

The government's argument that Ramirez was required to exhaust remedies under the CSRA before filing suit in court has another fundamental flaw: the action complained of here-- the unconstitutional denial of permission for an employee to engage in outside employment--has no remedy under the CSRA, unlike the actions at issue in the cases cited by the government. Therefore, exhaustion of administrative remedies before OSC or through the negotiated grievance procedure is not required.

---

[4] The agency action being challenged is also "one by which 'rights or obligations have been determined,' or from which 'legal consequences must flow.'" Bennett, 520 U.S. at 177-78. CBP has determined that Ramirez has no right to hold a seat on the City Counsel and has imposed upon him the obligation to resign his City Counsel seat.

### 1.    Ramirez has no remedy before OSC

The government contends (at 13-15) that, before coming to court, Ramirez could have filed (and therefore was required to file) a complaint with OSC alleging that he has been the victim of a "prohibited personnel practice" within the meaning of 5 U.S.C. § 2302(b)(12).[5]  The government's argument that this matter is within the jurisdiction of OSC is without merit because, in order to commit a prohibited personnel practice, an agency must take a "personnel action" against an employee.  See 5 U.S.C. § 2302(a)(2)(A).  As mentioned, OSC has now stated its intent to close the complaint Ramirez filed last week, which made precisely the argument that the government suggested, based on its determination that CBP's order that Ramirez resign his City Council seat does not constitute a "personnel action."[6]

OSC's decision is, of course, correct.  Section 2302(a)(2)(A) lists those agency decisions which constitute "personnel actions."  An agency's decision to prohibit an employee from engaging in outside employment is not among those enumerated.[7]  Further, a search of the caselaw reveals not a single instance in which the Merit Systems Protection Board (MSPB or Board), a court, or any other adjudicator treated it as one.

Nonetheless, the government argues that CBP's denial of permission for Ramirez to sit on the City Council fits under the catch-all category of "an action taken under Chapter 75 [of the

---

[5] The government's citation to 5 U.S.C. 2302(b)(11) is outdated.  The provision that makes it a prohibited personnel practice to take a personnel action in violation of First Amendment rights is now contained at 5 U.S.C. 2302(b)(12).

[6] See Exhibit B.  The letter states that OSC has made a "preliminary determination to close [its] inquiry into [Ramirez's] allegation."  It is preliminary only in that, by statute, Ramirez is entitled to comment on the determination before OSC formally closes its file.  See 5 U.S.C. § 1214(a)(1)(D).  Ramirez does not intend to submit any such comments.

[7] The enumerated "personnel actions" include, among others, appointments, promotions, details, transfers, suspensions, removals, reassignments, reinstatements, restorations, reemployment, and performance evaluations.  Id.

CSRA] or other disciplinary or corrective action." 5 U.S.C. § 2302(a)(2)(A)(iii).  See Gov't Br. at 14.  Its sole support for that claim is a snippet of a sentence that is wrenched out of context from the MSPB's decision in Johnson v. Department of Health and Human Services, 93 M.S.P.R. 38, 45 (2002).

In Johnson, the agency employer issued a "letter of admonishment" to a whistleblower in which it faulted the employee for not following "proper reporting procedures" when he had disclosed contracting improprieties to the agency's Inspector General, and directed him to follow such procedures in the future.  Consistent with its decisions in earlier cases involving "letters of admonishment," the Board found that a personnel action had been taken against the employee.  It noted that the letter of admonishment constituted a "corrective action" because it sought to correct what the agency characterized as past misconduct by the employee.[8]

According to the government, its order withdrawing permission for Ramirez to sit on the City Council is similarly a "corrective action" solely because it "sought to change [Ramirez's] behavior."  Gov't Br. at 14.  The government's reliance on Johnson, however, is misplaced because unlike that case, CBP has not cited Ramirez for engaging in misconduct that he is being told to "correct."  Instead, its letter advised Ramirez to resign from the Council in order to avoid future disciplinary action.

At most, the letter to Ramirez might be viewed as a "counseling memorandum."  Unlike "letters of admonishment," such "counseling letters" are not punitive in nature.  Thus, the Board has held that they are not "personnel actions."  See Special Counsel v. Spears, 75 M.S.P.R. 639 (1997).  The distinction drawn in Spears is consistent with long-standing Board caselaw that a

---

[8] The personnel actions in the other cases cited by the government (Gov't Br. at 14-15) were also "admonishments."  See Weaver, 87 F.3d at 1432-33; Cochrane v. Dep't of Vet. Aff., 67 M.S.P.R. 167, 174 (1995).

personnel action must have at least some disciplinary component in order to fall under 5 U.S.C. § 2302(a)(2)(A)(iii).  See Caddell v. Department of Justice, 52 M.S.P.R. 529, 532-33 (1992) (interpreting the phrase "other disciplinary or corrective action" as limited to acts "in the nature of a Chapter 75 action," i.e., acts of a similar punitive nature, which are taken in response to employee misconduct).

CBP's letter to Ramirez was not punitive in nature.  As in Spears, the letter was designed to give Ramirez instructions that, if not followed, would later result in some remedial action.[9] Accordingly, under the reasoning of Caddell and Spears, CBP's order to Ramirez does not constitute "other disciplinary or corrective action" within the meaning of Section 2302(a)(2)(A)(iii) and, therefore, is not a personnel action subject to challenge before OSC.  See also Edwards v. Dep't of Health & Human Serv., 2006 MSPB LEXIS 2990 (June 13, 2006) (counseling memorandum is not a "personnel action").

### 2.    Ramirez's claim is not subject to the negotiated grievance procedure

The government further asserts (Gov't Br. at 16-17) that, in addition to the administrative remedy allegedly available before OSC, Ramirez also "appears" to have recourse to the grievance-arbitration procedure negotiated by his union and CBP to "contest an allegedly improper personnel action."  The Federal Labor Relations Authority, however, has held that agency denials of outside employment requests cannot be grieved.  Int'l Fed'n of Prof'l and Tech. Engineers and SSA, 57 F.L.R.A. 915 (2002) (grievance challenging agency's denial of

---

[9] In Spears, the memorandum of counseling cautioned the employee not to leave her desk too frequently during the day.  The Board noted that because "counseling would occur before any discipline is taken," it does not constitute "other disciplinary or corrective action" under 5 U.S.C. § 2302(a)(2)(A)(iii).  Spears, 75 M.S.P.R. at *61 (quoting testimony) (emphasis in original).  Thus, even though the counseling memorandum in Spears, like the letter of admonishment in Johnson, "sought to change the [plaintiff's] behavior" (Gov't Br. at 14), the Board ruled that it was not a "personnel action."

outside employment request dismissed as non-arbitrable).  See also Office of Government Ethics,

99 X 5, Memorandum Regarding OGE Regulations and an Agency's Duty To Engage in

Collective Bargaining (dated Apr. 12, 1999), at 2 (agency decisions on requests for approval to

engage in outside employment not subject to collective bargaining process).

Further, and in any event, even if Ramirez could conceivably invoke the grievance

procedure to challenge denials of outside employment requests, that fact would have no effect on

his right to pursue judicial remedies for the constitutional violation at issue here.  Congress made

that clear in 1994, when it amended 5 U.S.C. § 7121(a)(1) to provide that grievance procedures

are the "exclusive administrative procedures for resolving grievances which fall within its

coverage."   This amendment shows that Congress did not intend the availability of a grievance

process to have any effect upon employees' rights to secure judicial review. Cf. Mudge v. United

States, 308 F.3d 1220 (2002), reh'g and reh'g en banc denied, 2003 U.S. App. LEXIS 3372 (Fed.

Cir. 2003) (plain language of amendment adding word "administrative" to Section 7121(a)

showed that access to judicial remedies not affected by availability of remedy through grievance

procedures).  Accordingly, this Court should reject the government's argument that Ramirez was

required to resort to the negotiated grievance procedure before filing this action.[10]

## II.    CBP'S ORDER THAT RAMIREZ RESIGN HIS CITY COUNCIL SEAT IS UNCONSTITUTIONAL

In his opening brief (at 11-21), Ramirez showed that the CBP order directing him to

resign his City Council seat burdens his First Amendment freedoms of speech and association (as

well as the rights of the voters who elected him).  He acknowledged that the government has

---

[10] Finally, as noted above, Ramirez filed a timely complaint with OSC on February 16, 2007. When he filed that complaint, he elected his remedy for pursuing the alleged "prohibited personnel practice" CBP committed.  Under 5 U.S.C. § 7121(g), Ramirez is now foreclosed from invoking the negotiated grievance procedure to vindicate his constitutional claims.

greater latitude when it regulates the speech of its employees, as opposed to its citizens.

