**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JAIME RAMIREZ,                          :
                                        :
          **Plaintiff,**                :
                                        :
     v.                                 :    **Civil Action No. 07-65 (GK)**
                                        :
U.S. CUSTOMS AND BORDER                 :
PROTECTION, *et al.*,                   :
                                        :
          **Defendants.**               :

<u>**MEMORANDUM OPINION**</u>

Plaintiff Jaime Ramirez is a U.S. Customs and Border Protection Officer. Plaintiff also serves as an unpaid member of the City Council of Presidio, Texas ("the Council"), and has served in that capacity since 2004.

On December 22, 2006, Defendant Louis Garcia, Director of Field Operations, U.S. Customs and Border Protection ("CBP" or "the Agency"), ordered Plaintiff to resign his seat on the City Council. Defendants have given Plaintiff until March 15, 2007 to decide whether he will comply with CBP's order or resign his position with the Agency.

On January 12, 2007, Plaintiff filed a Complaint in this Court seeking declaratory and injunctive relief. Plaintiff seeks a declaration that the Agency's December 22, 2006 directive unlawfully violates his First Amendment rights, and seeks an order directing CPB to rescind it.

This matter is presently before the Court on Plaintiff's Motion for a Preliminary Injunction [#3]. Plaintiff argues that entry of a preliminary injunction is appropriate and necessary in order to prevent irreparable harm. He points out that if he is forced to resign his seat before his case is resolved, his harm would be irreparable because the Court cannot return him to the City Council even if he ultimately prevails on the merits of his claim.

The Government responds that the courts have consistently upheld limitations on the ability of civil servants to serve in elective office and that such limitations do not restrict First Amendment freedoms. Moreover, the Government argues that its order only bars Plaintiff from service on the City Council but does not restrict his freedom to speak out on any civic issues of public interest. Finally, the Government justifies its position in this case on the need to avoid any appearance of conflict of interest between Plaintiff's duties and his service on the Council.

Based on the motion, opposition, reply, motion hearing, applicable case law, and the entire record herein, and for the reasons stated below, Plaintiff's motion is **granted**.

## I.    BACKGROUND

Plaintiff Ramirez is employed as a CBP Officer in Presidio, Texas. In that role, he inspects vehicles and persons entering the United States from Mexico to ensure compliance with customs and immigration laws. The Agency is the only employer from which Plaintiff receives compensation.

Presidio is a small, poor town of approximately 5,000 residents located across the border from its "sister city" of Ojinaga, on the other side of the Rio Grande in Mexico. According to the parties, over 700,000 vehicles pass through the entry port at Presidio each year. Ojinaga and Presidio can fairly be described as closely connected by culture, familial ties, and commerce. Individuals cross the border in both directions every day for employment, shopping, school, and social activities.

In May of 2004, after obtaining approval from CBP pursuant to Customs Directive No. 51735-001A, Plaintiff ran for and was elected to serve a two-year term on Presidio's City Council.[1] City Council elections are nonpartisan, and Council Members are not compensated for their service.

---

[1]    The Directive is titled "Outside Employment and Business Activities," and requires CBP employees to obtain authorization from the Agency before running for public office. The Agency initially denied Plaintiff's request for authorization, but subsequently granted it.

The five Council Members and the Mayor comprise Presidio's municipal government. The City Council is authorized to enact local ordinances, resolutions, and regulations. The Council is primarily responsible for traditional municipal issues relating to zoning, street repair, sanitation, and emergency services.

In 2006, at the close of Plaintiff's first term in office, Plaintiff became a candidate for a second term. None of the candidates in the 2006 election faced an opponent, including Ramirez, so the Council seated each candidate to serve the 2006-2008 term. Plaintiff did not file a request for the Agency's approval to serve a second term, thinking it unnecessary since he had obtained such approval in 2004 and, in 2005, had been commended by Defendant Garcia, the Director of Field Operations in El Paso, for his willingness to serve on the City Council. Plaintiff has previously been active in community affairs, having served on the City's appraisal review board and its economic development board, and having coached Little League teams. In the past, many CPB employees, as well as those from its predecessors, the Immigration and Naturalization Service and Customs Service, have been active in non-partisan politics in Presidio. At least one person has been Mayor of Presidio while employed by the CPB and assigned to the Presidio port of entry.

