## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAIME RAMIREZ,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 1:07-65 (GK)
                                        )
UNITED STATES CUSTOMS                   )
AND BORDER PROTECTION, *et al.*,        )
                                        )
                    Defendants.         )
                                        )

### CERTIFICATION OF ADMINISTRATIVE RECORD

Luis Garcia, pursuant to 28 U.S.C. § 1746, deposes and says as follows:

1.      I am employed by U.S. Customs and Border Protection ("CBP"), an agency within the Department of Homeland Security. I am the Director of Field Operations ("DFO") in El Paso, Texas. I have been employed by CBP since March 1, 2003. The facts attested to herein are based on my personal knowledge and knowledge gained in my official capacity.

2.      As the DFO in El Paso in December 2006 and January 2007, I was responsible for reviewing the propriety of CBP Officer Jaime Ramirez's outside activity as a Presidio City Councilman.

3.      The documents annexed hereto constitute, to the best of my knowledge, a true and complete copy of the administrative record in this matter, that is, all documents and materials considered by me in reaching my decision as well as the decision memoranda themselves. Privileged documents reflecting internal agency deliberations, including attorney-client privileged materials, and attorney work product created in anticipation of litigation are not part of this administrative record. Page AR000045 of the record, however, is a redacted version of one

such internal agency email communication.  The portions of this email that have been included reflect factual information that was before me when I reached my decision.

I certify under penalty of perjury that the foregoing is true and correct.

Executed in El Paso, Texas this 22nd day of June, 2007.

_____
LUIS GARCIA

**CUSTOMS DIRECTIVE**

**ORIGINATING OFFICE:** HRM          **DISTRIBUTION:** S-01
                                     **CUSTOMS DIRECTIVE NO.** 51735-001A
                                     **DATE:** MARCH 2, 2000
                                     **SUPERSEDES:** 51735-001, 5/29/85
                                     **REVIEW DATE:** MARCH 2002

**SUBJECT:**   OUTSIDE EMPLOYMENT AND BUSINESS ACTIVITIES

I.      PURPOSE. To establish policy for processing employee requests for outside employment and business activities.

2.      POLICY. All U.S. Customs Service employees must secure prior approval before entering into any outside employment or business activity, regardless of compensation, while employed by the U.S. Customs Service.

3.      AUTHORITIES/REFERENCES.

3.1     5 CFR 2635, Standards of Ethical Conduct for Employees of the Executive Branch, Section 2635.803, Prior approval for outside employment.

3.2     5 CFR 3101, Supplemental Standards of Ethical Conduct for Employees of the Treasury Department, Section 3101.104, Outside employment and Section 3101.110 Additional rules for U.S. Customs Service employees.

4.      DEFINITIONS.

4.1     CF 3031 refers to Customs Form 3031, entitled REQUEST TO ENGAGE IN OUTSIDE EMPLOYMENT OR BUSINESS ACTIVITIES (See Attachment).

4.2     PFO refers to Principal Field Officers and PHO refers to Principal Headquarters Officers.  PFO refers to Directors of Field Operations, Directors, Field Laboratories, Special Agents in Charge and equivalent levels in other Customs organizations.  PHO refers to Assistant Commissioners and Headquarters Executive Directors and equivalent levels (i.e., one reporting level down from Assistant Commissioners.

5.      RESPONSIBILITIES.

5.1     Before entering into any outside employment or business activity, Customs employees are responsible for obtaining prior approval.  Employees given approval to engage in outside employment must promptly advise their supervisors, in writing, if the approved employment terminates.  Employees must promptly submit another written

AR000001

request for approval if the nature of the outside employment changes or if the employee changes positions and reports to a different PFO/PHO.

5.2     Supervisors are responsible for remaining abreast of the laws, regulations, and procedures regarding outside employment so they can advise employees under their supervision. Immediate supervisors are the first officials to review requests for outside employment (CF 3031).

5.3     Principal Field Officers (PFO) and Principal Headquarters Officers (PHO)are responsible for making final determinations to approve or disapprove requests.

6.     PROCEDURES.

6.1     Requests for approval of outside employment or business activities should be made on Customs Form 3031, REQUEST TO ENGAGE IN OUTSIDE EMPLOYMENT OR BUSINESS ACTIVITIES. The completed form must be given to the employee's immediate supervisor, with a copy retained by the employee.

6.2     The immediate supervisor will review the application before forwarding it with a recommendation for approval or disapproval to the appropriate PFO/PHO for final determination. PFOs/PHOs serving as first line supervisors have final approval and disapproval authority for those employees reporting directly to them.

6.3     Questions regarding the application of Ethics rules to outside employment requests should be directed to Customs Ethics Officials in the Office of Chief Counsel and  Associate and Assistant Chief Counsel offices.

6.4     Upon final determination by the PFO/PHO, the CF 3031 will be returned to the employee and a copy will be forwarded to the Employee Records Center in the Office of Human Resources Management for retention in the employee's Official  Personnel Folder. A written reason will be given for any disapproval.


                                    Assistant Commissioner
                                    Human Resources Management


        Attachment

DEPARTMENT OF THE TREASURY
## United States Customs Service

# REQUEST TO ENGAGE IN OUTSIDE EMPLOYMENT OR BUSINESS ACTIVITIES
Directive 51735-001A

| Name | | Grade | Salary $ | Length of Customs Employment |
|---|---|---|---|---|
| Position Title | | Office, Port or Station where employed by Customs | | |

| Office Hours of Work | Days of Normal Work Week | If over 40 hours indicate periods involving premium or overtime |
|---|---|---|
| From ☐ AM ☐ PM    To ☐ AM ☐ PM | | |

## OUTSIDE EMPLOYMENT INFORMATION

Nature and detailed description of outside employment

S A M P L E

| Name and address of outside employer | Type of Business |
|---|---|
| | |

Does employer engage in importation of merchandise for sale in the United States?  If answer is Yes, specifically explain the relationship of his/her business contact with Customs Service.

Does employer do business with other Federal agencies ore represent clients on matters, which affect the interest of the United States Government? (This includes employment with attorneys or accountants who are authorized to practice before U. S. Courts or other regulatory organizations.)  If answer is Yes, give details

| Specific hours of outside employment | Number of outside employment hours | | Days of the week you expect to work |
|---|---|---|---|
| From ☐ AM ☐ PM    To ☐ AM ☐ PM | Daily | Weekly | |

I hereby certify that my services in connection with the outside employment or business referred to above will not conflict with or infringe on my duties with or responsibilities to the U. S. Customs Service and that the statements made herein are complete and correct to the best of my knowledge.  I have read and understand the regulations on outside employment (5CFR 2635.802 and 5CFR3101.110(a) on the reverse and I understand that if my outside employment or business request is approved that I must
   (a)   Submit another written request for approval if the nature of the employment or business changes.
   (b)   Submit another written request for approval upon movement or transfer to a different approving official.
   (c)   Notify my supervisor, in writing, when my approved employment or business activity is terminated.

| Employee's Signature | Date |
|---|---|

RECOMMENDATIONS BY IMMEDIATE SUPERVISOR AND OTHER OFFICIALS (indicate reason(s) where disapproval is recommended or, in cases with unusual circumstances where approval has been recommended.)

| | Signature and Title of Immediate Supervisor | Date |
|---|---|---|
| ☐ Approved    ☐ Disapproved | | |
| ☐ Approved    ☐ Disapproved | Signature and Title of Immediate Supervisor | Date |
| ☐ Approved    ☐ Disapproved | Signature and Title of Immediate Supervisor | Date |

Customs Form 3031 (02/00)

Statement Required by 5 CFR 1320.21: The estimated average burden associated with this collection of information is 17 minutes per respondent or recordkeeper depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to U.S. Customs Service, Paperwork Management Branch, Washington DC 20229. *DO NOT* send completed form(s) to this office.

### 5 CFR 2635, Standards of Ethical Conduct for Employees of the Executive Branch

5 CFR 2635.802 - Conflicting outside employment and activities.

An employee shall not engage in outside employment or any other outside activity that conflicts with his official duties. An activity conflicts with an employee's official duties: (a) If it is prohibited by statute or by an agency's supplemental regulation; or (b) If, under the standards set forth in Secs. 2635.402 and 2635.502, it would require the employee's disqualification from matters so central or critical to the performance of his official duties that the employee's ability to perform the duties of his position would be materially impaired.

### 5 CFR 3101, Supplemental Standards of Ethical Conduct for Employees of the Treasury Department

5 CFR 3101.110(a) - Prohibition on outside employment.

No employee of the USCS shall work for a customs broker, international carrier, bonded warehouse, foreign trade zone, cartman, law firm engaged in the practice of customs law or importation department of a business, nor be employed in any private capacity related to the importation or exportation of merchandise.

**Department of Homeland Security**
**Management Directives System**
**MD Number: 0480.1**
**Issue Date: 03/01/2003**

# ETHICS/STANDARDS OF CONDUCT

## I.    Purpose

This directive establishes the Department of Homeland Security (DHS) policy on the ethical conduct and responsibilities of employees, and outlines the duties and responsibilities of ethics officials.

## II.    Scope

This DHS directive applies to all personnel employed by or detailed to all DHS organizational elements.  To the extent not inconsistent with the provisions of this directive, the structure and organization of the Standards of Conduct programs in organizational elements that transferred into DHS are continued except for the positions of "DAEO" and "Alternate DAEO" which are designated as DHS Deputy Ethics Officials with all authority not reserved to the DHS DAEO.

## III.    Authorities

This directive is governed by Executive Orders and national policy, such as:

A.    Executive Order (E.O.) 12674, Principles of Ethical Conduct for Government Officers and Employees.

B.    5 CFR Part 2635, Standards of Ethical Conduct for Employees of the Executive Branch.

## IV.    Definitions

A.    ***Designated Agency Ethics Official (DAEO)***:  The Legal Advisor for Ethics, Office of the General Counsel, is designated as the DAEO.

B.    ***Alternate DAEO***:  An attorney in the DHS Office of the General Counsel recommended by the Legal Advisor for Ethics and designated by the Secretary.

