# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)

JAIME RAMIREZ,                                        )

)

                     Plaintiff,                    )

)

                v.                              )      Civil Action No. 1:07-65 (GK)

)

UNITED STATES CUSTOMS                                 )

AND BORDER PROTECTION, *et al.*,                      )

)

                Defendants.               )

_____)

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
## FOR LACK OF SUBJECT MATTER JURISDICTION

                              GREGORY KATSAS
                              Acting Assistant Attorney General

                              JEFFREY A. TAYLOR
                              United States Attorney

                              SUSAN K. RUDY D.C. Bar # 369112
                              Assistant Branch Director

                              STEVEN Y. BRESSLER D.C. Bar #482492

JOHN P. HELM                 Trial Attorney, U.S. Department of Justice
Associate Chief Counsel      Post Office Box 883
LINDSAY B. KAY            Washington, DC  20044
Attorney                     (202) 514-4781
Office of the Chief Counsel    (202) 318-7609 (fax)
U.S. Customs and Border Protection  Steven.Bressler@usdoj.gov

*Of Counsel*                  *Counsel for Defendants*

<u>**TABLE OF CONTENTS**</u>

<u>**PAGE**</u>

INTRODUCTION.................................................................................................................... 1

I.     This Court Lacks Jurisdiction over Plaintiff's Statutory Claim, Which Is
       Entirely Precluded by the CSRA.................................................................................. 2

       A.     Plaintiff's Claim Concerns A "Grievance" Cognizable Under
              The CSRA And, Therefore, Is Outside This Court's Subject
              Matter Jurisdiction. ............................................................................... 2

       B.     The 1994 Amendment to the CSRA's Grievance Provision Did
              Not Reverse the CSRA's Preclusion of Statutory Claims. ................... 11

              1.     The Text Of The 1994 Amendment Does Not Support A
                     Finding Of Congressional Intent To Implicitly Authorize
                     Suit Under The APA. ............................................................... 12

              2.     The Legislative History Of The 1994 Amendment Shows
                     Congress Did Not Intend To Eliminate The CSRA Preclusion
                     Of Judicial Review Of Grievances............................................ 15

II.    The CSRA Precludes Initial Judicial Review of Equitable Constitutional
       Claims And, Therefore, Bars Plaintiff's Remaining Claims. ......................... 18

III.   Plaintiff's Claims Concerning CBP's 2006 Order Are Moot. ........................ 23

CONCLUSION. ................................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                                            **PAGE(S)**

Andrade v. Lauer, 729 F.2d 1475 (D.C. Cir. 1984) . ................................................. 23

Andrews v. Louisville & N. R. Co., 406 U.S. 320 (1972). ...................................... 8

Asociacion De Empleados Del Area Canalera v. Panama Canal Comm'n,
    329 F.3d 1235 (11th Cir. 2003). ....................................................... 12

Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.,
    474 U.S. 361 (1986). ......................................................................... 17

Block v. Cmty. Nutrition Inst., 467 U.S. 340 (1984). ....................................... 3, 4, 20, 21

Bosco v. United States, 976 F.2d 710 (Fed. Cir. 1992). ................................... 8

Bowles v. Russell, 127 S. Ct. 2360 (2007). ........................................................ 3

Brown v. GSA, 425 U.S. 820 (1976). ................................................................ 22

Bush v. Lucas, 462 U.S. 367 (1983). .................................................................. 7

Carter v. Gibbs, 909 F.2d 1452 (Fed. Cir. 1990). ......................................... 7, 8, 14, 16

Clark v. Dep't of the Army, 997 F.2d 1466 (Fed. Cir. 1993). ....................... 16

Collins v. Bender, 195 F.3d 1076 (9th Cir. 1999). ......................................... 8

Darby v. Cisneros, 509 U.S. 137 (1993). ......................................................... 19

DeFunis v. Odegaard, 416 U.S. 312 (1974). .................................................... 24

Dep't of Housing & Urban Development v. Rucker, 535 U.S. 125 (2002). .............. 17

Dir. of Revenue of Mo. v. CoBank ACB, 531 U.S. 316 (2001). .......................... 12, 18

Doe v. Goss, Civ. No. 04-2122-GK, 2007 WL 106523 (D.D.C. January 12, 2007). .......... 4

Eastern Bridge, LLC v. Chao, 320 F.3d 84 (1st Cir. 2003). .............................. 21, 22

Filebark v. U.S. Dep't of Transportation, 468 F. Supp. 2d 3 (D.D.C. 2006). ........... 12, 23

Fund for Animals v. Hogan, 428 F.3d 1059 (D.C. Cir. 2005). ........................ 24

Harrison v. Bowen, 815 F.2d 1505 (D.C. Cir. 1987)............................................................ 5, 6

Heckler v. Ringer, 466 U.S. 602 (1984). ...................................................................... 3

Hinckley v. United States, 163 F.3d 647 (D.C. Cir. 1999). ........................................ 25

Honig v. Doe, 484 U.S. 305 (1988). ........................................................................ 24

Int'l Fed'n of Prf'l and Tech. Engineers and Social Sec'y Admin. ,
    2 57 F.L.R.A. 915 (FLRA 002)................................................................................ 9, 10

Johnson v. Peterson, 996 F.2d 397 (D.C. Cir. 1993). .................................. 7, 12, 14, 23

Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007). ....................................... 3

Karahalios v. Nat'l Federation of Fed. Employees, Local 1263,
    489 U.S. 527 (1989)............................................................................. 7, 14, 21

Leistiko v. Stone, 134 F.3d 817 (6th Cir. 1998). ................................................ 6

McAuliffe v. Rice, 966 F.2d 979 (5th Cir. 1992). .......................................... 6

McCarthy v. Madigan, 503 U.S. 140 (1992)...................................................... 2, 3

Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2002). ...................................... 12, 14

NLRB. v. United Food & Commercial Workers Union, Local 23, AFL-CIO,
    484 U.S. 112 (1987)................................................................................ 6

NTEU v. Devine, 577 F. Supp. 738 (D.D.C. 1983), aff'd 733 F.2d 114
    (D.C. Cir. 1984). ....................................................................... 5

Northwest Airlines, Inc. v. Federal Aviation Admin., 675 F.2d 1303
    (D.C. Cir. 1982). ........................................................................ 24

O'Connell v. Hove, 22 F.3d 463 (2d Cir. 1994)........................................... 7, 14

Pathak v. Dep't of Veterans Affairs, 274 F.3d 28 (1st Cir. 2001)................................. 6

Pinar v. Dole, 747 F.2d 899 (4th Cir. 1984). ................................................ 6

Russell v. Dep't of the Army, 191 F.3d 1016 (9th Cir. 1999)....................................... 6

Saul v. United States, 928 F.2d 829 (9th Cir. 1991). ............................................. 7, 14

Sculimbrene v. Reno, 158 F. Supp. 2d 1 (D.D.C. 2001). .............................................. 7

Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988). ..................................................... 5

Steadman v. Governor, U.S. Soldiers' and Airmen's Home,
    918 F.2d 963 (D.C. Cir. 1990). ........................................................... 21, 22, 23

Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571 (11th Cir. 1990)............. 6

Suzal v. Director, U.S. Information Agency, 32 F.3d 574 (D.C. Cir. 1994). ............... 19

Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994)..................................... 4, 20, 21

Toledo v. Jackson, 485 F.3d 836 (6th Cir. 2007). ......................................................... 5

Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89 (1978). .................................................. 8

United States v. Craft, 535 U.S. 274 (2002). ............................................................... 17

United States v. Erika, Inc., 456 U.S. 201 (1982)......................................................... 4

United States v. Fausto,484 U.S. 439 (1988)...................................................... passim

Weaver v. U.S. Information Agency, 87 F.3d 1429 (D.C. Cir. 1996). ................. passim

Weinberger v. Salfi, 422 U.S. 749 (1975). .................................................................... 9

Whitman v. Dep't of Transportation, 382 F.3d 938 (9th Cir. 2004),
    vacated and remanded on other grounds, 547 U.S. 512 (2006). ....................... 3, 12, 15, 18

Whitman v. Dep't of Transportation, 547 U.S. 512 (2006)................................... 3, 12

Whitman v. Dep't of Transportation,
    Case No. 3:02-cv-0112-RRB, Mem. Opinion (D. Ak. May 30, 2008)................. 3, 15, 18

## STATUTES

5 U.S.C. § 701(a)(1)................................................................................................... 19

5 U.S.C. § 2302(b)(1). ............................................................................................... 13

5 U.S.C. § 4303.......................................................................................................... 13

5 U.S.C. § 7103(a)(9)(A). ..................................................................................... 5, 21

5 U.S.C. § 7103(a)(9)(C)(ii). ..................................................................................... 8

5 U.S.C. § 7122(a). ..................................................................................................... 9

