UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAIME RAMIREZ,                    )
                                  )
        Plaintiff,                )
                                  )
    v.                            )       Civil Action No. 07-65 (GK)
                                  )
U.S. CUSTOMS AND BORDER           )
PROTECTION, et. al.,              )
                                  )
        Defendants.               )
                                  )

MEMORANDUM OPINION

Plaintiff Jaime Ramirez, an officer for the U.S. Customs and Border Protection, Department of Homeland Security brings this action against Defendants U.S. Customs and Border Protection, Commissioner W. Ralph Basham, and District Field Officer Louis Garcia. The Complaint alleges that Defendants violated Ramirez's First Amendment rights to engage in political speech and to associate, as well as the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(B) ("APA"), by denying authorization for Ramirez to serve on the City Council in Presidio, Texas. This matter is presently before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. No. 34] pursuant to Federal Rule of Civil Procedure 12(b)(1). Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion to Dismiss is **granted in part**, and **denied in part**.

## I.    Background

Plaintiff Jaime Ramirez is an officer for the U.S. Customs and Border Protection ("CBP"), Department of Homeland Security at the Presidio, Texas port of entry. His primary duty is to inspect vehicles and persons entering the United States in order to interdict terrorists, illegal immigrants, persons suspected of other criminal offenses, and illegally imported goods. 2d Am. Compl. ¶¶ 3, 7 [Dkt. No. 33].

In 2004, Plaintiff was elected to an unpaid, two-year term on the non-partisan Presidio City Council. Id. ¶¶ 8, 12. The City Council is responsible for hiring the City Administrator and for enacting local ordinances, regulations, and resolutions regarding zoning, street repair, sanitation, and emergency services issues. Id. ¶ 14. At the end of that term, and after running for re-election unopposed, Plaintiff was installed by the City Council for a second two-year term running from 2006-2008. Id. ¶ 10.

Plaintiff submitted a Request to Engage in Outside Employment or Business Activities to gain CBP's authorization for the 2004-2006 term, which CBP's Director of Field Operations ("DFO"), Luis Garcia, approved. However, Ramirez did not submit a request for authorization for the second term commencing in 2006. After learning of Plaintiff's unauthorized reappointment in 2006, Garcia sent Plaintiff a memorandum informing him that he had been authorized to serve on the City Council for only the 2004-2006

term, and ordering him to resign his position due to an appearance of a conflict of interest. The memorandum, dated December 22, 2006, stated that the appearance of a conflict of interest arose from the CBP's relationship with the City Council regarding a variety of "business issues, i.e. housing, zoning, municipal services, port operations, etc." Id. ¶¶ 14, 20; Ex. 1 to Compl [Dkt. No. 1].

Plaintiff alleges that the December 22, 2006 memorandum was the result of a policy change by CBP. CBP had issued a new directive on outside employment on December 1, 2006, just weeks prior to Garcia's 2006 memorandum to Ramirez. Under the new directive, an employee seeking public office was required to receive authorization from headquarters in Washington, D.C., instead of from local DFOs. 2d Am. Compl. ¶ 19.

In a second memorandum to Plaintiff dated January 5, 2007, Garcia instructed him to decide whether to resign his position on the City Council by January 21, 2007. The memorandum advised Plaintiff that failure to respond would result in "further action by this agency, up to and including removal from your position." Ex. 1 to Compl.

One week later, Ramirez filed suit in this Court, alleging that the 2006-2008[1] Orders violated his First Amendment rights to engage in political speech and to associate. Ramirez also alleges

---

[1] For the purposes of this Order, the December 22, 2006 and January 5, 2007 memorandums will be referred to collectively as the "2006-2008 Orders".

that this violation of his First Amendment rights was "arbitrary, capricious, an abuse of discretion, not in accordance with law, and contrary to a constitutional right, power, privilege or immunity" under the APA, 5 U.S.C. § 706(2)(A)-(B).