Nonetheless, employees still "must face only those speech restrictions that are necessary for their

employers to operate efficiently and effectively."  Garcetti v. Ceballos, 126 S.Ct. 1951, 1958

(2006); see also Brown v. Glines, 444 U.S. 348, 354-55 (1980) (restrictions on public

employees' speech must be no broader than is "reasonably necessary" to protected the

government's interests).  Applying these standards, Ramirez argued that CBP's order directing

him to resign from the City Council violated the First Amendment because it was not

"reasonably necessary" to protect CBP's stated goal:  preventing real or apparent conflicts of

interest.

In response, the government argues that its requirement that Ramirez choose between his

job and his seat on the City Council places only an "insignificant" or "de minimis" burden on

Ramirez's First Amendment rights.  The government also argues that it is necessary to restrict

Ramirez's First Amendment rights in order to avoid even the appearance of a conflict of interest

between Ramirez's job as a CBP Officer and his service as an unpaid member of the Presidio

City Council.  See Gov't Br. at 18-31.

These contentions are meritless, as shown below.  The order directing Ramirez to choose

between his seat on the City Council and his government job infringes significantly upon

important First Amendment rights.  Moreover, while CBP certainly has an interest in preventing

real or apparent conflicts of interest, that legitimate goal is simply not compromised by

Ramirez's service on the City Council.  Indeed, CBP previously recognized as much in 2004

when it approved Ramirez's request to run for a City Council seat, just as it had previously

approved similar requests of other employees.  Therefore, Ramirez has demonstrated a

substantial likelihood that he will prevail on his claim that the order directing him to resign his

City Council seat is unconstitutional.

A.    **CBP's Order That Ramirez Resign His City Council Seat Significantly Burdens His First Amendment Freedoms**

The government begins its argument on the merits (Gov't Br. at 18-26) by claiming that

the impact of the CBP order on Ramirez's First Amendment freedoms is minimal.  In so doing, it

completely ignores the burden that the order imposes on Ramirez's First Amendment freedom of

association with other City Council members.[11]  It also relies upon the dubious premise that the

restriction of Ramirez's First Amendment rights is permissible because those rights are not

entirely negated.

Thus, the government contends that "the requirement that plaintiff choose between

serving as a CBP Officer and serving as a Presidio City Council member . . . does not restrict his

speech on matters of public concern (or otherwise) either directly or indirectly by interposing a

significant disincentive to speaking."  Gov't Br. 21.   It claims that the order has only an

"insignificant" and "de minimis" effect on Ramirez's First Amendment freedoms because

Ramirez "retains a wide range of means to exercise his First Amendment rights," including the

right to speak on matters of public concern and the right to vote.  Id.

The government's observation that Ramirez still retains other unrelated First Amendment

rights ignores the obvious important differences between speaking on matters of public concern

as an individual citizen and participating in civic affairs as a member of the City Council.  When

Ramirez performs his duties on the Council, he does not speak only on behalf of himself; he

---

[11] See Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984) ("[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion.  The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.")

speaks on behalf of all of his constituents.  Further, when Ramirez advocates particular positions on the City Council, his speech has a much greater likelihood of influencing public policy then it would if he spoke as an individual citizen.  As an elected representative, his advocacy carries more weight, has a greater practical effect, and will reach a larger audience.[12]

In further support of its argument that the order has only an "insignificant" or "de minimis" effect on speech, the government cites <u>Clements v. Fashing</u>, 457 U.S. 957 (1982). That case involved a challenge to a Texas constitutional provision requiring an individual holding a state or county elected office to resign from his seat before running for another elected office.  The Court upheld the provision against constitutional challenges based on the First Amendment and the Equal Protection Clause.  In addition to finding that the Texas constitutional provision was supported by and tailored to the state's interest in having office holders serve out their terms, the Court also opined that the burden the provision imposed on the First Amendment rights of prospective candidates for office was "insignificant" and "de minimis."

As we show <u>infra</u> (at 15-22), the restrictions CBP has imposed are not similarly supported by or tailored to meet significant government interests.  Further, the burden on free speech in this case is much greater than the burden imposed in <u>Clements</u>.  Ramirez must give up his <u>paying</u> job with CBP for an unpaid, part-time City Council position in order to exercise his First Amendment rights.  In <u>Clements</u>, on the other hand, an office holder was required to trade one elective office for the right to pursue another.  Further, the officeholder had the option of waiting until the end of his current term, before running for another office.  Therefore, in <u>Clements</u>, the only burden imposed on the exercise of First Amendment rights was one of delay.

---

[12] Moreover, the fact that Ramirez personally can still speak on matters of public concern as a citizen, and can still vote, does not cure the injury that the CBP order inflicts on the other citizens of Presidio, who are denied their choice of elected representative.

Finally, the government asserts (Gov't Br. at 22) that Ramirez remains "unrestrained from speaking out on <u>any</u> matter of public concern by CBP's corrective action" (emphasis in original).  Ramirez, it argues, "simply cannot remain a CBP Officer while engaging in outside activity that creates the appearance of a conflict of interest with his official duties."[13]  <u>Id.</u>  The government, of course, does not deny that it cannot condition Ramirez's government employment on the waiver of his constitutional rights.  Thus, its argument hinges entirely on whether a conflict (or appearance thereof) exists that cannot be cured by recusal.  As we show below, it does not.

### B.    The Government Has Failed To Establish That Its Interest in Avoiding an Appearance of a Conflict of Interests Outweighs Ramirez's First Amendment Freedoms

When the government seeks to restrict its employees' First Amendment rights, it may do so only if it meets its burden of establishing that the restriction is reasonably necessary to the government's efficient and effective operation.  <u>See</u> <u>Garcetti</u>, 126 S. Ct. at 1958; <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 568 (1968); <u>Brown</u>, 444 U.S. at 354-55.  In cases where there is no record of actual interference with a legitimate government interest, the government must establish, at a minimum, that its "predictions of [future] disruption" are "reasonable."  <u>Waters v. Churchill</u>, 511 U.S. 661, 673 (1994) (plurality op.).  Further, in cases like this one, where the government employee "has a strong, legitimate interest in speaking out on public matters," the

---

[13] The government characterizes the burden CBP's prohibition imposes as one that applies to "expressive conduct" rather than "actual <u>speech</u> on a matter of public concern."  Gov't Br.  22.  "Expressive conduct" involves conduct that is symbolic and is intended to communicate an idea.  <u>E.g.</u> <u>Texas v. Johnson</u> , 491 U.S. 397 (1989) (flag burning); <u>Tinker v. Des Moines Independent Community School Dist.</u>, 393 U.S. 503, 505 (1969) (wearing black armbands to protest war); <u>United States v. O'Brien</u>, 391 U.S. 367 (1968) (burning draft card).  Ramirez is not asserting a right to engage in any expressive conduct; the right at issue is his right to participate in the civic affairs of his community by holding a seat on the City Council, to associate with others for purposes of promoting his beliefs and opinions, and to speak as a City Councilman on issues of public concern.

government "may have to make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished." Waters, 511 U.S. at 674 (plurality op.) (citing Rankin v. McPherson, 483 U.S. 378, 388 (1987); Connick v. Myers, 461 U.S. 138, 152 (1983); Pickering, 391 U.S. at 569-71).

In its opposition to Ramirez's request for preliminary relief, the government does not meet this burden. In fact, prior to the order at issue here, CBP's practice was to approve its employees' requests for authorization to run for election to city government positions. Thus, CBP approved Ramirez's request to run in 2004, as it had routinely done for other employees wishing to run for City Council and even mayor in Presidio. See Ramirez Decl. at ¶ 17 (Exh. A to Opening Br.); Tavarez Decl. at ¶ 8 (Exh. B to Opening Br.). Indeed, the Director of Field Operations for El Paso commended Ramirez in 2005 for his service on the Council. See Ramirez Decl. at ¶ 11. The government provides no explanation for CBP's recent change of heart. The same generalized, hypothetical concerns raised now by CBP would also have existed in 2004. It points to not a single case or intervening factual development arising either before or after it approved Ramirez's request in 2004 that would establish an actual or apparent conflict of interest (incurable by recusal) between his job duties and the nonpartisan position he holds on a local governmental body.

The government defends CBP's new policy by citing other decisions in which courts have upheld restrictions on the First Amendment rights of government employees or office holders and/or held that such restrictions do not violate the "Qualifications Clause." See Gov't Br. at 19-24. These include decisions upholding the federal Hatch Act and similar state laws, as well as so-called "resign-to-run" laws. The government also emphasizes that a government

employer has a legitimate interest in preventing employees from engaging in activities that cause a real or apparent conflict of interest. See id. at 26-31.