On December 1, 2006, two years after Plaintiff received permission in 2004 to run for the City Council, CPB changed its internal procedures. The responsibility for making such decisions was taken away from CPB local Directors of Field Operations and shifted to CPB headquarters where they must now be approved by two lawyers and a management official, located in Washington, D.C. Shortly after this centralization of decision-making, on December 22, 2006, Defendant Louis Garcia sent a memorandum to Plaintiff directing him to resign his seat on the Council. Garcia concluded that service on the Council by a CBP Officer created actual or apparent

conflicts of interests. Garcia also advised that CBP had only approved Plaintiff's service on the Council for the 2004-2006 term.

The order identified two potential conflicts. First, CBP and Presidio are both seeking to acquire a piece of land which had been seized by the U.S. Drug Enforcement Agency ("DEA"). Second, Garcia claims that the "ongoing relationship between CBP and [Presidio] over normal business issues" presents an appearance of a conflict of interest. December 22, 2006 Memo. by CBP Director Garcia.

Defendants concede that Plaintiff promptly and appropriately recused himself from participating in matters related to the DEA property, but nonetheless argue that the appearance of a conflict exists and remains a legitimate concern. In their papers and at oral argument, Defendants expanded on their proffered justifications by noting that Plaintiff's position as a law enforcement officer requires him to scrutinize and investigate the very people who are his constituents and voters. Plaintiff counters that CBP and U.S. Border Patrol employees have a long history of participating in non-partisan Presidio politics without incident.[2] Plaintiff also argues that Defendants have reversed their position on participation in non-partisan politics without providing any justification for the change in policy.

Defendants initially gave Plaintiff until January 21, 2007 to resign from the CPB or the Council, but have since extended the deadline to March 8, 2007, and again (at the Court's request) until March 15, 2007; Plaintiff claims that denial of his request for a preliminary injunction will force him to comply with the Agency's order because he cannot afford to resign his position as a

---

[2]    As noted earlier, it appears that at least one CBP employee previously served as Mayor of Presidio. Pl.'s Mot. for Prelim. Injunction at 6.

CBP Officer and serve on the Council without pay.  Presidio, with its high unemployment rate,

depends on its relatively well-paid and well-educated CPB employees to hold public offices and

carry out those responsibilities.

After filing the instant suit, on February 16, 2007 Plaintiff filed with the U.S. Office of

Special Counsel ("USOSC" or "Office of Special Counsel") a Complaint Alleging Commission of

Prohibited Personnel Practice, pursuant to the Civil Service Reform Act of 1978, Pub. L. No. 95-

454, 92 Stat. 1111 ("CSRA").  On February 22, 2007, the Office of Special Counsel issued its

preliminary determination to close its inquiry into Plaintiff's Complaint because it concluded that

the agency's order does not constitute a "personnel action," pursuant to 5 U.S.C. § 2302(b)(12).[3]

## II.    STANDARD OF REVIEW

In considering Plaintiff's request for a preliminary injunction, the Court must consider four

factors:  (1) whether Plaintiff would suffer irreparable injury if an injunction were not granted; (2)

whether Plaintiff has a substantial likelihood of success on the merits; (3) whether an injunction

would substantially injure other interested parties; and (4) whether the grant of an injunction would

further the public interest.  Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001).  "These factors

---

[3]    The statutes states,

> [a]ny employee who has authority to take, direct others to take,
> recommend, or approve any personnel action, shall not, with respect
> to such authority . . . take or fail to take any other personnel action if
> the taking of or failure to take such action violates any law, rule, or
> regulation implementing, or directly concerning, the merit system
> principles. . . .

5 U.S.C. § 2302(b)(12).  Office of Special Counsel indicated that the file would be closed within
thirteen days unless Plaintiff submitted written comments concerning its determination.

interrelate on a sliding scale and must be balanced against each other." Serono Labs, Inc. v. Shalala,

158 F.3d 1313, 1318 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an

injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v.

Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

When the balance of hardships tips decidedly toward the movant, it will "'ordinarily be

enough that the Plaintiff has raised questions going to the merits so serious, substantial, difficult and

doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"

Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)

(quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)).  "An order

maintaining the status quo is appropriate when a serious legal question is presented, when little if

any harm will befall other interested persons or the public and when denial of the order would inflict

irreparable injury on the movant." Id. at 844.

## III.   JURISDICTION

As a threshold matter, the Government initially argued that this Court lacked subject matter

jurisdiction because Plaintiff had failed to exhaust his administrative remedies under the CSRA.

Any merit to this argument has become moot by virtue of the fact that since filing this lawsuit,

Plaintiff filed a formal Complaint with the United States Office of Special Counsel and the

Complaint has been dismissed.  This is the very procedure mandated in the CSRA, and relied upon

by the Government in its Opposition to Plaintiff's Motion for a Preliminary Injunction.  Plaintiff has

followed that procedure, there has been a definitive ruling by the appropriate executive branch

official, administrative remedies have been exhausted, and the Court concludes that it has subject

matter jurisdiction.  Steadman v. Governor, U.S. Soldiers and Airman's Home, 918 F.2d 963, 968 (D.C. Cir. 1990).

## IV.    ANALYSIS

This is one of those difficult close cases in which the standard of review for granting a preliminary injunction becomes the decisive factor.

Both parties have presented serious arguments in support of their positions.  Moreover, this case presents an instance in which, under Plaintiff's analysis, the Government is seeking to bar what the Supreme Court has referred to as core First Amendment activity, namely, his participation in the political process and the civic life of his community.  See Waters v. Churchill, 511 U.S. 661, 672 (1994); Pickering v. Board of Education, 391 U.S. 563, 573 (1968).

When we balance the four factors to be considered under WMATA v. Holiday Tours, it becomes clear that the preliminary injunction must be **granted**.  However, parties are warned that the granting of this preliminary injunction does not mean that upon full consideration of the merits, when there are no deadlines forcing a decision, that the final decision on the merits will be the same.

1.      At this point, two of the factors to be considered weigh overwhelmingly in Plaintiff's favor:  there is no imminent danger that either the Government's interest or the public interest will be harmed while this case is fully litigated and given the in-depth consideration it deserves.  The interests of the Government and the public are certainly substantial ones -- to ensure that no conflict of interest taints the actions of Government employees, and to ensure that the public does not lose faith in the integrity of its public servants.

There is nothing in this record to suggest any immediate danger of that happening.  Mr. Ramirez has held his position on the City Council for more than two and a half years.  There have

never been any complaints about his conduct.  In the one instance where he accurately perceived

such a conflict of interest, he demonstrated good judgment and recused himself.  Obviously, he

understood his obligations and acted appropriately.  Not only is there no reason to think he would

not act similarly in the future, but he can always turn to his designated agency ethics officer to get

advice and guidance should a different and far more difficult issue present itself.  See 5 C.F.R. Part

2638, Subpart B ("Designated Agency Ethics Official"); 5 C.F.R. 2638.203 (setting forth the duties

of ethics officers, including the development and administration of training and counseling programs

for employees regarding the code of ethics and agency standards of conduct).

       In sum, the Court concludes that the grant of preliminary injunctive relief would not

substantially injure the interests of either the Government or the public.

       2.       The third factor which must be addressed is the absolute prerequisite to ever granting

a preliminary injunction, namely, that the Plaintiff will suffer irreparable harm.  Here too, the balance

tips totally in Plaintiff's favor.

       Defendants argue that Plaintiff will suffer no irreparable harm because no First Amendment

rights of his are being violated; they argue that no one is stopping him from speaking out on any

public issue and that, as a federal employee, he does not have a First Amendment right to hold

outside employment -- even when unpaid.  Consequently, according to Defendant's reasoning, since

Plaintiff's First Amendment rights are not being limited, he suffers no irreparable harm from the

agency's requirement that he resign his City Council membership.