C.    ***Deputy Ethics Officials***:  DHS employees designated by the DHS DAEO pursuant to 5 C.F.R. § 2638.204.

- 1 -

D.    ***Agency Designee***:  Within DHS that term as used in 5 C.F.R. Part 2635 shall refer to the first-line supervisor of the employee whose interests are at issue.

E.    ***Employee***:  For purposes of this directive, "employee" includes Federal personnel employed by or detailed to DHS.

# V.    Responsibilities

A.    ***Designated Agency Ethics Official***: shall coordinate and manage the Department's ethics program as outlined in 5 CFR § 2638.203.

B.    ***Alternate DAEO***: shall serve in an acting capacity in the absence of the DAEO.

C.    ***Deputy Ethics Officials*** shall:

1.    Administer the statutes, regulations, policies, and procedures governing the ethical conduct and responsibilities of employees within their components.

2.    Ensure that prompt and effective action is taken where violations or potential violations of the ethics statutes or regulations are found.

3.    Develop, implement, and disseminate policy and procedure on ethics matters.

4.    Coordinate and oversee the conduct of the annual financial disclosure filing cycle.

5.    Provide ethics advice to the officials and employees within their areas of responsibility.

6.    Provide initial ethics orientation to new employees.

7.    Provide mandatory annual ethics training to employees in covered positions.

D.    ***Supervisors*** shall:

1.    Permit new employees a minimum of 1 hour of official duty time for the purpose of reviewing Part I of EO 12674 and 5 CFR Part 2635.

2.    Ensure that employees who are responsible for filing financial disclosure reports receive at least 1 hour of annual ethics training.

3.      Request assistance where needed from appropriate ethics counselors in advising employees on ethics and conduct issues.

4.      Review employee notifications of outside work or activities to assist in determining if there is any conflict of interest with their official duties and responsibilities or the appearance thereof.

5.      Forward employee requests to conduct outside work for a prohibited source to the appropriate servicing ethics counselor.

6.      Report any potential conflict of interest situations to the respective ethics official for resolution.

E.      ***Employees*** shall:

1.      Be familiar and complying with the Standards of Ethical Conduct for Employees of the Executive Branch contained in 5 CFR Part 2635 and generally outlined in section 6, below, as well as any supplemental Departmental conduct and ethics regulations.  Employees are encouraged to refer to the Office of Government Ethics' World Wide Web site, http://www.usoge.gov, for access to ethics statutes, regulations, forms, and helpful informational materials.

2.      Consult with their supervisors and ethics officials on general questions regarding the applicability of the standards of conduct regulations.  On specific matters, and for guidance on questions of conflict of interest, employees are strongly encouraged to seek the advice and guidance of their ethics officials.

# VI.  Policy & Procedures

A.      ***Policy***: All employees will maintain especially high standards of honesty, impartiality, character, and conduct to ensure the proper performance of Government business and the continual trust and confidence of the citizens of the United States.  The conduct of employees must reflect the qualities of courtesy, integrity, and loyalty to the United States; a deep sense of responsibility for the public trust; promptness in dealing with and serving the public; and a standard of personal behavior that reflects positively upon and will be a credit to both employees and the Department.

These principles apply to official conduct as well as private conduct that affect in any way the ability of employees or the Department to effectively accomplish the work of the DHS. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each Federal employee must respect and adhere to the principles of ethical conduct set forth below; 5 CFR Part 2635, Standards of Ethical Conduct for Employees of the Executive Branch; and other applicable laws.

Employees should:

1.      Place loyalty to the Constitution, the laws, and ethical principles above private gain as public service is a public trust.

2.      Not hold financial interests that conflict with the conscientious performance of duty.

3.      Not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interests.

4.      Not, except pursuant to such reasonable exceptions as are provided by regulation, solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the Department, or whose interests may be substantially affected by the performance or nonperformance of the employees' duties.

5.      Put forth an honest effort in the performance of their duties.

6.      Not knowingly make unauthorized commitments or promises of any kind purporting to bind the Government.

7.      Not use public office for private gain.

8.      Act impartially and not give preferential treatment to any private organization or individual.

9.      Protect and conserve Federal property and not use it for other than authorized activities.

10.     Not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities.

11.     Disclose waste, fraud, abuse, and corruption to appropriate authorities.

- 4 -

12.     Satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, state, or local taxes that are imposed by law.

13.     Adhere to all laws and regulations that provide equal opportunity for all Americans regardless of race, color, religion, sex, national origin, age, or handicap.

14.     Endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this directive. Whether particular circumstances create an appearance that the law or these standards have been violated will be determined from the perspective of a reasonable person with knowledge of the relevant facts.

B.     ***Procedures***:  Any behavior that reflects negatively upon DHS should be reported to the DAEO.

C.     ***Questions or Concerns Regarding the Process***:  Any questions or concerns regarding this directive should be addressed to the Legal Advisor for Ethics, Office of the General Counsel.

MD # 0480.1
AR000009

**CUSTOMS AND BORDER PROTECTION DIRECTIVE**

**ORIGINATING OFFICE:** HRM:ER

**DISTRIBUTION:** SL-01
**CBP DIRECTIVE NO.** 51735-013
**DATE:** JUNE 21, 2004
**SUPERSEDES:**
**REVIEW DATE:** JUNE 2007

**SUBJECT:    STANDARDS OF CONDUCT**

1.      PURPOSE.  This directive establishes the U.S. Customs and Border Protection (CBP) policy on the ethical conduct and responsibilities of employees.

2.      SCOPE.  This CBP directive applies to all personnel employed by or detailed to all CBP organizational elements.

3.      AUTHORITIES.  This directive is governed by and supplements the following authorities:

3.1     Executive Order (E.O.) 12674, Principles of Ethical Conduct for Government Officers and Employees.

3.2     Department of Homeland Security (DHS) Management Directive System - MD Number 0480.1, Standards of Conduct.

3.3     Title 5 Code of Federal Regulation (CFR) Part 2635, Standards of Ethical Conduct for Employees of the Executive Branch.

3.4     Title 5 CFR Part 735, Employee Responsibilities and Conduct.

4.      INTRODUCTION.

4.1     In fulfilling its mission, CBP and its employees must sustain the trust and confidence of the public they serve.  All employees must maintain high standards of honesty, impartiality, character, and conduct to ensure the proper performance of government business and the continued trust and confidence of the public.  The conduct of CBP employees must reflect the qualities of integrity and loyalty to the United States; a sense of responsibility for the public trust; courtesy and promptness in dealing with and serving the public; and a standard of personal behavior that reflects positively upon, and will be a credit to, both CBP and its employees.

4.2     Certain conduct, on or off duty, may subject an employee to appropriate disciplinary action whether or not such conduct is specifically addressed in these standards, the standards listed above under Authorities, or in related statutes or

regulations. Employees will be held accountable for their actions, and will be subject to appropriate disciplinary action when their conduct:

- Fails to conform to these standards or related statutes and regulations.
- Raises the presumption of a connection between the conduct and the efficiency of the service because of the nature and gravity of the conduct (e.g., criminal conduct).
- Directly and negatively impacts the job performance of an employee or his/her co-workers, or management's trust and confidence in an employee's job performance.
- Adversely affects or interferes with CBP's accomplishment of its mission.

5.    EMPLOYEE RESPONSIBILITIES.

5.1    Every CBP employee is required to: (1) know the Standards of Conduct and their application to his or her behavior; (2) seek information from his or her supervisor if unsure of the application of the Standards of Conduct; (3) adhere to the Standards of Conduct; and (4) be aware of the consequences of violation of the Standards of Conduct, and of applicable statutes, regulations and rules regarding conduct.

6.    STANDARDS OF CONDUCT.

6.1    CONDUCT PREJUDICIAL TO THE GOVERNMENT.  Employees shall not engage, on or off duty, in criminal, infamous, dishonest, or notoriously disgraceful conduct, or any other conduct prejudicial to the government.

6.2    PROHIBITED ACTIONS.  Employees will avoid any action, whether or not specifically prohibited by these Standards of Conduct, which might result in, or reasonably create the appearance of:

- Using public service for private gain.
- Giving preferential treatment to a private organization or individual in connection. with official government duties and/or responsibilities.
- Impeding government efficiency or economy.
- Engaging in activities which conflict with official government duties and/or responsibilities.

6.3    INTEGRITY-RELATED MISCONDUCT.  Integrity is essential to the effective functioning of CBP.  Only by each and every employee maintaining the highest standards of integrity and professionalism can CBP keep the public trust and confidence that are critical to our ability to perform our law enforcement, homeland security and other missions.

6.3.1  Employees will neither agree to nor directly or indirectly solicit or accept money or any thing of value for or because of any official act or duties performed by them or for the failure to perform any official act or duties.

AR000011

3

6.3.2   In addition to other responsibilities to report misconduct, employees shall promptly report any offer of money or anything of value.

6.3.3   Employees shall not take any official act, or fail to do so, for personal benefit or gain to the employee or members of the employees' family.

6.3.4   Employees will not use the authority of their position in any way that might result in adversely affecting public confidence in the integrity of CBP and of the government.

6.3.5   Employees will not use any CBP identification in a manner which may reasonably give the perception that they are using the identification for personal benefit, attempting to exert undue influence, or to obtain, directly or indirectly, a favor, reward, or preferential treatment for themselves or others, or to improperly enhance their own image.

6.3.6   Inappropriate Association.  Employees will not, except as may be necessary in connection with official assignments or duties, associate with individuals or groups who are believed or known to be connected with criminal activities.  This limitation on association covers any social, sexual, financial, or business relationship with a source of information, a suspected or known criminal, or an illegal alien, subject to being removed from the United States of America.

6.4     FALSE STATEMENTS.

6.4.1   Employees will not make false, misleading, incomplete, or ambiguous statements, whether oral or written, in connection with any matter of official interest.

6.4.2   When directed by competent authority, employees must truthfully and fully testify, provide information, or respond to questions (under oath when required) concerning matters of official interest that are being pursued administratively.