5 U.S.C. § 7121(a)(1). ..................................................................................... 13, 14, 16, 17

5 U.S.C. § 7121(g). ..................................................................................................... <u>passim</u>

5 U.S.C. § 7121(b)(1)(C)(iii). ................................................................................... 9

5 U.S.C. § 7703. ....................................................................................................... 13

8 U.S.C. § 1252(a)(2)(C). ....................................................................................... 3

45 U.S.C. § 153. ....................................................................................................... 8

108 Stat. 4365 . ....................................................................................................... 16

Civil Service Reform Act, Pub. L. No. 95-454, 92 Stat. 1111...................................... 1

Pub. L. No. 103-424, § 9(b), 108 Stat. 4365. ............................................................ 13

Pub. L. No. 103-424, § 9(c), 108 Stat. 4366. ............................................................ 13

## RULES AND REGULATIONS

5 C.F.R. Part 2635................................................................................................... 10

## LEGISLATIVE MATERIAL

140 Cong.  Rec. at 27,359.......................................................................................... 15

140 Cong. Rec. 27,360 (1994). ................................................................................... 15

140 Cong. Rec. at 29,351............................................................................................ 16

140 Cong. Rec. at 29,352 (1994). .......................................................................... 17, 18

H.R. 2390, 103d Cong., 2d Sess. §5(E) (Oct. 3, 1994)......................................... 15, 16

H.R. 2709, 103d Cong., 2d Sess. § 9 (Oct. 7, 1994)....................................... 7, 15, 16

H.R. 2721, 103d Cong., 2d Sess. § 2(b)(5)................................................................ 17

H.R. Rep. No. 103-769, at 18 (1994). ........................................................................ 16

H.R. 2970, To Reauthorize the Office of Special Counsel and to
      Make Amendments to the Whistleblower Protection Act:
      Hearing Before the Subcomm. on the Civil Serv. of the Comm.
      on Post Office & Civil Serv. ("H.R. 2970 Hearing"),
      103d Cong., at 23 (1993). ............................................................................... 7

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1)........................................................................................... 25

## INTRODUCTION

As defendants showed in their opening memorandum, plaintiff Jaime Ramirez cannot

establish subject matter jurisdiction over his claims in this Court at this time because he has not

raised them through the procedures set forth in the Civil Service Reform Act, Pub. L. No. 95-

454, 92 Stat. 1111, as amended, codified throughout 5 U.S.C., ("CSRA").  Before plaintiff may

seek relief in this Court, the CSRA's comprehensive remedial framework requires him to first

raise a grievance under the collective bargaining agreement that covers him.  Because he has

failed to do so, this Court should grant defendants' motion and dismiss plaintiff's Second

Amended Complaint for lack of subject matter jurisdiction.

Plaintiff's arguments in opposition are unavailing.  His claims qualify as "grievances"

cognizable under the CSRA.  Because plaintiff's statutory claim is a grievance cognizable under

that Act, it is subject to the CSRA's preclusion of judicial review.  Contrary to plaintiff's

argument, preclusion of judicial review of grievances cognizable under the CSRA that courts

found resulted from the CSRA's structure was not gutted when Congress added a single word

("administrative") to a section of the CSRA in a 1994 "technical and conforming amendment."

Similarly, as the D.C. Circuit has held, the CSRA precludes initial judicial review over

constitutional claims that are cognizable under the Act.  Because plaintiff's constitutional claim

concerns a grievance fully cognizable under the CSRA, he must pursue his negotiated grievance

remedies under the collective bargaining agreement ("CBA") that covers him before he could

bring his constitutional claim to this Court.

While the CSRA preclusion of judicial review of all statutory claims, and preclusion of

initial judicial review of constitutional claims, requires dismissal of all of plaintiff's claims at

this time, those that concern a recently expired, 2006 CBP order are subject to dismissal for an

additional reason as well.  Because the 2006 order concerned only plaintiff's Presidio City

Council service through May of 2008, it no longer has any practical effect on the parties and,

accordingly, plaintiff's related claims are moot.

The Court should, accordingly, dismiss plaintiff's claims for lack of subject matter

jurisdiction.

I.      **This Court Lacks Jurisdiction over Plaintiff's Statutory Claim, Which Is Entirely Precluded by the CSRA.**

As defendants have explained, plaintiff's claims are cognizable as "grievances" under the

CSRA.  His statutory claim is therefore wholly precluded, contrary to his apparent argument that

the CSRA does not reach a grievance unless it also qualifies as an "adverse action" or

"prohibited personnel practice" under the Act.  As defendants explain below, that argument is

meritless.  Similarly, plaintiff is mistaken to argue that the 1994 amendment to the CSRA's

grievance provision "demonstrate[s]" that Congress intended to permit federal employees to

entirely bypass the extensive administrative scheme it had established to resolve work-related

grievances and sue directly in court.  Id. at 8.  That argument, which would require this Court to

accept plaintiff's contention that Congress effected a sea change in the reviewability of federal

employment claims via a "technical and conforming amendment,"  has never been accepted in

this Circuit.  This Court should, likewise, reject it.

A.      **Plaintiff's Claim Concerns A "Grievance" Cognizable Under The CSRA And, Therefore, Is Outside This Court's Subject Matter Jurisdiction.**

Plaintiff's opposition evinces a confusion between exhaustion of administrative remedies

and preclusion of judicial review, which are related but distinct concepts.  Exhaustion is the

requirement that a party first present his or her claims for administrative resolution before

bringing suit.  See McCarthy v. Madigan, 503 U.S. 140, 144  45 (1992).  Where Congress

requires exhaustion by statute, it is mandatory.  See, e.g., Jones v. Bock, 549 U.S. 199, --- - ---

,127 S. Ct. 910, 918  19 (2007).  And Congress will sometimes premise the courts' authority to

adjudicate a class of claims on the prior administrative resolution of those claims.  In that event,

exhaustion is a jurisdictional prerequisite to suit.  See, e.g., Heckler v. Ringer, 466 U.S. 602, 617

(1984).  Where Congress does not mandate exhaustion, courts generally may nevertheless impose

it as a matter of judicial discretion.  McCarthy, 503 U.S. at 144.

     *Preclusion* of judicial review, by contrast, is the concept that Congress has limited the

courts' prior authority to adjudicate a class of claims.  See Whitman v. Dep't of Transportation,

547 U.S. 512, 514 (2006) ("The question . . . [is] whether § 7121 (or the CSRA as a whole)

removes the jurisdiction given to the federal courts.").[1]  Congress may expressly remove a class

of claims from the jurisdiction of the courts.  See, e.g., Bowles v. Russell, --- U.S. ----, 127 S. Ct.

2360, 2365 (2007) ("Within constitutional bounds, Congress decides what cases the federal

courts have jurisdiction to consider.").  If it does so, it expressly precludes judicial review over

those claims under preexisting bases of jurisdiction.[2]  Congress need not be explicit in order to

preclude judicial review, however.  Rather, Congress' "intent to preclude judicial review" of

claims may be "implicit in the statutory scheme."  Block v. Cmty. Nutrition Inst., 467 U.S. 340,

350 (1984); see id. at 352 ("The structure of this Act implies that Congress intended to preclude

consumer challenges to the Secretary's market orders.").  Where Congress does preclude review,

---

[1]     The Whitman case was remanded to the district court to consider whether the CSRA
requires Whitman to pursue his grievance administratively.  Rejecting the same arguments plaintiff
makes here, and accepting those made by defendants, the District of Alaska recently dismissed
Whitman's complaint for lack of subject matter jurisdiction.  Whitman v. Dep't of Transportation,
Case No. 3:02-cv-0112-RRB, Order Granting Motion to Dismiss Complaint and Amended
Complaint, (D. Ak. May 30, 2008) (Beistline, J.).  A copy of the recent Whitman opinion is attached.

[2]     See, e.g., 8 U.S.C. § 1252(a)(2)(C) (eliminating jurisdiction to review decision to
remove aliens who have committed certain criminal offenses).

that preclusion is jurisdictional; it deprives courts of the power they would otherwise have to adjudicate claims. E.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 218 (1994) ("We conclude that the Mine Act's administrative structure was intended to preclude district court jurisdiction over petitioner's claims."); Fausto, 484 U.S. at 454 (CSRA eliminated Tucker Act jurisdiction to hear claims under the Back Pay Act); Block, 467 U.S. at 353 n.4 ("[C]ongressional preclusion of judicial review is in effect jurisdictional."); United States v. Erika, Inc., 456 U.S. 201, 206 (1982) (Medicare statute "preclude[s] review in the Court of Claims" of certain payment determinations).