A short time later, Ramirez filed a formal complaint with the Office of Special Counsel ("OSC"), pursuant to 5 U.S.C. § 2302(b) of the CSRA. The OSC dismissed Ramirez's complaint because it concluded that no personnel action had been taken by CBP at that point, and that CBP's threatened action against Ramirez was insufficient to warrant further inquiry. Letter from the U.S. Office of Special Counsel to Robert Shriver, Feb. 22, 2007, Pls.' Reply on Mot. for Preliminary Injunction [Dkt. No. 5], Ex. 2.

Following the expiration of Ramirez's 2006-2008 City Council term, he was re-elected for another two-year term commencing in May 2008. In response to Ramirez's request for CBP's authorization for this term, the Acting DFO issued a memorandum denying him permission to serve on the City Council ("2008-2010 Order"). Ramirez subsequently amended his Complaint to add a challenge to the 2008-2010 Order. 2d Am. Compl. ¶ 3. On May 1, 2008, Defendants filed the present Motion to Dismiss on the grounds that Ramirez cannot establish this Court's subject matter jurisdiction over his claims under Federal Rule of Civil Procedure 12(b)(1).

## II. Standard of Review

Under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear her case. See Jones v. Exec. Office of President, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citations and quotations omitted). The Court may consider matters outside the pleadings. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court may also rest its decision on the Court's own resolution of disputed facts. Id.

## III. Analysis

In their Motion to Dismiss, Defendants argue that Ramirez has failed to establish subject matter jurisdiction for three reasons. First, they claim that § 7121(a) of the CSRA precludes federal court jurisdiction over Plaintiff's APA claim. Second, Defendants argue that § 7121(a) requires Ramirez to exhaust the negotiated grievance procedure established in the parties' collective bargaining agreement before bringing his constitutional claim in

federal court.[2] Third, Defendants argue that Ramirez's claims challenging the 2006-2008 Orders are moot, as the period of time they covered has expired. The Court will first address whether § 7121(a) governs Ramirez's claims before turning to the merits of Defendants' arguments.

## A. Section 7121(a) of the Civil Service Reform Act, 5 U.S.C. § 1101, et seq, Applies to Plaintiff's Claims.

On March 12, 2007, in its Order granting Plaintiff a preliminary injunction, this Court concluded that Ramirez exhausted his administrative remedies under the Civil Service Reform Act, 5 U.S.C. § 1101, et seq ("CSRA"), when he filed a formal complaint with the OSC pursuant to 5 U.S.C. § 2302. March 12, 2007 Order at 6-7 [Dkt. No. 12]. Based on the OSC's conclusion that Ramirez's claims did not involve a personnel action under § 2302, Defendants now argue that only § 7121(a) of the CSRA--which addresses "employee grievances" instead of the "personnel actions" addressed in § 2302--applies,[3] and that it requires Ramirez to exhaust the

_____

[2] It is not clear what, if any, non-constitutional claims are raised in the Second Amended Complaint--apart from the APA claim--that might also be subject to the CSRA's exhaustion requirement.

[3] Defendants raised similar preclusion and exhaustion arguments in opposing Plaintiff's Motion for a Preliminary Injunction. See Defs.' Opp'n to Mot. for Preliminary Injunction [Dkt. No. 4]. Defendants argued that Ramirez could "pursue his claim either by bringing a complaint to the U.S. Office of Special Counsel or by raising a grievance under the collective bargaining agreement with the government that covers him," but not by first bringing suit in this Court. Defs.' Opp'n to Mot. for Preliminary Injunction at 1 (emphasis added). Defendants have abandoned this

-6-

grievance procedures under the governing collective bargaining agreement, which he has not done.

Section 7121(a) falls under Chapter 71 of the CSRA, which governs Labor-Management Relations. Its provisions concern the resolution of employee "grievances," which are defined differently from the "personnel actions" addressed in part in 5 U.S.C. § 2302, the authority under which the OSC operates. See, e.g., Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1432 (D.C. Cir. 1996) ("Non-judicial remedies for adverse personnel decisions by government employers stem from two sources: the Civil Service Reform Act ("CSRA") of 1978, and provisions of collective bargaining agreements affording grievance rights to covered employees (the latter strongly bolstered by the CSRA itself)."). In contrast to § 2302 which defines "personnel actions," the definition of "grievance" in § 7103 of the CSRA broadly includes "any complaint by any employee concerning any matter relating to the employment of the employee . . . or any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9) (2009).