These citations do not assist the government's case. Ramirez does not deny that federal employees' First Amendment rights are subject to reasonable limitations where there is a sufficient justification provided (particularly where, as with the Hatch Act, the restrictions are supported by a documented record of abuses and legislative findings). Nor does he deny that preventing actual or apparent conflicts of interest is a legitimate governmental concern. Instead, his argument is that the government has not provided a sufficient basis to conclude that this interest, or any other, is jeopardized.

As we show below, CBP's interest in preventing actual or apparent conflicts is barely implicated at all by Ramirez's service on the City Council. Further, on those very few occasions where any conceivable real or apparent conflict might exist, it can easily be resolved by Ramirez's recusal from consideration of the issue at hand. Therefore, CBP has failed to justify its order requiring Ramirez to resign from the City Council as "reasonably necessary" to meet its legitimate interests.

1.      In its letter directing Ramirez to resign his City Council seat, CBP alleged that there existed an appearance of a conflict of interest based on a specific issue that the City Council had been considering: the City's potential purchase of land that had been seized by the Drug Enforcement Agency, land which CBP was also attempting to purchase. See Att. 3 to Ramirez Decl. (Exh. A to Opening Br.). Ramirez responded that he had already recused himself from any consideration of the seized land issue. See Opening Br. at 19. The government does not now dispute that Ramirez's recusal resolved the potential appearance problem on that particular issue. See Gov't Br. at 31 (arguing only that recusal does not cure the supposed

17

appearance of a conflict arising from the more general on-going relationship between the port and Presidio, not related to the specific issue of the seized land).

2.      It now seems the government has realized that the apparent conflicts that CBP identified in its original letter were insubstantial, and that more will be needed to explain CBP's abrupt about-face regarding the propriety of Ramirez's service on the City Council.  To that end, it submits the declaration of Patricia Duffy, a CBP manager in Washington, DC.  Ms. Duffy does not purport to be an expert in the interpretation of the Standards of Conduct or the relevant regulations promulgated by the Office of Government Ethics.  She is not CBP's "designated agency ethics officer."  <u>See</u> 5 C.F.R. Part 2638, Subpart B ("Designated Agency Ethics Official"); 5 C.F.R. 2638.203 (describing the duties of ethics officers, which include developing and administering training and counseling programs for employees regarding the code of ethics and agency standards of conduct).  Further, Ms. Duffy does not state that she has ever worked or lived in Presidio, has ever met Jaime Ramirez, or has any personal knowledge of the business of the Presidio City Council.  <u>See</u> Duffy Decl. at ¶¶ 1-2; Suppl. Decl. of Jaime Ramirez at ¶ 2 (attached to this brief as Exhibit C).

In her declaration, Ms. Duffy states that there is a leasing arrangement between Presidio and the federal government concerning provision of housing for CBP employees, and she asserts that Ramirez occupies one of those homes on the leased land.  <u>See</u> Duffy Decl. at ¶ 15.  Ms. Duffy speculates that if the City Council ever considers the leasing arrangement, Ramirez would have at least an appearance of a conflict of interest between his elected office and his job as a CBPO.  <u>Id.</u>

Even if Ms. Duffy's statements were factually accurate, any appearance of a conflict would be cured by recusal.  But, in fact, Ramirez is unaware of any leasing arrangement between

Presidio and the federal government affecting CBP employees, and none has been considered by the City Council during his tenure.  See Supp. Decl. at ¶ 3.  Moreover, Ramirez bought the land on which his home is located in the 1980s, built a house on the land, and has lived there since 2002, prior to his employment by CBP.  Id. at ¶ 4.

3.      Ms. Duffy also posits another implausible scenario:  that the Presidio City Council, "in an attempt to improve the town's economy, may seek to have the size of the crossing increased, additional lanes installed, its hours extended, or other such changes."  See Duffy Decl. at ¶ 15.  Presidio, however, does not own the border crossing; a private individual does.  See Supp. Decl. at ¶ 6.  It therefore has no authority to affect the operations of the port in the manner suggested by Ms. Duffy.  Id.  Further, the Port Director is the individual who decides how many lanes to open and the hours of operation of the port.  Id.  Currently, the port is open 24 hours a day, so the hours could not be extended.  Id.  In any event, as noted above, Ramirez would recuse himself from any consideration by the City Council of issues directly affecting the port of entry.  Ramirez Decl. at ¶ 16.  Again, no such issues have been considered by the City Council since Ramirez began serving.  Supp. Decl. at ¶ 7.

4.      In addition to these spurious individual examples of alleged "conflicts," and the ones that we refuted in our opening brief (at 17-21), the government has now conjured up a new theoretical and all-encompassing category of potential conflicts.  Based solely on Ms. Duffy's declaration, the government now contends, for the first time, that Ramirez's resignation is necessary as a "prophylactic" measure because "[t]he CBP port and the crossing facility have an enormous impact on the economy of Presidio."  Gov't Br. at 27, 29.

Specifically, Ms. Duffy states that citizens of Presidio cross the border on a daily basis to visit family members, work, run errands, shop, and attend school.  See Duffy Decl. at ¶ 10.  She

asserts that Ramirez's decisions to allow goods, cargo, or individuals to enter Presidio "will often have a great impact on the businesses and residents of Presidio." Id.  She then imagines a set of circumstances in which a hypothetical unethical and/or corrupt CBP Officer holding a seat on the City Council might be tempted to engage in illicit actions to benefit the town or one of its residents. Id.  These include:  admitting contraband or other illegal cargo in order to benefit a Presidio business; obtaining law enforcement information about constituents from CBP's databases and using that information to blackmail them into providing their political support; and seizing property in order to aid the city's efforts to obtain the property. Id.  Ms. Duffy's wildly speculative potential scenarios (none of which dissuaded CBP from approving Ramirez's request to run in 2004) are totally implausible, have no basis in fact, and would certainly not be adequate to convince a reasonable person that there was a conflict (whether real or apparent) between Ramirez's obligations as a CBPO, and his seat on the Presidio City Council.

The suggestion that Ramirez (or any other CBP Officer) would risk his career to curry favor with constituents in an effort to secure their political support so that he could retain a seat on the Presidio City Council is ludicrous.  City Council members are unpaid.  Presidio is a small city, with less than 5000 residents. See Gov't Br. at 7.  City Council positions are not generally coveted and elections are not competitive.  Indeed, in 2006, all the candidates were unopposed, so the city did not even hold an election. See Ramirez Decl. at ¶ 13; Tavarez Decl. at ¶ 2.  Serving on the City Council is thus in the nature of a civic obligation, rather than a lucrative political plum.

The other scenarios Ms. Duffy has raised are also purely conjectural and imaginary.  She has not identified any instance in which a problem has resulted because an employee served on a nonpartisan governing body.  Nor has she provided any reason to believe that such hypothetical

problems could or would arise in the future in Presidio, elsewhere on the southern border, or anywhere in the United States, for that matter.

It bears noting that if the government's "potential for corruption" rationale were accepted, the implications would be sweeping and reach across the federal government. For example, an IRS employee providing tax assistance to the public at an agency walk-in site would, under the government's theory, be ineligible to serve on the City Council because she may wish to curry favor with her constituents who seek tax assistance at the site. A scientist with the Food and Drug Administration would be ineligible because she may be researching a drug that, if approved, would benefit drug stores located in her city. This Court should not sanction a rationale that is so sweeping and so unsupported by any actual record of experience (not to mention common sense)

Further, under the government's rationale, no citizen of Presidio could work for CBP at the port because there would be an appearance of a conflict due to his residency in the City. That is because every citizen of Presidio has an interest in the improvement of the economy of the city. Moreover, any concerns about CBP Officer familiarity with the people crossing the border through the port would apply to any citizen, not just those citizens on the City Council.

In short, CBP's predictions amount to nothing more than baseless "speculation" and "conjecture." As the Supreme Court has instructed, when considering a policy that restricts speech, it would "encroach unacceptably on the First Amendment's protections" to defer to "the Government's speculation about the pernicious effects" such speech might have on a governmental interest. United States v. NTEU, 513 U.S. 454, 475 n.21 (1995). Further, as Justice Kennedy observed in his concurrence in Turner Broadcasting System v. FCC, 512 U.S. 622, 664 (1994), cited with approval in U.S. v. NTEU, 513 U.S. at 475, "when the Government

defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured' . . . . It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." As is patently obvious, CBP has failed to shoulder that burden here.

For all of these reasons, the government cannot meet its burden of establishing that Ramirez's continued service on the City Council is inconsistent with the efficient operations of the government. Therefore, CBP's order directing Ramirez to resign was unconstitutional and must be enjoined.