       But the Government assumes away the legal conclusion which is at the heart of this case --

namely, whether Mr. Ramirez's First Amendment rights are implicated by the agency's decision and,

if so, whether the agency has narrowly tailored its limitation on the exercise of those rights.  In other

words, can the agency justify on this record its total reversal of position regarding civic activities in which its employees may participate?

In presenting its case on the merits, the Government relies on a long established line of cases holding that government employment may be conditioned on various requirements that are necessary to enhance the effectiveness and efficiency of government operations. In Pickering, the Supreme Court set forth the basic balancing test which must always be applied when considering the impact of government restrictions on the First Amendment rights of its employees. "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568.

The Government argues that in Pickering, and its progeny, the Supreme Court recognized that even though public employees may not be compelled to relinquish all their First Amendment rights, the Government can regulate the speech of its employees differently than it can regulate that of private citizens. Id. See also Garcetti v. Ceballos, ___ U.S. ___, 126 S. Ct. 1951, 1958 (2006); United States v. National Treasury Employees Union, et al., 513 U.S. 454, 465 (1995); Waters v. Churchill, 511 U.S. at 668; United States Civil Service Commission v. Nat'l Association of Letter Carriers, 413 U.S. 548, 556 (1973).

In Garcetti, the Supreme Court identified two inquiries "to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern." 126 S. Ct. at 1958. Here it is clear that Plaintiff is acting in his capacity as a citizen speaking on matters of public concern to his municipality and is associating with fellow-members of the City Council to discuss and consider

those matters.  Since the answer to the first question posed by the Court in Garcetti is "yes," the next

"question becomes whether the relevant government entity had an adequate justification for treating

the employee differently from any other member of the general public."  Id.  The Court emphasized

that "[s]o long as employees are speaking as citizens about matters of public concern, they must face

only those speech restrictions that are necessary for their employers to operate efficiently and

effectively."  Id.

The Government argues that Plaintiff's daily inspection duties which require him, as a law

enforcement officer, to carefully inspect and scrutinize individuals, their vehicles, and their

belongings crossing the border, create the appearance of a conflict of interest because the people he

must scrutinize are the very voters who will elect or reject him as a member of the City Council.

This argument is by no means frivolous.

However, the Agency has totally reversed its position on this issue.  For a period of at least

two years (and probably a lot longer), Defendants had no objection whatsoever to CBP employees

serving their community in unpaid, non-partisan political positions.  Moreover, Defendants have

failed to give any persuasive justification for the abrupt change in the Agency's position.  Indeed,

on the record as it exists at this time, it would appear that the reversal in the Agency's position is

directly related to simple bureaucratic or managerial shifts, namely, that the situs of decision making

has moved from local Field Operations Directors, who presumably know the conditions in their

locality, to lawyers and supervisors  in Washington, D.C., who probably have little or no particular

knowledge of local conditions.

The Agency's justification for its sudden about-face on an issue which has never caused a

problem in the past is contained in the Declaration of Patricia Duffy who is Executive Director of

Field and Resources Management in the Office of Field Operations.  Ms. Duffy bases her justification for the imposition of the new restriction on Plaintiff's First Amendment rights on her determination "that his service as a CBPO in Presidio combined with his service as a City Councilmember in that small town would create at least the appearance of a conflict of interest, if not an actual conflict, as judged by a reasonable person."  Para. 9 of Duffy Declaration.

First, it should be noted that Ms. Duffy is not the designated agency ethics officer  nor does her recitation of her recent professional experience indicate any familiarity with that subject matter. It would also appear that she has no personal knowledge of the actual local situation in Presidio.

Second, it must be noted that Ms. Duffy's Declaration offers no substantive explanation for the Agency's reversal of position.  Why was it ethically permissible for Mr. Ramirez to serve as a member of the City Council in 2004 but not at this time?  The Government offers no evidence of what problems, situations, or concerns justify the change in policy.  Nor does it explain why recusal would not provide an adequate solution to any which might arise, just as it has in the past.