6.5     DISCLOSURE AND SAFEGUARDING OF OFFICIAL INFORMATION.

6.5.1   Employees will not disclose official information without proper authority. Examples of official information include information that is protected from disclosure by statute, Executive Order or regulation; proprietary business information; and sensitive information retrieved from CBP automated systems.  Even information not within these categories may constitute official information for purposes of this section.  Official information includes any information that an employee acquires by reason of CBP employment, that he or she knows, or reasonably should know, has not been made available to the general public.

6.5.2   CBP utilizes automated systems that are considered "sensitive but unclassified."  These systems include the Treasury Enforcement Communications System, Automated Commercial Environment, Automated Commercial System, the

National Criminal Information Center, National Automated Immigration Lookout System, as well as others. They contain, for example, financial, law enforcement, trade-sensitive, and counter narcotics information. Employees must safeguard all sensitive information against unauthorized disclosure, alteration, or loss. Unauthorized accessing of these systems, including "browsing" (querying the systems for information for other than official reasons) is also prohibited.

6.5.3  Employees will not access, conceal, alter, remove, mutilate, or destroy documents or data in the custody of CBP or the Federal Government without proper authority. Employees are required to care for and conserve such documents according to federal law and CBP policy. When leaving CBP, employees are responsible for adhering to DHS and CBP standards governing the removal of official papers from the agency.

6.6    USE OF CONTROLLED SUBSTANCES.

6.6.1  CBP is charged with the responsibility for interdicting illegal drugs that are being brought into the United States. Therefore, users of illegal drugs will not be selected for employment in CBP, and removal action will be initiated with respect to any CBP employee who is found to use, possess, sell, or distribute illegal drugs.

6.7    GENERAL CONDUCT.

6.7.1  Employees will be appropriately dressed for their workplace, business contacts, and duties. All employees will be properly groomed. Unless otherwise authorized, uniformed employees will report for duty and remain in the uniform authorized for their work location and duties.

6.7.2  Employees are expected to perform their duties to the government and the public conscientiously, respond readily to the lawful direction of their supervisors, and follow agency policies and procedures.

6.7.3  Employees will be professional in their contact with members of the public and co-workers. "Professional" for the purposes of this provision, means being polite, respectful, and considerate. This requirement to be professional must be adhered to even under difficult conditions, in times of personal stress, and in the face of provocation so long as it does not compromise employee safety or impede the performance of official duties.

6.7.4  Employees must observe designated duty hours and be punctual in reporting for work, including overtime assignments, and in returning from lunch and breaks.

6.7.5  Employees will use official duty time to perform official duties.

6.7.6  Employees assigned to inspectional, border protection, or other enforcement

5

duties will not leave their assigned posts until properly relieved or otherwise authorized to depart.

6.7.7  Leave is to be used in accordance with its intended purpose and must be approved in advance whenever possible in accordance with local requirements.

6.7.8  CBP does not tolerate violence in the workplace.  Therefore, employees will not participate in, or condone activities that involve violence in the workplace.  Such violence includes communicating a direct or indirect threat of physical, mental, or emotional harm.  Threats can take the form of written or verbal statements, stalking activity, and facial expressions or physical gestures.  This would not preclude the use of force in accordance with agency policies regulating its use in the conduct of law enforcement activities.

6.8     CARE OF MONEY AND PROPERTY.

6.8.1  Employees who have access to, receive, or come into possession, custody or control of property, money, or other items of value belonging to the agency shall follow established procedures, or use standards of care that are reasonable under the circumstances, when they account for, conserve, protect, or dispose of such property, money, or items of value.

6.8.2  Employees must promptly report to their supervisors any loss, misplacement, theft, damage, or destruction of property, money, or other items of value belonging to the agency.

6.8.3  Upon separation, transfer, or reassignment, or on demand from the proper authority, employees will return all government-owned or leased property or items of value issued to them for use in carrying out their official duties.

6.9     USE OF GOVERNMENT PROPERTY OR OTHER RESOURCES.

6.9.1  Office Equipment and Computers.

6.9.1.1  Generally, CBP employees may use government office equipment for authorized purposes only.  However, limited personal use of government office equipment by employees during non-work time is considered to be an "authorized use" of government property if such use involves only minimal additional expense to CBP and does not: adversely affect the performance of official duties; interfere with the mission or operations of CBP; overburden any CBP information resources; or violate any standard of conduct herein.  The privilege to use government-owned office equipment for personal purposes may be revoked or limited by the employee's supervisor or other authorized official.

6.9.1.2  The use of government computers or other equipment to access, view, store, or transmit sexually explicit material is prohibited.

AR000014

6

6.9.1.3  Employees will use only CBP authorized software on CBP computers.  All software use must comply with copyright laws and/or license agreements.  Employees will adhere to security policy and procedures regarding the use and protection of their computer identification and passwords.

6.9.1.4  Employees shall not use government documents for private or unofficial purposes, circulate them to audiences for which they were not intended, or in any way alter the intended distribution of such documents with respect to their limited organizational or other application.  CBP employees may not use postage-paid official envelopes or letterhead for personal purposes.

6.9.2  Government-sponsored Credit Cards.

6.9.2.1  Employees shall safeguard government-sponsored credit cards under their care, including travel cards, phone cards, fleet cards, and purchase cards, and will promptly report the loss of such cards to their supervisors and to the issuing company.  As cardholders, employees are responsible for using the credit card strictly in accordance with both the government requirements and those of the financial institution issuing the card.

6.2.2.2  Government-sponsored travel (credit) cards may be used only for official travel and official travel-related expenses away from an employee's official duty station and may not be used for personal purposes.  Only the employee whose name appears on the credit card may use the card.  An employee who holds a government-sponsored travel card must pay all valid charges appearing on the credit card statement in full when due each month.

6.9.2.3  Fleet cards will be used only to pay for authorized goods and services for government-owned vehicles (GOVs).

6.9.2.4  Purchase cards will be used only for authorized goods and services for CBP.  When planning and making purchases, purchase cardholders are required to comply with officially designated mandatory sources of supply and funding limitations of their cards.  Cardholders are responsible for being cognizant of the rules, policies, and procedures regarding the use of their cards and will not circumvent or disregard those rules, policies or procedures (e.g., split-purchases, etc.).  Cardholders are required to consult with a warranted contracting officer or the appropriate program official, when any question arises about a potential source for purchase of a service or supply.

6.9.3  Government Identification.

6.9.3.1  Badges, credentials, and identification cards are to be used by CBP employees only for official purposes.  Employees will promptly report the loss of any badges, credentials, and/or identification cards to their supervisor.

6.9.4   Government vehicles.

6.9.4.1  GOVs are "passenger carriers" which include, but are not limited to:  passenger motor vehicles, aircraft, boats, ships, or other similar means of transportation that are owned or leased by the United States.  Employees will not use, or authorize the use of, a GOV except for official purposes, i.e., those deemed essential to the successful completion of the official mission.  The transportation of individuals in a GOV, including family members, is prohibited, unless officially authorized.  Willful use of a GOV for other than official purposes carries a <u>minimum</u> statutory penalty of a 30-day suspension from duty and pay.

6.9.4.2  Employees will not consume alcoholic beverages while operating a GOV and for a reasonable period of time prior to operating a GOV.  Driving a GOV while impaired by alcohol is prohibited under all circumstances.

6.9.4.3  Any employee operating a GOV must observe all applicable state and local traffic laws consistent with the flexibility required for the conduct of law enforcement activities.  Even then, employees are responsible for exercising due caution to ensure the safe operation of their vehicle.

6.9.5   Firearms.

6.9.5.1  Unless firearms are authorized and required in the performance of duty, employees will not carry firearms, either openly or concealed, while on government property or on official duty.

6.9.5.2  Employees authorized to carry firearms will do so strictly in accordance with applicable firearms policies.  Employees carrying firearms are prohibited from consuming alcoholic beverages.

6.9.5.3  Employees authorized to carry and maintain firearms must not leave their firearms unattended and are responsible for properly storing their firearms in accordance with applicable policy.  Upon discovery, employees must promptly report the loss or theft of their firearms to their supervisor.

6.10    USE OF ALCOHOLIC BEVERAGES.

6.10.1  Employees will not report for duty or remain on duty under the influence of alcohol.

6.10.2  Unless specifically authorized, employees may not consume alcoholic beverages while on official duty.

6.10.3  Under no circumstances will employees operate a GOV, on or off duty, while under the influence of alcohol.

AR000016

6.10.4  Uniformed employees will not purchase or consume alcoholic beverages, on or off duty, while in uniform.

6.10.5  Members of aircrews will not consume alcoholic beverages within 8 hours prior to their performing scheduled flight duties.  Any member of an aircrew who is found to have done so will be considered impaired for duty.  Furthermore, even if a member of an aircrew has not consumed an alcoholic beverage during the 8-hour period immediately preceding flight duties, he or she may be considered impaired for duty if he or she, upon reporting for duty, is found to be suffering the residual effects of alcohol consumption.

6.11    BIAS-MOTIVATED CONDUCT.

6.11.1  Employees will not act or fail to act on an official matter in a manner which improperly takes into consideration an individual's race, color, age, sexual orientation, religion, sex, national origin, or disability.

6.11.2  Employees will not make abusive, derisive, profane, or harassing statements or gestures, or engage in any other conduct, evidencing hatred or invidious prejudice to or about another person or group on account of race, color, religion, national origin, sex, sexual orientation, age, or disability.

6.11.3  Employees will not engage in sexual harassment.  Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

6.12    GAMBLING.

6.12.1  CBP employees will not engage in any gambling activity on government premises, and/or using government equipment, including an office pool or any game with financial stakes.  This prohibition also covers gambling on the Internet.

6.13    FINANCIAL MATTERS.

6.13.1  Lending and Borrowing Money.

6.13.1.1  An employee cannot give, make a donation to, or ask for contributions for a gift to his or her supervisor (immediate or in the chain of command).  A gift includes any gratuity, favor, discount, entertainment, hospitality, loan, forbearance, or other item having monetary value.  In addition, an employee cannot accept a gift from another employee who earns less pay, unless the person giving the gift is not a subordinate and

AR000017

the gift is based on a strictly personal relationship.  There are exceptions to these prohibitions.  There is an exception for voluntary gifts worth more than $10 on a special occasion such as marriage, illness, or retirement.  Gifts valuing less than $10 may be given and received on occasions when gifts are traditionally given or exchanged.  An employee may give and/or receive items of food and refreshments to be shared at work among employees.