As defendants demonstrated in their opening brief, the CSRA's preclusion of judicial review deprives this Court of authority to consider plaintiff's statutory and constitutional grievances. Defendants showed that plaintiff's claim is a "grievance" under the CSRA. Def. Mem. 5-7. Defendants also established that the CSRA completely precludes judicial review of plaintiff's statutory claim. Def. Mem. 8-10. In opposition, plaintiff raises no serious argument that his claims are not a grievance under the CSRA. Instead, without disputing that he raises a grievance under the CSRA and applicable CBA he argues that "there is no administrative procedure available" to pursue that grievance. Pl. Mem. 7. Plaintiff appears to believe that this is so because, should such a grievance be denied, it would not (or not necessarily) be subject to binding arbitration. As explained further below, this is both incorrect and beside the point. Because plaintiff's grievance is cognizable under the CSRA, the CSRA precludes jurisdiction over his claims in this Court.

"In assessing whether the CSRA precludes [plaintiff's] claims, the determinative question is whether they fall within its purview." Doe v. Goss, Civ. No. 04-2122-GK, 2007 WL 106523, *8 (D.D.C. January 12, 2007) (Kessler, J.) (citing NTEU v. Devine, 577 F. Supp. 738, 745

(D.D.C. 1983), aff'd 733 F.2d 114 (D.C. Cir. 1984)).  As defendants showed in their opening

brief, plaintiff's claims are "within CSRA's ambit," Spagnola v. Mathis, 859 F.2d 223, 229 (D.C.

Cir. 1988), and indeed cognizable as a "grievance" under the CSRA.  Def. Mem. 5-7.  They are

thus redressable under the grievance procedure of the CBA covering plaintiff.  See 5 U.S.C.

§ 7121(g).[3]

    "Grievance" is broadly defined under the CSRA  and plainly encompasses the CBP

orders that plaintiff challenges here.  Plaintiff complains over his employer's attempt to set a

condition of employment, i.e., that he choose between his civil service law enforcement job and

his political office.  That is a complaint "concerning a[] matter relating to the employment of the

employee."  See 5 U.S.C. § 7103(a)(9)(A).  Plaintiff claims the CBP order at issue violates the

Constitution.  That is also  a complaint regarding a "claimed violation, misinterpretation, or

misapplication of a[] law, rule, or regulation affecting conditions of employment."  See 5 U.S.C.

§ 7103(a)(9)(C)(ii).  See also Agreement 2000 Art. 47(B) (incorporating broad, CSRA definition

of grievance).  These are therefore "grievances" cognizable under the CSRA which, accordingly,

precludes jurisdiction over plaintiff's statutory claim in this Court.  See Toledo v. Jackson, 485

F.3d 836, 839 (6th Cir. 2007) (CSRA precludes jurisdiction "over claims falling within the scope

of grievance procedures established by collective bargaining agreements between a federal

agency . . . and its employees."); Spagnola, 859 F.2d at 30 (CSRA precludes statutory claims in

district court for federal employees against their employers); Harrison v. Bowen, 815 F.2d 1505,

---

    [3]    CBP employees such as plaintiff who were transferred to CBP at its inception from
jobs with the former U.S. Immigration and Naturalization Service were previously represented by
the American Federation of Government Employees, Council 117, and are covered by the mandatory
provisions of Agreement 2000 Between U.S. Immigration and Naturalization Service and National
Immigration and Naturalization Service Council ("Agreement 2000") (available at
http://www.ncisc119.net/Agreement_2000.doc (last visited June 17, 2008)).

1514-15 (D.C. Cir. 1987) (the CSRA "had the effect of depriving employees of a right of judicial review under the APA that they probably had prior to enactment of the CSRA.").[4]

In opposition, plaintiff makes the novel argument that, under Fausto, the CSRA precludes only claims relating to "personnel actions," leaving federal employees free to assert in court other claims cognizable under the CSRA such as grievances.  Pl. Mem. 21-23.  Plaintiff is incorrect. As defendants have explained, the Supreme Court in Fausto discerned from the CSRA's comprehensive nature Congress' intent to limit federal employees to the remedies provided by that statute, whether the claims relate to personnel actions or other aspects of employment.  See Fausto, 484 U.S. at 448  49.  Moreover, in the CSRA, Congress established administrative procedures for "the settlement of grievances" (5 U.S.C. § 7121(a)(1)), but did not provide for judicial review of grievances, except in limited circumstances not applicable here (see id. § 7121(d), (e), (g)).  Hence, the CSRA deprives this Court of any jurisdiction it would otherwise have to consider plaintiff's claim that CBP's order that he choose between his civil service job

---

[4]       Indeed, courts of appeals have routinely held that because the APA is "inapplicable . . . to the extent that other statutes preclude judicial review," federal employees may not bring suit under the APA if their claim comes within the CSRA's comprehensive framework.  Leistiko v. Stone, 134 F.3d 817, 820 (6th Cir. 1998); see also, e.g., Harrison, 815 F.2d at 1513; Pathak v. Dep't of Veterans Affairs, 274 F.3d 28, 31  32 (1st Cir. 2001); Russell v. Dep't of the Army, 191 F.3d 1016, 1019 (9th Cir. 1999); McAuliffe v. Rice, 966 F.2d 979, 980 & n.1 (5th Cir. 1992); Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1576 (11th Cir. 1990); Pinar v. Dole, 747 F.2d 899, 912 (4th Cir. 1984). Similarly, in NLRB. v. United Food & Commercial Workers Union, Local 23, AFL-CIO, the Supreme Court considered a union's APA challenge to the decision of the NLRB General Counsel dismissing the union's unfair labor practice complaint.  484 U.S. 112, 114 (1987). The Court noted "the absence here of statutory language expressly precluding APA review."  Id. at 131.  But, examining "the structure and history" of the National Labor Relations Act (NLRA), the Court held that the statute precludes judicial review outside of the confines of that Act.  Id.  The Court determined that the NLRA is a "comprehensive" remedial scheme that provided for judicial review only in limited circumstances.  Id.  The Court held that "it would be illogical in the extreme to hold that Congress" limited judicial review under the NLRA "only to permit review under the APA."  Id.  Accordingly, the Supreme Court held that the district court lacked jurisdiction to hear the union's claim under the APA.  Id. at 133.

and his political office violated his statutory rights. The Supreme Court has also held that the CSRA's comprehensive structure precludes courts from considering, under other authority, a claim that a union breached its duty of fair representation — a claim not involving a "personnel action." Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 536 (1989).

Following these decisions, the courts of appeals held that the CSRA similarly precludes judicial review of grievances in district court. See, e.g., O'Connell v. Hove, 22 F.3d 463 (2d Cir. 1994); Johnson v. Peterson, 996 F.2d 397, 398 (D.C. Cir. 1993); Saul v. United States, 928 F.2d 829 (9th Cir. 1991); Carter v. Gibbs, 909 F.2d 1452, 1457 (Fed. Cir. 1990) (en banc). Cf. Sculimbrene v. Reno, 158 F. Supp. 2d 1, 6 (D.D.C. 2001) ("according to applicable and binding precedent, whether or not the complained of harm falls within the definition of 'personnel action' in [the CSRA] is not relevant to a determination of whether the CSRA governs Plaintiff's claims.") (citing Bush, 462 U.S. at 385). Indeed, it was because district court review of grievances is precluded that, in 1993, NTEU "propose[d] a change to existing law" and asked Congress to amend the CSRA to permit federal employees to rely on prior law to assert grievances in district court. H.R. 2970, TO REAUTHORIZE THE OFFICE OF SPECIAL COUNSEL AND TO MAKE AMENDMENTS TO THE WHISTLEBLOWER PROTECTION ACT: HEARING BEFORE THE SUBCOMM. ON THE CIVIL SERV. OF THE COMM. ON POST OFFICE & CIVIL SERV. ("H.R. 2970 Hearing"), 103d Cong., at 23 (1993) (statement of Robert M. Tobias, President, NTEU) (emphasis added). As defendants discuss in Part I.B, infra, Congress rejected that proposal.