As noted above, when the OSC dismissed Ramirez's complaint it determined that no personnel action, as that term is defined in 5

position and now argue that, because only § 7121(a) governs Ramirez's claims, Ramirez must exhaust the negotiated grievance procedures in the applicable collective bargaining agreement before bringing his claims in federal court.

U.S.C. § 2302(a)(2)(A), had been taken by CBP. <u>See</u> Letter from the U.S. Office of Special Counsel to Robert Shriver, Feb. 22, 2007, Pls.' Reply to Opp'n to Mot. for Preliminary Injunction [Dkt. No. 5], Ex. 2. One it was determined by OSC that no personnel action was taken, the provisions of the CSRA establishing more formal procedures for challenging the substance of the employees' claims, such as review by the OSC, would obviously not apply. Instead, Ramirez's claims would fit within the broad definition of "grievance" under the CSRA, and § 7121(a) would apply to make the negotiated grievance procedure in the governing collective bargaining agreement the exclusive administrative procedure for resolving his claims.[4] Thus, this Court "[is] required first to

_____

[4]    Section 7121(a) requires collective bargaining agreements to include grievance procedures that, with limited exceptions, constitute "the exclusive administrative procedures for resolving grievances which fall within [the agreement's] coverage." 5 U.S.C. § 7121(a) (2008).

The parties' collective bargaining agreement applicable to this case establishes a three-step grievance process. First, the employee must file a grievance with the "first level of supervision" within twenty-two workdays after the incident occurs. Next, if dissatisfied with the result, the employee may file a written complaint with a superior agency official--in this case, the Deputy Regional Director--within ten days of receiving the decision in step one. The third and final step is to submit another written complaint to an even higher agency official--the Regional Director--within ten days of receiving a response from the official in step two.

After the three-step grievance process, an employee may request the union to seek binding arbitration, which is in turn reviewable by the Federal Labor Relations Authority ("FLRA"). The decision to seek arbitration may be made by either the union or the agency, but never by the employee. <u>See</u> Agreement 2000 Between U.S.

ascertain where [Ramirez's] claims fit within the statutory scheme, as the CSRA provides different treatment for grievances depending on the nature of the claim." Whitman v. Dep't of Transp., 547 U.S. 512, 514, 126 S.Ct. 2014, 2015 (2006).

The Court agrees with the OSC that no personnel action, as that term is defined under the CSRA, was taken. "Personnel action" means "(i) an appointment; (ii) a promotion; (iii) . . . disciplinary or corrective action; (iv) a detail, transfer, or reassignment; (v) a reinstatement; (vi) a restoration; (vii) a reemployment; (viii) a performance evaluation . . .; (ix) a decision concerning pay, benefits, or awards . . .; (x) a decision to order psychiatric testing or examination; and (xi) any other significant change in duties, responsibilities, or working conditions." 23 U.S.C. § 2302(a)(2)(A) (2009). The CBP's decision not to authorize Ramirez's outside political activities does not fall within this definition.

Given this conclusion, the Court must now determine whether Ramirez's claims fall within the broad definition of "grievance" in § 7121(a). They do, given the fact that a "grievance" includes "any claimed violation, misinterpretation, or misapplication of any law . . . affecting conditions of employment." 5 U.S.C.

---

Immigration and Naturalization Serv. and Nat'l Immigration and Naturalization Serv. Council, Articles 47-48, available at http://www.ncisc119.net/Agreement_2000.doc ("Agreement 2000").

§ 7103(a)(9). The Court will now turn to the application of § 7121(a) to Ramirez's APA and constitutional claims.