## III. THE GOVERNMENT HAS FAILED TO REBUT RAMIREZ'S SHOWING OF IRREPARABLE HARM

In his opening brief (at 22-24), Ramirez showed that, absent entry of an injunction by the Court, he would have no choice but to abide by CBP's order and resign his position on the City Council by March 8, the deadline imposed upon him by CBP.[14] See also Ramirez Decl. at ¶ 19. Once he has resigned his seat, he cannot get it back, short of running in a new election and being elected again. Even if he were reelected, there is no way to recreate debates and votes occurring during the interim period. Those irremediable injuries would be suffered both by Ramirez and the people who elected him to the City Council.

The government never comes to grips with this showing of irreparable harm. It argues that Ramirez's "claim of irreparable harm hinges entirely on his fatally flawed merits argument." Gov't Br. at 33. The implication, of course, is that the government concedes the existence of

---

[14] Ramirez inadvertently omitted as an attachment to his declaration the follow-up letter from Director of Field Operations Luis Garcia, dated January 5, 2007, advising him that failure to resign his seat will result in disciplinary action up to and including removal. That letter is Exhibit B to the Duffy declaration attached to the government's brief.

irreparable harm if Ramirez is successful on the merits of his claim. As shown above (at 11-22), Ramirez's merits argument is compelling.

Finally, the government mischaracterizes the harm that Ramirez is alleging. It identifies that harm as the temporary deprivation of his First Amendment freedoms for an allegedly minimal period of time. <u>See</u> Gov't Br. at 34. While that injury has been recognized as an irreparable one by the Supreme Court in <u>Elrod v. Burns</u>, 427 U.S. 347, 373-74 (1976) (plurality op.), Ramirez's injury is much more concrete, substantial, and permanent. Absent preliminary relief, Ramirez will suffer irreparable injury on a date certain (March 8) when he will have to forfeit his seat on the Council to obey CBP's unconstitutional order.[15]

---

[15] Ramirez also showed in his opening brief (at 24-26) that a preliminary injunction would be in the public interest and any harm to the government is insubstantial in light of the long history of CBP employees serving in nonpartisan governance positions, both in Presidio and elsewhere. CBP's claim that it is harmed by Ramirez's continued service on a Council on which he had served for three-and-a-half years without objection (indeed, service for which he was publicly praised by the very CBP official now demanding his resignation) rings hollow, especially when balanced against the irreparable harm Ramirez would suffer absent injunctive relief.

## CONCLUSION

For the foregoing reasons, as well as those stated in his opening memorandum, the plaintiff Jaime Ramirez hereby respectfully requests that the Court enter a preliminary injunction to preserve the status quo until the merits of this action are resolved.

Respectfully submitted,

/s/ Gregory O'Duden
GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

/s/ Elaine Kaplan
ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

/s/ Barbara A. Atkin
BARBARA A. ATKIN
Deputy General Counsel
D.C. Bar No. 225797

/s/ Robert H. Shriver, III
ROBERT H. SHRIVER, III
Assistant Counsel
D.C. Bar No. 456858

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, NW
Washington, DC 20006
(202) 572-5500

Date: February 22, 2007            Attorneys for Plaintiff

# EXHIBIT A

## COVER LETTER AND COMPLAINT FILED WITH OFFICE OF SPECIAL COUNSEL (FEBRUARY 16, 2007)



**BY HAND-DELIVERY**

**REQUEST FOR STAY AND EXPEDITED
CONSIDERATION**

February 16, 2007

Audre Fields-Williams, Chief
Complaints Examining Unit
U.S. Office of Special Counsel
1730 M Street, NW
Suite 218
Washington, D.C. 20036

Re:    Complaint of Jaime Ramirez, Alleging Commission of Prohibited Personnel
       Practice (5 U.S.C. 2302(b)(12))(Violation of First Amendment)

Dear Ms. Fields-Williams:

Attached is a complaint that I am filing on behalf of my client, Jaime Ramirez.
Mr. Ramirez is a Customs and Border Protection Officer at the Department of Homeland
Security, U.S. Customs and Border Protection (CBP). The complaint alleges that CBP
committed a prohibited personnel practice, within the meaning of 5 U.S.C. 2302(b)(12),
when it withdrew its previous decision granting Mr. Ramirez permission to engage in
outside "employment" as a member of the Presidio, Texas City Council. Initially, CBP
advised Mr. Ramirez that he must resign from his seat by January 21, 2007. CBP
subsequently extended Mr. Ramirez's deadline twice. The current deadline is March 8,
2007. CBP has declined to provide any further extension of the deadline.

In addition to filing this complaint, Mr. Ramirez filed suit in the U.S. District
Court for the District of Columbia on January 12, 2007 (copy enclosed), alleging that the
denial of permission to continue to serve on the nonpartisan City Council and CBP's
order directing him to resign violated his First Amendment rights. Ramirez v. U.S.
Customs and Border Protection, Civ. Action 1:07CV00065. On January 31, 2007, he
filed an application for a preliminary injunction with that court (copy enclosed),
requesting that it enjoin CBP from requiring Mr. Ramirez to resign from his seat pending
full consideration of Mr. Ramirez' complaint on the merits. CBP responded on February
14, 2007. See enclosed Opposition to Plaintiff's Motion for a Preliminary Injunction.
Oral argument is scheduled on that motion on February 27, 2007.

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity          Page 1 of 17

U.S. OFFICE OF SPECIAL COUNSEL                    (202) 254-3600 / (202)254-3630 / (800) 872-9855
Form OSC-11 (2-05)                                              OMB Control No. 3255-0002


## COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE
### OR
### OTHER PROHIBITED ACTIVITY


---

**IMPORTANT**

**Before filling out this Office of Special Counsel (OSC) form, please read the following information about
(1) the required complaint format; (2) the scope of OSC's jurisdiction; and (3) certain OSC policies. OSC
cannot investigate a complaint if it lacks jurisdiction over the subject matter. Further, filing a complain
with OSC will not extend any time limits that may exist under any other complaint procedures that may
be available. It is important, therefore, that you consider whether OSC may lack jurisdiction over you
complaint.**

**If you plan to file a complaint alleging reprisal for whistleblowing, important information about the
elements required by law to establish such a violation is provided in Part 2 of this form (at page 4).**

---


### INFORMATION ABOUT FILING A COMPLAINT WITH OSC

**Required Complaint Form.** Complaints alleging a prohibited personnel practice, or a prohibited activity other than
a Hatch Act violation, must be submitted on this form. OSC will not process complaints (except a complaint allegin
only a Hatch Act violation) that are not submitted on this form. OSC will return the material received, with a blank
complaint form to complete and return to OSC. The complaint will be considered to be filed on the date on which
OSC receives the completed form. 5 C.F.R. § 1800.1, as amended.

**No OSC Jurisdiction.** OSC has no jurisdiction over complaints filed by employees of –

- the Central Intelligence Agency, Defense Intelligence Agency, National Security Agency, or other intelligence
  agency excluded from coverage by the President;
- the armed forces of the United States (*i.e.*, uniformed military employees);
- the General Accounting Office;
- the Postal Rate Commission; and
- the Federal Bureau of Investigation.

**Limited OSC Jurisdiction.** OSC has jurisdiction over certain types of complaints filed by employees of some
agencies, as follows –

- Federal Aviation Administration employees alleging reprisal for whistleblowing;
- employees of government corporations listed at 31 U.S.C. § 9101 alleging reprisal for whistleblowing;
- U.S. Postal Service employees alleging nepotism; and
- Transportation Security Administration (TSA) employees alleging reprisal for whistleblowing: TSA non-
  screener employees may file complaints alleging retaliation for protected whistleblowing under 5 U.S.C. §
  2302(b)(8). OSC will process these complaints under its regular procedures, including filing petitions with the
  Merit Systems Protection Board, if warranted. TSA security screeners may also file complaints alleging

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity          Page 2 of 17

retaliation for protected whistleblowing under 5 U.S.C. § 2302(b)(8) pursuant to a Memorandum of Understanding (MOU) between OSC and TSA executed on May 28, 2002. The MOU and TSA Directive HRM Letter No. 1800-01 provide OSC with authority to investigate whistleblower retaliation complaints from screeners and recommend that TSA take corrective and/or disciplinary action when warranted. Additional information on OSC procedures for reviewing security screener whistleblower complaints under the MOU is available at http://www.osc.gov/tsa-info.htm.