What Defendants do offer is a great deal of speculation about what could occur if Plaintiff continues sitting on the City Council while employed by CBP.  However, as the Supreme Court warned in United States v, National Treasury Employees' Union, 513 U.S. at 475 n.21, the courts cannot merely defer to "the Government's speculation about the pernicious effects" such protected speech might have.  "When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured'. . . .  It must demonstrate that the recited harms are real, not merely

conjectural, and that the regulation will in fact alleviate these harms in a direct and material way."

Id. at 475, quoting Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 664 (1994).[4]

Finally, while this issue was by no means adequately fleshed out in either the briefing or the oral argument (undoubtedly due to the press of time), the Agency's decision could have far-reaching implications for the First Amendment freedoms of government employees throughout the country to participate in a wide range of local, non-partisan community activities.

As the parties' excellent briefs demonstrate, not only is there an abundance of First Amendment case law, but there is an abundance of First Amendment case law pertaining to public employees. There are many implications and shades of meaning to be drawn from those cases.

At a very minimum "Plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." WMATA v. Holiday Tours, Inc., 559 F.2d at 884.

---

[4]     Under the balancing required by Pickering, the Government also argues that CBP has placed no more than an insignificant or de minimus restriction on Plaintiff's First Amendment rights. According to the Government, requiring the Plaintiff to choose between serving as a CBP officer and serving as a Presidio city council member, does not in actuality restrict his speech on matters of public concern because he can continue to exercise his First Amendment rights, express his views on matters of public concern, and vote as he wishes.

However, it is simplistic for the Government to pretend that requiring Plaintiff to choose between exercising his First Amendment rights and retaining his job to support him and his family is a free and voluntary choice which does not unduly burden his First Amendment rights. It is true that the courts have upheld many of the so-called "resign to run" and "resign to serve" laws the Government cites. The difficult issue in this case is whether, applying Pickering's balancing test, the Plaintiff's service on the Presidio City Council will result in a sufficiently serious disruption to the efficiency of the public enterprise to justify restricting exercise of his First Amendment freedoms. See Tao v. Freeh, 27 F.3d 635, 639 (D.C. Cir. 1994). Only in that event can an employee's exercise of First Amendment rights touching on matters of public concern lose their constitutional protection.

If the Government is incorrect in its legal arguments, and if the Plaintiff's First Amendment rights are implicated and violated without sufficient justification by the decision to bar him from serving on the Presidio City Council, then there can be no question that denial of the preliminary injunctive relief he requests will cause him immediate irreparable harm. Not only will he lose his elected seat on the City Council, to which this Court surely would not have the power to re-appoint him even if he prevails on the merits, but his Constitutional rights will have been violated. As the Supreme Court has said on many occasions, any violation of one's First Amendment rights constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347, 373-74 (1976).

Thus, the fourth factor which must be addressed under the case law, the likelihood of success on the merits, is in equipoise and falls squarely within the Court's direction in WMATA v. Holiday Tours: "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." 559 F.2d at 844.

To summarize, applying and balancing the factors which this Court must weigh under applicable case law in deciding whether to grant preliminary injunctive relief, the Court concludes:

1.    If a preliminary injunction is not granted, Plaintiff will suffer immediate irreparable harm in that his First Amendment rights of speech and association will be violated by the loss of his seat on the Presidio City Council to which his fellow citizens have elected him by exercising their First Amendment rights;

2.    Both parties have raised legal issues which are serious, substantial, difficult, and doubtful, calling for more deliberative investigation, analysis, and consideration; and

3.      There is no evidence that, for the relatively brief period of this litigation, either the

Government or the public interest will be harmed by granting this preliminary injunction.  Indeed,

by granting the preliminary injunction, the interests of the good citizens of Presidio in having their

elected representative continue in office will be fully protected.

For all these reasons, Plaintiff's Motion for a Preliminary Injunction is **granted.**


March 12, 2007                                    /s/
                                                 Gladys Kessler
                                                 United States District Judge