6.13.1.2  Supervisors will not request or require an employee under their supervision to act as a co-maker, co-signer, or endorser in financial matters.  Furthermore, supervisors will not act as co-makers, co-signers, or endorsers in financial matters for employees under their supervision.

6.13.2  Financial Disclosures.  Employees who occupy certain positions are required to file statements of employment and financial interests within 30 days of their entrance on duty and are further required to file annual supplemental statements.  Affected employees will be notified of their requirement to file such statements.

6.13.3  Fund Raising Campaigns.  Employees may refuse to participate in government-sponsored fund-raising campaigns. Supervisors will not exert pressure on employees to participate in such fund-raising campaigns.

6.13.4  Gifts.  Except as provided in the Standards of Ethical Conduct for Employees of the Executive Branch, an employee will not directly or indirectly solicit or accept a gift from a prohibited source, or a gift given because of the employee's official position.

6.13.5  Just Financial Obligations.  Employees will satisfy all just financial obligations in a timely manner, especially Federal, state, or local taxes that are imposed by law, and balances appearing on monthly statements of employees' government-sponsored credit cards.

6.13.6  Prohibition on Purchase of Certain Assets.  Employees will not purchase, directly or indirectly, property owned by the government and under the control of CBP or sold under the direction or incident to the functions of CBP, except items sold generally to the public at fixed prices.

6.14    SAFETY.  Employees will observe safe practices as well as all safety regulations in the performance of their duties.  Employees will promptly report to their supervisors any injury or accident that occurs in connection with the performance of their official duties by the most expeditious means available.

6.15    OUTSIDE/FAMILY MEMBER EMPLOYMENT.

6.15.1  Employees must complete and submit the appropriate form through their supervisor for approval before entering into any outside employment or business activity.  As a general rule, employees may, with prior approval, engage in any outside employment or business activity, provided such employment or activity is not prohibited

and does not interfere or conflict with performance of their official duties.  No CBP employee shall work for a Customs broker, international carrier, bonded warehouse, foreign trade zone, cartman, or law firm engaged in the practice of customs or immigration law, any businesses or service organizations which assist aliens, or other companies engaged in services related to Customs or Immigration matters.  This prohibition includes employment in the importation department of a business, employment in any private capacity related to the importation or exportation of merchandise or agricultural products requiring inspection, and employment related to immigration.

6.15.2  Any employee, who has a family member (spouse, child, or other relative, by marriage or blood, who is dependent upon the employee and/or resides in the employee's household), employed in one of the above listed categories, the employee must file an annual report through their supervisor to Office of Chief Counsel, for a determination as to whether the employment constitutes a conflict of interest or the appearance of a conflict of interest, with the CBP employee's performance of official duties.

6.16    POLITICAL ACTIVITY.  Employees may take an active part in political management or in political campaigns to the extent permitted by law (Title 5 U.S.C. 7321-7325), vote as they choose, and openly express their opinions on political subjects and candidates.  Employees may not use their official authority or influence to interfere with or affect election results.  Employees may be disqualified from employment for knowingly supporting or advocating the violent overthrow of our constitutional form of government.

6.16.1  The following list contains example of permissible activities for CBP employees who are not Senior Executive Service (SES).  See Title 5 CFR Part 734, Subpart B.

- Stand as candidates for public office in nonpartisan elections.
- Register and vote as they choose.
- Assist in voter registration drives.
- Express opinions about candidates and issues.
- Contribute money to political organizations.
- Attend political fund-raising functions.
- Campaign for or against candidates in partisan elections.
- Make campaign speeches for candidates in partisan elections.
- Distribute campaign literature in partisan elections.
- Hold office in political clubs or parties.
- Attend and participate in political rallies and meetings.
- Join and be active members of a political party or club.
- Sign nominating petitions.
- Campaign for or against referendum questions, constitutional amendments, and municipal ordinances.

6.16.2  The following list contains examples of prohibited activities for CBP employees who are not SES.  See Title 5 CFR Part 734, Subpart C.

- Engage in political activity (an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group) while on duty, in a government office, wearing an official uniform, or driving a GOV.
- Use official authority or influence to interfere with an election.
- Solicit or discourage political activity on the part of anyone with business before CBP.
- Solicit or receive political contributions from any person except in certain limited situations as specified in Title 5 U.S.C. 7323 (a)(2).
- Be candidates for public office in partisan elections.
- Wear partisan political buttons while on duty.

6.16.3  The SES employees are subject to greater restrictions than those identified above.  These individuals should refer to Title 5 U.S.C. Part 7321, or consult the Office of Chief Counsel.

6.16.4  Employees who reside in localities (designated by the Office of Personnel Management) where the majority of voters are employed by the Federal Government are covered by additional provisions (See Title 5 CFR Part 733).

Commissioner
U.S. Customs and Border Protection

# POSITION DESCRIPTION *(Please Read Instructions on the Back)*

| | 1. Agency Position No. |
|---|---|
| | GS= S1043a |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription  ☒ New  ☐ Reestablishment  ☐ Other | ☐ Hdqtrs  ☒ Field | Washington, DC | Various | GG= S1047a |

**Explanation** *(Show any positions replaced)*

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☒ Exempt  ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure  ☒ Employment and Financial Interest | ☒ Yes  ☐ No |

| 10. Position Status | 11. Position Is | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☒ Competitive | ☐ Supervisory | ☐ 1--Non-Sensitive  ☒ 3--Critical | BU: * |
| ☐ Excepted *(Specify in Remarks)* | ☐ Managerial | | 14. Agency Use |
| ☐ SES (Gen.)  ☐ SES (CR) | ☒ Neither | ☐ 2--Noncritical Sensitive  ☐ 4--Special Sensitive | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | Customs and Border Protection Officer | GS/GG | 1895 | 11 | SKF | 10/31/03 |
| c. Second Level Review | | | | | | |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

| 16. Organizational Title of Position *(if different from official title)* | 17. Name of Employee *(if vacant, specify)* |
|---|---|

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| Department of Homeland Security | |
| a. First Subdivision | d. Fourth Subdivision |
| U.S. Customs and Border Protection | |
| b. Second Subdivision | e. Fifth Subdivision |

| 19. Employee Review-This is an accurate description of the major duties and responsibilities of my position. | Signature of Employee *(optional)* |
|---|---|

**20. Supervisory Certification.** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that* this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager *(optional)* |
|---|---|
| | Jayson P. Ahern Assistant Commissioner, Office of Field Operation |
| Signature                    Date | Signature                    Date  10/31/03 |

**21. Classification/Job Grading Certification.** *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.*

Typed Name and Title of Official Taking Action

Ronelle Rotterman
Supervisory Human Resources Specialist

| Signature                              Date |
|---|
| Ronelle Rotterman                10/31/03 |

**22. Position Classification Standards Used in Classifying/Grading Position**

**Information for Employees.** The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

**24. Remarks**   FPL-11          *See SF-50 for specific information on employee.
          Revised:

**25. Description of Major Duties and Responsibilities** *(See Attached)*

GS=S1043a
GG=S1047a

## Customs and Border Protection Officer
## GS/GG-1895-11

**INTRODUCTION:**

The primary mission of U.S. Customs and Border Protection (CBP) is to detect and prevent terrorists and instruments of terror from entering the United States, enforce applicable laws, and facilitate the orderly and efficient flow of legitimate trade and lawful travelers.

The CBP Officer performs the full range of inspection, intelligence analysis, examination, and law enforcement activities relating to arrival and departure of persons, conveyances, and merchandise at Ports of Entry (POE). The Officer's primary responsibility is to identify potential terrorists and instruments of terror and to perform layered enforcement activities relative to counter-terrorism. These enforcement activities are to prevent the entry of terrorists and instruments of terror, harmful pests and diseases, illegal drugs and contraband, and illegal aliens and importations/exportations contrary to law and trade agreements, etc., from entering/exiting the United States. The Officer interprets the laws and regulations of a broad range of Federal, state, and local agencies, relating to the admissibility of people, cargo and conveyances.

This position is located in various POEs, to include land border, airport, seaport, and pre-clearance stations, and mission needs may require rotation of assignments and duty locations.

**MAJOR DUTIES:**

The enforcement and facilitation examination continuum is a process that typically includes preprimary/risk assessment, primary examination, secondary examination (including disposition for enforcement and compliance), outbound, registration, exit controls, and post disposition. Significant judgments are made at every step on the continuum.

The work requires broad knowledge of laws and procedures, as well as changing initiatives and threats. The Officer applies behavioral and cultural analysis, and decision-making skills in order to perform the risk assessment required to release travelers and shipments and to identify those requiring further scrutiny, especially those involving terrorist individuals and instruments of terror. The Officer applies this broad range of knowledge in completing the initial interactions and a more specific application in increasingly complex determinations as examinations progress.

**Preprimary/Risk Assessment:**

Preprimary/risk assessment occurs prior to the arrival of persons, conveyances, or merchandise, as information about impending arrivals is received via automated

AR000022

manifests, entries, or passenger/crew information systems and is analyzed via various databases and other information sources.

Gathers and analyzes information from all available sources such as intelligence reports, and various databases.  Identifies known or potential terrorists and instruments of terror, criminals, smuggling patterns, trends, and methods, and other threats to U.S. borders and national security.  Assesses threats and creates individual lookouts and develops and disseminates tactical information and intelligence.

Reviews and analyzes carriers', importers', and exporters' manifests, permits, certificates, entries, invoices, and associated documents to determine the admissibility of merchandise or cargo, and levels of risk for possible violations of laws and threats to national security, economic and agricultural interests.  Identifies and targets high-risk shipments and conveyances for examination.

Develops, plans and participates in tactical operations, such as pre-primary blitzes, intensive boardings, and roving.  Participates in enrollment of alternative inspection programs designed to facilitate low risk arrivals.