The CSRA does provide administrative procedures to remedy plaintiff's grievance, and, indeed, it requires CBAs to contain "procedures for the settlement of grievances." 5 U.S.C. § 7121(a)(1). It also states expressly that those "procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage." Id. By its unambiguous

terms, the CSRA defines the grievance procedures established by CBAs as "administrative procedures."[5]

Bosco v. United States, 976 F.2d 710 (Fed. Cir. 1992), relied upon (and selectively quoted) by plaintiff (Pl. Mem. 22-23), is inapposite.  In Bosco, the Federal Circuit did not consider whether the courts could review claims based upon grievances cognizable under the CSRA.  Two years earlier, the Federal Circuit sitting *en banc* had answered that question in Carter v. Gibbs when it held that the CSRA precluded such claims.  909 F.2d at 1457.  Plaintiff's citation to Collins v. Bender, 195 F.3d 1076 (9th Cir. 1999), also provides no support for his argument that a grievance cognizable under the CSRA may nonetheless be the subject of a statutory claim in this Court.  In Collins, the Court found that "[w]here the only connection between a supervisor's illegal search of a government worker's residence and that worker's employment is the supervisor's hunch that the worker may be dangerous, the search is too attenuated from the worker's employment" to be cognizable under the CSRA.  Id. at 1080.  Here, however, plaintiff complains over his employer's attempt to set a condition of employment    a cognizable grievance under the CSRA.  See 5 U.S.C. §§ 7103(a)(9)(A), 7103(a)(9)(C)(ii).

_____

[5]    For example, the Railway Labor Act establishes "grievance and arbitration procedures" for the resolution of "minor disputes" involving the interpretation of a CBA.  Andrews v. Louisville & N. R. Co., 406 U.S. 320, 322 (1972).  Minor disputes are resolved by the National Railroad Adjustment Board, an arbitration body "consisting of workers and management."  Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 94 (1978).  A decision of the Adjustment Board provides a "final administrative answer to [the] dispute."  Id.  That "administrative answer" is subject to limited judicial review.  Id. at 93; see 45 U.S.C. § 153 First (q).  Although the judicial review provision of the Act does not expressly foreclose preexisting judicial remedies, the Supreme Court held that a railroad employee could not bypass the grievance procedures and assert his claim in court in the first instance:  The "compulsory character of the administrative remedy provided by the Railway Labor Act for [minor] disputes . . . [stems] from the Act itself."  406 U.S. at 323.  Moreover, "[t]he term 'exhaustion of administrative remedies' in its broader sense may be an entirely appropriate description of the obligation of both the employee and carrier under the Railway Labor Act to resort to dispute settlement procedures provided by that Act."  Id. at 325.

In a footnote, plaintiff also argues that the CSRA does not require exhaustion because not all aspects of the administrative process are within the employee's control. Pl. Mem. 18 n.6. This argument is a red herring. As defendants have explained, the CSRA grievance process is composed of procedures negotiated by a union and a federal employer and embodied in a CBA, followed by binding arbitration with review by the Federal Labor Relations Authority (FLRA). Def. Mem. 5  7; see 5 U.S.C. §§ 7121(b)(1)(C)(iii), 7122(a). Plaintiff correctly observes that the union, not the employee, has the right to seek arbitration and review by the FLRA. 5 U.S.C. § 7121(b)(1)(C)(iii). But, it may be that an employee who has fully pursued the negotiated grievance procedures is not barred from obtaining judicial review of a remaining colorable constitutional claim because his union decides not to seek arbitration or FLRA review. Even in the preclusion context, "the doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue." Weinberger v. Salfi, 422 U.S. 749, 765 (1975). An employee who has exhausted all *available* administrative remedies can then obtain judicial review of any remaining constitutional claims. See Weaver v. USIA, 87 F.3d 1429, 1433 (D.C. Cir. 1996) (before obtaining judicial review of constitutional employment claim, "the plaintiff must exhaust *available* administrative remedies" under CSRA (emphasis added)).

This Court need not resolve whether the plaintiff's grievance, after review by the agency, would be subject to arbitration because it is undisputed that plaintiff has made no attempt to resolve his claim through the negotiated grievance procedures. Defendants note, however, that plaintiff has presented no pertinent authority in support of his argument that there could be no arbitration. Instead, plaintiff relies on two, inapposite citations. Plaintiff mistakenly cites Int'l Fed'n of Prf'l and Tech. Engineers and Social Sec'y Admin. , 57 F.L.R.A. 915 (FLRA 2002) ("IFPTE"), for the proposition that "the grievance procedure is not available to challenge agency

denials of outside activity or employment requests[.]" Pl. Mem. 7.  In fact, in that non-

precedential order the FLRA merely found that a violation of the Standards of Ethical Conduct

for Employees of the Executive Branch, 5 C.F.R. Part 2635, does not, *in and of itself,* create a

right enforceable at law.  In IFPTE, the only violation alleged was of Part 2635, whereas in

plaintiff's statutory and constitutional claims here, plaintiff claims that CBP violated a separate

source of law:  the Constitution.[6]  Plaintiff is also subject to a collective bargaining agreement

that specifically provides for the filing of grievances concerning violation of a law, and for the

arbitration of grievances.  See Agreement 2000, Art. 47 ¶ (B)(2) (stating a grievance may

concern, *inter alia,* "[a]ny claimed violation, misinterpretation, or misapplication of any law,

rule, or regulation affecting conditions of employment"), Art. 48 (providing for arbitration of

unresolved grievances).  The CBA further provides how a party should proceed when he believes

that a grievance may not be arbitrable, as plaintiff apparently believes here.  Id. Art. 47 ¶ (H)

(party who questions arbitrability "will endeavor to so inform the other party as soon as possible.

. . . [S]uch grievability/arbitrability questions are to be decided as a threshold issue by the

arbitrator . . .").  In any event, because plaintiff is claiming violations of law beyond Part 2635

itself, IFPTE is inapposite.

   Plaintiff's only other citation in support of his argument that his grievance here would not

be arbitrable is also misplaced.  Plaintiff claims that a 1999 Office of Government Ethics

("OGE") memorandum stated that "agency decisions on requests for approval to engage in

---

[6]      Indeed, in IFPTE, the arbitrator's award notes that the initial grievance alleged a
violation of "law, rule or regulation" as well as (like here) the grievant's "First Amendment
constitutional rights."  However, the FLRA noted "the Arbitrator did not consider whether rights
outside those established by part 2635 [had] been raised in the grievance, and the Union [did] not
raise this issue in its exception."  IFPTE, 57 F.L.R.A. 915 at n.6.  Plaintiff in this action does claim
violations of rights at law, not the regulations in 5 C.F.R. Part 2635.

outside employment [are] not subject to [the] collective bargaining process," Pl. Mem. 7 (in

parenthetical), but the cited memo says no such thing.  See Off. of Gov't Ethics, 99 X 5, Memo.

Re: OGE Regulations and an Agency's Duty To Engage in Coll. Barg. (Apr. 12, 1999), at 2

(cited in Pl. Mem. 7).  Rather, the memo sets forth OGE's interpretation that agency

determinations concerning who must file a confidential financial disclosure report and agency

determinations as to what financial interests may not be held by employees are not subject to

negotiation between the agency and union.  Id.  Here, the issue is not whether the CBP can

restrict outside employment, but whether in this instance the agency exercised that right in a

manner that violated a law, rule or regulation affecting conditions of employment.  The OGE

memo does not discuss claims regarding orders to choose between federal employment and

political office, nor does it discuss constitutional claims, and there is no claim here concerning

any financial interests of plaintiff.

**B.    The 1994 Amendment to the CSRA's Grievance Provision Did Not Reverse the CSRA's Preclusion of Statutory Claims.**

As defendants have explained, the CSRA completely precludes judicial review of

statutory claims that are subject to the grievance procedure, and precludes initial judicial review

of grievable constitutional claims.  Plaintiff, however, argues that Congress' 1994 technical and

conforming amendment adding the word "administrative" to the CSRA's grievance provision

implicitly eliminated the CSRA's preclusive effect and implicitly authorized judicial review of

employee grievances.  Pl. Mem. 24-32.  The Eleventh and Federal Circuits had previously

adopted the interpretation plaintiff urges here.  See Asociacion De Empleados Del Area Canalera

v. Panama Canal Comm'n, 329 F.3d 1235 (11th Cir. 2003); Mudge v. United States, 308 F.3d

1220 (Fed. Cir. 2002).  The Ninth Circuit rejected that view (creating a circuit split) and held that

"Congress's 1994 addition of the word 'administrative' to the statute does not constitute an

express grant of federal court jurisdiction over [grievance] claims." Whitman v. Dep't of Transportation, 382 F.3d 938, 941-44 (9th Cir. 2004), vacated and remanded on other grounds, 547 U.S. 512 (2006). On review, the Supreme Court did not address the issue (see 547 U.S. 512), and no court in the D.C. Circuit has ever accepted plaintiff's argument. Cf. Filebark v. Dep't of Transportation, 468 F. Supp. 2d 3, 6 & n.3 (D.D.C. 2006) (holding plaintiff's view, expressed in Mudge, to be contrary to D.C. Circuit precedent, and following Johnson v. Peterson, 996 F.2d 397, 401 (D.C. Cir. 1993) to hold district court lacks jurisdiction to resolve a grievance that is subject to CBA procedures). It was also recently rejected in Whitman on remand. See supra note 1. This Court should follow the Ninth Circuit's persuasive determination that Congress did not intend to revolutionize federal personnel law by implication and through a technical and conforming amendment.[7] Cf. Dir. of Revenue of Mo. v. CoBank ACB, 531 U.S. 316, 324 (2001) (refusing to adopt an interpretation of an amendment that "would mean that Congress made a radical   but entirely implicit   change" in the law).