**B.    Plaintiff's APA Claim Is Precluded by the CSRA.**

While the APA grants jurisdiction to federal district courts to review agency action in certain cases, it also states that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702 (2008). <u>See also</u> <u>Transohio Savings Bank v. OTS</u>, 967 F.2d 598, 607 (D.C. Cir. 1993) (Section 702 does not establish jurisdiction over "claims for which an adequate remedy is available elsewhere, and . . . claims seeking relief expressly or impliedly forbidden by another statute").

Defendants argue that Plaintiff's APA claim should be dismissed because 5 U.S.C. § 7121(a) of the CSRA precludes this Court's subject matter jurisdiction. In response, Plaintiff relies on a Federal Circuit case that interprets § 7121(a), as amended in 1994, to permit federal employees to bring suit in a district court despite the availability of a negotiated grievance process. <u>See</u> <u>Mudge v. United States</u>, 308 F.3d 1220 (Fed. Cir. 2002); <u>see also</u> <u>Asociacion De Empleados Del Area Canalera (ASEDAC) v. Panama Canal</u> <u>Comm'n</u>, 329 F.3d 1235, 1241 (11th Cir. 2003) (adopting analysis in <u>Mudge</u>).

Before 1994, § 7121(a) provided that the negotiated grievance procedures constitute the "exclusive procedures for resolving grievances." However, Congress amended § 7121(a) in 1994 to provide that they constitute "the exclusive <u>administrative</u> procedures for resolving grievances which fall within [the agreement's] coverage." 5 U.S.C. § 7121(a) (2008) (emphasis added). Ramirez argues that this amendment modifies the CSRA to permit judicial review of employee grievances, assuming jurisdiction is otherwise established by statute.

This view was adopted by both the Federal Circuit and the Eleventh Circuit. In <u>Mudge</u>, a case brought under the Tucker Act, the Federal Circuit engaged in a thorough analysis of § 7121(a) and the legislative history behind the 1994 amendment, concluding that the plain language of the CSRA required it to interpret "administrative" to "mean what it says." <u>Mudge</u>, 308 F.3d at 1228. Thus, the Federal Circuit found that § 7121(a) "does not limit a federal employee's right to avail him or herself of alternative, non-administrative avenues of redress." <u>Id.</u> at 1230.

However, our Circuit, borrowing language from the Supreme Court, recently explained that the question is properly framed as "'whether § 7121 (<u>or the CSRA as a whole</u>) removes the jurisdiction given to the federal courts or otherwise precludes employees from pursuing' a claim under the APA." <u>Filebark v. Dep't of Transportation</u>, 555 F.3d 1009, 1012-13 (D.C. Cir. 2009) (quoting

<u>Whitman v. Dep't of Transportation</u>, 547 U.S. 512, 513 (2006) (emphasis in original)). As this Circuit has made clear, the comprehensive scheme of the CSRA almost always precludes district court jurisdiction under the APA to review agency actions related to employment. <u>Id.</u> at 1014-15.

In <u>Carducci v. Regan</u>, 714 F.2d 171, 174-75 (D.C. Cir. 1983), our Court of Appeals concluded that "an APA remedy beyond that provided in the CSRA [was] precluded by the comprehensiveness of the CSRA itself." <u>See also</u> <u>Fornaro v. James</u>, 416 F.3d 63, 67 (D.C. Cir. 2005) ("[W]hat you get under the CSRA is what you get."); <u>Graham v. Ashcroft</u>, 358 F.3d 931 (D.C. Cir. 2004) (finding preclusion of APA claim even where CSRA left plaintiff without any remedy).

In <u>Filebark</u>, the Court of Appeals concluded that <u>Carducci</u> applied to claims based on employee grievances subject to § 7121 as well. The Court recognized that "[i]t may be true that in amending section 7121(a)(1) Congress intended no longer to preclude all judicial review for employees with negotiated grievance procedures." <u>Filebark</u>, 555 F.3d at 1012. However, relying on <u>Carducci</u>, the <u>Filebark</u> Court concluded that jurisdiction under the APA was precluded by "the structure of Congress's employment statutes and the CSRA as a whole." <u>Id.</u> at 1014-15. Otherwise, "the exhaustive remedial scheme of the CSRA would be impermissibly frustrated" by allowing more immediate judicial review of lesser

claims than is permitted under the CSRA for major adverse actions involving suspension or removal. Id. at 1013 (quoting Carducci, 714 F.2d at 174).