(ove

**VISIT WWW.OSC.GOV**
**FOR MORE INFORMATION ABOUT OSC JURISDICTION AND COMPLAINT PROCEDURES**

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page ii

**INFORMATION ABOUT FILING A COMPLAINT WITH OSC (cont'd)**

**Election of Remedies for Employees Covered By a Collective Bargaining Agreement.** Pursuant to 5 U.S.C. § 7121(g), if you are covered by a collective bargaining agreement, you must choose one of three possible avenues to pursue your prohibited personnel practice complaint: (a) a complaint to OSC; (b) an appeal to the Merit System Protection Board (MSPB) (if the action is appealable under law or regulation), or (c) a grievance under the collective bargaining agreement. If you have already filed an appeal about your prohibited personnel practice allegations with the MSPB, or a grievance about those allegations under the collective bargaining agreement, OSC lacks jurisdiction over your complaint and cannot investigate it.

**Deferral of Certain Complaints Involving Discrimination.** Although OSC is authorized to investigate discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition, as well as reprisal for filing an EEO complaint, OSC generally defers such allegations to agency procedures established under regulations issued by the Equal Employment Opportunity Commission (EEOC). 5 C.F.R. § 1810.1. If you wish to report allegations of discrimination based upon race, color, religion, sex, national origin, age, or handicapping condition, or reprisal for filing an EEO complaint, you should contact your agency's EEO office immediately. There are specific time limits for filing such complaints. Filing a complaint with OSC will not relieve you of the obligation to file a complaint with the agency's EEO office within the time prescribed by EEOC regulations (at 29 C.F.R. Part 1614).

> _Note:_ This deferral policy does not apply to discrimination claims outside the jurisdiction of the EEOC, such as complaints alleging discrimination based upon marital status or political affiliation.

**Complaints Involving Veterans Rights.** By law, complaints alleging denial of veterans' preference requirements must be filed with the Veterans Employment and Training Service (VETS) at the Department of Labor. 38 U.S.C. § 4301, _et seq._, and 5 U.S.C. § 3330a(a). Certain allegations of discrimination based on the past, current, or future performance of military service (_e.g.,_ discrimination based on veteran or reservist status) may be filed with OSC. Thus, you are encouraged to contact OSC's Uniformed Services Employment and Reemployment Rights Act (USERRA) Unit by e-mail at userra@osc.gov or by telephone at 202-254-3600.

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 3 of 17

> ### SEND COMPLETED COMPLAINT FORMS TO OSC -
>
> **By Mail:**  **Complaints Examining Unit**
> **Office of Special Counsel**
> **1730 M Street, N.W. (Suite 218)**
> **Washington, DC 20036-4505**
>
> **By Fax:**  (202)653-5151
>
> **Electronically:**  WWW.OSC.GOV (AT "FILE COMPLAINTS ONLINE")
>
> *PLEASE KEEP A COPY OF YOUR COMPLAINT, ANY SUPPORTING DOCUMENTION, AND ANY ADDITIONAL ALLEGATIONS SENT IN WRITING TO OSC NOW, OR AT ANY TIME WHILE YOUR COMPLAINT IS PENDING. REPRODUCTION CHARGES UNDER THE FREEDOM OF INFORMATION ACT MAY APPLY TO ANY REQUEST YOU MAKE FOR COPIES OF MATERIALS THAT YOU PROVIDED TO OSC.*
>
> **IF YOU ARE FILING AN ALLEGATION OF REPRISAL FOR WHISTLEBLOWING,**
>
> *PLEASE SEE PART 2 OF THE COMPLAINT FROM, AT PAGES 4-5, FOR OTHER RECORDKEEPING CONSIDERATIONS.*

U.S. OFFICE OF SPECIAL COUNSEL                    (202) 653-7188 / (202) 254-3630 / (800) 872 98·

### COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE
### OR
### OTHER PROHIBITED ACTIVITY

*(Please print legibly or type and complete all pertinent items. Enter "N/A" (Not Applicable) or "Unknown" where appropriate. Use Continuation Sheet on page 12 if more room is needed.)*

## PART 1: PROHIBITED PERSONNEL PRACTICES / OTHER PROHIBITED ACTIVITY (GENERAL)

1. Name of person seeking OSC action ("Complainant"):    Mr. ( ☑ )  Ms. ( ☐ )  Mrs. ( ☐ )  Miss ( ☐ )

   Jaime Ramirez

   For USERRA complaints only – please provide the last digit only of your Social Security Number (SSN): [ ]
   (needed to determine jurisdiction under § 204(c)(2) of Public Law No. 108-454.)

2. Position, title, series, and grade: Customs Border and Patrol Officer, GS 11

3. Agency name: Department of Homeland Security, U.S. Customs and Border Protection

4. Agency Address: 1300 Pennsylvania Ave. NW, Washington D.C. 20229

5. Home or mailing address: 417 E. Rosedale Street, Presidio, Texas 79845

6. Contact information: Telephone number(s): ( 432 ) 229 - 3765       (Home) ✓
   ( )               (Office) Ext.

   Fax number:    ( )

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 4 of 17

E-mail address: [                                    ]

**7. If you are filing this complaint as a legal or other representative of the Complainant, please supply the following information:**

Name and title of filer:    Mr.( ☑ )  Ms.( ☐ )  Mrs.( ☐ )  Miss( ☐ )

[Robert Shriver, III]

Address: [NTEU, 1750 H Street, NW, Washington, D.C. 20006]

[                                    ]

Telephone number(s):  ( [    ] )  [                    ] (Home)

( [202] )  [572-5500]  (Office)  Ext.[    ]

Fax number:  ( [    ] )  [        ]

E-mail address:  [rob.shriver@nteu.org]

**8. Are you (or is the Complainant, if you are filing as a representative) covered by a collective bargaining agreement? (Check one.)**

( ☑ )Yes         ( ☐ ) No         ( ☐ ) I don't know

**9. How did you first become aware that you could file a complaint with OSC?**

( ☐ ) OSC Web site    ( ☐ ) OSC speaker    ( ☐ ) OSC brochure    ( ☐ ) OSC poster

( ☐ ) news story    ( ☐ ) agency personnel office    ( ☐ ) union    ( ☐ ) co-worker

( ☐ )other (please describe):[                    ]

Date (approximate): [                    ]

---

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 2 of 12

**10. What is the employment status of the person affected by the suspected prohibited personnel practice or other prohibited activity? (Check all applicable items - more than one item may apply.)**

a. ( ☐ ) Applicant for Federal employment

b. ( ☐ ) Competitive Service

( ☐ ) temporary appointment        ( ☑ ) career or career-conditional appointment

( ☐ ) term appointment        ( ☐ ) probationary employee

c. ( ☐ ) Excepted Service

( ☐ ) Schedule A        ( ☐ ) Postal Service

( ☐ ) Schedule B        ( ☐ ) Tennessee Valley Authority

( ☐ ) Schedule C        ( ☐ ) VA Dept. of Medicine and Surgery

( ☐ ) National Guard Technician        ( ☐ ) Veterans Readjustment Act (VRA)

( ☐ ) nonappropriated fund        ( ☐ ) other (specify): [                ]

d. ( ☐ ) Senior Executive Service (SES), Supergrade, or Executive Level

( ☐ ) career SES        ( ☐ ) Executive Level V or above (career) fund

( ☐ ) noncareer SES        ( ☐ ) Executive Level V or above (noncareer)

( ☐ ) career GS-16, 17, or 18        ( ☐ ) Presidential appointee (Senate-confirmed)

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity          Page 5 of 17

( ☐ ) noncareer GS-16, 17, or 18

e. ( ☐ ) Other

    ( ☐ ) civil service annuitant     ( ☐ ) military officer or enlisted person

    ( ☐ ) former civil service employee   ( ☐ ) contract employee

    ( ☐ ) competitive service      ( ☐ ) other (specify): [＿＿＿＿＿＿＿]

    ( ☐ ) excepted service       ( ☐ ) unknown

**11.** What other action(s), if any, have you taken to appeal, grieve, or report this matter under any other procedure (*Check all that apply.*)

( ☐ ) None, or not applicable               Date: [＿＿＿]

( ☐ ) Appeal filed with Merit Systems Protection Board (MSPB)   Date: [＿＿＿]

( ☐ ) Petition for reconsideration of initial decision filed with MSPB  Date: [＿＿＿]
     Initial Decision No. [＿＿＿＿＿＿]

( ☐ ) USERRA claim filed with VETS (Department of Labor)      Date: [＿＿＿]
     (Form VETS/USERRA/VP-1010)

( ☐ ) Grievance filed under agency grievance procedure      Date: [＿＿＿]

( ☐ ) Grievance filed under negotiated grievance procedure     Date: [＿＿＿]

( ☐ ) Matter heard by arbitrator under grievance procedure     Date: [＿＿＿]