Interacts with carriers, other agencies and foreign entities to exchange information and provide guidance on admissibility/compliance.

Participates in and supports programs designed to secure supply chains and push the border outward.

**Primary Examination:**

Primary examination is the questioning and visual examination of travelers to determine alienage, citizenship, admissibility, and the need for further inspection as well as the physical and visual examination of cargo and conveyances to determine admissibility or the need for further inspection.

Inspects identity and travel documents presented during examination to determine validity and authenticity.  Utilizes observational techniques and monitors behavior to assess risk for possible involvement in terrorism, criminal, or violation of status activities.  Conducts a wide range of record checks using a variety of databases and systems and uses tactical intelligence to identify high-risk travelers.  Determines whether traveler (citizen or alien), cargo, or conveyance may be immediately admitted or referred to secondary examination for further processing.

Analyzes a wide variety of commercial documents such as invoices, bill of lading and packing slips in order to identify anomalies attendant to the importation and exportation of commercial merchandise.  Utilizes targeting systems to ascertain examination requirements.  Enforces quarantines and coordinates with affected parties of interest to ensure the safe and timely adjudication of merchandise and/or packing materials in violation of entry requirements.

GS=S1043a
GG=S1047a

Employs a wide range of non-intrusive technology devices such as radiation monitors, portable and stationary X-ray machines, body scanners, density meters and fiberscopes when conducting examinations. Troubleshoots technical problems with non-intrusive technology; determines the accuracy of readings and signals which result from the equipment and conducts required safety checks as mandated by established protocols.

**Secondary Examination:**

Secondary examination is the further intensified inspection of people, cargo, or conveyances not released or admitted upon primary examination. Through interviews, document reviews, additional database queries, communication with other law enforcement agencies, observational techniques, heightened physical inspections, and the use of technology, the inspecting Officer performing the secondary examination continues to collect information, facts, and evidence necessary to properly assess risk. The purpose of the secondary examination is to determine eligibility and admissibility relative to applicable regulations and statutes and to determine the appropriateness, extent, and focus of further intensified examination.

Conducts visual and physical inspection of cargo, baggage, conveyances, packing materials and people using a wide array of non-intrusive technology such as density meters, laser range finders, stationary and portable X-ray machines, body scanners, radiation detection devices, vapor tracers, isotope identification devices, and biometrics collection units. Based on assessed risks, further and progressively more complex and extensive physical examinations, interrogations and database queries may be required to identify and interdict highly sophisticated smuggling schemes and activities and instruments of terror.

Conducts re-boarding inspections on conveyances as necessary for the purpose of ensuring compliance with prescribed laws or regulations.

Compiles data, maintains logs, and prepares monthly/daily work accomplishment reports on inspection operations. Accurately documents incident reports, prepares investigative reports and provides testimony in support of third party proceedings. Processes required documentation for other federal agencies.

**Outbound, Registration, and Exit Control Functions:**

The purpose of the outbound, registration, and exit control functions is to selectively identify, target, control and examine passengers, conveyances, and cargo leaving the United States or within the United States but under the jurisdictional oversight of CBP. This function is designed to detect terrorists and instruments of terror, to prevent departure of those aliens ordered to remain within the United States, to collect departure data on aliens leaving the United States, and to ensure compliance with agricultural and export requirements.

GS=S1043a
GG=S1047a

Identifies, targets, controls and examines passengers and cargo leaving the United States in order to ensure that the mission objectives of interdicting terrorists and instruments of terror, and compliance with export requirements are met.

Examines identity documents presented upon departure for validity and authenticity. Ensures compliance with required exit control programs to prevent departure of certain aliens, unreported currency and monetary instruments, individuals wanted by federal, state and local authorities and referrals to the Joint Terrorism Task Force.

Reviews commercial documents, inspects conveyances and examines cargo destined for export from the United States.  Ensures that rejected merchandise, such as tainted meat and commodities infested with pests, exits the United States under proper supervision.  Targets merchandise departing the United States for licensing requirements, especially items that have military application and/or can be used as instruments of terror.  Ensures that merchandise transiting the United States on transportation and exportation entries or other in-transit programs is exported in accordance with established requirements.

Performs other duties as assigned.

**Special Requirements:**

The incumbent is required to carry a firearm, must qualify with and maintain proficiency in the use of the firearm as well as non-deadly force, to protect and defend his or her own life or that of others.

Foreign language is required in some locations.

The incumbent must possess a valid state driver's license.

Must work on a shift and rotational basis and perform substantial amounts of overtime.

Must maintain ability to access all data systems.

May undergo security clearance investigation and may be granted a Secret level or higher.

**FACTOR EVALUATION:**

Factor 1, Knowledge Required          Level 1-7, 1250 points
Factor 2, Supervisory Controls        Level 2-4, 450 points
Factor 3, Guidelines                  Level 3-4, 450 points
Factor 4, Complexity                  Level 4-4, 225 points
Factor 5, Scope and Effect            Level 5-3, 150points
Factor 6 & 7, Contacts and Purpose    Level 6-3&7-3, 180 points
Factor 8, Physical Demand             Level 8-2, 20 points
Factor 9, Work Environment            Level 9-2, 20 points

GS=S1043a
GG=S1047a

**Total Points: 2745          Point Range: 2355-2750**
**Grade Conversion: GS/GG-11**

**Bargaining Unit:                    FLSA Status:**

## ADDENDUM

The following addendum is made to PD# ………   The supervisor should place an "X" in the appropriate box/boxes below in order to indicate the functional area(s) to which the incumbent is assigned.

**ENFORCEMENT AND SPECIAL RESPONSE TEAMS**:

Each team member participates in joint task force operations with officers from other Federal, state and local law enforcement agencies.  Establishes effective working relationship with counterparts and may represent area of responsibility on committees and meetings.  Plans strategies to accomplish organizational and law enforcement goals or targets, and determines tactics to achieve intermediate objectives.  Trains and organizes other participants to carry out objectives.  Evaluates results, prepares and presents detailed reports to supervisors, as required, and makes recommendations on program improvement and future operations.  Specifically, teams are established to accomplish the following:

Special Response:

Highly mobile and fully trained to provide CBP with a rapid and organized response, while providing a law enforcement presence, during critical or significant incidents, personnel management (civil unrest), volatile and/or emergency situations at or near a Port of Entry (POE).  Team responses will be based on prior intelligence, trends or a reactive response to a critical incident or significant situation, in accordance with existing CBP policy and emergency preparedness plans.  Based on knowledge, training and experience; will conduct threat assessments, at the POEs.

On a national and/or regional basis may be required to coordinate with other law enforcement or military entities, in response to intelligence reports, protests or other disruptive events (e.g., securing bridges POEs or other CBP sites; providing assistance to local, state and federal law enforcement agencies, during time of national emergencies; securing event sites and major access points, in conjunction with CBP and DHS sanctioned events).

Anti-Terrorism Contraband Enforcement Teams and Roving Teams

GS=S1043a
GG=S1047a

Plans, coordinates, leads/participates to; apprehend, neutralize, secure and interview/interrogate potential or known terrorist suspect(s) or goods; performs a variety of intelligence gathering, analysis, targeting, and selectivity functions to identify persons, conveyances and cargo that require in-depth or special emphasis inspection actions due to high risk of illegal migration and narcotics, organized crime, smuggling activities, sale, use or production of fraudulent documents or other criminal activity; determines degree of examination needed, resolves problems, ensures proper release of cargo and conveyances and admission of people; conducts departure musters on high-risk vessels to ensure detained crewmembers have remained onboard; conducts patrols of isolated, high-risk facilities, security sweeps and enforcement boardings of conveyances arriving from high-risk locations and prevents the entry of terrorists and instruments of terror.

Each participates in joint task force operations with officers from other Federal, state and local law enforcement agencies. Establishes effective working relationship with counterparts and may represent area of responsibility on committees and meetings. Plans strategies to accomplish organizational and law enforcement goals or targets, and determines tactics to achieve intermediate objectives. Trains and organizes other participants to carry out objectives. Evaluates results, prepares and presents detailed reports to supervisors, as required, and makes recommendations on program improvement and future operations.

## TARGETING AND ANALYSIS TEAMS

Participates in special enforcement teams (e.g., Manifest Review Units, Document Analysis Units, and Passenger Analysis Units) to collect and analyze advanced information and identify potential high-risk targets (people, merchandise, or conveyance) based on anomalies, emerging threats, lookouts, links analysis and/or other agency input. Creates lookouts and disseminates the list of targets to other CBP Officers and in some cases to the other agencies for examination.

Networks extensively with like targeting units throughout CBP and with the National Targeting Center on smuggling and other violation trends and threats. Disseminates this information to other CBP Officers.

Participates in established training sessions with program area.

## PORT SECURITY

Acts as a lead CBP representative for maintaining a robust Federal Inspection Services (FIS) security program at all modes of transportation. Ensures port employees and employers have legitimate access to port security areas and strictly adhere to port security programs. Issues clearances for port caterers. Conducts background checks, reviews applications, and interviews questionable applicants. Documents and defends security access denials and revocations. Works in concert with all Port Authorities and the Transportation Security Administration.

GS=S1043a
GG=S1047a

## FACILITIES SECURITY

Participates in warehouse and cargo security programs that support C-TPAT and other transportation and supply chain security initiatives.  Audits carrier manifests to ensure accuracy.


## FIREARMS/NON-DEADLY FORCE

Responsible for re-qualifying Officers on a periodic basis and oversees and implements training techniques on officer mindset, semi-automatic weapon proficiency, advanced tactical exercises and tactics involving integrated/interactive training scenarios.

Periodically assesses the ports training program and implements necessary changes due to change in policy, new weapon issuance, and/or advanced training or new technology.

Must be able to teach the CBP use of force policy and the use of force continuum.

Must be able to explain the concept of non-deadly force and instruct in the proper use of non-deadly force weapons and tactics such as chemical spray and also be able to explain and demonstrate subject control, edge weapon defense, weapon retention and disarming.