### 1.     The Text Of The 1994 Amendment Does Not Support A Finding Of Congressional Intent To Implicitly Authorize Suit Under The APA.

Before 1994, the CSRA gave employees a choice of avenues to address major adverse actions and those prohibited personnel practices that involve discrimination, but not other actions. If an employee covered by a CBA brought a grievance alleging a prohibited practice of discrimination under 5 U.S.C. § 2302(b)(1) or involving an adverse action covered by 5 U.S.C. §§ 4303 or 7512, the employee could elect to contest it either under the CBA's grievance procedures or under an alternative statutory procedure, many of which (e.g., Title VII, or 5 U.S.C. § 7703) independently provide for judicial review. 5 U.S.C. § 7121(d) and (e). Section

---

[7]     While the Ninth Circuit's prior decision has been vacated, its discussion of the 1994 amendments remains persuasive authority.

7121(a)(1) stated that if the grievance did not involve a prohibited personnel practice based on

discrimination (covered by subsection (d)) or a major adverse action (covered by subsection (e)),

the negotiated grievance procedures "shall be the *exclusive procedures* for resolving grievances

which fall within its coverage."  5 U.S.C. § 7121(a)(1) (1988) (emphasis added).

In 1994, Congress added a new subsection (g) to Section 7121, which also gives

employees covered by CBAs a choice of alternative remedies for prohibited personnel practices

that do not involve discrimination.  Pub. L. No. 103-424, § 9(b), 108 Stat. 4365.  Under new

subsection (g), employees have the option to pursue any remedies they may have with OSC or

the MSPB, or through the negotiated grievance process.  Id.  Congress also made a "Technical

and Conforming Amendment[]" (Pub. L. No. 103-424, § 9(c), 108 Stat. 4366), that made two

revisions to the second sentence of Section 7121(a)(1):  It added subsection (g) to its list of

statutory exceptions to the provision making grievance procedures exclusive, and it added the

word "administrative" between "exclusive" and "procedures."  As amended, § 7121(a)(1)

provides:

> Except as provided in paragraph (2) of this subsection [which permits matters to
> be excluded from negotiated grievance procedures], any collective bargaining
> agreement shall provide procedures for the settlement of grievances, including
> questions of arbitrability.  Except as provided in subsections (d), (e), and (g) of
> this section, the procedures shall be the exclusive administrative procedures for
> resolving grievances which fall within its coverage.

Prior to the 1994 amendment, at least four courts of appeals including the D.C. Circuit had held

that the CSRA precludes judicial review of employee grievances.  See O'Connell v. Hove, 22

F.3d 463 (2d Cir. 1994); Johnson v. Peterson, 996 F.2d 397, 398 (D.C. Cir. 1993); Saul, 928 F.2d

at 842; Carter v. Gibbs, 909 F.2d 1452, 1457 (Fed. Cir. 1990) (*en banc*).  As the *en banc* Federal

Circuit explained, this holding was based, in part, on "the judicial access provisions of the

CSRA," under which:

> only the Federal Labor Relations Authority can go to federal district court, and
> then only to petition for 'appropriate temporary relief' from an alleged unfair
> labor practice.  Even where Congress expressly made exceptions to the otherwise
> exclusive bargained grievance procedures, it only gave federal employees access
> to appellate judicial review; it did not, in contrast to appellants' proposal, allow de
> novo trials in the district courts. . . . The point is clear:  Congress narrowly
> circumscribed the role of the judiciary in its carefully crafted civil service scheme.

Carter, 909 F.2d at 1456 (citation omitted), held superseded by statute in Mudge, 308 F.3d 1220.

And it was clearly established in 1994 that only an *express* statutory provision would create a

right of judicial review over a claim coming within the CSRA because "the CSRA's 'integrated

scheme of administrative and judicial review' foreclose[s] an implied right to [district court]

review."  Karahalios, 489 U.S. at 532 (quoting Fausto, 484 U.S. at 455).  There is thus no reason

to believe that Congress would have thought in 1994 that simply inserting the word

"administrative" in Section 7121(a)(1) would create a new right to judicial review of matters

subject to grievance procedures.  See id. at 536 (noting that because "Congress was undoubtedly

aware" of the standard for recognizing implied private rights of action, "we would expect to find

some evidence of that intent in the statute or its legislative history").

Plaintiff does not dispute that these were the governing background interpretive principles

at the time Congress amended the grievance provision in 1994.  Instead, he argues that the "plain

text" of the 1994 amendment shows that the grievance provision does not limit a federal

employee's right to obtain judicial review of grievances under other statutory schemes because

the amended provision says that the grievance procedures are the "exclusive administrative

procedures."  See Pl. Mem. 26.  Plaintiff thus ignores the fact that the exclusivity of the CSRA's

remedies does not stem from any single provision but from the comprehensive structure of the

statute as a whole, with its "integrated scheme of administrative and judicial review."  Fausto,

484 U.S. at 445.  The 1994 amendment did not change that aspect of the statute, and it did not

clearly indicate Congress' intent to restore judicial review as it had been available prior to the CSRA's enactment.  See Whitman, Order on MTD at 7 ("The CRSA's comprehensive nature precludes judicial review of employee grievances, except in the limited cases in which such review is provided for by the CSRA.  Congress's 1994 addition of the word "administrative" to the statute neither changes nor alters this premise.") (internal footnote and quotation marks omitted).

> **2.    The Legislative History Of The 1994 Amendment Shows Congress Did Not Intend To Eliminate The CSRA Preclusion Of Judicial Review Of Grievances.**

The 1994 amendment was enacted as a provision of H.R. 2970 during the 103d Congress. As passed by the House of Representatives, the bill contained three provisions of note.  First, in a subsection entitled "choice of remedies provision *not* involving judicial review," the bill proposed a new subsection 7121(g) to provide a choice of remedies for employees claiming prohibited personnel practices not involving discrimination.  H.R. 2390, 103d Cong., 2d Sess. § 5(E) (Oct. 3, 1994) (emphasis added); 140 CONG. REC. 27,360 (1994).  Second, in a subsection entitled "choice of remedies provision *involving* judicial review," the bill proposed adding a new section to the CSRA permitting employees to bring suit in district court to challenge a personnel action taken in retaliation for whistleblowing.  H.R. 2390 § 5(c) (emphasis added); 140 CONG. REC. at 27,359.  Third, a separate provision of the bill contained "conforming amendments" that proposed inserting the word 'administrative' in Section 7121(a)(1) and including the new subsection (g) among the exceptions to the section's exclusivity provision.  H.R. 2390 § 2(b)(2); 140 CONG. REC. at 27,358.

The Senate removed the provision permitting district court review of personnel actions involving whistleblowers, but retained the other two provisions.  Both of those provisions were

contained in the same section, which was entitled "authorities relating to arbitrators and choice of remedies not involving judicial review." See H.R. 2709, 103d Cong., 2d Sess. § 9 (Oct. 7, 1994); 140 CONG. REC. at 29,351. Congress enacted the Senate version of the bill. See 108 Stat. 4365. Thus, Congress deleted the only provision of the bill that explicitly would have permitted initial district court review. That history refutes any suggestion that by adding the word "administrative," Congress wished to create a right for employees to seek judicial review of grievances covered by a CBA.

In addition, although plaintiff contends that Congress enacted the 1994 amendment to "respond[] to" the Federal Circuit's Carter decision (Pl. Mem. 28), plaintiff points to nothing in the legislative history of H.R. 2970, the bill that was enacted, mentioning Carter or any of the four other court of appeals decisions holding that judicial review of grievances is precluded. This omission is especially notable since that legislative history *did* indicate Congress' intent to override another Federal Circuit decision dealing with a different matter. See H.R. REP. NO. 103-769, at 18 (1994) (discussing Clark v. Dep't of the Army, 997 F.2d 1466 (Fed. Cir. 1993)). Indeed, the only legislative history from the actually-enacted bill that plaintiff (represented here by NTEU) identifies as showing *Congress*' intent to permit judicial review of grievances is NTEU's testimony urging such an amendment. See Pl. Mem. 29-30 & n.11.