Given this Circuit's repeated emphasis that the CSRA as a whole precludes the jurisdiction granted under the APA, Ramirez's APA claim is **dismissed** for lack of subject matter jurisdiction.[5]

## C.   Plaintiff Is Not Required to Exhaust His Constitutional Claim.

Defendants wisely limit their preclusion argument to Ramirez's statutory claim since Federal courts have subject matter jurisdiction over constitutional claims for equitable relief in the absence of a clear statement by Congress to the contrary. Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 1471-1472, 64 L.Ed.2d 15 (1980). It is well established that the CSRA, in particular, does not preclude federal court jurisdiction over First Amendment claims for equitable relief. Nat'l Federation of Federal Employees v. Weinberger, 818 F.2d 935 (D.C. Cir. 1987). However, Defendants argue that "the CSRA precludes initial judicial review over constitutional claims that are cognizable under the Act," and therefore Ramirez must first exhaust the procedures established in the Agreement 2000. Reply at 1 (emphasis added).

---

[5]     While it is clear that the Federal Circuit in Mudge, 308 F.3d 1220, disagrees with our Circuit, in the face of such conflicts the law of this Circuit must be followed.

In <u>Andrade v. Lauer</u>, 729 F.2d 1475, 1484 (D.C. Cir. 1984), our Court of Appeals explained that:

> Exhaustion of available administrative remedies is in general a prerequisite to obtaining judicial relief for an actual or threatened injury. However, the exhaustion requirement is not in general jurisdictional in nature, but rather must be applied in accord with its purposes.

The four primary purposes of the exhaustion requirement are "(1) to carry out congressional intent in granting authority to the agencies; (2) to protect agency autonomy; (3) to aid judicial review by developing a factual record; and (4) to avoid repetitive adjudication or to avoid judicial involvement at all." <u>Weinberger</u>, 818 F.2d at 940 n.6. Given the wide authority granted to federal agencies to resolve employee disputes under the CSRA and the importance of agency autonomy, the Court concludes that, on balance, the primary purposes of exhaustion are met by requiring Ramirez to first pursue his claim through the applicable grievance procedures.[6]

---

[6] It must be acknowledged that use of the grievance procedure in this case is not likely to advance the third purpose of exhaustion--to aid judicial review by developing a fuller factual record--since formal hearings, witnesses, and documentary evidence are only present at the arbitration stage, and the arbitration stage is only reached if Ramirez's union or CBP decides to pursue the grievance through arbitration. <u>See</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 153-56, 112 S.Ct. 1081, 1090-92, 117 L.Ed.2d 291 (1992) (concluding that interest in judicial economy not advanced by similar grievance procedure). This factor alone, however, does not change the Court's conclusion that the primary purposes of exhaustion are met by requiring Ramirez to pursue his constitutional claim through the applicable grievance procedures.

In addition, this Circuit's precedent strongly supports requiring Ramirez to first exhaust his constitutional claim under the CSRA. See Weaver, 87 F.3d at 1433; Steadman v. Governor, United States Soldiers' and Airmen's Home, 918 F.2d 963 (D.C. Cir. 1990). While there is a general presumption of judicial review for constitutional claims, Weaver, 87 F.3d at 1433, this Circuit has made clear that the exhaustion requirement applies to constitutional claims for equitable relief which are subject to CSRA remedies, except in "the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures." Steadman, 918 F.2d at 967; Weaver, 87 F.3d at 1433-34.