( ☐ ) Matter is pending in arbitration            Date: [＿＿＿]

( ☐ ) Discrimination complaint filed with agency        Date: [＿＿＿]

( ☐ ) Agency or Administrative Judge (AJ) decision on discrimination  Date: [＿＿＿]
     complaint appealed to Equal Employment Opportunity Commission

( ☐ ) Appeal filed with the Office of Personnel Management    Date: [＿＿＿]

( ☐ ) Unfair Labor Practice (ULP) complaint filed with the     Date: [＿＿＿]
     Federal Labor Relations Authority General Counsel

( ☑ ) Lawsuit filed in Federal Court           Date: [ 1-12-2007 ]
     Court name: [ U.S. District Court for D.C. ]

( ☐ ) Reported matter to agency Inspector General      Date: [＿＿＿]

( ☐ ) Reported matter to Member of Congress       Date: [＿＿＿]
     Name of Senator or Representative: [＿＿＿＿＿＿]

( ☐ ) Other (specify): [＿＿＿＿＿＿＿＿＿]

---

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 3 of 12

---

**12.** What official is responsible for the violation(s) that you are reporting, and what is his/her employment status? (*See question 10 for appropriate description of employment status. If space is needed to identify more than one official, use Continuation Sheet at page 12.*)

Name: [ Luis Garcia, ]

Position/Title: [ CBP Director of Field Operations, El Paso, Texas ]

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 6 of 17

Employment Status: [                                                    ]

13. What are the actions or events that you are reporting to OSC? (*To the extent known, specifically list: (a) any suspected prohibited personnel practices or other prohibited activity, other than reprisal for whistleblowing; and (b) any personnel actions involved. (IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING, SKIP TO PART 2 ON THE NEXT PAGE.* )

```
5 USC 2302(b)(12).  CBP violated constitutional rights (First Amendment)
by directing the complainant to resign from his position on the Presidio,
Texas, City Council, as a condition of employment.  See attached complaint
and briefs.
```

14. Provide details of the actions or events shown in your response to question 13.  (*Be as specific as possible about dates, locations, and the identities and positions of all persons mentioned. In particular, identify actual and potential witnesses, giving work locations and telephone numbers when possible. Also, attach any pertinent documents that you may have. Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your request for OSC action. If more space is needed, continue on page 12.*)

```
See attached complaint and briefs.
```

15. What action would you like OSC to take in this matter (that is, what remedy are you asking for?)

```
STAY OF ORDER DIRECTING COMPLAINANT TO RESIGN FROM HIS CITY COUNCIL SEAT
BY MARCH 8, 2007.  ATTORNEYS FEES.  ALL OTHER APPROPRIATE RELIEF.
```

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 4 of 12

PART 2: REPRISAL FOR WHISTLEBLOWING

*This part of the form is solely for use by persons alleging reprisal for whistleblowing (that is, persons*

*who believe that personnel actions were taken, not taken, or threatened because of a whistleblower disclosure). Please read the introductory material before answering the questions that follow. Use the continuation sheet on page 12 if more space is needed.*

*Complainants not alleging reprisal for whistleblowing should proceed to Part 3 ("Consent to Certain Disclosures of Information"), at page 9.*

### Reprisal for Whistleblowing Allegations

As a general rule, it is a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, a personnel action because of a protected disclosure of certain types of information by a Federal employee, former employee, or applicant for Federal employment. 5 U.S.C. § 2302(b)(8).

### Legal Elements of a Violation

By law, certain elements must be present before OSC can establish that a legal violation of law has occurred. Two of the required elements that must be established are: (1) that a whistleblower disclosure was made; and (2) that agency took, failed to take, or threatened to take or fail to take a personnel action because of the whistleblower disclosure. Your description of these elements will help OSC's investigation of your allegation(s).

### Protected Disclosures

A disclosure of information is a protected whistleblower disclosure if a Federal employee, former employee, or applicant for Federal employment discloses information which he or she reasonably believes evidences: (a) a violation of any law, rule, or regulation; (b) gross mismanagement; (c) a gross waste of funds; (d) abuse of authority; or (e) a substantial and specific danger to public health or safety.

### Covered Personnel Actions

The law prohibiting reprisal for whistleblowing requires proof that one or more of the following personnel actions occurred, or failed to occur, because of a protected disclosure:

### COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY
Page 5 of 12

(1)   an appointment;
(2)   a promotion;
(3)   an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action;
(4)   a detail, transfer, or reassignment;
(5)   a reinstatement;
(6)   a restoration;
(7)   a reemployment;
(8)   a decision about pay, benefits, or awards, concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2);
(9)   a performance evaluation under 5 U.S.C. chapter 43;
(10)  a decision to order psychiatric testing or examination; or
(11)  any other significant change in duties, responsibilities, or working conditions.

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 8 of 17

### Reporting Your Allegation(s)

In the section that starts below (pages 6-8), provide the information requested about all disclosures that you believe led to reprisal by the agency involved. If more space is needed, use extra copies of page 6-8, or the Continuation Sheet at page 12. If any of the disclosures were in writing, please provide a copy of the disclosure with your complaint.

**IT IS IMPORTANT THAT YOU LIST ALL DISCLOSURES AND PERSONNEL ACTIONS INVOLVED IN YOUR COMPLAINT.** This is because: (1) failure to list any disclosure or personnel action may delay the processing of your complaint by OSC; and (2) a comprehensive listing will avoid disputes in any later Individual Right of Action (IRA) appeal that you may file with the Merit Systems Protection Board (MSPB) about its jurisdiction to hear case.

Additional allegations of reprisal for whistleblowing may be added to this complaint while it is pending at OSC. Submission of any such additional allegations to OSC in writing will help you if you decide to file any later IRA appeal with the MSPB. Form OSC-11a is available for that purpose at OSC's web site, under "Forms."

### Appeal to the Merit Systems Protection Board (MSPB)

If OSC fails to complete its review of your whistleblower reprisal allegation within 120 days after it receives your complaint, or if it closes your complaint at any time without seeking corrective action on your behalf, you have the right to file  IRA appeal with the MSPB. 5 U.S.C. § 1214.6(a)(3).

### Recordkeeping

To establish its jurisdiction over any later IRA appeal that you may file, the MSPB will require you to show that the appeal relates to the same whistleblower disclosure(s) and personnel action(s) involved in your complaint to OSC. A copy of the whistleblower reprisal allegations in your complaint, any supporting documentation about those allegations that you sent with the complaint, and any additional allegation of reprisal that you submitted in writing to OSC while the complaint was pending, will serve as proof in any IRA of the disclosure(s) and personnel action(s) involved in your OSC complaint. IT IS IMPORTANT, THEREFORE, THAT YOU MAKE AND KEEP COPIES OF ALL THESE DOCUMENT FOR YOUR RECORDS.

---

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 6 of 12

| *MUST BE COMPLETED FOR ALL DISCLOSURES REPORTED IN THIS COMPLAINT* |
|---|

| A. WHAT INFORMATION WAS DISCLOSED? (DESCRIBE WHISTLEBLOWER DISCLOSURE.) | |
|---|---|
| | **1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)** |
| | **2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?** |
| | **3. DISCLOSURE OF INFORMATION EVIDENCED** (check all that apply): <br><br> ( ☐ )   VIOLATION OF LAW, RULE, OR REGULATION <br> ( ☐ )   GROSS MISMANAGEMENT <br> ( ☐ )   GROSS WASTE OF FUNDS |

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 9 of 17

( ☐ )  ABUSE OF AUTHORITY

( ☐ )  SUBSTANTIAL AND SPECIFIC DANGER
TO PUBLIC
        HEALTH OR SAFETY

( ☐ )  NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?**

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

**B. WHAT INFORMATION WAS DISCLOSED?**
*(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.)*

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

**3. DISCLOSURE OF INFORMATION EVIDENCED** *(check all that apply):*

( ☐ )  VIOLATION OF LAW, RULE, OR REGULATION

( ☐ )  GROSS MISMANAGEMENT

( ☐ )  GROSS WASTE OF FUNDS

( ☐ )  ABUSE OF AUTHORITY

( ☐ )  SUBSTANTIAL AND SPECIFIC DANGER
TO PUBLIC
        HEALTH OR SAFETY

( ☐ )  NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?**

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 10 of 17

```
┌────────────────────────────────────────────────────────┐
│         KEEP A COPY OF THIS PAGE FOR YOUR RECORDS        │
└────────────────────────────────────────────────────────┘
```

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 7 of 12

```
┌────────────────────────────────────────────────────────┐
│      MUST BE COMPLETED FOR ALL DISCLOSURES REPORTED IN THIS │
│                         COMPLAINT                         │
└────────────────────────────────────────────────────────┘
```