Must have the knowledge required to conduct briefings on firearms safety and range rules prior to qualification and training, and ensure that all instruction is conducted effectively and in accordance with established firearms and range safety rules and procedures.

Must be able to explain and demonstrate the fundamentals of basic marksmanship in the classroom and at the firing range, and also observe, detect, explain and correct common shooting errors through the use of target analysis and corrective marksmanship training techniques.

Must be able to instruct on the basic handling skills for a firearm which include tactical reloading, combat reloading, primary malfunction clearing, secondary malfunction clearing and one handed reloading.

## NON-INTRUSIVE INSPECTION (NII)

The position is proficient with the operational aspects, detection capabilities, training, maintenance, radiations response protocols, NII policies, and Standard Operating Procedures of NII technology.  The incumbent will receive extensive in-house training as well as training from other government agencies such as the Department of Energy.

GS=S1043a
GG=S1047a

The incumbent is responsible for providing technical and administrative support for NII devices and for staying abreast of state-of-the-art detection systems technology.

The incumbent serves as a subject matter expert in all aspects of NII technology and is recognized as a leader and authority in the use of NII in port operations. The incumbent provides technical guidance on the use of NII equipment and on enforcement duties involving NII equipment to officers and supervisors. The officer oversees and is directly involved and responsible for all types of equipment and devices to include Vehicle and Cargo Inspections Systems, Truck X-ray, Mobile Sea Container Examinations Systems, Pallet Gamma-Ray, Radiation Portal Monitor, Personal Radiation Detector and Radiation Isotope Identifier Device.

**INTELLIGENCE**

The CBP Officer is responsible for the effective and efficient operation and maintenance of a tactical intelligence program that directly supports the risk assessment, robust targeting regimes, primary and secondary examination, and control functions at the port of entry. The Officer also acts in direct support of CBP's mission to detect and prevent terrorists and their instruments and other activities detrimental to the security of the United States or in violation of regulation or statute by developing and providing tactical intelligence. The Officer serves as the main point of contact and as the agency's liaison with other Federal, state, local, and foreign law enforcement offices and intelligence agencies. The Officer reports to the Port Director.

Collects raw data on terrorism, smuggling, and other criminal activity from a wide variety of sources including informants, CBP Officers, Border Patrol Agents, sources in other Federal, state, local, and foreign law enforcement offices and intelligence agencies, court officials, schools, carriers, trade members and open sources.

Evaluates raw data to determine reliability and verifiable involvement in terrorism, smuggling or other criminal activities and to determine the effect on the mission of CBP as well as its impact on other law enforcement or intelligence agencies.

Prepares and disseminates reports from the finished intelligence that identifies tactical intelligence regarding possible criminal trends or suspected activities to CBP Officers. Ensures dissemination to all affected and authorized parties through systems of control and monitoring. Networks extensively with other CBP Officers in Passenger Analysis Units and Manifest Review Units, responsible for intelligence functions in an effort to promote and enhance collection, evaluation, and dissemination activities. Provides guidance to Passenger Analysis Units as needed. Serves as the link between the National Targeting Center and local CBP Officers.

Establishes and maintains liaison with appropriate officials, sharing in the mission of CBP, in foreign government agencies, Federal, state, and local law enforcement agencies, and the National Targeting Center as well as other CBP Officers. This liaison is established for the purpose of exchanging information and developing avenues for

GS=S1043a
GG=S1047a

obtaining information and law enforcement assistance.  The incumbent must be mindful of the need-to-know and right-to-know requirements attached to all communications between CBP and allied agencies.

**TRAINING**

Works in partnership with Port Directors, managers and numerous field contacts to provide the necessary guidance to accomplish CBP training goals and objectives. Provides technical advice on the development and implementation of CBP training programs, policies, and procedures.  Participates in the evaluation of training programs and activities to ensure that they meet CBP standards and to determine their impact on attendees' performance.  Attends meetings with potential contractors on training matters

Communicates national training policies and programs to Port Directors and managers and ensures that Officers are informed of current policies, procedures and regulations.

Incumbent is responsible for providing Pre and Post Academy training, continued training, and evaluating the training to provide feedback on any needed improvements. Ensures that assigned Officers receive the appropriate on-the-job (OJT) in order to meet the proficiency requirements.  Ensures that trainees receive feedback on their progress.

Provides guidance and assistance in training and developing CBP Officers.  Assistance given includes training problem identification and recommended solutions, e.g., analyzing and identifying the training and developmental needs of employees; establishing training priorities in accordance with CBP guidance; identifying possible solutions, inclusive of non-training solutions; and determining manpower and money requirements for training or non-training solutions.

Schedules and reports on the results of training activities.  The incumbent coordinates all logistics necessary to deliver distance learning.  Notifies employees of upcoming distance learning opportunities.  Schedules local facilities for use by employees' participating in OJT training or when attending training lectures and demonstrations.

Provides training or CBP overview to other Federal agencies, state, local and foreign law enforcement entities, or other stakeholders as required.

GS=S1043a
GG=S1047a

## COLLATERAL DUTIES

The following collateral duties are made to PD# ………   The supervisor should place an "X" in the appropriate box/boxes below in order to indicate the functional area(s) to which the incumbent is assigned.

### LIAISON/OUTREACH

Determines the need for, plans, prepares and carries out presentations or exhibits for and serves as CBP 's spokesperson during seminars, trade shows, public events, career days, and other public information initiatives.

When engaged as a first responder to public appearance or outreach requests, coordinates the routing of such outside requests with local management and chain of command, making recommendations to management when CBP program events warrant attention by the news media.  As appropriate, coordinates major activities with Public Affairs.

### HAZARDOUS MATERIALS

Makes internal risk assessment concerning the importation or exportation of dangerous cargo and/or on specific items of cargo.

May visit an importer's, exporter's, or shipper's premises to gain information about the nature of their importation/exportation and to determine the importer's/exporter's capability to provide samples upon request.

Serves as an on-call program expert in response to incidents, minor or major, including leaks, spills, explosions.  Plans and coordinates request for intrusive inspections of hazardous or dangerous cargo, and requests for sampling.

AR000031

Department of Homeland Security
Delegation Number: 0421
## Issue Date: 11/08/2004
# DELEGATION TO CHIEF DEPUTY ETHICS OFFICIALS

## I.   Purpose

This is a delegation of authority to Chief Deputy Ethics Officials (CDEO) of the Department of Homeland Security (DHS) to assist in managing and coordinating the DHS Ethics program within the components.

## II.   Delegation

By the authority vested in the Designated Agency Ethics Official (DAEO) by 5 CFR 2638.204, I hereby delegate to the Associate General Counsel for Emergency Preparedness and Response, Chief Counsel of U.S. Customs & Border Protection, Chief Counsel of the Federal Law Enforcement Training Center, Counsel to the inspector General, Judge Advocate General of the U.S. Coast Guard, Chief Counsel of the Transportation Security Administration, Chief Counsel of the U.S. Secret Service, the Ethics Officer of U.S. Immigration and Customs Enforcement, and the Ethics Officer of U.S. Citizenship and immigration Services the authority to perform the duties referred to in 5 CFR 2638.203(b) except for the functions set forth in 5 C.F.R. 2638.203(b)(1) and 5 CFR 2634.605(c)(2) and referred to in 5 CFR 2638.203(b)(3). These deputy ethics officials shall be known as Chief Deputy Ethics Officials (CDEO). All existing delegations that are inconsistent with this delegation are revoked.

## III.   Re-delegation

The authorities granted in this delegation may be re-delegated in writing to career employees and uniformed personnel of DHS. Upon delegating ethics authority, the CDEO shall promptly furnish the DAEO with a copy of the delegation, and, annually, furnish the DAEO with a list of all his or her delegates with their authorities, locations, and contact information.

## IV.   Authorities

The Homeland Security Act of 2002, Pub L. No. 107-296; 5 U.S.C. § 301; the Ethics in Government Act of 1978, as amended, Pub. L. No. 95-921; 5 CFR part 2638; DHS Delegation 0420.

Delegation # 0421

AR000032

# V.   Office of Primary Interest

The Legal Advisor for Ethics and the Office of the General Counsel have primary interest in this delegation.


Date: *Nov, 8, 2004*

Designated Agency Ethics Official


2

Delegation # 0421

AR000033

U.S. Department of Homeland Security
Washington, DC 20229



**U.S. Customs and
Border Protection**

# Interoffice Memorandum

DATE: JAN 18 2005

FILE: AD-2004-1423

TO: Associate Chief Counsels
Assistant Chief Counsels

FROM: Chief Counsel

SUBJECT: Delegations of Ethics Authority

Please be advised that pursuant to the authority granted to me in Department of Homeland Security Delegation No. 0421 to assist in managing and coordinating the DHS ethics program within CBP, I hereby delegate the following authority:

1. To the Associate Chief Counsel (Administration), the authority to serve as the principal lawyer for CBP regarding matters pertaining to the Standards of Ethical Conduct for Employees of the Executive Branch, as well as the authority to act as the reviewing official for all SF-278 Public Financial Disclosure Reports filed by CBP employees, including the certification of all CBP SF-278s in accordance with the regulations at 5 C.F.R. § 2634.605, and;

2. To the Associate Chief Counsels (Field) (may be re-delegated to the Assistant Chief Counsels (Field)), the authority to furnish legal opinions to the Field Operations Directors, the Strategic Trade Center Directors, the Border Patrol Sector Chiefs, the Air and Marine Field Directors, the Port Directors, and all other Customs managers in his/her geographic area and assist these officers and employees in the preparation and review of documents containing analyses, advice, references, interpretations or procedures with respect to the statutes, regulations and rules administered or enforced by CBP. This includes, but is not limited to, legal opinions regarding family member conflict of interest reports and the Standards of Ethical Conduct for Employees of the Executive Branch. *Caveat:* An opinion which might have national significance or is not in accord with a previously expressed opinion

AR000034

of the Chief Counsel or an Associate/Assistant Chief Counsel shall be coordinated with the Chief Counsel prior to issuance.