Plaintiff rests his contrary argument instead on the legislative history of *another* bill that was considered, but not enacted, by the 103d Congress. Pl. Mem. 30-32. The Supreme Court has cautioned against inferring the intent of Congress from a bill that was not enacted. See United States v. Craft, 535 U.S. 274, 287 (2002). Caution is especially warranted here because, although the bill on which plaintiff relies would have also added the word "administrative" to Section 7121(a)(1), that unenacted bill would have given federal employees broad access to

district court to bring employment-related discrimination claims.  See H.R. 2721, 103d Cong., 2d
Sess. §§ 2(b)(5), 3(a)(1)(B), 4(a), (b) (Aug. 19, 1994).  None of those judicial review provisions
were contained in the bill that was ultimately enacted.  See Dep't of Housing & Urban
Development v. Rucker, 535 U.S. 125, 133 n.4 (2002) (refusing to rely on legislative history of
related unenacted bill "which would have imposed a different standard").  Plaintiff appears to
contend that this Court should rely on the legislative history of another bill that was *rejected* by
Congress because it was offered by the same legislator who introduced the enacted bill, Rep.
McCloskey.  But this Court's role is to determine Congress' intent as expressed in a statute, not
the intent of particular Members.  See, e.g., Bd. of Governors of Fed. Reserve Sys. v. Dimension
Fin. Corp., 474 U.S. 361, 374 (1986) ("Congress may be unanimous in its intent to stamp out
some vague social or economic evil; however, because its Members may differ sharply on the
means for effectuating that intent, the final language of the legislation may reflect hard-fought
compromises.").

Moreover, Rep. McCloskey himself recognized that the enacted bill was "far less
comprehensive" than the unenacted bill on which plaintiff relies.  140 Cong. Rec. at 29,352
(1994) (statement of Rep. McCloskey).  In describing the enacted bill, he noted a provision
permitting "[j]udicial review" of certain disciplinary actions ordered by arbitrators in the
grievance process.  Id. at 29,353 (discussing 5 U.S.C. § 7121(b)(2)(B)).  But at no time did he
suggest that the enacted bill generally reinstated federal employees' right to seek redress of
grievances in district court as had existed before the enactment of the CSRA.  The legislative
history of the 1994 amendment thus provides no basis for concluding that with the addition of a
single word in a technical amendment, Congress intended to transform federal employment law.
See Director of Rev. v. CoBank ACB, 531 U.S. 316, 323  24 (2001) (stating that "it would be

surprising, indeed," if Congress had made "a radical    but entirely implicit" change in a technical and conforming amendment).  See also Whitman, Order on MTD at 7 ("the legislative history surrounding the 1994 amendments confirms Congress did not intend to eliminate the CRSA's preclusion of judicial review of grievances.") (footnote omitted).

## II.    The CSRA Precludes Initial Judicial Review of Equitable Constitutional Claims And, Therefore, Bars Plaintiff's Remaining Claims.

As defendants explained in their opening memorandum, while the CSRA does not entirely preclude judicial review of a federal employee's constitutional challenge, the uniform requirement under the CSRA that an employment-related claim first be submitted through the specified administrative process still applies to plaintiff's constitutional claim.  In response, plaintiff makes essentially two arguments.  First, he argues that "there is no administrative procedure available for Ramirez to exhaust."  Pl. Mem. 7.  As defendants have shown, this argument is wholly unavailing: plaintiff's claim is a cognizable grievance under the CSRA and the applicable CBA.  _Supra_.  Second, he argues that the CSRA does not make resort to the administrative process a necessary precondition for suit because the CSRA contains no express exhaustion requirement for grievances.  Pl. Mem. 10-11.  This argument is also mistaken and, again, reflects his confusion about the distinction between preclusion of judicial review and exhaustion.

Plaintiff, relying on the Supreme Court's decision in Darby v. Cisneros, 509 U.S. 137 (1993), contends that because the CSRA does not expressly require exhaustion of constitutional grievances, exhaustion is not required.  Pl. Mem. 19.  In Darby, the Court held that "where the APA applies," exhaustion of administrative remedies may be required as a "prerequisite to judicial review _only_ when expressly required by statute" or agency rule.  509 U.S. at 154.  But that assumes that "the APA applies" to such claims, and the APA does not apply where "statutes

-18-

preclude judicial review." 5 U.S.C. § 701(a)(1). As defendants have explained, the CSRA

precludes initial judicial review of constitutional grievance claims. See Suzal v. Director, U.S.

Information Agency, 32 F.3d 574, 585 (D.C. Cir. 1994) ("exhaustion of the nonjudicial remedies

provided under the authority of the CSRA is a jurisdictional prerequisite" to suit). In Darby, the

Supreme Court held that because Congress had "effectively codified the doctrine of exhaustion

of administrative remedies in § 10(c) [5 U.S.C. § 704]" of the APA, it had thereby divested

courts of their prior authority to require exhaustion as a matter of judicial discretion in suits

brought under the APA. Id. at 153; see id. at 145  154. Accordingly, "where the APA applies,"

exhaustion is required "*only* when expressly required by statute" or by agency rule. Id. at 154.

But, the APA does not apply where another statute precludes judicial review. See 5 U.S.C.

§ 701(a)(1) (the APA "applies, according to the provisions thereof, except to the extent that . . .

statutes preclude judicial review"). And under D.C. Circuit precedent, the CSRA precludes

initial judicial review of plaintiff's constitutional claim. E.g., Weaver, 87 F.3d at 1433

     Plaintiff does not dispute that the APA excludes from its scope claims subject to statutes

that preclude judicial review. Instead, he argues that any exhaustion requirement must be

"express." Pl. Mem. 19. While plaintiff would be correct in a case involving a *prudential*

*exhaustion* requirement, his argument is beside the point where, as here, *Congress has precluded*

*judicial review*. "Whether and to what extent a particular statute precludes judicial review is

determined not only from its express language, but also from the structure of the statutory

scheme, its objectives, its legislative history, and the nature of the administrative action

involved." Block, 467 U.S. at 345. When Congress precludes judicial review, it may do so

entirely, or it may preclude judicial review until after initial administrative consideration.

Compare, e.g., Block, 467 U.S. at 341 (holding that statute completely precludes judicial review

of consumer challenges to milk market orders) with Thunder Basin, 510 U.S. at 207-209

(holding that statute "preclude[s] initial judicial review" of mine safety orders, requiring initial

resort to administrative procedures).  Where Congress precludes only initial judicial review,

parties are generally limited to the judicial remedies established by the statutory scheme.  See,

e.g., Thunder Basin, 510 U.S. at 208.  Moreover, where judicial review is permitted by a

preclusive statutory scheme only after resort to administrative remedies, exhaustion is a

jurisdictional prerequisite to suit.  See, e.g., Weaver, 87 F.3d at 1433 ("Under the CSRA,

exhaustion of administrative remedies is a jurisdictional prerequisite to suit.").

      Thus, in the federal employment context, it is clear that the Supreme Court has not

required an express statement precluding judicial review but, instead, relied on "inferences of

intent drawn from the statutory scheme as a whole."  Fausto, 484 U.S. at 452 (quotation marks

omitted).  The CSRA contains no express statement precluding judicial review, as plaintiff points

out, but that does not mean that judicial review is available.  The Supreme Court, reasoning from

the structure of the CSRA,  held that the "absence of provision" of judicial review is a

"manifestation of a considered congressional judgment" to preclude resort to courts.  Id. at 448.

      Here, Congress has precluded initial review of federal employee's constitutional claims.

Contrary to plaintiff's argument in opposition, there is no clear statement rule for preclusion of

initial judicial review (prior to exhaustion of administrative remedies) of constitutional claims:

"In cases involving delayed judicial review of final agency actions, we shall find that Congress

has allocated initial review to an administrative body where such intent is 'fairly discernible in

the statutory scheme.'"  Thunder Basin, 510 U.S. at 207 (quoting Block, 467 U.S. at 345); see id.

at 205 (noting that plaintiff asserted constitutional claims).  Thus, as the D.C. Circuit has held, it

is only "if a constitutional claim survives an unsuccessful journey through the administrative

process, [that] the federal courts are open." Steadman v. Governor, U.S. Soldiers' and Airmen's Home, 918 F.2d 963, 968 (D.C. Cir. 1990); accord Weaver, 87 F.3d at 1433 (federal court review over a constitutional claim may be available "at the end of the line. . . . But first the plaintiff must exhaust administrative remedies.").