Far from presenting such an unusual case, Ramirez's constitutional claim and the claim subject to the CSRA's remedies are one and the same. In Weaver, the D.C. Circuit addressed the exhaustion requirement in a similar context. The plaintiff, a Voice of America employee, sought equitable and declaratory relief on First Amendment grounds for both a regulation restricting employee speech and an oral admonishment she received for refusing to follow the regulation. In considering whether exhaustion of administrative remedies was required, the court distinguished between the claim related to the oral admonishment and the claim challenging the agency regulation. It found the former claim subject to exhaustion because the CSRA established an administrative review process for personnel actions such as admonishments--namely, review by the OSC.

The claim challenging the agency regulation, however, was not based upon the admonishment and did not challenge any other personnel action. Thus, the Weaver court concluded that the administrative remedy under the CSRA did not apply. Instead, this claim amounted to a "simple pre-enforcement attack on a regulation restricting speech," and thus did not require exhaustion. Id. at 1434.

Ramirez contends that Weaver stands for the broad proposition that only those claims challenging a personnel action are subject to the exhaustion requirement. Because his claim was not found to constitute a personnel action by the OSC, he argues, it need not be exhausted. Pl.'s Opp'n at 14. However, the Court of Appeals in Weaver was careful to point out that the parties' collective bargaining agreement did not apply to the agency action, since the agreement expressly excluded "admonishments" from its coverage. Id. at 1432. In this case, the negotiated grievance procedures do constitute a CSRA remedy for Ramirez's grievance, just as in Weaver the OSC review process constituted a CSRA remedy for the oral admonishment. Weaver's logic--that exhaustion is required for constitutional claims for equitable relief under the CSRA when an administrative process is available--thus compels the conclusion that the administrative remedy found in § 7121(a) must be exhausted before a claim based on an employee grievance may be brought in federal court.

However, there are three exceptions to the exhaustion requirement for constitutional claims. Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 104-07 (D.C. Cir. 1986); see also McCarthy, 503 U.S. at 146 ("Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.") (citations omitted).

First, exhaustion is not required where the administrative procedure is futile, meaning an adverse decision is certain either because the agency will conclude it lacks jurisdiction over the matter or because the agency has "articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider." Randolph-Sheppard, 795 F.2d at 105. Second, exhaustion is not required where the administrative procedure is inadequate, or where "the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong." Id. at 107. Third, and most relevant to this case, exhaustion is not required when the plaintiff will be irreparably harmed if immediate judicial review is not permitted.

A finding of irreparable injury is more likely when injuries of constitutional magnitude are threatened, as they are here. See id. at 108 (distinguishing Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 591, 46 S.Ct. 408, 409, 70 L.Ed. 747 (1926), which

found the irreparable harm exception to the exhaustion requirement to apply, in part because the threatened injury was of constitutional magnitude in <u>Smith</u>). In addition, this Court has already found with regard to irreparable injury that "the balance tips totally in Plaintiff's favor." March 12, 2007 Order at 8.

Should Ramirez's case be dismissed at this point for lack of subject matter jurisdiction, then the March 12, 2007 preliminary injunction would be vacated <u>ipso facto</u> on the same grounds. Even if Defendants were to voluntarily abstain from enforcing the 2008-2010 Order until final resolution of Ramirez's grievance (which they are not willing to do, <u>see</u> Defs.' Status Report of April 27, 2010 [Dkt. No. 53] at 4), there is always the possibility that the grievance procedure--which may or may not continue into arbitration, depending on the decision of the union and/or CPB--would, in the end, uphold the Order and require Ramirez to resign his seat.