**C. WHAT INFORMATION WAS DISCLOSED?**
(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.)

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

**3. DISCLOSURE OF INFORMATION EVIDENCED** (check all that apply):

( ☐ )  VIOLATION OF LAW, RULE, OR REGULATION
( ☐ )  GROSS MISMANAGEMENT
( ☐ )  GROSS WASTE OF FUNDS
( ☐ )  ABUSE OF AUTHORITY
( ☐ )  SUBSTANTIAL AND SPECIFIC DANGER TO PUBLIC
        HEALTH OR SAFETY
( ☐ )  NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?**

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

**D. WHAT INFORMATION WAS DISCLOSED?**
(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.)

**1. WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)**

**2. TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?**

**3. DISCLOSURE OF INFORMATION EVIDENCED** (check all that apply):

( ☐ )  VIOLATION OF LAW, RULE, OR REGULATION

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 11 of 17

( ☐ )  GROSS MISMANAGEMENT
( ☐ )  GROSS WASTE OF FUNDS
( ☐ )  ABUSE OF AUTHORITY
( ☐ )  SUBSTANTIAL AND SPECIFIC DANGER
TO PUBLIC
        HEALTH OR SAFETY
( ☐ )  NONE OF THE ABOVE

**4. WHAT PERSONNEL ACTION(S) OCCURRED, FAILED TO OCCUR, OR WAS THREATENED BECAUSE OF THE DISCLOSURE?**

**5. WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)**

---

*KEEP A COPY OF THIS PAGE FOR YOUR RECORDS*

---

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 8 of 12

---

*MUST BE COMPLETED FOR ALL DISCLOSURES INCLUDED IN THIS COMPLAINT*

3.  If you are **not** the person who actually made a disclosure described in boxes A, B, C, D above, please check below to specify the disclosure involved, and provide the name, address, and telephone number of the person who made the disclosure, if known. (*If space is needed to identify more than one person, use Continuation Sheet at page 12.*)

Disclosure:     A ( ☐ )         B ( ☐ )         C ( ☐ )         D ( ☐ )

Name:

Address:

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 12 of 17

Telephone number:  ( [    ] ) [                    ]    Ext. [            ]

4.  Explain why you believe that the personnel action(s) listed above occurred because of the disclosure(s) that
    you described. (Be as specific as possible about any dates, locations, names, and positions of all persons
    mentioned in your explanation. In particular, identify actual and potential witnesses, giving work locations and
    telephone numbers, if known. Attach a copy of any documents that support your statements. Please provide,
    possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s)
    covered by your complaint. If more space is needed, continue on page 12.)

5.  What action would you like OSC to take in this matter (that is, what remedy are you asking for)?

KEEP A COPY OF THIS PAGE FOR YOUR RECORDS

COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY
Page 9 of 12

PART 3: CONSENT TO CERTAIN DISCLOSURES OF INFORMATION

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 13 of 17

OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. **IF YOU DO NOT SELECT ONE OF THE THREE CONSENT STATEMENTS BELOW, OSC WILL ASSUME THAT YOU HAVE SELECTED CONSENT STATEMENT 1.** Please: (a) select and sign (or check, if filing electronically) one of the Consent Statements below and (b) keep a copy of the Consent Statement you select (as well as a copy of all documents that you send to OSC) for your own records.

If you initially select a Consent Statement that restricts OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act allows information in OSC case files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. See 5 U.S.C. § 552a(b). Information about certain circumstances under which OSC can use or disclose information under the Privacy Act appears on the next page.

### *(Please sign one)*

**Consent Statement 1**

I *consent* to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity as the complainant, and information from or about me, to the agency if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

---

Complainant's Signature for Consent Statement 1 ............................ Date Signed  2/15/07

**Consent Statement 2**

I *consent* to OSC's communication with the agency involved in my complaint, but I do not agree to allow OSC to disclose my identity as the complainant to that agency. I agree to allow OSC to disclose only information from or about me, without disclosing my name or other identifying information, if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that in some circumstances (for example, if I am complaining about my failure to receive a promotion), OSC could not maintain my anonymity while communicating with the agency involved about a specific personnel action. In such cases, I understand that this request for confidentiality might prevent OSC from taking further action on my complaint. I also understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

---

Complainant's Signature for Consent Statement 2 ............................ Date Signed

**Consent Statement 3**

I *do not consent* to OSC's communication with the agency involved in my complaint. I understand that if OSC decides that it cannot investigate the allegation(s) in my complaint without communicating with that agency, my lack of consent will probably prevent OSC from taking further action on the complaint. I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

---

Complainant's Signature for Consent Statement 3 ............................ Date Signed

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity     Page 14 of 17

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 10 of 12

---

| PART 4: CERTIFICATION AND SIGNATURE |
|:---:|

*I certify that all of the statements made in this complaint (including any continuation pages) are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine of up to $250,000, imprisonment for up to five years, or both. 18 U.S.C. § 1001.*

Signature _____          Date Signed  02/15/07

---

| PART 5: PRIVACY ACT / PAPERWORK REDUCTION ACT STATEMENTS |
|:---:|

*Routine Uses.* Limited disclosure of information from OSC files is needed to fulfill OSC's investigative, prosecutorial, and related responsibilities. OSC has described 18 routine uses for information in its files in the *Federal Register* (F.R.), at 66 F.R. 36611 (July 12, 2001), and 66 F.R. 51095 (October 5, 2001). A copy of the routine uses is available from OSC upon request. A summary of the routine uses appears below.

OSC may disclose information from its files in the following circumstances:

1. to disclose that an allegation of prohibited personnel practices or other prohibited activity has been filed;
2. to disclose information to the Office of Personnel Management (OPM) as needed for inquiries involving civil service laws, rules or regulations, or to obtain an advisory opinion;
3. to disclose information about allegations or complaints of discrimination to entities concerned with enforcement of antidiscrimination laws;
4. to the MSPB or the President, when seeking disciplinary action;
5. to the involved agency, MSPB, OPM, or the President when OSC has reason to believe that a prohibited personnel practice has occurred, exists, or is to be taken;
6. to disclose information to Congress in OSC's annual report;
7. to disclose information to third parties (without identifying the complainant unless OSC has the complainant's consent) as needed to conduct an investigation; obtain an agency investigation and report on information disclosed to OSC's whistleblower disclosure channel; or to give notice of the status or outcome of an investigation;
8. to disclose information as needed to obtain information about hiring or retention of an employee; issuance of a security clearance; conduct of a security or suitability investigation; award of a contract; or issuance of a license, grant, or other benefit;

---

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**
Page 11 of 12

---

9. to the Office of Management and Budget (OMB) for certain legislative coordination and clearance purposes;
10. to provide information from an individual's record to a congressional office acting pursuant to the

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 15 of 17

individual's request;

11. to furnish information to the National Archives and Records Administration for records management purposes;

12. to produce summary statistics and work force or other studies;

13. to provide information to the Department of Justice as needed for certain litigation purposes;

14. to provide information to courts or adjudicative bodies as needed for certain litigation purposes;

15. to disclose information to the MSPB as needed in special studies authorized by law;

16. for coordination with an agency's Office of Inspector General or comparable entity, to facilitate the coordination and conduct of investigations and review of allegations;

17. to news media or the public in certain circumstances (except when the Special Counsel determines that disclosure in a particular case would be an unwarranted invasion of personal privacy); and

18. to the Department of Labor and others as needed to implement the Uniformed Services Employment and Reemployment Rights Act of 1994, and the Veterans' Employment Opportunities Act of 1998.

If OSC officials believe that disclosure may be appropriate in a situation not covered by one of OSC's routine uses or one of the 11 other exceptions to the Privacy Act's general prohibition on disclosure, OSC will seek written authorization from the complainant permitting the disclosure.

*Purposes, Burdens, and Other Information.* An agency may not conduct or sponsor a collection of information, and persons may not be required to respond to a collection of information, unless it: (a) has been approved by OMB, and (b) displays a currently valid OMB control number. The information in this form is collected pursuant to OSC's legal responsibility to investigate: (a) allegations of prohibited personnel practices, to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken (5 U.S.C. § 1214); and (b) other allegations of prohibited activity (5 U.S.C. § 1216). The information will be reviewed by OSC to determine whether the facts establish its jurisdiction over the subject of the complaint, and whether further investigation and corrective or disciplinary action is warranted. The reporting burden for this collection of information is estimated to be an average of one hour and 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the Office of Special Counsel, Legal Counsel and Policy Division, 1730 M Street, N.W. (Suite 218), Washington, DC 20036-4505. Use of this form to file a complaint alleging a prohibited personnel practice or other prohibited activity is required; use of this to file a complaint alleging only a Hatch Act violation is not required. 5 C.F.R. § 1800.1(d), as amended. As stated in Part 3 of this form, complainants may request that OSC maintain their name, and information provided by them, in confidence.