Alfonso Robles

AR000035



**Jerry C. Agan**
*Presidio County Judge*

P. O. Box 606
Marfa, Texas 79843
432-729-4452
Fax 432-729-4453

*Felipe A. Cordero*
Commissioner, Precinct 1
*Eloy Aranda*
Commissioner, Precinct 2
*Carlos Armendariz*
Commissioner, Precinct 3
*Danny Watts*
Commissioner, Precinct 4

May 20, 2004

Mr. Luis Garcia
Office of the General Counsel
U. S. Customs and Border Protection
9400 Viscount, Suite 100
El Paso, Texas 79925

*5/21*
*ALL (Humphries)*
*You are welcomed to*
*have one of your*
*staff sit in.*
*JG*

Re:   CBPO JAIME RAMIREZ, PORT OF PRESIDIO, TX.
      DENIAL OF CF 3031 TO SERVE ON PRESIDIO CITY COUNCIL

Dear Mr. Garcia:

This is to confirm my appointment with you on May 27, 2004, at 10:30 a.m. to discuss Mr. Ramirez's recent election to the Presidio City Council, which is a non-partisan election. In your letter of May 14, 2004, which was forwarded to me, the reasons for denying Mr. Ramirez's request were conflict of interest and violating ethical standards. When Mr. Ramirez committed to the candidacy, our thoughts were that he was totally supported by the Hatch Act.

We have historically benefited from the committed public spirit of the federal employees located in this region, on the City Councils and the School Boards especially. Just a cursory backward look brings to mind six names of Customs or Border Patrol personnel who have served in local government and on community boards. Demographics is a critical factor in our very deep appreciation for the willingness of such qualified individuals to step forward for voluntarism.

Presidio County covers 4,000 square miles but has only 7,304 citizens per the 2000 census, 4,173 of whom reside in the city of Presidio (only 1.9 person per square mile – this is well below the population density defining a frontier area). Nearly half of the population (36.4) is under poverty level, with an unemployment rate in October of 2003 of 20.6%. Eighty-five per cent of the 7,304 residents are Hispanic and 84% of them over five years old speak Spanish at home. Some of the colonias in the southern part of the county have yet to be provided running water and septic services. A large number of our citizens are too busy eking out a living to perform community service. Basically, Presidio and Marfa are the epitome of small towns; everybody is unavoidably aware of and involved in the current affairs of the entire county.

I look forward to visiting with you in this regard.

Sincerely,

Jerry C. Agan

JCA:mh



RECEIVED
MAY 2 1 2004
AR000036



**Jerry C. Agan**
*Presidio County Judge*

P. O. Box 606
Marfa, Texas 79843
432-729-4452
Fax 432-729-4453

Felipe A. Cordero
*Commissioner, Precinct 1*
Eloy Aranda
*Commissioner, Precinct 2*
Carlos Armendariz
*Commissioner, Precinct 3*
Danny Watts
*Commissioner, Precinct 4*

May 25, 2004

Mr. Luis Garcia
Director, Field Operations
U. S. Customs and Border Protection
9400 Viscount, Suite 100
El Paso, Texas 79925

Re:   CBPO JAIME RAMIREZ, PORT OF PRESIDIO, TX.
      CF 3031 TO SERVE ON PRESIDIO CITY COUNCIL

Dear Mr. Garcia:

Thank you for taking the time to visit with me by telephone yesterday. I very much appreciate your reconsideration of Mr. Ramirez's request to serve on the Presidio City Council. He is willing to work through recusing himself on any issues that might involve conflict of interest.

I must again express my appreciation for all the benefits Presidio County receives from the voluntarism of federal employees. Since our telephone conversation met with such an equitable resolution, I was wondering if you would like to cancel our appointment on Thursday. If you have any other issues to discuss or further details to work out, however, I would be more than happy to come to your office at our scheduled appointment time. I will be on the road today, but will return to the office tomorrow. If you wish, contact my secretary at 432-729-4452.

Sincerely,

Jerry C. Agan

JCA:mh



30 Viscount, Suite 100
El Paso, TX 79925

 **COPY** Subject File Copy

 **U.S. Customs and Border Protection**

MAY 1 4 2004                                      PER 2-EPFO JL

MEMORANDUM FOR:   CBPO JAIME RAMIREZ , PORT OF PRESIDIO, TX

FROM:                         Director, Field Operations
                                    El Paso Field Office

SUBJECT:                    Outside Employment Request

The El Paso Field Office is in receipt of your CF 3031, "Request To Engage In Outside Employment Or Business Activities" to enter your name in an election to be a member of the City Council of Presidio, Texas, a non-partisan, non-paid position.  Per CBP Directive #51735-001A, we are returning the original CF 3031 to you.  Your request has been disapproved.

The Standards of Ethical Conduct for Government Employees, 5 C.F.R. Part 2635.802, provide that "An employee shall not engage in outside employment or any other outside activity that conflicts with his official duties." Furthermore, "an employee shall endeavor to avoid actions creating an appearance of violating any of the ethical standards" set forth in Part 2635 [5 C.F.R. Part 2635.801(c)].

Based on the general knowledge of city councils, the duties of a member of the City Council of Presidio would create an actual, potential, and/or an apparent conflict of interest.  It is my understanding that the duties of City Council of Presidio members includes providing recommendations regarding city business and about issues involving city employees.  As Customs and Border Protection works closely with City of Presidio employees on various law enforcement issues, it is my opinion that your service on the City Council would create a conflict of interest. A copy of your request and my decision will be forwarded to CBP Employee Records Center for retention in your Official Personnel Folder.

If you have any questions, please contact Janice Lybarger, Mission Support Specialist at (915) 633-7300, ext. 161.

LUIS GARCIA

Enclosure

cc:  John T. Prewit, PD Port of Presidio, Texas

```
Author:  LUIS DFO GARCIA at CMC-EL_PASO-1
Date:    5/24/04  2:24 PM
Priority: Normal
TO: John.Prewit@dhs.gov at SMTPLINK
CC: ROBERT H HUMPHRIES, SHARON K GARLAND
Subject: Request for Outside Employment - Jaime Ramirez
-------------------------------- Message Contents -----------------------------------
```

John,

This confirms our earlier telephone conversation.

I have reconsidered my prior decision denying the outside employment request submitted by CBPO Ramirez.

I have approved it, with the stipulation that he recuse himself from any City Council decision deemed to be in conflict with CBP's mission or policies.

A letter documenting this stipulation will be prepared and sent to him, through your office.

AR000039

MEMORANDUM FOR:      DIRECTOR OF FIELD OPERATION
                     EL PASO FIELD OFFICE

FROM:                CBP Inspector Jaime Ramirez

SUBJECT:             Service on the City Council of Presidio, Texas

In accordance with my conversation with Assistant Chief Counsel Robert Humphries, I
hereby make the following pledge regarding my service as a member of the City Council
for the City of Presidio, Texas. I understand that without this pledge, I could not serve
as a member of the City Council because of the potential for conflicts of interest with my
duties as a CBP Inspector.

I pledge to recuse myself from consideration of all matters by the City Council that
concern the Presidio Port of Entry, U.S. Customs and Border Protection (including the
Border Patrol), or any U.S. Customs and Border Protection facility or property (including
federally owned housing for CBP employees). I also pledge to inform the Port Director
and the Assistant Chief Counsel if I have any question as to whether or not a matter
under consideration, or to be considered, by the City Council will require me to recuse
myself in accordance with this pledge.

Further, I acknowledge that the approval of my service as a member of the City Council
may be withdrawn at any time if such service creates a conflict of interest, an
appearance of a conflict of interest, or in any way interferes with my performance of my
duties as a CBP Inspector.


Jaime Ramirez

AR000040

*handwritten note in top right margin:*

MSD — This appears to relate the 14 acres that DEA is transferring to us. What are the pros & cons of their proposal. We'll need to research and provide a response upon the FO in DFC.

## ROD PONTON
ATTORNEY AT LAW
2301 NORTH HIGHWAY 118
P. O. BOX 9760
ALPINE, TEXAS 79830

432-837-0990
432-837-0971 (fax)

October 4, 2006

Joseph A. Florio
Assistant United States Attorney
Chief, Asset Forfeiture Section
U.S. Attorneys Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Luis Garcia
Director, Field Operations
U.S. Customs and Border Protection
9400 Viscount, Suite 104
El Paso, Texas 79925

Re:     *Cause No. P-06-CV-28*; United States of America v Various Lots and
        Tracts known as "Rio Grande Stockyards"; In the United States District
        Court for the Western District of Texas, Pecos Division

Dear Sirs:

I am the Presidio County Attorney, and the City Attorney for the City of Presidio.
The two entities, together, are interested in obtaining the Rio Grande Stockyards for use
as a commercial port facility at a proposed commercial bridge and port between the City
of Presidio and the City of Ojinaga, Chih., MX. Mexican authorities are in the planning
process to develop a high capacity commercial port and bridge opposite this location. A
commercial port would be of great benefit to the area, creating many new jobs.

Presidio County and the City of Presidio propose to develop the port through the
creation of a new Regional Mobility Authority, created under authority of Section 370 of
the Texas Transportation Code. The Act provides that RMA's may be created though
authority of the Texas Transportation Commission, without new legislation, and may be
created for the purpose of owning and operating ports and toll bridges between the United
States and Mexico, and related transportation infrastructure. The RMA would be jointly
(50/50) controlled by the City and the County. The RMA would take steps to take over
the existing bridge from TXDOT, operate it as a toll bridge, and use the toll revenues to
finance a bond issuance that would be used to develop the new commercial bridge and
port.

RECEIVED
OCT 1 0 2006
BY
AR000041

Obtaining the Rio Grande stockyards property is key to implementing this plan that would provide a great future for the Presidio area. The RMA would develop the property to USCBP standards as a commercial port facility. We would be happy to receive the property under the condition that we develop the property as outlined above.

Please feel free to contact me if you have any questions.