Requiring exhaustion of constitutional claims respects Congress' intent to channel all employment-related claims through the process it established in the CSRA. As the D.C. Circuit explained, "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining. It follows, then, that federal employees may not circumvent that structure even if their claim is based as well on the Constitution." Steadman, 918 F.2d at 967. If a colorable constitutional claim remains after a federal employee exhausts the mandated grievance process, then "the federal courts are open." Id. at 968. But "[t]o hold that the district courts must entertain such cases in the first instance would seriously undermine . . . the congressional scheme." Karahalios, 489 U.S. at 536 37 (discussing unfair labor practice claims). This conclusion is buttressed by the fact that grievances encompass "any complaint . . . concerning any matter" relating to employment. 5 U.S.C. § 7103(a)(9)(A). It is a simple matter to recast even minor disputes in constitutional terms. See, e.g., Eastern Bridge, LLC v. Chao, 320 F.3d 84, 91 (1st Cir. 2003) ("we will not allow plaintiffs to circumvent the statutory review process with an agile game of word play"). Thus, as the Court of Appeals has held, to permit a federal employee to bypass the grievance procedures and resort to district court anytime he or she casts his grievance in constitutional terms "would simply put a premium on clever drafting of a complaint. 'It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.'" Steadman, 918 F.2d at 967 (quoting

Brown v. GSA, 425 U.S. 820, 833 (1976)); accord Eastern Bridge, 320 F.3d at 91.

Plaintiff (understandably) seeks to distinguish the controlling D.C. Circuit authority providing that the CSRA precludes initial review in this Court of a constitutional claim cognizable under that Act. First, plaintiff argues that Steadman does not apply because plaintiff's claims "'raise issues totally unrelated to the CSRA procedures[.]'" Pl. Mem. 13 (quoting Steadman, 918 F.2d at 967). That is false: as defendants have shown, plaintiff's claim is a grievance, and "CSRA procedures" include those for resolution of grievances. See 5 U.S.C. § 7121(g). Likewise, plaintiff argues that:

> Weaver stands for the proposition that an employee must exhaust available administrative procedures when challenging the constitutionality of a personnel action, but that an employee may bring his claim immediately in court when seeking equitable relief from agency action that does not constitute a personnel action (as Ramirez does here).

Pl. Mem. 13. This is, again, a misstatement of the law. The Weaver court established only that, where a plaintiff brings a claim that is wholly independent of claims cognizable under the CSRA (the claim at issue was characterized as a "simple pre-enforcement attack on a regulation restricting employee speech," 87 F.3d at 1434), she may proceed in federal court. Id. Weaver did not declare that grievances cognizable under the CSRA may nonetheless be brought straight to district court. To the contrary, the Weaver court noted that the "non-judicial," administrative remedies subject to the CSRA exhaustion requirement include "provisions of collective bargaining agreements affording grievance rights to covered employees ([which are] strongly bolstered by the CSRA itself)." 87 F.3d at 1432.

In short, Weaver fortifies the earlier Steadman holding that, where a plaintiff raises a claim that is "totally unrelated" to the basis for a claim cognizable under the CSRA, he may proceed in federal court. See Steadman, 918 F.2d at 967. That is not the case here, of course: plaintiff's constitutional claim concerns precisely the same agency order as his statutory claim.

Indeed, plaintiff has not approached a demonstration that his constitutional claim falls outside of the exhaustion requirement mandated by the Court of Appeals, *i.e.*, that his is the "unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures." Steadman, 918 F.2d at 967; see also Andrade v. Lauer, 729 F.2d 1475, 1493 (D.C. Cir. 1984) (exhaustion is not required where there is a "complete divergence between the issues presented by the constitutional and personnel/statutory claims"). This Court thus lacks subject matter jurisdiction over plaintiffs' constitutional claims at this time. Cf. Filebark v. U.S. Dep't of Transportation, 468 F. Supp. 2d 3, 6 & n.3 (D.D.C. 2006) (following Johnson v. Peterson, 996 F.2d 397, 401 (D.C. Cir. 1993) to hold district court lacks jurisdiction to resolve a grievance that is subject to CBA procedures).

Moreover, plaintiff's argument that Congress must "express[ly]" (Pl. Mem. 19) state its intention to preclude judicial review in order to displace preexisting remedies has been directly contradicted by the Supreme Court. Although the CSRA provides for judicial review in some circumstances, it nowhere contains an express statement limiting judicial review to those circumstances. Thus, according to plaintiff's reasoning, federal employees should remain "free to pursue the remedies that had been available before enactment of the CSRA." Fausto, 484 U.S. at 444. But that is precisely the proposition the Supreme Court rejected in Fausto. See id. at 445 (explaining that the CSRA "replaced the [preexisting] patchwork system with an integrated scheme of administrative and judicial review").

## III.    Plaintiff's Claims Concerning CBP's 2006 Order Are Moot.

As defendants have explained, this Court lacks jurisdiction over plaintiff's claims concerning his Presidio City Council service for the two-year term that began in 2006 because that claim is moot. CBP's 2006 order concerned only plaintiff's request to serve on the city

council for the 2006-2008 term, and as defendants predicted in their opening memorandum (and plaintiff does not contest), that term has now expired even before briefing on this motion is concluded.  See Honig v. Doe, 484 U.S. 305, 317 (1988) (the mootness doctrine limits federal courts to deciding "actual, ongoing controversies.").

Plaintiff does not dispute that the agency's December 2006 order has no practical effect today; rather, he argues the matter "continues to present a live controversy under the long-standing 'capable of repetition, yet evading review' exception to the mootness doctrine."  Pl. Mem. 34.  Plaintiff is incorrect.

As an initial matter, the "'capable of repetition, yet evading review' doctrine permits departure from settled rules of mootness only in an 'exceptional situation.'"  Northwest Airlines, Inc. v. Federal Aviation Admin., 675 F.2d 1303, 1308 (D.C. Cir. 1982) (quoting DeFunis v. Odegaard, 416 U.S. 312, 319 (1974)).  "Under the law of this circuit, regardless whether the present situation is 'capable of repetition,'" if it "is not one 'evading review,'" the challenge is moot.  Fund for Animals v. Hogan, 428 F.3d 1059, 1064 (D.C. Cir. 2005) ("Because the situation of which the Fund complains, should it recur, is not one likely to evade review, we dismiss as moot the Fund's claims").  And plaintiff's claim plainly will not evade review if this Court otherwise has jurisdiction: it is the subject of his Second Amended Complaint, which defendants do not argue is moot.  Nor, as plaintiff implies, is the current order of so short a duration that it cannot be litigated fully under the law of this Circuit.  As plaintiff notes (Pl. Mem. 35), generally agency decisions of less than two years' duration are considered to evade review within the meaning of the mootness exception.  See Hinckley v. United States, 163 F.3d 647, 651 (D.C. Cir. 1999).  Here, CBP issued its current order denying plaintiff permission to serve on the Presidio City Council for the May 2008-May 2010 term on March 6, 2008.  See 2d Am. Compl. ¶ 23.  It is

-24-

the subject of plaintiff's pending Second Amended Complaint, first lodged on March 31, 2008. Since the order's effect runs until May 2010, it is not less than two years in duration. It also plainly is not "evading review" since, again, it is the subject of plaintiff's current complaint. The agency's expired 2006 order has no practical effect on the parties, however, and it is therefore moot. Even if the Court finds it otherwise has subject matter jurisdiction, it should dismiss plaintiff's claims concerning the mooted, December 2006 order.

## CONCLUSION

Accordingly, the Court should grant defendants' motion and dismiss plaintiff's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Dated: June 20, 2008                         Respectfully submitted,

                                             GREGORY KATSAS
                                             Acting Assistant Attorney General

                                             JEFFREY A. TAYLOR
                                             United States Attorney

                                             SUSAN K. RUDY D.C. Bar # 369112
                                             Assistant Branch Director

JOHN P. HELM
Associate Chief Counsel                          /s/ Steven Y. Bressler
LINDSAY B. KAY                               STEVEN Y. BRESSLER D.C. Bar #482492
Attorney                                     Trial Attorney, U.S. Department of Justice
Office of the Chief Counsel                  Post Office Box 883
U.S. Customs and Border Protection           Washington, DC  20044

*Of Counsel*                                 *Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TERRY L. WHITMAN,<br><br>          Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF TRANSPORTATION;<br>MARY E. PETERS, U.S. Secretary<br>of Transportation,<br><br>          Defendants. | Case No. 3:02-cv-0112-RRB<br><br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS COMPLAINT**<br>**AND AMENDED COMPLAINT** |

## I.    INTRODUCTION

At Docket 40 are Defendants U.S. Department of Transportation and the Honorable Mary E. Peters, U.S. Secretary of Transportation ("Defendants") with a Motion to Dismiss the Complaint and the Amended Complaint.  Defendants argue the Court lacks subject matter jurisdiction over Plaintiff's claims.[1] Plaintiff Terry L Whitman ("Plaintiff") opposes at Docket 43. Having thoroughly examined the relevant pleadings, affidavits,

---

[1]      Docket 40 at 3.

etc., Defendants' Motion to Dismiss the Complaint and the Amended Complaint at **Docket 40** is hereby **GRANTED**.[2]

## II.  FACTS

This case arises from a complaint wherein Plaintiff argued that his employer, the Federal Aviation Administration ("FAA"), violated his rights under a union agreement by subjecting him to a disproportionate number of drug and alcohol tests.[3]

## III. STANDARD OF REVIEW

In the absence of subject matter jurisdiction, dismissal is the appropriate disposition.[4]

///

///

///

---

[2]    Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1200 (9th Cir.1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[3]    Clerk's Docket No. 13 at 4 (citation omitted).  Because the specific facts are more than substantially briefed within the applicable pleadings, they are not repeated herein except as necessary.