In that event, if Ramirez is correct in arguing that the 2008-2010 Order violates the Constitution, then "[n]ot only will [Ramirez] lose his elected seat on the City Council, to which this Court surely would not have the power to re-appoint him even if he prevails on the merits, but his Constitutional rights will have been violated." March 12, 2007 Order at 13. And, "[a]s the Supreme Court has said on many occasions, any violation of one's First Amendment rights constitutes irreparable harm." <u>Id.</u>

Because irreparable harm will result from a decision that requires Ramirez to first pursue his First Amendment claim through the negotiated grievance procedure, Defendants' Motion to Dismiss Plaintiff's constitutional claim for failure to exhaust administrative remedies is **denied.**

**D. Plaintiff's Challenge to the 2006-2008 Orders Is Moot.**

Finally, Defendants argue that Ramirez's claims challenging the 2006-2008 Orders are moot, as the 2006-2008 term has expired. Defs.' Mot. to Dismiss at 4. Ramirez seeks a declaration that the 2006-2008 Orders are unconstitutional, as well as a permanent injunction ordering CBP to rescind both the 2006-2008 Orders and the 2008-2010 Order. Because Ramirez's APA claim has been dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, the argument will be addressed only as it pertains to Ramirez's remaining constitutional claim.

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'" Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990), quoting Honig v. Doe, 484 U.S. 305, 317, 108 S.Ct. 592, 600-01, 98 L.Ed.2d 686 (1988). A case is moot "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980), quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23

L.Ed.2d 491 (1969). This Court concludes that Ramirez's challenge

to the 2006-2008 Orders is moot because the issues presented "are

no longer 'live.'"[7]

Ramirez argues that the 2006-2008 Orders should not be

dismissed as moot because they uniquely raise the issue of the

agency's reversal of position on how employees' Requests to Engage

in Outside Employment or Business Activities are treated. While the

2006-2008 Orders are particularly relevant to CBP's reversal,

_____

[7]    An exception to the live controversy requirement is found
when a claim is capable of repetition, yet evading review. The
exception applies if "(1) the challenged action was in its duration
too short to be fully litigated prior to its cessation or
expiration, and (2) there was a reasonable expectation that the
same complaining party would be subjected to the same action
again." Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71
L.Ed.2d 353 (1982) (citations omitted). Ramirez argues that this
exception saves his constitutional challenge to the expired 2006-
2008 Orders, even though declaring the Orders unconstitutional and
ordering their rescission would have no practical effect on the
parties. Pl.'s Opp'n at 33-36.
    Because CBP denied Ramirez's request to serve on the City
Council for the 2008-2010 term, "the same complaining party" has
been "subjected to the same action again." Murphy, 455 U.S. at 482.
Ramirez's Second Amended Complaint added a challenge to this
denial, which permits this Court's review of the same agency
action--denial of Ramirez's request to serve on the Presidio City
Council--in the form of a live controversy. Thus, his claim cannot
be said to evade review. Cf. Fund for Animals, Inc. v. Hogan, 428
F.3d 1059, 1064 (D.C. Cir. 2005) (affirming dismissal of moot
challenge to environmental assessment because future assessments
could be litigated, and so claim did not evade review); Northwest
Airlines, Inc. v. Federal Aviation Administration, 675 F.2d 1303,
1307 (D.C. Cir. 1982) (refusing to apply exception where it was
"reasonable to believe that the legality of the . . . [challenged]
policy will be challenged in other cases"). This is therefore not
the "exceptional situation" where Article III's live controversy
requirement need not be followed. DeFunis v. Odegaard, 416 U.S.
312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974).

nothing prevents Ramirez from introducing them as evidence in support of his constitutional challenge to the 2008-2010 Order and to the shift in policy. Ramirez's argument does not justify a departure from the live controversy requirement by granting declaratory and injunctive relief as to agency orders that have expired.

For all these reasons, the Court concludes that the issues raised in Ramirez's challenge to the 2006-2008 Orders are not live and do not present actual, ongoing controversies, but that such issues are raised in the Second Amended Complaint and therefore will not evade review. Consequently, the Defendants' Motion to Dismiss Plaintiff's challenge to the 2006-2008 Orders as moot is **granted.**

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) is **granted** with respect to Plaintiff's APA claim, and **denied** with respect to Plaintiff's constitutional claim. The Motion to Dismiss Plaintiff's claims related to the 2006-2008 Orders as moot is **granted.** An Order will accompany this Memorandum Opinion.


May 5, 2010

_/s/_____

Gladys Kessler
United States District Judge

**Copies to: attorneys on record via ECF**