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE / OTHER PROHIBITED ACTIVITY
Page 12 of 12

| CONTINUATION SHEET |
| --- |

| *Part No.* | *Item/Question No.* | *Response Continuation* |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form OSC-11: Complaint of Prohibited Personnel Practice / Other Prohibited Activity    Page 16 of 17

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING**

# EXHIBIT B

LETTER FROM OSC ANNOUNCING
PRELIMINARY DETERMINATION
(DATED FEB. 22, 2007)



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505

## FACSIMILE COVER SHEET

**TO:**

| | |
|---|---|
| **Name:** Robert Shriver | |
| **Organization:** NTEU | |
| **Office / Location:** 1750 H St., NW | |
| **Telephone:** (202) 572-5553 | **Fax:** (202) 572-5645 |

**FROM:**

| | |
|---|---|
| **Name:** Martha Sheth | |
| **Organization:** U.S. Office of Special Counsel | |
| **Office / Location:** Washington | |
| **Telephone:** (202) 254-3713 | **Fax:** (202) 653-0015 |

| | |
|---|---|
| **Date:** February 22, 2007 | **Number of pages, including this cover sheet: 3** |

**Message:** Mr. Shriver:

Please find attached our preliminary determination letter. A hard copy will follow by mail.

M. Sheth

If you did not receive the total number of pages shown, please call (202) 254-3600.

**THIS DOCUMENT IS INTENDED FOR THE USE OF THE PARTY TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR PROTECTED FROM DISCLOSURE UNDER APPLICABLE LAW. If you are not the addressee, or a person authorized to deliver the document to the addressee, you are hereby notified that any review, disclosure, dissemination, copying or other action based on the content of this communication is not authorized. If you have received this document in error, please immediately notify us by telephone and return to us at the above address by mail.**



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 201
Washington, D.C. 20036-4505
(202) 254-3600

February 22, 2007

Robert Shriver
NTEU
1750 H Street, NW
Washington, D.C. 20006

### Re: OSC File No. MA-07-1137 (Ramirez)

Dear Mr. Shriver:

This letter is in response to the complaint that you filed with the U.S. Office of Special Counsel (OSC) on behalf of your client Jaime Ramirez. In your complaint you allege that the Department of Homeland Security, Customs and Border Protection (CBP) violated 5 U.S.C. § 2302(b)(12) when that agency ordered Mr. Ramirez to resign his seat on the Presidio, TX City Council. The Complaints Examining Unit has carefully reviewed the information that you have provided. Based on our evaluation of the facts and law applicable to your circumstance, we have made a preliminary determination to close our inquiry into your allegation.

The OSC is authorized to investigate allegations of activities prohibited by civil service law, rule, or regulation, and prohibited personnel practices. 5 U.S.C. §§ 1214(a)(1)(A), 1216(a) and 2302(b). We have considered your complaint as a possible violation of 5 U.S.C. § 2302(b)(12). Pursuant to this statute, it is prohibited for an official with personnel action authority to take or fail to take any personnel action if taking or failing to take such action violates any law, rule, or regulation that implements, or directly concerns, the merit system principles defined in 5 U.S.C. § 2301. According to the Merit Systems Protection Board, the elements of proof for a section 2302(b)(12) violation are: (1) proof of a personnel action as defined in section 2302(a)(2)(A); and (2) proof of a violation of law, rule, or regulation implementing, or directly concerning, one of the merit system principles set out in section 2301.

Based on the information included with your complaint, it does not appear that CBP has taken a personnel action against you. Section 2302(b)(12) requires *taking* a personnel action, in violation of a law, rule, or regulation implementing or directly concerning one of the merit system principles; threatened personnel actions are not sufficient to meet the statutory requirements of 5 U.S.C. § 2302(b)(12). Absent a showing that the agency took a covered personnel action, we are unable to find that a violation of 5 U.S.C. § 2302(b)(12) occurred.

Further, the Presidio, TX City Council is a local government entity. As indicated above, section 2302(b)(12) only applies to personnel actions that might be taken or not taken on positions in the *federal service*. Thus, OSC would have no jurisdiction to

U.S. Office of Special Counsel
Ramirez, Jaime
MA-07-1137
Page 2

investigate any decision by you to vacate your seat on the City Council as a possible violation of section 2302(b)(12) or other prohibited activity. However, should you refuse to obey the order to vacate and a personnel action is taken or not taken against you that you believe is the result of that refusal, you may wish to file another complaint with this Office and a determination will be made on whether further inquiry is warranted.

You also requested that this Office seek a stay of the agency's action from the Merit Systems Protection Board. We do not petition the Merit Systems Protection Board for a stay of every action alleged to be a prohibited personnel practice. A stay is a remedy that can be considered only after we have determined that there are reasonable grounds to believe that a prohibited personnel practice has been or is about to be committed. 5 U.S.C. § 1208. We have reviewed the information that you have submitted but we are unable to find reasonable grounds to believe that the agency has taken any action as a result of a prohibited personnel practice. Thus, we have decided not to petition the Board for a stay at this time.

As indicated above, we have made a preliminary determination to close our inquiry into your complaint based on the reasons we cited for the allegations you have made. However, before we close the file, we will give you an opportunity to submit any comments you may wish to make concerning our determination. Your response must be *in writing* and should address each of the reasons we cited in reaching our preliminary determination to close your complaint. You have *thirteen days* from the date of this letter to submit your written response. If we do not receive any written comments by the end of the thirteen-day period, we anticipate closing the file. We will then send you a letter terminating the investigation and advising you of any additional rights you may have.

Sincerely,

Martha V. Sheth
Attorney
Complaints Examining Unit

# EXHIBIT C

## SUPPLEMENTAL DECLARATION OF JAIME RAMIREZ

+IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAIME RAMIREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 07-0065 |
| U.S. CUSTOMS AND BORDER PROTECTION, ) | Judge Gladys Kessler |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SUPPLEMENTAL DECLARATION OF JAIME RAMIREZ

I, Jaime Ramirez, hereby declare and affirm as follows:

1.   I submitted a declaration to the Court along with my application for a preliminary injunction on January 31, 2007. This declaration supplements the declaration I previously submitted.

2.   I understand that Patricia Duffy, CBP's Executive Director of Field and Resources Management, has submitted a Declaration in opposition to my application for a preliminary injunction.   I have never met Ms. Duffy and my understanding is that she never worked in Presidio or in the El Paso Field Office, which includes the port of entry at Presidio.   I am not aware if she has ever even visited Presidio, and I do not know what the basis is for the statements in her Declaration concerning the business of the Presidio City Council.   In any event, several of the statements are inaccurate.

3.   Ms. Duffy states that Presidio leases land to the federal government on which homes for CBP Officers are located. I am not aware of any such leasing arrangement.  It is my understanding that a private contractor in Presidio has some leasing arrangement with the federal government, but I am not aware of the details of that arrangement and, to my knowledge, no CBP Officers occupy any homes that are on land leased to the federal government by the contractor.

4.   Ms. Duffy also states that I live in a home that is located on the land allegedly leased to the federal government by Presidio.  That is incorrect.  I bought the land on which my house is located from a private resident of Presidio around 20 years ago.  I built a house on that land and moved into the house in 2002, several months before I came to work at Customs and Border Protection (CBP).

5.   Since my election to the City Council in May 2004, the Council has not considered any issues connected to any alleged lease between the City and the federal government affecting CBP employees.

6.   Ms. Duffy also states that the City Council may seek to increase the size of the crossing, install additional lanes, or extend the hours that the crossing is open, in an attempt to improve the economy of Presidio.  The City Council has no authority over the crossing.  The City of Presidio does not own

the border crossing.  It is owned by a private individual named Dick Slack.  Moreover, it is the Port Director who determines how many lanes of the crossing are in use and the hours the crossing is open.  Currently, the crossing is open 24 hours a day.

7.    Since my election to the City Council in May 2004, the Council has not considered any issues concerning increasing the size of the crossing, installing additional lanes, or extending the hours that the crossing is open.  The only issue even remotely connected to CBP that the City Council has considered is the issue of the land seized by the Drug Enforcement Agency, referenced in paragraph 14 of Ms. Duffy's declaration.  I have recused myself from consideration of that issue.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 21st day of February, 2007, in Presidio, Texas.

Jaime Ramirez

3