Sincerely,

Rod Ponton

Cc:    Hon. Jerry Agan (Presidio County Judge)
       Presidio County Commissioners
       Hon. Alcee Tavarez, Mayor, City of Presidio
       Presidio City Councilors
       Cindy Clark, Presidio City Manager
       U.S. Representative Henry Bonilla
       Pete P. Gallego, State Representative
       Greg Hudson

AR000042



 **U.S. Customs and Border Protection**

**ISSUE PAPER**
\#  ELP-06-

---

### Presidio Port of Entry
### Acquisition of Seized Land

**Issue:**       The acquisition of approximately 14 acres seized by the Drug Enforcement Agency (DEA) adjacent to Presidio Port of Entry.

**Background:**       There is a pending action in the courts to award DEA approximately fourteen (14) acres of seized land southeast of Presidio POE. The seized property encompasses the old port of entry and is adjacent to the present one, and fronts the international boundary across from the site that the Mexican government plans to construct their outbound cargo facility.

**Discussion:**       The acquisition of this land will provide the port the ability to implement their short-term master plan. The additional land will provide CBP the required space for the construction of a training facility. The facility will consist of 4 classrooms, restrooms, and ample storage. One of the rooms would be earmarked for a 24-station computer training classroom and another for physical training. The remaining classrooms should be large enough able to accommodate at least 36 individuals at any one time. The short term plan also identifies the construction of an indoor/outdoor firing range that includes restrooms, staging room, storage area, and a classroom having a maximum seating capacity for 24 individuals. A scenario range (paint ball) would also be constructed. The scenario range will provide officers with simulated firearms practice. These facilities could be used by all other Federal agencies in the area.

**Recommendation:**       Recommend that the appropriate office/agency initiate the required action for the approval and acquisition of the seized property once it becomes available. Additionally, recommend that this document serve as the basis for the programming of funds needed to begin a project feasibility study.

**Prepared By:**       Tomas Briseno, Jr.
Facilities Management Specialists
El Paso Field Office Representative
(915) 633-7300 ext 149

**Cleared By:**                                   **Approved:**

Reviewed=TCF 3/24/06      Date      Signature                 DFO 3/28/06      Signature
BSF 3/28/06                                              Date
MSO 3/28/06                                              AR000043



**KEVIN D YOUNG/NE/USCS**

12/04/2006 12:13 PM

To  LINDSAY B KAY/NE/USCS@USCUSTOMS

cc

bcc

Subject  FRM 07-0296 -- EMPLOYEES SERVING IN PUBLIC
OFFICE DATA REQUEST/CENTRALIZED PROCESS

----- Forwarded by KEVIN D YOUNG/NE/USCS on 12/04/2006 12:13 PM -----



**KEVIN D YOUNG**

12/01/2006 04:35 PM

To: DIRECTORS FIELD OPS
cc: PATRICIA M DUFFY/NE/USCS@USCustoms, JOHN P
HELM/NE/USCS@USCustoms, CHRIS YOKUS@USCUSTOMS,
SUZANNE L WILSON/NE/USCS@USCustoms, JAMES N
DESTEFANO@USCUSTOMS, JENNIFER A
SAVA/NE/USCS@USCUSTOMS
Subject: FRM 07-0296 -- EMPLOYEES SERVING IN PUBLIC OFFICE DATA
REQUEST/CENTRALIZED PROCESS



**NOTE**: From this point forward, all requests and or pending requests for outside employment
that involve public office shall be forwarded to headquarters for review and approval.  DFO's no
longer have authority to approve requests for outside employment that involve public office.
Please forward such requests to my attention.

Thanks,

Kevin D. Young
Management and Program Analyst
DHS/CBP/OFO/Field and Resource Management, Human Resources
kevin.d.young@dhs.gov
202.344.1604/2225 (fax) 3.4-C

**HUMPHRIES, ROBERT H**

| | |
|---|---|
| **From:** | GARCIA, LUIS N |
| **Sent:** | Thursday, December 21, 2006 8:54 AM |
| **To:** | FIGUEROA, POLLY J; GONZALES, ARTHUR D; GARLAND, SHARON K; KEYSER, FREDRICK W; RUSSELL, WILLIAM E |
| **Cc:** | HUMPHRIES, ROBERT H; PERRY, ROBERT A |
| **Subject:** | Fw: OUTSIDE EMPLOYMENT REQUESTS INVOLVING PUBLIC OFFICE |

```
FYI

----- Original Message -----
From: KEVIN.D.YOUNG@CUSTOMS.TREAS.GOV <KEVIN.D.YOUNG@CUSTOMS.TREAS.GOV>
To: DIRECTORS FIELD OPS
Cc: DUFFY, PATRICIA M; SAVA, JENNIFER A; ALFONSO.ROBLES@CUSTOMS.TREAS.GOV
<ALFONSO.ROBLES@CUSTOMS.TREAS.GOV>; JOHN.P.HELM@customs.treas.gov
<JOHN.P.HELM@customs.treas.gov>; SUZANNE.L.WILSON@customs.treas.gov
<SUZANNE.L.WILSON@customs.treas.gov>; KAY, LINDSAY B
Sent: Thu Dec 21 09:22:00 2006
Subject: OUTSIDE EMPLOYMENT REQUESTS INVOLVING PUBLIC OFFICE
```

In an effort to assure consistency when addressing outside employment requests involving public office, OFO sent you an E-mail (FRM 07-0296 dated 12/1/06) that revoked the authority of Directors, Field Operations (DFOs), to approve such requests. After further consideration, we have decided to return the approval authority to the DFO level and to implement the following process for outside employment requests involving public office:

1. Requests for outside employment involving public office will be submitted to the DFO via the chain-of-command using the following: CBP Form 3031; Request to Engage in Outside Employment or Business Activities.

2. DFOs will forward the request for outside employment to their servicing Assistant/Associate Chief Counsel for review and analysis.

3. The Office of Assistant/Associate Chief Counsel will coordinate with the Office of Chief Counsel in analyzing any issues raised by the outside employment request, and will forward that analysis to the DFO.

4. The DFO will forward the employee's request for outside employment and his/her recommendation on the request to the Executive Director, Field and Resource Management (FRM), Office of Field Operations (OFO).

5. OFO will review these materials and forward a memorandum via E-mail to the DFO stating its concurrence or non-concurrence with the DFO's approval/disapproval of the request for outside employment involving public office. Chief Counsel and the respective Assistant/Associate Chief Counsel will be copied on the E-mail.

OFO's memorandum to the DFO will include the language recommended and provided by Counsel, to be used in the DFO's reply to the employee. In instances in which OFO does not concur with the DFO's recommendation, and the DFO wishes to pursue the matter further, he/she shall submit additional justification for the recommendation to the Executive Director, FRM, prior to making a final decision.


Thanks,

Kevin D. Young
Management and Program Analyst
DHS/CBP/OFO/Field and Resource Management, Human Resources kevin.d.young@dhs.gov
202.344.1604/2225 (fax) 3.4-C

AR000045

2006/DEC/29/FRI 10:55    PRESIDO POE    FAX No. 432 229 4595    P. 001

9400 Viscount Blvd., Suite 104
El Paso, TX 79925-7040



**U.S. Customs and
Border Protection**

December 22, 2006

EPFO-PER-2

MEMORANDUM FOR:    CBPO JAIME RAMIREZ, PRESIDIO, TEXAS

FROM:    LUIS GARCIA
DIRECTOR, FIELD OPERATIONS

SUBJECT:    OUTSIDE EMPLOYMENT

In May 2004 you requested approval to run in a non-partisan election for a position as a member of the City Council of Presidio, Texas. That request was approved at that time for that term of office. You were subsequently elected and have served out that term. In May 2006 you ran for re-election to the Presidio City Council and, as a result, have been re-elected to another two-year term. Though you believed that the original 2004 approval would extend to your re-election, your belief was in error.

In addition to the requirement to request outside employment, any employee participating in political activities, including those that are, on their face, nonpartisan, must avoid creating a conflict of interest or the appearance of a conflict of interest.  In evaluating whether a conflict of interest or the appearance thereof exists, one must look at all relevant circumstances and information available and view those facts and circumstances from the stance of a reasonable person with knowledge of the relevant facts.

Since your first election, CBP has entered into negotiations with the Drug Enforcement Agency (DEA) concerning the disposition of seized property in Presidio. Concurrently, the city of Presidio and Presidio County are negotiating with both CBP and DEA to acquire the same property and subsequently negotiate with CBP on leasing arrangements involving the Port of Presidio. Though you have recused yourself from one vote on the Council regarding the seized property, the appearance of a conflict exists and will continue for the foreseeable future regarding this issue in particular.

In addition, the ongoing relationship between CBP and the city and county over normal business issues, i.e. housing, zoning, municipal services, port operations, etc., present the appearance of a conflict which could compromise not only your effectiveness as a CBP Officer but also as a member of the city council.    :

AR000046

Consequently, based upon a review of the circumstances and applicable law, I cannot approve your continuing to serve as a member of the Presidio City Council. Though your desire to serve your community is to be applauded, I cannot allow our effectiveness as an agency to be abridged. Therefore I am requiring you to resign from your position as a member of the Presidio City Council.

LUIS GARCIA
DIRECTOR, FIELD OPERATIONS

Cc:    John Prewit, Port Director, Presidio
       Patricia Duffy, Executive Director, Res. Mgt, CBP-OFO

9400 Viscount Blvd., Suite 104
El Paso, TX 79925-7040



**U.S. Customs and
Border Protection**

**JAN 05 2006** 07

EPFO-PER-2

MEMORANDUM FOR:    CBPO JAIME RAMIREZ, PRESIDIO, TEXAS

FROM:    LUIS GARCIA
DIRECTOR, FIELD OPERATIONS

SUBJECT:    OUTSIDE EMPLOYMENT

Reference my December 22, 2006 memorandum to you concerning outside employment, specifically your service as an elected official in Presidio County. In that memorandum I required you to resign from your position as a member of the Presidio City Council. I require you advise this office within 30 days of the date of that memorandum that you have, in fact, resigned from said outside employment or from your position as a CBP Officer. Please be advised that failure to do so will result in further action by this agency, up to and including removal from your position.

LUIS GARCIA
DIRECTOR, FIELD OPERATIONS

Cc:    John Prewit, Port Director, Presidio
Patricia Duffy, Executive Director, Field Resource Management, OFO