[4]    MacKay v. Pfiel, 827 F.2d 540, 543 (9th Cir. 1987).

## IV.   DISCUSSION

On remand, the Court is directed to address a number of questions.[5]  To that end, a brief analysis follows.

**A.   Where do Plaintiff's claims fit within the statutory scheme defined by the Civil Service Reform Act ("CSRA") and the FAA Personnel Management System?**[6]

"[T]he CSRA establishes three categories of employment-related claims: adverse actions, prohibited personnel practices, and grievances."[7]  Plaintiff's claim references neither an "adverse employment action"[8] nor a "prohibited personnel practice."[9]  It is

---

[5]    Docket 40 at 2; <u>see also</u> <u>Whitman v. Department of Transportation</u>, 547 U.S. 512, 514 (2006).

[6]    <u>Id.</u> at 13; <u>see also</u> <u>Whitman</u>, 547 U.S. at 515 (2006).

[7]    <u>Id.</u>

[8]    "The FAA Personnel Management System's definition of 'major adverse personnel action' largely tracks the CSRA's . . . ." <u>Id.</u> at 14.  It includes "'. . . a suspension of more than 14 days, a reduction in pay or grade, a removal for conduct or performance, a nondisciplinary removal, a furlough of 30 days or less . . . , or a reduction in force action.'" <u>Id.</u> (citations omitted).  "The FAA Personnel Management System also provides for administrative review of suspensions of 14 days or less, which qualify as minor adverse actions under the CSRA." <u>Id.</u> (citations omitted).  Consequently, the Court concludes Plaintiff's allegation, i.e., that the FAA subjected him to nonrandom drug testing, does <u>not</u> qualify as an "adverse employment action" under these definitions.  <u>Id.</u>

[9]    Plaintiff's claim, i.e., that the FAA subjected him to nonrandom drug testing, does not fit within any of the categories that compromise a "personnel action" under the statutory definition.  <u>Id.</u> at 15.  As a result, Plaintiff's claim does <u>not</u>
(continued...)

a "grievance."[10] Consequently, and inasmuch as the CSRA's grievance provision establishes the sole avenue for relief under the statutory scheme,[11] the Court concludes Plaintiff's statutory remedy was to "grieve" his claim under the applicable collective bargaining agreement, which he failed to do.

**B.  Can Plaintiff assert his non-constitutional and/or constitutional claim(s) in district court under the Administrative Procedure Act ("APA")?[12]**

"[T]he Ninth Circuit has held that a federal employee may obtain review of alleged prohibited personnel practices only as provided for in the CSRA and may not rely on other statutes for obtaining judicial review of their claims."[13] As a consequence, "review of a federal employee's non-constitutional claims related to his employment is <u>not</u> available under the cause of action

---

[9](...continued)
meet the threshold requirement for a "prohibited personnel practice."  <u>Id.</u>

[10]  "'[G]rievance' is defined broadly to include 'any complaint . . . by any employee concerning any matter relating to the employment of the employee.'" <u>Id.</u> at 13 (<u>quoting</u> 5 U.S.C. § 7103(a)(9)(A).

[11]  <u>Id.</u> at 16 (footnote omitted).

[12]  <u>Id.</u> at 2-3; <u>see also</u> <u>Whitman</u>, 547 U.S. at 515 (2006).

[13]  <u>Id.</u> at 18 (<u>citing</u> <u>Orsay v. U.S. Dept. Of Justice</u>, 289 F.3d 1125, 1128 (9th Cir. 2002)).

ORDER GRANTING MOTION TO DISMISS
  COMPLAINT AND AMENDED COMPLAINT - 4
2:02-CV-112-RRB

established by the APA."[14]   This conclusion is reinforced by the APA's express statement that its provisions are inapplicable when another statute "preclude[s] judicial review."[15]   Moreover, "the CSRA nowhere provides for district court review of grievable statutory claims such as [Plaintiff's]."[16]   Plaintiff's constitutional claim(s) fair no better.

Indeed, "while the CSRA does not altogether preclude judicial review of a federal employee's constitutional challenge, the uniform requirement under the CSRA that an employee-related claim first be submitted though the specified administrative process remains applicable."[17]  As a consequence, "initial resort to the courts is barred, and a constitutional claim may be pursued in court under the APA only after the plaintiff has invoked administrative procedures under the CSRA."[18]

---

[14]    Id. (citing Russell v. U.S. Dept. of the Army, 191 F.3d 1016, 1019 (9th Cir. 1999))(emphasis added).

[15]    Id. (quoting 5 U.S.C. § 701(a)(1)).

[16]    Id. (emphasis added).

[17]    Id. at 19 (emphasis added).

[18]    Id. (citing U.S. v. Fausto, 484 U.S. 439, 453 (1988))(emphasis in original).

"There is no dispute that [Plaintiff] did <u>not</u> avail himself of the grievance process in this case."[19]  Therefore, and inasmuch as <u>the CSRA precludes initial review of a federal employee's constitutional claims</u>, Plaintiff's failure to submit his constitutional claims to the grievance procedure prevents the Court's review of the same.[20]

**C.  Does the 1994, amendment to the CSRA's grievance provision permit a federal employee to obtain judicial review of a grievable matter?**[21]

Plaintiff's remaining argument, concerning his non-constitutional claim(s), is that Congress amended the CSRA's grievance provision in 1994, to "implicitly" permit federal employees to entirely bypass the negotiated grievance procedures and assert their grievances in court in the first instance.[22]  More specifically, Plaintiff contends, that by adding the word "administrative" to the provision, Congress signaled its intent to

---

[19]    <u>Id.</u> at 22 (emphasis added).

[20]    <u>Id.</u> (footnote omitted).

[21]    <u>Id.</u> at 3; <u>see also</u> <u>Whitman</u>, 547 U.S. at 515 (2006).

[22]    Docket 48 at 7 (citation omitted).  "The 1994 amendment revised the grievance provision to say that the negotiated grievance procedures 'shall be the exclusive administrative procedures for resolving grievances which fall within [the] coverage [of a collective bargaining agreement].'" <u>Id.</u> (citations omitted).

dramatically expand a federal employee's right to judicial review of matters that were previously limited by the CSRA to the administrative process.[23]  The Court disagrees.

The "CRSA's comprehensive nature precludes judicial review of employee grievances, except in the limited cases in which such review is provided for by the CSRA."[24]  Congress's 1994, addition of the word "administrative" to the statute neither changes nor alters this premise.  Indeed, the legislative history surrounding the 1994, amendments confirms Congress did not intend to eliminate the CRSA's preclusion of judicial review of grievances.[25]

## V.    CONCLUSION

Because the Court concludes the 1994 amendments to § 7121 did not rework the fundamental architecture of the CSRA,[26] the Court further concludes that the statute, taken as a whole, "completely precludes judicial review of federal employees' work-related statutory claims, and precludes initial judicial review of

---

[23]    Id. at 7-8 (citation omitted).

[24]    Id. at 8 (citing Saul v. United States, 928 F.2d 829, 842 (9th Cir. 1991)).

[25]    Docket 40 at 24.

[26]    Id. at 26.

ORDER GRANTING MOTION TO DISMISS
  COMPLAINT AND AMENDED COMPLAINT - 7
2:02-CV-112-RRB

constitutional claims."[27]  As a result, and because Plaintiff's statutory claims are not judicially cognizable, and because Plaintiff did not assert his constitutional claims in the grievance process, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claim(s).[28]  For these reasons, and for additional reasons more carefully articulated within the relevant pleadings, Defendants' Motion to Dismiss at **Docket 40** is hereby **GRANTED**.

ENTERED this 30th day of May, 2008.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[27]    Id.

[28]    Id.

ORDER GRANTING MOTION TO DISMISS
  COMPLAINT AND AMENDED COMPLAINT - 8
2:02-CV-112-RRB